TIMOTHY M. BURGESS
United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
(907) 271-5071
(907) 271-2344 fax
richard.pomeroy@usdoj.gov

RICHARD R. STONE, SR.
Trial Attorney
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
(202) 616-4291
(202) 616-5200 fax
richard.stone@usdoj.gov

FILED

DEC 1 3 2005

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By _____ Deputy
12.22

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. A98-285 CV (JWS) |
| | ) | |
| Plaintiff, | ) | **MOTION TO QUASH CIVIL RULE** |
| | ) | **30(b)(6) DEPOSITION NOTICE TO** |
| vs. | ) | **UNITED STATES** |
| | ) | |
| THE CONTINENTAL CASUALTY | ) | |
| COMPANY, dba THE CONTINENTAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, the United States of America, moves to quash the deposition noticed by

Defendant, Continental, pursuant to Fed. R. Civ. P. 30(b)(6) on the grounds that the topics of the

195

Rule 30(b)(6) notice seek irrelevant information, seek privileged attorney-client material, or seek information that has been produced in the United States expert reports or may be addressed by deposition of the United States' experts. This motion is supported by the following memorandum.

## PROCEDURAL BACKGROUND

Continental served Plaintiff on December 6, 2005, with the notice of deposition, set for December 19, 2005 in counsel's office in Los Angeles, California. Exhibit 1. Continental seeks a witness from the United States to respond to eleven topics and to produce twelve categories of documents. Id. Continental first served a Rule 30(b)(6) notice on the United States on October 10, 2005, by Continental's former counsel. That notice requested a representative of the United States to address twelve subjects and to produce documents relating to thirteen areas of inquiry. One of the new law firms representing Continental served an amended notice on the United States on November 11, 2005. The only change from the previous notice, aside from who issued it, was that the deposition would be videotaped. Exhibit 2.

The United States told Continental that it objected to the deposition and explained its objections in a letter dated November 9, 2005. Exhibit 3. At the same time, the United States responded to written discovery requests, many of which addressed the same topics as the Rule 30(b)(6) notice. Exhibit 4. Continental responded in a letter dated November 21, 2005. Exhibit 5. Continental agreed to withdraw one topic - the net worth of the United States from 1988 to the present and how it is calculated - only after the United States explained that the topic was not relevant because the United States was not claiming that it was a "financially vulnerable" plaintiff as the term was used in State Farm v Campbell, 538 U.S. 408 (2003). The United States

2

replied on December 2, 2005, Exhibit 6, that it was not persuaded by Continental's reasons for seeking discovery, especially since, in the interim, the United States had provided its expert reports to Continental on November 22, 2005. See Exhibits 7 and 8. In its November 9th letter, the United States explained that several of the Rule 30(b)(6) topics would be addressed by the United States' experts. Also, the United States had agreed to Continental's deposition of one of the former lawyers assigned to this case, Kenneth Roosa. That deposition is scheduled for December 15, 2005. Exhibit 9.

Continental's response was to re-notice the Rule 30(b)(6) deposition without modification, save deleting inquiry into the net worth of the United States.

## ARGUMENT

### A.  Proper Scope of Discovery at this phase of the case.

Rule 30(b)(6)[1] depositions are often referred to as "persons most knowledgeable" or "persons most qualified" depositions because "the notice of deposition or subpoena is directed at the entity itself" and "[t]he entity will then be obligated to produce the 'most qualified' person [or persons] to testify on its behalf. Mattel, Inc. v. Walking Mountain Productions, 353 F.3d 792,

---

[1] Rule 30(b)(6) provides that:
A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules.

3

798 n.4 (9th Cir. 2003). Rule 30(b)(6) depositions may be had of governmental entities, including the United States. However, such depositions may not be had for the purpose of "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Nor may such depositions be taken on topics that are irrelevant to the issues being contested.

