DEBORAH M. SMITH
Acting United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov

RICHARD R. STONE, SR.
Trial Attorney
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Phone: (202) 616-4291
Fax: (202) 616-5200
E-mail: richard.stone@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>THE CONTINENTAL CASUALTY COMPANY, dba THE CONTINENTAL INSURANCE COMPANY,<br><br>　　　　Defendant. | Case No. 3:98-cv-285-JWS<br><br>PLAINTIFF UNITED STATES' OPPOSITION TO CONTINENTAL'S PETITION TO DISTRICT COURT FOR CERTIFICATION PURSUANT TO 28 U. S. C. § 1292(b) |

## INTRODUCTION

Continental moves the Court for certification of an interlocutory appeal of two of this Court's orders.[1]  First, Continental moves regarding the Court's order of July 8, 2005 (docket no. 166), granting the United States summary judgment on liability and bad faith. Dkt. no. 209 at p. 2, n. 1.  Second, defendant moves on the Court's December 15, 2005 order denying Continental's motion to conform to the Ninth Circuit's mandate, or in the alternative, to reconsider.  Id.  Neither of these orders is appropriate for interlocutory appeal.

Continental's motion mischaracterizes by omission the background and holdings of this case.  A motion that cannot fairly state the facts, law and background of the case cannot support a request for interlocutory appeal certification, which must state a "controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. . . ."  Emphasis added.  28 U.S.C. § 1292(b).

Continental's contention that "an immediate appeal will very likely materially advance the ultimate termination of this litigation. . . ." when the parties are less than four months from trial, and that only on punitive damages, is not credible.  Dkt. no. 209 at 2.  The delay of completion by another year or more in the appellate court likely would extend this case into its ninth year without final resolution.  Further, a ruling for the United States, which is likely, would return the case to this Court for the punitive damages trial.

---

[1]  Continental also has petitioned the Ninth Circuit for recall of the mandate.

USA v. The Continental Casualty Company
Case No. 3:98-cv-285-JWS                    -2-

Additionally, a ruling in Continental's favor would not <u>end</u> the case.  The United States has new and continuing bad faith claims that this court has never ruled on that would still have to be resolved either on summary judgment or by the jury.  One unaddressed act of bad faith, is the unaccepted retender of the Kallstrom case, while the law of the case was that the United States was an implied insured and that Continental had acted in bad faith by failing to accept tender initially.  The other unaddressed act of bad faith is that Continental failed until recently to pay the amount it knew that it had owed the United States since the Ninth Circuit held that the United States is an implied insured.[2]

Continental's claim that "[t]he downside of a delayed appeal would be extreme waste," likewise does not ring true.  By completing this case in May 2006, all issues will have been decided in the district court and the Ninth Circuit can have everything before it at one time and likely finally resolve this case.

<div align="center">BACKGROUND AND DISCUSSION OF<br><u>PREVIOUS HOLDINGS</u></div>

On October 20, 2004 the Ninth Circuit held that the United States is an implied insured under Alaska law under Continental's relevant insurance policy with Bristol Bay Area Health Corporation (BBAHC).  Dkt. no. 147.  Upon return to the district court, Continental moved to dismiss for failure to state a claim.  Dkt. no. 151.  Continental also moved for partial summary

---

[2]  Continental now admits that it knew it owed the money all along.  Dkt. no. 209 at p. 11, n 2.  ("In light of the Ninth Circuit's 2004 ruling, Continental has now paid the United States its policy limits under the Bristol Bay policy, totaling $1,988,646.99.")  Continental had owed that money since the October 20, 2004 Ninth Circuit decision (Docket 147) and did not pay it until December 13, 2005.  (Ex. 1, hereto)

judgment on bad faith and punitive damages.  Dkt. no. 155.  The United States opposed these

motions and cross moved for summary judgment on bad faith and the right to present its claim

for punitive damages to the trier of fact.  Dkt. no. 160.

