Gary A. Zipkin, Esq.
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, AK  99501
Phone:  (907) 793-2200
Fax:    (907) 793-2299
E-mail: gzipkin@guessrudd.com

Attorneys for Defendant


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CNA FINANCIAL CORPORATION | ) | |
| AND THE CONTINENTAL | ) | |
| CASUALTY COMPANY d/b/a | ) | |
| THE CONTINENTAL INSURANCE | ) | |
| COMPANY, | ) | Case No. 3:98-cv-285-JWS |
| | ) | |
| Defendant. | ) | |


REPLY IN SUPPORT OF PETITION FOR
CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b)


Preliminary Statement


     The United States' opposition is literally riddled with

misstatements, and the government's need to resort to such

tactics is telling.  Accusing Continental of mischaracterizing

the record, the United States says the court's Orders do not

present a controlling question of law because the government

purportedly has multiple, unadjudicated, "new and continuing" bad

faith claims pending against Continental.  In the parties' most recent status report, however, the United States identified only one issue for trial:  "Whether punitive damages should be awarded against Continental, and if so, in what amount."  Four years ago, the court identified the same issue as the only remaining issue in the case.  The United States' apparent belief that it has, since then, magically added new bad faith claims to the case without telling anyone else about it is wishful thinking.

The United States' analysis of the substantial ground for difference of opinion factor also represents a revisionist history.  According to the United States, "there has never been a court in this case, even in dissent, that has agreed that Continental had the right to reject the tender of the defense" and "this court never reached the issue of bad faith for there to be an issue that the United States could have appealed."  These assertions ignore the incontrovertible fact that the court entered judgment in Continental's favor in 2003 on *all* claims, including the government's duty to defend and bad faith claims.  Thus, the United States' position is simply wrong.

Putting the government's rhetoric to the side, the correct application of Section 1292(b)'s factors is clear.  Continental respectfully urges the court to certify its Orders for immediate appeal, giving the Ninth Circuit the opportunity to review the Orders now if it wishes.

<u>Argument</u>

The court is authorized to certify an order for immediate appeal whenever that order involves a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate appeal may advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b). The United States tells the court that, if an "order is 'subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties (i)t is not appealable,'" but neglects to mention that the case it cites for that proposition involved a purported appeal from a final judgment under 28 U.S.C. § 1291, not a interlocutory appeal under 28 U.S.C. § 1292(b).  Opp. at 8 (citing <u>Hartford Fire Ins. Co. v. Herrald</u>, 434 F.2d 638 (9th Cir. 1970)).  Thus, this representation is misleading as well.


    1.    <u>The Orders Involve A Controlling Question Of Law</u>.


        Although the government is correct that an order is deemed "controlling" only in exceptional circumstances (Opp. at 8), the government ignores that the authority it cites for that proposition itself goes on to explain that, "at the very least, a controlling question of law must encompass every order which, if erroneous, would be reversible error on final appeal."  <u>In re</u>

Cement Antitrust Litigation, 673 F.2d 1020, 1026 (9th Cir. 1982)
(citations omitted).  There can be no genuine dispute that the
court's determination that Continental acted in bad faith as a
matter of law would be reversible on appeal if erroneous, and
hence involves a controlling question of law.  See id.; Motion at
4-5 (collecting authorities).


        To attempt to avoid this conclusion, the United States
contends that "a ruling in Continental's favor would not end the
case" because the United States purportedly "has new and
continuing bad faith claims that this court has never ruled on
that would still have to be resolved either on summary judgment
or by the jury."  Opp. at 3 (underlining in original).  For
starters, that misses the point.  An order contains a controlling
question of law whenever it would be reversible following a final
judgment.  In re Cement Antitrust Litigation, 673 F.2d at 1026;
16 Wright & Miller, Fed. Prac. & Proc., Jurisdiction 2d § 3930
(2005) ("There is no doubt that a question is 'controlling' if
its incorrect disposition would require reversal of a final
judgment, either for further proceedings or for a dismissal that
might have been ordered without the ensuing district court
proceedings.").  Thus, whether or not the United States has the
"new and continuing bad faith claims" that it thinks it has, the
Orders contain a controlling question of law.  If erroneous, the
court's conclusion that Continental acted in bad faith as a
matter of law obviously would be reversible.

