```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF ALASKA

 3   _____

 4   UNITED STATES OF AMERICA,        )
                                      )
 5             Plaintiff,             )   ORIGINAL
                                      )
 6        vs.                         )
                                      )
 7   CNA FINANCIAL CORPORATION, et al.,)   CORRECTION SHEET:
                                      )   ☒ Signature waived/time expired
 8             Defendants.            )   ☐ Signature waived
     _____)   ☐ Signed/dated/no corrections made
 9   Case No. A98-285 CV (JWS)            ☐ Signed/dated/corrections made
     _____
10

11            DEPOSITION OF DARREL RICHARDSON

12   _____

13            Pages 1 - 114, inclusive

14          Wednesday, January 10, 2001
                    11:10 A.M.
15

16        Taken by Counsel for Defendants
                        at
17         Bristol Bay Area Health Corporation
                6000 Kanakanak Road
18              Dillingham, Alaska
```

PACIFIC RIM REPORTING   907/272-4383
www.courtreportingalaska.com



EXHIBIT  D
Page  1  of  10

52

| | | |
|---|---|---|
| 12:43:15 | 1 | A.  No, I don't recall a specific time, no. |
| 12:43:20 | 2 | Q.  Do you recall having any such discussions with |
| 12:43:24 | 3 | Ms. Wing regarding the FTCA, prior to September 1993? |
| 12:43:41 | 4 | A.  I can't remember a specific date, so I can't |
| 12:43:44 | 5 | really answer you.  I can't remember whether it would |
| 12:43:50 | 6 | have been before or after, but I have had discussions. |
| 12:43:53 | 7 | Q.  So, you can't say you didn't have any |
| 12:43:56 | 8 | discussions with her regarding the FTCA prior to |
| 12:44:00 | 9 | September 1993, correct? |
| 12:44:03 | 10 | A.  I'm sorry, no, I can't say that I haven't.  I |
| 12:44:07 | 11 | can't say that I have, either one.  I've had |
| 12:44:13 | 12 | discussions, but not -- I can't identify the date. |
| 12:44:16 | 13 | Q.  Do you recall the substance of these |
| 12:44:19 | 14 | discussions?  Strike that.  Let me back up a second. |
| 12:44:24 | 15 |     Were any of these discussions about the scope |
| 12:44:30 | 16 | of coverage of BBAHC under the FTCA? |
| 12:44:35 | 17 | A.  In general terms, yes. |
| 12:44:39 | 18 | Q.  What do you mean when you say "in general |
| 12:44:40 | 19 | terms"? |
| 12:44:41 | 20 | A.  Well, having come from the private sector, I |
| 12:44:47 | 21 | was totally unfamiliar with FTCA, and so I asked a |
| 12:44:53 | 22 | number of people, Ms. Wing as well as others, questions |
| 12:44:57 | 23 | about it so that I could try to understand it better.  I |
| 12:45:05 | 24 | know that in discussions with Ms. Wing, I have expressed |
| 12:45:10 | 25 | concern about the breadth of coverage of FTCA, about was |

53

| | | |
|---|---|---|
| 12:45:19 | 1 | it adequate coverage, because I wanted to ensure, or to |
| 12:45:30 | 2 | ensure as much as possible, that BBAHC had insurance |
| 12:45:36 | 3 | coverage across the breadth.  And I had, what I |
| 12:45:41 | 4 | understood of FTCA, is that there were gaps or holes, or |
| 12:45:45 | 5 | at least potential gaps and holes, that I wanted to be |
| 12:45:48 | 6 | covered by private insurance.  So, in that general |
| 12:45:55 | 7 | regard I've had discussions. |
| 12:46:22 | 8 | Q.    Do you recall what Ms. Wing told you during |
| 12:46:27 | 9 | your discussions concerning these gaps or holes in |
| 12:46:32 | 10 | insurance coverage under the FTCA? |
| 12:46:40 | 11 | A.    I can't remember whether I got it from Ms. Wing |
| 12:46:43 | 12 | or other people I may have talked to.  So I'd have to |
| 12:46:46 | 13 | answer your question no. |
| 12:46:48 | 14 | Q.    Okay. |
| 12:46:50 | 15 | These other people that you talked to regarding |
| 12:46:54 | 16 | this subject, the gaps or holes in FTCA coverage, would |
| 12:47:01 | 17 | that group include a man named Bobo Dean? |
| 12:47:06 | 18 | A.    Yes. |
| 12:47:07 | 19 | Q.    And who is Bobo Dean? |
| 12:47:11 | 20 | A.    It's S. Bobo Dean. |
| 12:47:14 | 21 | Q.    Oh, sorry. |
| 12:47:15 | 22 | A.    But I forget what his first name is.  But he is |
| 12:47:21 | 23 | legal counsel to BBAHC, with the firm of Hobbs, Straus, |
| 12:47:28 | 24 | Dean & Walker, in Washington, D.C. |
| 12:47:32 | 25 | Q.    Did you ever provide information that Mr. Dean |