In the present case, the parties are conducting discovery to prepare for a trial, set to begin on May 22, 2006, to determine what, if any, punitive damages should be awarded to the United States.[2] Thus, what is relevant at this stage is that which pertains to determining punitive damages.[3] Punitive damages are a remedy, not a cause of action. Doe v. Colligan, 753 P.2d 144, 145 n.2 (Alaska 1988). The purpose of punitive damages is two-fold: to punish the wrongdoer and to deter the wrongdoer and others from repeating the offensive act. Doe v. Colligan, 753 P.2d 144, 145 (Alaska 1988); Providence Washington Ins. Co. v. City of Valdez, 684 P.2d 861 (Alaska 1984).

The Alaska Supreme Court has recognized two requirements for the recovery of punitive damages. First, since punitive damages are a remedy and not an independent cause of action, it is essential that the plaintiff prevail on one or more causes of action. Haskins v. Shelden, 558 P.2d 487, 492-93 (Alaska 1976); Oaksmith v. Brusich, 774 P.2d 191, 201 (Alaska 1989). The United States has already satisfied this requirement because this Court has found that the United States was

---

[2] Because Continental's acts of bad faith against the United States began before the effective date of the amendments to AS 09.17.020 - August 7, 1997 - the prior law applies to the present case.

[3] Perhaps Continental's topics for 30(b)(6) inquiry are based on their mistaken belief that the United States has waived its argument that Continental is guilty of bad faith. See Docket No. 191.

an additional implied insured under Continental's policy, that Continental acted in bad faith in denying the United States' tenders, and that a jury could find that Continental's rejection of the United States' tenders was outrageous or done with reckless indifference. See Docket 166.

The second requirement is that the plaintiff must prove that the wrongdoer's conduct was outrageous, such as acts done with malice or bad motives or a reckless indifference to the interests of another. Bridges v. Alaska Housing Authority, 375 P.2d 696, 702 (Alaska 1962). Actual malice need not be proved. Rather, reckless indifference to the rights of others and conscious action in deliberate disregard of them may provide the necessary state of mind to justify punitive damage. Sturm, Ruger & Co., Inc. v. Day, 594 P.2d 38, 46 (Alaska 1979). Reckless misconduct does not occur unless the act or omission is itself intended, not-withstanding that the actor knew of facts which would lead any reasonable person to realize the extreme risk to which it subjected the safety of others. Hayes v. Xerox Corp., 718 P.2d 929, 935 (Alaska 1986). Reckless misconduct therefore differs from negligence, which consists of mere inadvertence, incompetence or unskillfulness because reckless conduct requires a conscious choice of action. Id.

Punitive damages may exceed compensatory damages. Factors to be considered in awarding punitive damages are the magnitude and flagrancy of the wrong committed, the importance of the policy violated, the amount of compensatory damages, and the wealth of the defendant. Pletnikoff v. Johnson, 765 P.2d 973, 979 (Alaska 1988); Ben Lomond, Inc. v. Campbell, 691 P.2d 1042, 1047 (Alaska 1984) (citing Sturm, Ruger & Co., Inc. v. Day, 594 P.2d 38, 48 (Alaska 1979)). The law provides no fixed measure as to the amount of such damages, but leaves it to the jury to decide an amount that will fairly accomplish the purposes of punishment and deterrence.

As discussed below, the topics that Continental requests a 30(b)(6) witness is discuss are not

5

relevant to the issues that are to be tried in this case.

### B.     Continental's Topics of Inquiry

The topics that Continental has identified for seeking a Rule 30(b)(6) deponent generally seek the attorney work product of the lawyers that have represented the United States in this case over the years, attorney/client privileged materials or discussions, deliberative process privileged documents and discussions, the opinions of the experts retained by the United States, or involve subjects that are irrelevant to the issues remaining to be determined in this case. The specific subjects on which defendants seek to depose a government representative, and the government's objections to the requests, are set forth below, topic by topic:

1.   <u>All tenders of the USA's claims in this matter to CIC (Continental Insurance Company), including, but not limited to, all discussions concerning the tenders, all persons involved in the tenders, and all bases for the USA's position that CIC's actions with respect to each tender were outrageous or evidenced reckless indifference to the interests of another.</u>

There can be no contested factual issue concerning when the United States tendered to Continental. The correspondence from the United States to Continental, directly or through the various lawyers that it has retained in this matter over the years, speaks for itself as to the authorship of the tender letters and the reasons for making the tenders and has been accepted as evidence supporting the legal decisions in this Court confirming that the tenders were proper and made for valid reasons. In addition, the <u>Kallstrom</u> case was retendered but was never accepted. Thus, Continental's ongoing bad faith is evident. Continental's request for a Rule 30(b)(6) witness to describe all discussions concerning the tenders and all persons involved in making the tenders is irrelevant to the issue whether Continental's actions after receiving the tenders are outrageous. The facts of the tenders have been established through previous discovery and determinations made by

6

this Court.