On July 8, 2005, this Court denied Continental's motion to dismiss and its motion for

partial summary judgment and granted the United States' motion for summary judgment.  Dkt.

no. 166 at 17.   In denying the motion to dismiss, the Court rejected Continental's argument that

the Indian Self-Determination and Education Assistance Act (ISDEAA) and the Federal Tort

Claims Act (FTCA) barred the United States' claim against Continental as an implied insured

under Alaska law.  Dkt. no. 166 at 4-10.[3]

In denying Continental's motion for partial summary judgment, the Court also addressed

Continental's argument that the United States is not entitled to recover more than policy limits.

The Court also addressed the alternative argument that, because the issue whether the United

States is an implied additional insured under Alaska law was "fairly debatable," Continental, as a

matter of law,  could not have acted in bad faith.  Dkt. no. 166 at 10-17.  The court rejected both

of these contentions.  Id.

In discussing the effect of the Ninth Circuit's decision on this Court's earlier grant of

summary judgment for the United States, the Court held: "the effect of the Ninth Circuit's

decision was to vacate the order at docket 115 (the District Court's reversal), thereby restoring

the status quo ante, i.e., the orders at dockets 61 and 87."  Dkt. no. 166 at 11.  The order at

---

[3]  Continental's motion for certification does not raise this issue of an ISDEAA or FTCA bar as a "controlling question of law" as to which there is "substantial ground for difference of opinion. . . ."  See, Dkt. no. 209.

docket 61 had "denied Continental's motion for summary judgement and granted the motion of the United States holding that: (1) the United States was an implied additional insured; and (2) Continental acted in bad faith in declining to defend and indemnify the United States under the policy." Dkt no. 166 at 11. The order at docket 87 "held that the United States was entitled to recover damages in excess of the policy limits." Dkt no. 166 at 11. The court concluded that "the orders at dockets 61 and 87 establish the law of the case . . . ." Dkt. no. 166 at 11.

However, the Court did not stop there. It then treated Continental's motion for summary judgment at docket 155 as a motion for reconsideration of those earlier orders. Dkt. no. 166 at 11. The Court first addressed Continental's policy limits arguments, which were based on there being no bad faith case under Alaska law that had addressed punitive damages for an implied insured, and also were based on the contention that the United States' status was that of a party to a quasi-contract. Dkt. no. 166 at 12-13. The Court held:

> In the absence of any precedent, reason or policy which would support treating one type of insured differently from the other, this court concludes that if the question were presented to it, the Alaska Supreme Court would hold that an implied additional insured may, in circumstances where a named insured might do so, recover more than policy limits and bring a bad faith claim against the insurer.

Dkt. no. 166 at 13. Consequently, there was no Alaska law prohibition against the United States being held to have proven as a matter of law, both bad faith and the entitlement to a recovery of damages beyond policy limits.[4]

---

[4] The Court also rejected Continental's quasi-contract argument, which is not pursed in the instant petition under 1292(b). Dkt. no. 166 at 12-13; see Dkt. no. 209.

Next, the Court addressed Continental's argument "that application of the implied additional insured doctrine was 'fairly debatable', so it was clearly erroneous and manifestly unjust to have concluded that Continental acted in bad faith." Dkt. no. 166 at 13. Continental contended that the issue of fair debatability was established by the dissenting Ninth Circuit judge and the instant Court. Id. The case cited by Continental in support is Hillman v. Nationwide Mut. Fire Ins. Co., 855 P.2d 1321 (Alaska 1993). This Court thoroughly addressed Hillman and rejected Continental's argument for several valid reasons:

> Hillman II, does not compel the conclusion that Continental did not act in bad faith when it rejected the tender of defense. To begin with, the facts in the case at bar are markedly different. First, unlike Nationwide, Continental did not rely on an express exclusion in the policy. Instead, Continental relied on a policy omission, i.e., the United States was not a named insured in the policy. Second, unlike the holding describing Nationwide's rejection of coverage, relied on in Hillman II, the interpretation by Continental in this case is not the "only reasonable interpretation" of the policy; indeed, as the Ninth Circuit held, Continental's interpretation is incorrect. Third, as noted in the order at docket 57, Continental denied the duty to defend as well as the duty to indemnify notwithstanding the fact that Continental's Rule 30(b)(6) witness testified that Continental had a duty to defend (if not indemnify) BBAHC's employees acting in their FTCA capacity (deemed under the ISDEAA to be employees of the United States). It is difficult to understand how Continental would admit a duty to defend its employees but not the United States itself. Fourth, in denying coverage, Continental asserted that the subjective intent of Continental and BBAHC was to exclude coverage for those acts that would fall within the FTCA. Yet, as noted above and in the order at docket 57, this assertion is unsupported by the evidence.

Emphasis added. Citations omitted. Dkt. no. 166 at 14-15. There simply can be no difference of opinion under insurance law -- Continental was not entitled to deny a defense if the coverage was "fairly debatable," especially in circumstances where Continental's own personnel believed Continental had a duty to defend. See Dkt. no. 166 at 17.

The Court also observed that Continental "did not articulate as a reason for denying either coverage or a defense that Avi-Truck was limited by Olympic and that the implied additional insured doctrine did not apply to liability insurance policies." Dkt no. 166 at 16. The Court concluded that in its opinion:

> the Alaska Supreme Court, in determining whether an insurer has acted in bad faith, would look to the reasonableness of the reason articulated for denying coverage, not to a post hoc rationale first fully articulated in litigation over the rejection of the insured's tenders. An insurer is not only required to give prompt notice to the insured of its decision to deny coverage and defense, its notice must also 'provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim.' It is the explanation that the insurer provides the insured for denying coverage that must be reasonable; if that explanation is unreasonable the fact the insurer may have had an unarticulated reasonable explanation is irrelevant. Not only was Continental dilatory in responding to the tenders by the United States, but the reasons articulated by Continental as the basis for denying coverage and a defense did not provide a reasonable explanation for rejecting the tenders by the United States.
>
> The failure to set forth an adequate explanation for rejecting the tenders is a fundamental difference between the case at bar and Hillman II. There, Nationwide's interpretation of the policy itself, articulated from the beginning, was the only reasonable interpretation; it was only the later holding of the Alaska Supreme Court rendering the policy provision invalid that made Nationwide's position incorrect. Unlike Nationwide in Hillman, which consistently expressed and stuck with a manifestly reasonable interpretation of the controlling provision in its insurance policy, Continental's interpretation of the scope of coverage and its duty to defend under its policy has never been correct.

Emphasis in original. Citations omitted. Dkt. no. 166 at 16. Finally, the Court concluded that "Continental's position is further undercut by the fact that it denied a defense as well as indemnity despite the fact that its own personnel believed it had a duty to defend." Dkt. no. 166 at 17.

ARGUMENT

The orders that Continental moves the Court to permit appeal from are not appealable interlocutory orders. For an appeal to lie regarding an interlocutory decision the district court 'shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. . . ." 28 U.S.C. § 1292(b). The appropriate court of appeals "may . . ., in its discretion, permit an appeal from such order, if application is made to it within ten days after entry of the order. . . ." Id. If the order is "'subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties' [i]t is not appealable." Hartford Fire Ins. Co. v. Herrald, 434 F.2d 638, 639 (9th Cir. 1970)(quoting Carey v. Greyhound Co., 424 F.2d 485 (9th Cir. 1970)      . . . ."). Further, "[p]iecemeal review, except in instances specifically provided for in 28 U.S.C. 1292(b) and Rule 54(b), Federal Rules of Civil Procedure, is not favored." Herrald, 434 F.2d at 639. The movant must demonstrate that "'exceptional circumstances justify a departure from the basic policy of postponing appellate review until after entry of a final judgment.'" In re Cement Antitrust Litigation, 673 F.2d 1020, 1026 (9th Cir. 1982), quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978). The standard of "controlling question of law" is met "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." In re Cement Antitrust Litigation, 673 F.2d at 1026, citing the discussion of legislative history in United States Rubber Co. v. Wright, 359 F.2d 784, 785 (9th Cir. 1976).