In any case, the United States does not have "several bad faith claims pending against Continental" as it contends. Opp at 9.  The government cannot add new claims to a ten year old case on a whim.  These new claims -- that Continental purportedly acted in bad faith by failing to accept the United States' retender of <u>Kallstrom</u> in 2001 and not paying its policy limits under the Bristol Bay policy immediately after the Ninth Circuit reversed in 2004 (Opp. at 9) -- have never been pleaded or presented as claims in any other fashion, until now.  Indeed, just six months ago, the United States represented in a joint status report to the court (which the court required the parties to submit in its 2005 summary judgment ruling) that the only issue left for trial is "[w]hether punitive damages should be awarded against Continental, and if so, in what amount." Dkt. 119 at 1.  As far back as June 2002, the court had ruled that "[t]he only remaining claim is the government's claim for punitive damages, which was recently added in an amended complaint."  Dkt. 87 at 6.  And the government's operative complaint contains no mention of its new claims -- instead, the government pleaded a single bad faith claim that the Court addressed on summary judgment.  Dkt. 71 at 8 (claim three).  The government cannot hope to avoid certification under Section 1292(b) by springing new claims in its opposition brief, on the eve of trial, that it never bothered to plead.

Even if the government were to move to amend its complaint to add its "new" claims -- which it has not sought leave to do -- it could not. The presence of factors such as "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment" militate against granting such leave. <u>Schlacter-Jones v. General Telephone of California</u>, 936 F.2d 435, 443 (9th Cir. 1991) (citation omitted). The government can proffer no explanation for its tactical choice to wait until the eve of a trial scheduled to cover only punitive damages, on the cusp of the discovery cutoff, to attempt to add new claims. It knew about its ostensible claim relating to the <u>Kallstrom</u> re-tender in 2001, before it last amended its complaint in 2002, yet never sought leave to add a claim. It knew about its ostensible non-payment of policy limits claim since 2004, when the Ninth Circuit reversed, yet never sought leave. This tactical delay alone precludes amendment. <u>See</u> <u>McGlinchy v. Shell Chemical Co.</u>, 845 F.2d 802, 809 (9th Cir. 1988) (delay of six months after plaintiffs became aware of their new claims before they sought leave to amend precluded amendment). Coupled with the prejudice Continental would suffer from having new claims sprung just months before trial, the interference with these proceedings amendment would occasion (among other things, discovery would have to be re-opened and trial would have to be bifurcated), and the inherent futility of the claims (among other things, the

government has no damages, and "[a]n insurer's failure to pay the 'undisputed amount' of the claim is not bad faith," Aronson v. State Farm Ins. Co., 2000 WL 667285 *10 (C.D. Ca. 2000)), the government could not possibly add its "new and continuing" claims now, even if it sought leave to do so.

      2.    The court's rulings are subject to a
               substantial ground for difference of opinion.

      A.    The United States Waived Its Bad Faith Claim

There is no dispute that the United States did not appeal on bad faith, and indeed explicitly declared that its "bad faith claim is not at issue" on appeal. Br. for Appellant in No. 03-35446 (9th Cir.) (filed October 9, 2003) at 13 n.10. The only dispute is whether it could have done so -- according to the United States, "[t]his court never reached the issue of bad faith for there to be an issue that the United States could have appealed to the Ninth Circuit." Opp. at 11. That is false. In 2003, the court granted Continental summary judgment on all claims stated by the United States, and entered a final judgment in Continental's favor. Dkt. 115, 116. Since the court entered judgment on all claims in Continental's favor, *a fortiori* the court entered judgment on the United States' third and fourth claims for bad faith and breach of the covenant of good faith and fair dealing, as pleaded in the Second Amended Complaint. Dkt. 71.

The United States has never cited any authority for its counterintuitive contention that, even though the court entered judgment against the government on its bad faith claim, it somehow could not appeal as to that claim.  It could have, and if it had the Ninth Circuit likely would have affirmed on bad faith under the genuine dispute doctrine -- as it has in precisely analogous circumstances.  See <u>Lunsford v. American Guarantee & Liability Ins. Co.</u>, 18 F.3d 653, 656 (9th Cir. 1994) (where, as here, (1) the district court granted summary judgment on all claims, including bad faith claim, ruling that there was no coverage but without directly addressing claim for bad faith, (2) insured appealed on all claims, and (3) the Ninth Circuit reversed on coverage holding that insurer owed duty to defend, (4) the Ninth Circuit nonetheless affirmed on bad faith because insurer based its refusal to defend on "a reasonable construction of the policy").  The government's tactical choice not to appeal when it could have, and the waste and delay that choice occasioned, yielded a waiver.