54

```
12:47:36   1   gave you, regarding the scope of FTCA coverage, to
12:47:43   2   Ms. Wing?
12:47:45   3        A.   I personally did not, no.
12:47:47   4        Q.   Do you know of anybody else who did?
12:47:51   5        A.   Again, I don't know.  I've heard that.
12:47:58   6        Q.   I'm sorry?
12:48:00   7        A.   I've heard that, but I do not know.
12:48:02   8        Q.   You've heard what?
12:48:03   9        A.   That there may have been a letter that -- or I
12:48:08  10   shouldn't say letter.
12:48:09  11        Q.   A memorandum?
12:48:11  12        A.   Yeah.  Yeah, I'm sorry, yes.
12:48:17  13        Q.   It was a memorandum from Mr. Dean's firm that
12:48:20  14   was provided to Ms. Wing through BBAHC personnel?
12:48:24  15        A.   It's absolutely pure hearsay, so I can't answer
12:48:29  16   whether that did or didn't occur.  That's hearsay on my
12:48:32  17   part.
12:48:34  18        Q.   Who did you hear that from?
12:48:34  19        A.   I can't even remember at this point.
12:48:36  20        Q.   Okay.
12:48:57  21             Regarding your understanding that there were --
12:49:04  22   or concern that there were gaps or holes in FTCA
12:49:07  23   coverage of BBAHC, I understand you don't recall exactly
12:49:12  24   where you gained this understanding, but what is your
12:49:18  25   understanding in that regard?
```

| | | |
|---|---|---|
| 12:49:21 | 1 | MR. STEWART: Well, I'm going to offer a |
| 12:49:25 | 2 | cautionary objection. And it is this: That legal |
| 12:49:32 | 3 | opinions have been provided to BBAHC, Mr. Richardson |
| 12:49:37 | 4 | would have been privy to them, by both the Hobbs Straus |
| 12:49:41 | 5 | firm and my firm, Davis Wright. Certain of those |
| 12:49:45 | 6 | opinions, and I think you're aware simply from discovery |
| 12:49:48 | 7 | in this matter, have been the subject of discussion with |
| 12:49:52 | 8 | insurance brokers, for example, others, third parties, |
| 12:49:56 | 9 | and so they certainly would not be privileged today. |
| 12:50:01 | 10 | The scope of coverage under the FTCA, however, |
| 12:50:04 | 11 | continues to be a current concern for this organization |
| 12:50:09 | 12 | and are current subject to dialogue, and certainly some |
| 12:50:13 | 13 | of that has not been shared with third parties. And so |
| 12:50:18 | 14 | there probably are discussions that have been had with |
| 12:50:22 | 15 | counsel which are no longer privileged, and others which |
| 12:50:26 | 16 | are privileged. |
| 12:50:27 | 17 | So, I want you to be able to engage in some |
| 12:50:30 | 18 | discovery here. I'm not going to jump in and tell him |
| 12:50:34 | 19 | he can't answer the question, period, but I think the |
| 12:50:36 | 20 | witness needs to be mindful of that distinction where |
| 12:50:41 | 21 | there's been counsel and advice and then it's been |
| 12:50:43 | 22 | shared with the world at large, that certainly isn't. |
| 12:50:47 | 23 | Where there's perhaps current issues, those remain |
| 12:50:51 | 24 | subject to privilege. |
| 12:50:52 | 25 | MR. DEVLIN: Would it make things easier if I |