The general bases for the United States' position that Continental Insurance Company's (CIC) actions merit an award of punitive damages are spelled out in the United States' motion to amend to plead punitive damages and the United States' amended complaint which was filed with Continental's stated non-objection. Dkt. Nos. 69, 70, 71. Additionally, on November 22, 2005 the United States' provided Continental the twenty four page report of Deborah Senn, its expert witness as to why Continental's actions should be considered outrageous. See Exhibit 7.

Continental's 30(b)(6) request is both redundant and untimely as to issues previously resolved in the United States' favor. It is not calculated to lead to the discovery of admissible evidence. It seeks expert testimony[4] through the mechanism of a 30(b)(6) deposition and it seeks testimony on issues that are no longer relevant to the issues to be tried. Continental's attempt to delve into the discussions that preceded the making of tenders on Continental seeks attorney/client, attorney work product, and deliberative process related materials. It also is a thinly veiled request for testimony of opposing counsel who prepared and served the tender correspondence.

2.  <u>The USA's claims for punitive damages, including, but not limited to, all discussions concerning the decision to seek punitive damages, and any and all claims by the USA that anyone at CIC acted with ill will or malice, all persons involved in the decision to seek punitive damages, all bases for the USA's position that punitive damages are appropriate in this case, and the amount of punitive damages sought.</u>

Defendant's inquiry into the discussions and deliberations that led to the decision to move to amend the United States' complaint and seek punitive damages seeks information about the

---

[4] If Continental's purpose in noticing this Rule 30(b)(6) deposition is to force the United States to designate its experts and to pay for them to travel to Los Angeles for the convenience of Continental's counsel, this annoyance and undue burden are reasons alone why this notice should be quashed.

deliberative process, attorney work product, and attorney/client privileged information. These internal discussions by lawyers for the United States are not relevant to the issue whether Continental's actions warrant an award of punitive damages. If Continental's request is to determine whether counsel are authorized to pursue punitive damages in this case, a copy of the January 16, 2002 Memorandum to the File in which the Assistant Attorney General authorized the United States to seek punitive damages was provided in discovery.

The pleadings, briefs, and expert reports have provided the reasons for the United States seeking punitive damages. The Court's latest opinion makes it clear that a punitive damages trial is indicated, because, "[b]ased on the facts of this case, a jury could find that Continental's rejection of the United States' tenders was outrageous or done with reckless indifference." Docket No. 166 at 17.

The bases for the USA's position that punitive damages are appropriate in this case are fully addressed in the expert report of Deborah Senn; Continental may further explore those bases by taking her deposition. The amount of punitive damages to which the United States may be entitled is controlled by law and the judgment of the jury.

3. <u>All discussions, research and analysis of the issues relating to implied additional insureds generally and as it applies to the claims filed by the USA in this case</u>.

This topic seeks discovery of the deliberative process of the Plaintiff, attorney work product, and attorney/client privileged materials on a legal question that has been determined. The conclusions of this work product were contained in the pleadings and motions that have been filed in this case. Continental has no legal authority or right to eavesdrop on the United States' litigation preparation.