Continental moves the Court to certify for immediate appeal the Court's 'recent bad faith summary judgment orders. . . ." Dkt. no. 209 at 1-2.  It contends that "the orders involve a controlling question of law - - whether the United States may pursue its bad faith claim at all . . . ." Dkt. no. 209 at 2.  The United States, however, has several bad faith claims pending against Continental.  At a minimum, they include:  (1) failure to accept tender of the defense originally, (2) failure to accept the United States' retender of <u>Kallstrom</u>, October 30, 2001 (Ex. 2, hereto) after this Court granted summary judgment for the United States on September 18, 2001 and before the Court vacated that ruling at docket 116, and (3) Continental's forcing the United States to continue to litigate for more than a year the amount that Continental owed the United States as a result of the Ninth Circuit's holding that the United States is an implied additional insured.  Items two and three have not been presented to the trier of fact either on summary judgment or at trial.  Consequently, not all bad faith issues have been resolved by the Court's grant of summary judgment in the United States' favor at docket 166.  Continental is fully aware of these contentions but ignores them in an effort to get certification for an appeal on a mischaracterized record of the issues.

Continental's contentions regarding "substantial ground for difference of opinion" also leaves out reasoning, analysis, facts, and law and therefore do not sufficiently support a motion for certification under 28 U.S.C. § 1292(b).   Since returning to this Court, Continental has filed a poorly supported motion to dismiss, a poorly supported motion for partial summary judgment, and an untimely and contrived motion to conform the record to the Ninth Circuit mandate, or in the alternative for reconsideration.  The motion to conform was nothing more than a vehicle through which to request reconsideration.  Continental now seeks, through a conclusory motion

unsupported and riddled with omitted facts, law, and the Court's analysis, to get certification to another court in an effort to delay this case further. Continental has had already many bites at the apple, and should not be permitted another one that is likely only to cause delay and waste through increased expense in terms of both time and money.

Continental's arguments regarding "substantial ground for differences of opinion as to the court's conclusion that the United States is entitled to summary judgment of liability on its bad faith claim" leave out too much to fairly state the support, reasoning, analysis, and thus the current status of the arguments. Continental also intentionally misstates the underlying record on these issues. These acts cannot form a basis for a "substantial difference of opinion" under 28 U.S.C. § 1292(b).

<div align="center">

The United States did not waive any bad faith claim
in the Ninth Circuit.

</div>

Continental's argument that there is a substantial ground for difference of opinion whether "The United States Waived its Bad Faith Claim by Failing to Challenge on Appeal this Court's Grant of Summary Judgment to Continental on that claim," misstates the Court's underlying grant of summary judgment. Continental makes the same baseless argument here that it made in its "Motion to Conform to the Ninth Circuit's mandate or, in the alternative, to reconsider." [5] Dkt. no. 191. The United States relies on its opposition to the motion to conform on this issue and incorporates that opposition herein by reference. Dkt. no. 194. Essentially, on

―――――――――――――

[5] Continental apparently raises one new case. That case, however, is not like the instant case at all. It holds: "Because American investigated the insured's claim and based its refusal to defend on that information and a reasonable construction of the policy, American did not act in bad faith. . . ." Lunsford v. Am. Guaranty & Liab. Ins. Co., 18 F.3d 653, 656 (9th Cir. 1994).

reconsideration and in granting summary judgment for Continental at docket 115, this Court never reached the issue of bad faith for there to be an issue that the United States could have appealed to the Ninth Circuit. Consequently, it is impossible to see how there can be a substantial difference of opinion on the claim that the United States waived the bad faith claim by not appealing an issue that the Court did not address and decide.