> B.    The court's 2001 summary judgment
>       <u>ruling was not law of the case</u>.

Here as well, there is no dispute as to what actually happened:  the court "held that the Ninth Circuit's decision on October 20, 2004 returned this case to its status before the court's ruling at Docket 115," and reviewed its original 2001 summary judgment ruling for clear error or manifest injustice

under the strictures of the law of the case doctrine.  Opp. at
11; Dkt. 166 at 10-12.  The only dispute is whether the court's
deference to its 2001 ruling was proper.  Under <u>Vanhorn</u>, it was
not.  <u>United States v. Vanhorn</u>, 344 F.3d 729 (8th Cir. 2003).

       <u>Vanhorn</u> and this case are precisely analogous.  In both
cases, the trial court issued an initial order (here, the court's
2001 ruling on bad faith, and in <u>Vanhorn</u> the court's order
establishing a particular payment schedule for restitution
payments) and subsequently vacated that initial order.  On appeal
in both cases, the Court of Appeals reversed the second order
(which vacated the first order) without considering the merits of
the first order.  Just as in <u>Vanhorn</u> "the previously vacated
payment schedule [the initial order] is not the law of this case
because we did not reinstate that order or consider its merits,"
the court's initial 2001 bad faith ruling was not law of the case
post-remand because the Ninth Circuit did not reinstate that
order or consider its merits.  344 F.3d at 731-32.

       Although it purports to distinguish <u>Vanhorn</u>, the
government's analysis does not diverge.  According to the
government, in <u>Vanhorn</u>, "the payment schedule previously vacated
did not become law of the case because the appellate court did
not reinstate it."  Opp. at 11.  That is correct, and that is the
correct conclusion in the case at bar as well:  the court's
previously vacated 2001 summary judgment ruling did not become

law of the case, and was not entitled to deference, because the Ninth Circuit did not reinstate that ruling.  The government's assertion that the district court in <u>Vanhorn</u> was somehow limited in a way that the court was not is erroneous.  In both cases, the Court of Appeals reversed the district court's order vacating its prior order without providing specific instructions as to the effect of the prior order.  <u>Compare</u> <u>United States v. CNA Financial Corp.</u>, 113 Fed. Appx. 205 (9th Cir. 2004), <u>with</u> <u>United States v. Van Horn</u>, 296 F.3d 713, 721 (8th Cir. 2002).  The government's assertion that the Eighth Circuit in <u>Vanhorn</u> imposed a "restriction . . . regarding the law of the case that had been previously established by the district court" that the Ninth Circuit did not impose here is misguided.  Opp. at 12.

Finally, the government's assertion that, "[u]nder Continental's argument, a district court cannot make law of the case" is mere hyperbole.  Nonetheless, it is true that the "legal effect of the doctrine of the law of the case depends upon whether the earlier ruling was made by a trial court or an appellate court."  <u>United States v. Smith</u>, 389 F.3d 944, 949 (9th Cir. 2004).  "When a court applies the law of the case doctrine to its own prior decisions . . . the traditional formulations of the doctrine must be conceived as rules of thumb and not as straitjackets . . . ."  <u>Id</u>. (citing Moore's Fed. Prac., § 134.21[1] (3d ed. 2003)).  Viewed in this light, the court's decision to review its 2001 bad faith ruling only for clear error

notwithstanding its own vacatur of that ruling in 2003 is especially dubious.  It is also reversible because the court's grant of summary judgment in the government's favor in 2005 was necessarily predicated on its prior 2001 ruling to that effect.

C.    _Hillman_ and the genuine dispute rule control.

Hillman adopted, as a matter of Alaska law, the rule that prevails in many jurisdictions:  Where an insurer's denial of benefits under a policy is reasonable, including when that denial is based on a genuine dispute or a fairly debatable question about whether the insured is entitled to benefits under the policy, the insurer cannot be liable for bad faith.  855 P.2d 1321 (1993).  This proposition, which is supported by literally legions of authorities, clearly applies here.  The United States' tender presented novel legal issues that had never before been addressed -- before this case, no case had ever adopted the doctrine of implied insurance as to a general liability policy, and no case had ever held that the United States could obtain reimbursement from an insurer for payments it made pursuant to the Federal Tort Claims Act as an implied-at-law insured.  Continental hired outside lawyers who, after performing legal and factual investigations, advised Continental that the United States had no rights under the Bristol Bay policy.  Two judges later agreed with that conclusion.  There were at least genuine issues as to whether the United States had any rights under the

Bristol Bay policy when the United States first tendered.  Under
<u>Hillman</u>, that precludes bad faith.  <u>See</u> <u>Aronson</u>, 2000 WL 667285 *
12 ("The 'genuine issue' standard, or a similar standard, has
been applied with particular force where, as here, the insurance
claim presented either a complex or unresolved issue of law in
the jurisdiction.").