56

```
12:50:55   1    limit my question to his understanding?
12:51:02   2           MR. STEWART:  I think you can go with your
12:51:03   3    question as it is, and I'll certainly go on record that
12:51:09   4    I want him to answer it, but I think as long as there's
12:51:12   5    a common understanding that the purpose for the answer
12:51:15   6    is not to waive any extant privilege as it exists today.
12:51:19   7           MR. DEVLIN:  I understand.  I'm trying to craft
12:51:23   8    this --
12:51:24   9           MR. STEWART:  If we all agree it isn't going to
12:51:25  10    be a waiver, it isn't going to be a waiver.
          11           MR. DEVLIN:  Okay.
          12           MR. STEWART:  Mr. Pomeroy?
12:51:29  13           MR. POMEROY:  Fully understood.
12:51:32  14           MR. STEWART:  Agreed?
12:51:33  15           MR. POMEROY:  Agreed.
12:51:34  16    BY MR. DEVLIN:
12:51:34  17        Q.  All right.  Well, then, maybe you need to have
12:51:36  18    the question read back.
12:51:37  19        A.  I was going to ask for that.
12:52:09  20    (Record read.)
12:52:11  21           THE WITNESS:  Well, I was aware that
12:52:20  22    intentional torts was an area that wouldn't be covered.
12:52:26  23    I think one of the things that -- well, no.  I think.
12:52:31  24    One of the things that concerned me about FTCA coverage
12:52:36  25    was that it appeared to me that they were the determiner
```

57

| | | |
|---|---|---|
| 12:52:40 | 1 | of whether there was coverage or not. |
| | 2 | BY MR. DEVLIN: |
| 12:52:42 | 3 | Q.    They, being the U.S.? |
| 12:52:44 | 4 | A.    The U.S. |
| 12:52:47 | 5 | And a good portion of my concern was, while the |
| 12:52:55 | 6 | U.S. was trying to determine whether they were or not |
| 12:52:59 | 7 | covering, you know, whatever situation, there were |
| 12:53:04 | 8 | obligations that needed to be met within certain time |
| 12:53:08 | 9 | frames.  And defense costs might be incurred before the |
| 12:53:17 | 10 | U.S. ever decided whether it did or didn't cover. |
| 12:53:21 | 11 | So, I was concerned twofold, I suppose, of what |
| 12:53:27 | 12 | about those things that needed to be done legally, and |
| 12:53:30 | 13 | the cost of them prior to their determination; and then |
| 12:53:34 | 14 | secondly, what if they determined they wouldn't cover? |
| 12:53:39 | 15 | So I had concerns about making sure we had -- to me, |
| 12:53:47 | 16 | that's the holes, the gaps that I'm talking about.  That |
| 12:53:50 | 17 | we had some other layer of insurance available to us in |
| 12:53:54 | 18 | that event. |
| 12:54:08 | 19 | Q.    So, it was your understanding that these gaps |
| 12:54:13 | 20 | or holes in FTCA coverage of BBAHC would occur in two |
| 12:54:19 | 21 | events.  One, if there were defense costs incurred or |
| 12:54:24 | 22 | things, you know, that needed to be done while the U.S. |
| 12:54:27 | 23 | was deciding whether or not there was FTCA coverage, |
| 12:54:31 | 24 | right? |
| 12:54:32 | 25 | A.    Correct. |