In its November 21 letter, Continental argued that "There are areas within this topic that can be explored without invading privileged areas. Furthermore, the topic is highly relevant to the punitive damages trial because the existence or non-existence of legal precedent regarding implied insureds is correlated to whether Continental's conduct was reprehensible and whether punitive damages are appropriate." Exhibit 5 at 4 (emphasis in original). Continental's justification provides no basis for taking a Rule 30(b)(6) deposition on this topic. The existence or non-existence of legal precedent is a legal question the answer to which the United States does not control. It is a point that Continental may, if it chooses, attempt to argue at trial. A Rule 30(b)(6) deposition is not available to seek a brief or witness on legal issues. Further, the issue of additional implied insured status has been settled by this Court. This topic is irrelevant to the present issues to be tried and appears to be calculated to be an annoyance. It should be quashed.

4.  <u>All other claims in Alaska from 1988 to the present in which the USA claimed insurance coverage as an implied additional insured under an insurance policy and the responses of the insurers involved and the date the USA first claimed it was an implied additional insured under any insurance policy issued to an Alaskan insured.</u>

This inquiry seeks irrelevant material. There has not been any evidence offered concerning the actions other insurance companies. In its November 21 letter, Continental responded that "this may prove highly relevant regarding the issue of how Continental's conduct compares with how other insurers treated such tenders and requests for coverage ..." Exhibit 5 at 4. However, the issue of how Continental's behavior compares with other insurance companies is not relevant to determining whether it should be held liable for punitive damages for the acts of bad faith that this Court has already held it committed. Continental did not claim a defense in the liability portion of this case that it was acting in accordance with industry standards. It is irrelevant whether other

9

insurance companies also acted in bad faith. Whether the United States has pursued claims of being an implied insured in the past, and whether those claims have been denied, and whether it followed up such denials, is subject to a case by case review because it depends on each insurance policy involved and the factual circumstances of each case. It is entirely irrelevant to a determination whether Continental's behavior in responding to the tenders in this case merits punishment. It is now the facts and circumstances of this case that are relevant.

Continental has posed the same question in written discovery and we are answering these questions as best we can. Exhibit 10. We do not have a person responsible for tracking this information. Individuals are being canvassed for information The United States does not keep a record about cases in which a tender was made based on implied insured cases or where the insurer has accepted or rejected tender and coverage.

This topic should be quashed.

5.   All policies, procedures, guidelines and practices from 1988 to the present concerning (a) when or how the United States should seek coverage under policies in which it claims it is an additional insured; (b) the handling of a claim against the USA by an insurance carrier, including selection of counsel, determination of settlement and control of positions taken; and (c) the circumstances under which the USA will seek punitive damages.

Continental seeks a witness regarding whether the United States is authorized to pursue its case against Continental. The liability case is concluded in the United States' favor. That case was properly authorized, just as the punitive damages case has been. Policies and procedures of the Plaintiff in determining when it should seek coverage under insurance policies or should seek punitive damages is an harassing and annoying request that has no relevance to the current case against Continental for punitive damages. There are no specific policies or procedures on these three subjects. The delegation of authority for tort claims is set forth in 28 C.F.R. Part 0, subpart Y.

Continental's subpart b, which asks about how the United States handles claims brought against it by insurance companies, has no relevance to this case. Whether the United States may proceed against the insurer on a policy where the United States is not a named insured depends on relevant state law, the wording of the policy, and the circumstances. This is evidenced and explained by the opinions of the Court in the instant case.

6. <u>All damages, harm, or other effects on the USA by virtue of CIC's denial of coverage including, but not limited to, all defense costs allegedly incurred in defending the underlying action.</u>

Continental seeks information that has been previously provided. The United States settled the claims of Lori Wilson, a minor, for $2,800,000 and the district court entered an order approving that settlement. The defense costs for the Wilson and Kallstrom claims have been provided in support of the government's past arguments through a declaration of Ken Roosa, AUSA, which declaration was filed and received into evidence without objection by Continental. The amount is $150,000. The United States will rely on the declaration itself as to the costs for that litigation.

In its November 21 letter, Continental argued that "the amount of the U.S.A.'s damages are relevant under <u>Campbell</u> to determine the constitutionality of a punitive damages award. Likewise, Continental is entitled to know the facts that support the U.S.A.'s claim for punitive damages." Exhibit E at 4-5. To the extent that the amount of the United States's damages is relevant to the constitutionality of a punitive damage award, the United States has repeatedly stated that it would be guided by this Court's decision in <u>Ace v. Aetna Life Ins. Co.</u>, 40 F. Supp.2d 1125 (D. Alaska 1999) that determined that a ratio of punitive damages to compensatory damages of 7.5:1 was constitutional.