<div align="center">The Court on remand from the Ninth Circuit did<br>
<u>not simply defer to its 2001 summary judgment ruling</u>.</div>

There is also no substantial ground for difference of opinion whether on remand the Court was barred from returning to the <u>status quo ante</u>. As has been addressed above, at docket 166 the Court held that the Ninth Circuit's decision on October 20, 2004 returned this case to its status before the Court's ruling at docket 115. However, the Court then treated Continental's motion for summary judgment at docket 155 as a motion for reconsideration.

Continental's contention that the Court's holding that the earlier decisions are law of the case "conflicts with the rulings of other courts," cites only to <u>United States v. Vanhorn</u>, 344 F.3d 729, 731-32 (8th Cir. 2003). Dkt. no. 209 at 7-8. Continental, however, fails to recognize that the law of the case doctrine means different things in different circumstances. In <u>Vanhorn</u>, a criminal case, the appellate court remanded to the district court for a limited purpose - - to reconsider a payment schedule under a restitution order. 344 F.3d at 732. Consequently, the payment schedule previously vacated did not become the law of the case because the appellate court did not reinstate it. The district court was limited by the circuit court's instruction to reconsider the order to set a schedule for payments. <u>Id</u>.

The circumstances in the instant case are substantially different.  On remand, the Court was not prohibited from looking to its earlier decision on summary judgment as law of the case.  The effect of the Ninth Circuit's ruling on additional implied insured status was to vacate the order at docket 115, that had vacated the orders at dockets 61 and 87.  The Ninth Circuit decision did not provide any restriction on the Court regarding the law of the case that had been previously established by the district court.

This Court, on remand,  revisited that law of the case, but did not adopt it without reconsideration.  The Court stated:

> When a district court has jurisdiction over a lawsuit, it possesses inherent power to reconsider, alter, or rescind its interlocutory orders for reasons which it finds sufficient.  That inherent power is not, however, plenary or unfettered.  The Ninth Circuit has explained:
>
>> Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.
>
> In the case at bar only the second ground, clear error or manifest injustice, could apply.

Dkt. no. 166 at 11-12.  Under Continental's argument, a district court cannot make law of the case.  If there is an appeal, upon return to the district court, according to Continental, the slate is wiped clean of anything the court of appeals has not addressed. Continental's argument that it is attempting to avoid waste and expense rings false when it argues that "the court should have analyzed the claim on a clean slate when adjudicating the parties' cross motion for summary judgment."  Dkt. no. 209 at 7.

<u>Hillman</u> does not bar the United States' claim
of bad faith against Continental.

Continental's argument that "there is also a substantial ground for difference of opinion as to the court's decision not to apply <u>Hillman</u>," ignores the Court's analysis and discussion of <u>Hillman</u>. Dkt. no. 209 at 9-10.  "<u>Hillman II</u>, does not compel the conclusion that Continental did not act in bad faith when it rejected the tender of defense."  Dkt. no. 166 at 14.  As discussed above, the court identified four reasons that Continental could not succeed on the "fairly debatable" argument.  Dkt. no. 166 at 14-15.  The United States contends that those reasons are all valid and do not rest on the distinguishing of <u>Hillman</u> alone.

For example, reason number three: "<u>Continental denied the duty to defend</u> as well as the duty to indemnify notwithstanding the fact that Continental's Rule 30(b)(6) witness testified that Continental had a duty to defend (if not indemnify) BBAHC's employees acting in their FTCA capacity (deemed under the ISDEAA to be employees of the United States).  It is difficult to understand how Continental would admit a duty to defend its employees but not the United States itself."  Dkt. no. 166 at 15.  Further, there has never been a court in this case, even in dissent, that has agreed that Continental had the right to reject the tender of the defense.  Thus, Continental cannot in any way establish substantial differences of opinion on the tender of the defense issue.

Additionally, if Continental had been correct that there was a fairly debatable issue on implied insured status, that fair debate would suggest that Continental must accept tender of defense and reserve the right to contest coverage.  The tie goes to the purported insured.  Further, it seems doubly difficult for Continental to prove that there was room for fair debate regarding acceptance of the tender when Continental did not disclose, when it had the chance, the policy that the Ninth Circuit ultimately held covered the United States as an additional

implied insured.  Thus, Continental's focus on <u>Hillman</u>, in addition to mischaracterizing the

Court's treatment of <u>Hillman</u>, is fatally narrow and is misplaced.