          The United States' attempt to avoid that conclusion is
specious.  First, the United States asserts that "[t]here has
never been a court in this case, even in dissent, that has agreed
that Continental had the right to reject the tender of the
defense."  Opp. at 13.  That is a bald misrepresentation.  This
court entered judgment in Continental's favor on all claims in
2003, ***including*** the United States' second claim for failure to
defend.  Dkt. 116 (judgment), 71 (complaint).  The Ninth Circuit
dissent would have affirmed the court's judgment.  Thus, contrary
to the government's representation, two judges have in fact
concluded that Continental had the right to reject the tender of
defense, and there demonstrably were "substantial differences of
opinion on the tender of defense issue."  Opp. at 13.

          Putting aside its historical misstatement, the United
States' primary contention is that "[t]here simply can be no
difference of opinion under insurance law -- Continental was not
entitled to deny a defense if the coverage was 'fairly
debatable.'"  Opp. at 6.  That wholly misses the point.  Assuming

Continental was not entitled to deny a defense, it does not
follow that Continental acted in bad faith when it denied a
defense.  To the contrary, an insurer cannot be liable in bad
faith for rejecting a tender -- including a tender seeking both
defense and indemnity -- when it has a plausible, good faith
belief that the tendering party has no rights under the policy.

     Hillman and the rule precluding bad faith liability
when there is a genuine dispute as to coverage apply to the duty
to defend as well as the duty to indemnify, as countless
authorities have held in third-party cases involving the duty to
defend.  See, e.g., Lunsford, 18 F.3d at 656 (reversing summary
judgment for insurer on duty to defend coverage claim but
affirming judgment for insurer on bad faith claim under genuine
dispute doctrine); Dewitt Construction Inc. v. Charter Oak Fire
Ins. Co., 307 F.3d 1127, 1138 (9th Cir. 2002) (although insurer
breached its duty to defend, it was entitled to summary judgment
on bad faith claim because insurer's "duty to defend was not
unambiguous" and "[t]he policy coverage was unclear in light of
legitimate factual and legal issues pertinent to contract
interpretation and application") (Washington law); Zurich Ins.
Co. v. Killer Music, Inc., 998 F.2d 674, 680 (9th Cir. 1993)
("Although Zurich breached its duty to defend, breach of the
implied covenant of good faith and fair dealing involves
something beyond breach of the contractual duty itself.")
(internal quotations omitted) (California law); Nevada VTN v.

<u>General Ins. Co. of America</u>, 834 F.2d 770, 777 (9th Cir. 1987) (although insurer breached its duty to defend, "it is not at all clear that [it] violated that duty in bad faith and hence is liable in tort.") (Nevada law).

The United States also parrots the court's distinctions of <u>Hillman</u>, but the viability of those distinctions is substantially debatable.  Although Judge Kleinfeld based his Ninth Circuit dissent on the distinction between casualty and liability insurance, which Continental did not fully articulate prior to litigation, this court based its 2003 ruling in Continental's favor on the fact that the Bristol Bay policy "clearly did not embrace risks associated with insuring the United States."  Dkt. 115 at 4.  That is precisely the basis on which Continental rejected the United States' tender upon the advice of counsel.  Thus, whether or not the court was correct in disregarding one litigation explanation for Continental's tender rejection (see Dkt. 166 at 16), <u>Hillman</u> and the genuine dispute rule apply all the same.

Respectfully, the court's other distinctions miss the point.  Under <u>Hillman</u>, the dispositive question is "whether [the insurer's] decision to deny coverage lacked a reasonable basis." 855 P.2d at 1325-26.  Indeed, in <u>Hillman</u>, the plaintiff articulated at least ten different reasons why the insurer acted with subjective bad faith -- including egregious conduct such as

denying coverage without making any investigation of the facts or
law -- but these all had "little or no relevance" to the
reasonableness of the decision to deny coverage.  Id.