PACIFIC RIM REPORTING    907/272-4383
www.courtreportingalaska.com

EXHIBIT D
Page 7 of 10

58

```
12:54:33  1       Q.   And two, in situations where the U.S. may just
12:54:38  2   say, "Hey, there is no FTCA coverage, you're on your
12:54:41  3   own." Correct?  Those are the two types of situations?
12:54:45  4            MR. STEWART:  And intentional torts.
12:54:47  5            THE WITNESS:  Yeah, I was going to add, the
12:54:49  6   intentional torts.  That sort of goes along with the
12:54:54  7   second one.  And I'll explain just a little bit.
12:54:59  8   BY MR. DEVLIN:
12:54:59  9       Q.   Sure.
12:55:00 10       A.   This is hearsay.  But I had a physician on
12:55:03 11   staff who told me that he had a relative that had been
12:55:10 12   sued, I think it was for breach of confidentiality, who
12:55:14 13   was an IHS physician, and that the feds had refused to
12:55:20 14   defend him on the basis that that was an intentional
12:55:25 15   tort, and therefore that person ended up having to
12:55:30 16   defend it himself, you know, without any coverage.  And
12:55:39 17   bear the cost himself.  I do not know whether that was
12:55:42 18   true or not true, but it caused me concern.
12:55:47 19            So -- because, to me, an intentional tort,
12:55:54 20   while I realize many policies exclude intentional torts,
12:55:58 21   on the other hand, defending -- I mean, just because
12:56:01 22   you're accused doesn't mean you're guilty.  And
12:56:04 23   defending, you know, an intentional tort was something I
12:56:08 24   was concerned about.
12:56:14 25       Q.   So, then, the whole possible area of
```

59

```
12:56:20  1   intentional tort lawsuits falls within the second gap or
12:56:25  2   hole in FTCA coverage that you were concerned about, and
12:56:28  3   that is a situation where the United States would just
12:56:30  4   say not covered by the FTCA, right?
12:56:34  5        A.   Correct.
12:56:34  6        Q.   All right.
12:56:34  7             Let's talk about that second gap or hole that
12:56:39  8   you were concerned about.  Leave aside the concern that
12:56:45  9   you'd have to spend money or incur costs in defending
12:56:51 10   while the U.S. was deciding whether or not there was
12:56:53 11   coverage.
12:56:54 12             Now, I just want to talk about the area where
12:56:56 13   the U.S. would just say, sorry, no coverage.  All right?
12:56:58 14        A.   Uh-huh.  Yes.
12:57:01 15        Q.   You mentioned one area and that was intentional
12:57:03 16   torts, that you can think of.
12:57:05 17             Did you have any understanding concerning FTCA
12:57:15 18   coverage in the context of different programs that are
12:57:20 19   carried out here at BBAHC?
12:57:26 20        A.   Yes, and probably this would add an additional
12:57:33 21   concern.  My understanding is that FTCA coverage
12:57:38 22   extended to, quote, the scope of work, unquote, that we
12:57:45 23   had with the Indian Health Service.  So, I had concerns
12:57:52 24   about, was everything that we did covered by that scope
12:57:57 25   of work?
```

60

| | | |
|---|---|---|
| 12:58:02 | 1 | Again, I know that our medical staff, at least |
| 12:58:09 | 2 | a portion of our medical staff, had concerns about |
| 12:58:12 | 3 | specifically the home health program, as to whether or |
| 12:58:14 | 4 | not that was covered. |
| 12:58:15 | 5 | Q. What's the home health program? |
| 12:58:17 | 6 | A. That's the nursing program that provides home |
| 12:58:27 | 7 | visits to patients under a physician's care, under a |
| 12:58:32 | 8 | physician's order. |
| 12:58:34 | 9 | Q. And the concern was because they were going to |
| 12:58:38 | 10 | different folks' homes, away from this facility, that it |
| 12:58:41 | 11 | might not be covered? Is that -- by the FTCA? |
| 12:58:45 | 12 | A. Personally, I felt that we were covered by |
| 12:58:48 | 13 | FTCA, because it was listed, as I recall, in our scope |
| 12:58:54 | 14 | of work. What I'm trying to say is that, but I know |
| 12:58:57 | 15 | that we had physicians that were on staff that were |
| 12:58:59 | 16 | concerned about it. |
| 12:59:00 | 17 | And so, while I believed we were covered, it's |
| 12:59:06 | 18 | just a concern -- I'm trying to use that as an example |
| 12:59:11 | 19 | of a concern about were there things that FTCA would not |
| 12:59:17 | 20 | cover because they were beyond or -- beyond the scope of |
| 12:59:24 | 21 | the service that we had as a contractual relationship |
| 12:59:27 | 22 | with IHS. |
| 12:59:48 | 23 | Q. You've referred to IHS now a couple times. |
| 12:59:52 | 24 | Could you tell us what that stands for, please. |
| 12:59:52 | 25 | A. I'm sorry. Indian Health Service. |


EXHIBIT D
Page 10 of 10