7. <u>The basis for any and all claims against The Continental Casualty Company (CCC),</u>

11

<u>including but not limited to any basis for any claims for punitive damages against CCC</u>.

The United States objects to this topic of inquiry. The factual basis for any claims against the Continental Casualty Company were set forth, in part, in the deposition of Mr. Boysen, a witness designated by Continental in response to the Rule 30(b)(6) notice of the United States. That deposition was taken on November 1, 2005. Continental Casualty Company has been a defendant from the beginning. Liability against it is settled. It will owe damages for the outrageous bad acts of its 100%, wholly owned subsidiary, Continental Insurance Company, because Continental Casualty Company's employees operate Continental Insurance Company, which has no employees. As the owner of that company, which also has been a defendant all along, Continental Casualty and Continental Insurance Company are both responsible to pay damages, herein.

In its November 21 letter, Continental argued that "the amount of the U.S.A.'s damages are relevant under <u>Campbell</u> to determine the constitutionality of a punitive damages award. Likewise, Continental is entitled to know the facts that support the U.S.A.'s claim for punitive damages." Exhibit 5 at 4-5. This topic has nothing to do with determination of the amount of punitive damages since the United States does not claim that is was a financially vulnerable plaintiff, as plaintiff contended in <u>Campbell</u>. The bases for finding that the bad faith actions of the defendant are outrageousness and should be punished are fully explained in the plaintiff's expert reports. A Rule 30(b)(6) deposition is inappropriate on this topic and should be quashed.

8.  <u>The basis for any and all claims against CNA Financial Corporation (CNA Financial) including but not limited to any basis for claims for punitive damages against CNA Financial and the basis for any belief by the USA that CNA Financial took any action with respect to the USA's request for coverage under the CIC policies</u>.

The United States does not have any claims against CNA Financial at this time. Counsel

Richard Stone explained the United States' position on this issue to Continental on the record at the deposition of Erin Finn on November 8, 2005. Thus, this request is irrelevant. In its November 21 letter, Continental concurred, stating that "in light of Mr. Stone's assertion that the U.S.A. does not have any claims against CNA Financial, Continental agrees that topic number is no longer relevant." Nevertheless, the topic was listed in the deposition notice. Counsel Richard Pomeroy spoke with Christina Rankin, one of Plaintiffs' counsel, who confirmed that Continental intends to withdraw this topic.

9.  The date(s) that the USA received any policy of insurance issued to Bristol Bay Area Health Corporation (BBAHC) and from whom.

This topic is irrelevant on the issue of punitive damages. In its November 21 letter, Continental argued that "the date the U.S.A. received the policies is potentially indicative of why and when the U.S.A. determined that it was an implied insured. This is relevant on the issue of Continental's allegedly outrageous conduct." Exhibit 5 at 5.

Why and when the United States determined that it was an implied insured is irrelevant to determining punitive damages. The United States tendered defense of the Wilson case, arguing that it was an implied insured, and Continental denied that tender and all subsequent tenders. Its actions in making such denials has been found to have been in bad faith. Indeed, after this court's 2001 decision in favor of the United States, Continental knowing that the United States was an insured, did not accept the retender of Kallstrom.

10. All communications to and from BBAHC and their counsel relating to the underlying claims or the USA's claims for coverage, including, but not limited to, claims by the USA for indemnity from BBAHC.

This topic is irrelevant to the issues pertaining to punitive damages. In its November 9th

13

letter, the United States observed that defendants had stated an intention to depose Robert Stewart, BBAHC's counsel and that if their request was relevant, it would appear that he would be the best witness to begin with on these issues. In its November 21 letter, Continental argued that "the mere fact that Robert K. Stewart may eventually testify does not mean the U.S.A. does not have an obligation to provide a witness to testify regarding communications with BBAHC. Continental is entitled to hear an account of the communications from both parties involved." Exhibit E at 5 (emphasis in original). Continental did not explain why such communications were relevant.