> There are no "exceptional circumstances" that
> would justify the taking of an immediate appeal and
> <u>that would avoid "protracted and expensive" litigation.</u>

Continental moves the Court to certify for immediate appeal the Court's 'recent bad faith

summary judgment orders. . . ."  Dkt. no. 209 at 1-2.  It contends that "the orders involve a

controlling question of law - - whether the United States may pursue its bad faith claim at

all . . . ."  Id at 2.  Continental contends that "[t]he orders at issue here are ideal candidates for

the application of [the certification] procedure.  Though only marginally final (as they do not

adjudicate damages), the orders substantially resolve the balance of this litigation."  Id at 3.  This

is simply not true.  As addressed above there are new and continuing issues of bad faith not yet

resolved by the contested orders.  It also argues that "[p]ermitting an immediate appeal from the

orders will materially advance the ultimate termination of the litigation."  Id at 10.

The United States, however, has several bad faith claims pending against Continental.  At a

minimum, they include (1) failure to accept tender of the defense originally, (2) failure to accept

the United States' retender of <u>Kallstrom</u>, October 30, 2001 (Ex. 2, hereto) after this Court

granted summary judgment for the United States on September 18, 2001 and before the Court

vacated that ruling at docket 115, and (3) Continental's forcing the United States to continue to

litigate for more than a year the amount that Continental owed the United States as a result of the

Ninth Circuit's holding that the United States is an additional implied insured.  Items two and

three have not been presented to the trier of fact either on summary judgment or at trial.

Consequently, not all bad faith issues have been resolved by the Court's grant of summary

judgment in the United States' favor at docket 166. Continental is fully aware of these contentions but ignores them in an effort to get certification for an appeal on a mischaracterized record of the issues.

Continental has never addressed, and does not raise in the instant motion the difference between having a fairly debatable issue on coverage and having a fairly debatable issue on acceptance of tender. Even Continental's contrived issue of fair debatability on coverage, which is based on this Court's reversal and on the Ninth Circuit dissent, cannot be twisted to create fair debatability on the issue of acceptance of the tender of defense. No judge has concluded that Continental was correct in rejecting tender of the defense.

The Court's analysis and decision on both these issues are clear and when the facts are fairly stated (and here there has been no genuine issue of material fact raised regarding the surrounding relevant facts) there can be no substantial ground for difference of opinion. Continental, however, simply leaves out the Court's analysis and reasoning, leaves out substantial relevant arguments and facts, and then asks the Court to certify the partial discussion for interlocutory appeal. The requirements of 28 U.S.C. § 1292(b) are not met by Continental's request.

Continental's statement that in the instant case "an immediate appeal will very likely materially advance the ultimate termination of this litigation," thus avoiding a waste of judicial resources and needless expense, is baseless. Dkt. no. 209 at 2. It has argued that the United States should have appealed an issue of bad faith that had not been addressed by the relevant decision. It has also argued that the district court cannot create law of the case and that after remand it must start from scratch to evaluate the facts. And it has argued that its appeal should

be allowed when the parties are, less than four months from trial, which clearly would create a substantial delay. None of its arguments are directed at actually saving judicial resources and unnecessary expense but, rather, they are directed at a waste of them.

<u>CONCLUSION</u>

For the foregoing reasons Continental's petition for certification pursuant to 28 U.S.C. § 1292(b) should be denied.

Respectfully submitted this 2nd day of February, 2006, in Anchorage, Alaska.