        The court's distinctions likewise do not bear on the
reasonableness of Continental's decision to deny coverage.  The
court observed in its ruling that Continental relied on the fact
that the United States "was not a named insured in the policy"
rather than "an express exclusion in the policy," Dkt. 166 at 14-
15, but that is immaterial.  The relevant question is whether
coverage was fairly debatable or genuinely disputed, not what the
precise basis for the genuine dispute was.  See American Casualty
Co. of Reading, Pennsylvania v. Krieger, 181 F.3d 1113, 1120-23
(9th Cir. 1999) (insurer's reasonable understanding that
appellant was not additional insured under policy precluded bad
faith liability in third-party case) (California law); Hanson v.
Prudential Ins. Co. of America, 772 F.2d 580, 584 (9th Cir. 1985)
(insurer's reasonable understanding that facility where incident
occurred was not a covered hospital under policy precluded bad
faith under genuine issue rule) (cited in Hillman, 855 P.2d at
1326 n.9).  The court also observed that Continental's
interpretation was held to be "incorrect," but that too is
immaterial.  The point of the genuine issue as to coverage rule
is that insurers are not liable in bad faith merely for being
incorrect, as long as they are reasonably incorrect.

Next, the court observed that Continental admitted that it had a duty to defend, if not indemnify, Bristol Bay's employees, but that is a non-sequitur.  Continental had a duty to defend Bristol Bay because Bristol Bay was its named insured -- and Continental lived up to that duty by appointing defense counsel when the Wilsons sued Bristol Bay in state court.  It does not follow that Continental had a duty (or knew it had a duty) to defend a third party not listed in its policy as an insured.  Last, the court faulted Continental for asserting "that the subjective intent of Continental and BBAHC was to exclude coverage for those acts that would fall within the FTCA."  <u>Id.</u> As set forth in the footnote that follows, Continental believes the testimony adduced from both contracting parties shows that that was in fact the parties' subjective intent -- at the least, it was not unreasonable for Continental to assert as much.[1]  But

---

[1]     Declaration of Lori Wing (Bristol Bay's broker) dated December 1, 1998, ¶¶ 6, 8, Declaration of Gary Zipkin dated February 13, 2006, Ex. A:

> BBAHC and its counsel instructed us specifically that BBAHC did not desire insurance coverage that would duplicate protection from liabilities provided by the United States under Section 638 and the FTCA. . . . We conveyed all of this information, including the written memoranda from BBAHC's counsel, to Continental Insurance Company's underwriters, to assist them in assessing and underwriting BBAHC's risks.

Deposition of Lori Wing (Bristol Bay's broker) dated November 30, 1999 ("Wing Tr."), at 80:13-17, 100:2-101:21, 116:16-25, 117:20-118:9, Zipkin Dec. Ex. B (in purchasing insurance on Bristol Bay's behalf, "[w]e did not want to duplicate what the Federal Tort Claim Act was providing.  But we wanted to -- what the Federal Tort claims Act was not providing, that is what we wanted to insure"; Bristol Bay's outside counsel explained to Wing and Robert Clark that the FTCA would not cover all potential liability claims against Bristol Bay, and Clark specifically instructed Wing that Bristol Bay did not want to duplicate FTCA coverage); Deposition of Robert Clark (Bristol Bay's CEO) dated January 11, 2001 at 27:2-13, 82:21-83:2, 94:5-7, 94:15-18, 108:5-110:2, Zipkin Dec. Ex. C (the statutory amendments providing FTCA coverage were new, and (footnote continued)

in any case, this is irrelevant.  Continental rejected the United

States' tender because the United States was not listed as an

insured and it reasonably believed (and persuaded two judges)

that the doctrine of implied insurance did not apply.  That is

literally all that matters.  Any purported collateral bad acts,

such as purportedly inappropriate litigation assertions, are

irrelevant under <u>Hillman</u>.