The issue that is relevant for discovery is the issue to be determined at trial – whether Continental's bad faith denial of coverage merits an award of punitive damages. The communications between the named insured and the implied insured is not relevant at this phase of the case. Continental deposed multiple officers of BBAHC in the liability phase of this case. The United States' cause of action for implied indemnity is moot since it has been found to be an implied insured. Further, Continental argued to this court that the United States could not be indemnified by BBAHC as a matter of law. Thus, this line of inquiry is irrelevant.

11. <u>All actions relating to the Kallstrom claims, including the decision to bring claims against Mrs. Kallstrom and all defense activities relating to those claims after the tender to CIC in October 2001.</u>

This topic of inquiry is also irrelevant. Continental had the right to be involved in these activities and/or question them, but only if it accepted tender of defense. It did not.

The United States explained in its November 9th letter that the decision to bring a third party action against Ms. Kallstrom was premised on the Alaska law providing for allocation of fault in tort cases. Actions relating to Kallstrom's counterclaim are set out in the court filings. The Ninth Circuit certified the case to the Alaska Supreme Court. Oral arguments to the Alaska Supreme Court were

held October 10, 2000. The Alaska Supreme Court issued its decision March 15, 2002. The Ninth Circuit then affirmed on August 5, 2002.

In its November 21 letter, Continental again asserted that "because actual damages clearly correlate to any possible award of punitive damages. The facts behind the Kallstrom claim are relevant in determining the U.S.A.'s actual damages." Exhibit E at 5. The United States prevailed on the Kallstrom counterclaim. The actual damages of the United States were the defense costs. As explained in response to topic 6, the defense costs for the Wilson and Kallstrom claims have been provided in support of the government's past arguments through a declaration of Ken Roosa, AUSA, which declaration was filed and received into evidence without objection by Continental. The amount is $150,000. The United States will rely on the declaration itself as to the costs for that litigation. Consequently, the information that defendant seeks has previously been provided.

Finally, the noticing the deposition so that the United States is required to bring a witness (or witnesses) to Los Angeles is fundamentally unreasonable and unduly burdensome. When the United States noticed 30(b)(6) witnesses of Continental, the United States traveled to Chicago and other locations to take the depositions. Noticing the deposition for a location that has no relation to this case other than where one of Continental's attorneys is location creates an undue burden.

## CONCLUSION

Continental's Rule 30(b)(6) notice seeks irrelevant information, privileged attorney-client or attorney work product or deliberative process material, or information that has been produced in the United States' expert reports, or in the liability phase of this case, or otherwise, and also may be addressed by deposition of the United States' experts. Continental's deposition notice does not satisfy any requirement for the notice or description of testimony discoverable under Rule 30(b)(6);

nor does it seek discovery of matters likely to lead to the discovery of admissible evidence; and, should be quashed in its entirety.

Respectfully requested this \_\_13\_\_ day of December, 2005, in Anchorage, Alaska.

                TIMOTHY M. BURGESS
                United States Attorney

                *Richard L. Pomeroy*
                RICHARD L. POMEROY
                Assistant U.S. Attorney

                *Richard L. Pomeroy*
                RICHARD R. STONE, SR.
                Trial Attorney
                U.S. Department of Justice

I declare under penalty of perjury that a true and correct copy of the foregoing was sent to the following counsel via:

    (X) U.S. Mail
    (x ) FAX

Rebecca L. Ross
Ross, Dixon & Bell, LLP
55 West Monroe Street, Suite 3000
Chicago, IL 60603-5758
(312) 759-1920
(312) 759-1939 fax

William Urquhart
Quinn Emanual
865 S. Figueroa St., 10th floor
Los Angeles, CA 90017
(213) 443-3000
(213) 443-3100 fax

Gary A. Zipkin
Guess & Rudd, P.C.
510 L Street, Suite 700
Anchorage, AK 99501
793-2200
793-2299 fax

Executed at Anchorage, Alaska, on December 13, 2005.

K Joy McCulloch
Office of the U.S. Attorney