<div style="margin-left:45%;">

DEBORAH M. SMITH
Acting United States Attorney

s/Richard L. Pomeroy
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov
AK #8906031

s/Richard R. Stone, Sr.
Trial Attorney
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Phone: (202) 616-4291
Fax: (202) 616-5200 fax
E-mail: richard.stone@usdoj.gov

</div>

GARY A. ZIPKIN
LOUIS R. VEERMAN
JAMES D. LINXWILER
JAMES D. DEWITT
JOSEPH J. PERKINS, JR.
GEORGE R. LYLE
MICHAEL S. MCLAUGHLIN
SUSAN M. WEST
JOAN E. ROHLF
MICHAEL K. NAVE
JONATHAN A. WOODMAN
AISHA TINKER BRAY
NELLEENE A. BOOTHBY
MICHELLE D. HIGUCHI
STEVEN J. BOOKMAN
MATTHEW COOPER
CHRISTINA RANKIN
PAMELA D. WEISS
HEIDI L. DRYGAS

LAW OFFICES OF
# Guess&Rudd
P.C.

510 L STREET, SUITE 700
ANCHORAGE, ALASKA 99501-1964
TELEPHONE (907) 793-2200
FACSIMILE (907) 793-2299

W. EUGENE GUESS 1932-1975
JOSEPH RUDD 1933-1978
FRANCIS E. SMITH, JR. 1941-1991

OFFICES IN
ANCHORAGE & FAIRBANKS

OF COUNSEL
MARGARET S. JONES

December 13, 2005

Richard L. Pomeroy, Esq.                    Via: Hand Delivery
Assistant U.S. Attorney
U.S. Attorney's Office
222 W. 7th Avenue, #9
Anchorage, Alaska  99513

Richard Stone, Esq.                         Via: US Mail
Civil Division, Torts Branch
U.S. Department of Justice
1331 Pennsylvania Avenue, N.W.
Washington, D.C.  20530

     Re:  United State of America v.
         Continental Insurance Company, et al.
         Claim No. 751A3892
         <u>Our File No. 6024.1</u>

Dear Gentleman:

     Please find enclosed a check in the amount of
$1,988,646.99.  This amount represents Continental's calculation
of the facial policy limits for coverage under the Commercial
General Liability policy HMA 9500645-5 issued to Bristol Bay Area
Health Corporation,[1] defense costs, and applicable interest
thereon.

     We have calculated Continental's policy limits pursuant
to the terms of the policy and the Federal Tort Claims Act
("FTCA") as if policy limits had been paid as part of the Lori
Wilson settlement on August 28, 1997.  This is limited to the
$1 million policy limit per occurrence under coverages A and B
and the supplementary payments applicable under coverages A and
B.  Under the FTCA and other applicable law, Lori Wilson could
not make a claim against the U.S.A. for pre-judgment interest or
Alaska Civil Rule 82 attorney's fees.[2]  This also coincides with
the position taken by the U.S.A. in its briefing to the Ninth

---

[1] Under which a divided panel of the Ninth Circuit has determined that the
United States, although not mentioned in the policy, is nonetheless an
implied insured.

[2] <u>See</u> 28 USC §§ 2412, 2674, and 2678.

EXHIBIT 1

Richard L. Pomeroy, Esq.
Richard Stone, Esq.
December 13, 2005
Page 2

Circuit.[3]  Therefore, if Continental had contributed its policy
limit to the Wilson settlement, it would have contributed the
facial limit of $1,000,000.

In addition to the amount of the facial policy limit,
we are providing $150,000 as payment for attorney's fees incurred
in the defense of the underlying litigation, based on statements
you have made regarding the amount of these defense costs.  We
also have included $175,623.29 as interest due on the $150,000.
This interest was calculated beginning October 18, 1994 (the day
suit was filed), through December 9, 2005, at the rate of 10.5%.

The 10.5% interest rate was applied to the defense
costs because the amount was allegedly due and owing prior to
August 7, 1997.  However, as of August 7, 1997, the applicable
interest rate was modified by changes to Alaska Statute
09.30.070.  Therefore, pre- and post-judgment interest on causes
of action accruing on or after that date is the applicable
interest rate at the time of judgment or settlement.