        Accordingly, there undoubtedly are substantial grounds

for differences of opinion as to the court's application of

<u>Hillman</u>, its decision not to grant Continental summary judgment

---

Bristol Bay was uncertain what exactly was covered, so it wanted to purchase
"supplemental and other insurance" to make sure it was protected; Bristol
Bay's "goal is to get private insurance, but not so much private insurance
that you're duplicating what you'd have under the FTCA," and it "bought
insurance to be a supplement to, and kind of an over layer or something
different than the government's insurance"); Deposition of Darrel Richardson
(Bristol Bay's COO) dated January 10, 2001, at 52:20-60:25, Zipkin Dec. Ex. D
(same); Deposition of Liz Hartshorn (Bristol Bay's CFO) dated January 12,
2001, at 60:19-62:16, Zipkin Dec. Ex. E (Hartshorn wanted insurance that would
not duplicate FTCA coverage); Deposition of Simpson Bobo Dean (Bristol Bay's
outside counsel) dated February 21, 2001 at 48:8-52:11, 94:3-95:24, Zipkin
Dec. Ex. F (Dean advised Wing that it was uncertain what the FTCA would cover
and that Bristol Bay needed "some kind of insurance which would protect [it]
in the event it was determined that for whatever reason the FTCA did not
apply"; Dean understood that Continental's policy "was obtained for the
purpose of protecting BBAHC against claims outside the scope of the FTCA");
Deposition of Debra Wyatt Brown (a Continental underwriter) dated April 5,
2000 at 38:15-39:10, 161:15-21, 172:6-173:18, 186:2-9, Zipkin Dec. Ex. G (as
the underwriter of the policy, Brown did not intend to provide general
liability coverage where the FTCA provided coverage; rather, the policy was
intended, and Brown and Wing agreed, that Continental would only provide
coverage when Bristol Bay's employees were acting in a capacity that would not
be covered by the FTCA, such as "when the insured were performing services
funded by the State of Alaska"); Deposition of Sally Padgitt (a Continental
underwriter) dated April 3, 2000, at 51:16-55:19, Zipkin Dec. Ex. H (the
Bristol Bay policy was not designed to "cover any risks that fell under the
FTCA"); Deposition of William Hutson (Continental's claims handler) dated
April 7, 2000, at 29:12-30:13, Zipkin Dec. Ex. I ("We knew our policy was
intended to only cover those nonfederally funded programs.  And they only
cover state-funded programs for general liability.").

on the bad faith claim, and its decision to find for the
government on that claim as a matter of law.

      3.    An immediate appeal likely would materially
                <u>advance the ultimate termination of the litigation</u>.

      The correct application of this factor is clear. Even
if a plaintiff "will be prejudiced by further delays" -- and the
United States has not shown that it will be prejudiced in any way
if the court grants Continental's petition -- this criterion is
still satisfied because "[a]n immediate appeal would conserve
judicial resources and spare the parties from possibly needless
expense if it should turn out that this court's rulings are
reversed." <u>APPC Services Inc. v. Sprint Communications Co.</u>, 297
F. Supp. 2d 90, 100 (D.D.C. 2003). There can be no doubt that a
reversal of the court's order granting the United States summary
judgment of bad faith liability would vitiate any punitive
damages ruling for the United States at the upcoming trial.
There are no "new and continuing issues of bad faith not yet
resolved by the contested orders" (Opp. at 14), and, even if
there were, that does not diminish the importance of the existing
bad faith orders. The orders are dispositive, substantially
debatable, and present issues of law that will be reviewed <u>de
novo</u>. The court should give the Ninth Circuit the opportunity to
review the Orders now, without further delay and expense.

Conclusion

For the foregoing reasons, the court should grant Continental's petition in its entirety.

DATED at Anchorage, Alaska, this 13th day of February, 2006.

GUESS & RUDD P.C.
Attorneys for Defendants

By:     S/Gary A. Zipkin
        Guess & Rudd P.C.
        510 L Street, Suite 700
        Anchorage, Alaska  99501
        Phone: 907-793-2200
        Fax:   907-793-2299
        Email: gzipkin@guessrudd.com
        Alaska Bar No. 7505048


QUINN EMANUEL URQUHART
    OLIVER & HEDGES, LLP
Attorneys for Defendants

By:     S/A. William Urquhart
        Quinn Emanuel Urquhart
          Oliver & Hedges, LLP
        865 South Figueroa
        Street, 10th Floor
        Los Angeles, CA  90017
        Phone: 1-213-443-3000
        Fax:   1-213-443-3100
        Email:
        billurquhart@quinnemanuel.com

F:\data\6024\1\pleading\42reply cert.DOC

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Petition for Certification
Page 19 of 21

<u>CERTIFICATE OF SERVICE</u>
I hereby certify that on the
13th day of February, 2006, a copy
of the foregoing document was served
electronically on:

Richard L. Pomeroy, Esq.
A. William Urquhart, Esq.

and by regular U.S. mail on:

Richard Stone, Esq.
Civil Division, Torts Branch
U.S. Department of Justice
1331 Pennsylvania Avenue, N.W.
Washington, D.C.  20530

Guess & Rudd P.C.


By:   S/Gary A. Zipkin