The settlement was not reached until August 28, 1997.
We have therefore calculated interest on Continental's policy
limit at 8%, the interest rate in affect as of August 28, 1997.
This conforms to the U.S.A.'s position in its Second Amended
Complaint's Prayer for Relief, wherein it requested judgment on
the Wilson settlement "with legal interest from the date of
payment of the Wilson claim."  The interest was calculated
beginning on August 28, 1997, the date of settlement, through
December 9, 2005.  Applying these calculations, the interest due
on the facial policy limit is $663,013.70.  The interest total
according to our calculations is $838,636.99.  The combined total
of the facial policy limit, defense costs, and interest is
$1,988,646.99.  If you disagree with any of these conclusions or
calculations, please advise.

Of course, payment of this amount may not be construed
as an admission of liability on the part of Continental or a
waiver of any of Continental's appeal rights or defenses.
Continental specifically reserves the right to appeal any of the
U.S. District Court's rulings in this matter, including but not
limited to the granting of summary judgment against Continental
for bad faith and whether the U.S.A. is an implied insured under
the Continental policy.

---

[3] Brief for the Appellant at 29, Reply Brief for the Appellant Brief: Brief
for the Cross-Appellee at 26-28.

Richard L. Pomeroy, Esq.
Richard Stone, Esq.
December 13, 2005
Page 3


          If you have any questions regarding any of the above,
please advise.

                              Very truly yours,

                              GUESS & RUDD P.C.


                              Gary A. Zipkin

GAZ:jmh: F:\DATA\6024\1\corresp\09carpomeroystone.doc

Enclosure

cc:  Ms. Danette J. Buckley, Esq. (Claim No. 751A3892)
     Mr. Christopher Tayback, Esq.
     Mr. A. William Urquhart, Esq.




**U.S. Department of Justice**

*United States Attorney*
*District of Alaska*

_____

*Federal Building & U.S. Courthouse*
*222 West 7th Avenue, #9, Room 253*       *Commercial: (907) 271-5071*
*Anchorage, Alaska 99513-7567*            *Fax Number: (907) 271-3224*

October 30, 2001

Via Facsimile and Mail

Evan Schwab
Dorsey and Whitney
U.S. Bank Centre
1420 Fifth Avenue, Suite 3400
Seattle, WA 98101

Re: Wilson v. United States, Case No. No. A94-488 Civ. (HRH)

Dear Mr. Schwab:

On July 8, 1998, the United States formally tendered defense of the claims asserted against the United States by the third party defendant and counter-claimant, Blanche Kallstrom, in Wilson v. United States. That case, as well as the claims asserted directly against the United States by the Wilson family have, as you know, formed the basis for the ongoing litigation between the United States and Continental Insurance Company in United States v. CNA Financial Corporation, et. al., Case No. A98-285 Civil (JWS). Continental either ignored or rejected the tender of defense of the Kallstrom claims. In light of Judge Sedwick's ruling of September 18, 2001 (found at 2001 WL 1329014), and the recent Alaska Supreme Court decision in State Farm v. Lawrence, 26 P.3d 1074 (Alaska 2001) (separate policy limits found for claimant alleging purely emotional distress), the United States hereby re-tenders defense of the Kallstrom claims to Continental under the same theories articulated in the July 8, 1998 tender.

We trust that your client will promptly accept this tender.

Sincerely,

TIMOTHY M. BURGESS
UNITED STATES ATTORNEY

KENNETH S. ROOSA
Assistant U.S. Attorney

EXHIBIT 2

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2006,
a copy of the foregoing PLAINTIFF
UNITED STATES' OPPOSITION
TO CONTINENTAL'S PETITION
TO DISTRICT COURT FOR
CERTIFICATION PURSUANT TO
28 U. S. C. § 1292(b) was served
electronically on Gary A. Zipkin
and A. William Urquhart and
via facsimile on

Rebecca L. Ross  (312) 759-1939 fax


s/ Richard L. Pomeroy

USA v. The Continental Casualty Company
Case No. 3:98-cv-285-JWS