1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE DISTRICT OF ALASKA

 3     ------------------------------------------------

 4     UNITED STATES OF AMERICA,        )

 5                     Plaintiff,       )

 6          vs.                         )    Case No. A98-285 CV (JWS)

 7     THE CONTINENTAL CASUALTY         )

 8     COMPANY d/b/a THE CONTINENTAL )

 9     INSURANCE COMPANY,               )

10                     Defendant.       )

11     ------------------------------------------------

12             DEPOSITION UPON ORAL EXAMINATION

13                          OF

14                  SIMPSON BOBO DEAN

15     ------------------------------------------------

16                      9:30 a.m.

17                  February 21, 2001

18           1420 Fifth Avenue, Suite 4100

19                 Seattle, Washington

20

21

22

23

24     Leslie Sherman, CSR, RMR, CRR

25     Court Reporter Ref. # SH-ER-ML-M462KP
```

RECEIVED MAR 0 5 2001

LANE POWELL SPEARS LUBERSKY
TIME ___ ATTY ___

COPY


EXHIBIT F
Page 1 of 8

48

1        A.    Basically at the -- probably at the end of the Bush

2    administration.  He was during the Reagan and Bush

3    administration.

11:02:12  4        Q.    He was a Bush administration --

5        A.    Right, talking about Bush 1.  Dr. Trujillo was

6    director during most of the Clinton period.  It took a while,

7    I think, to replace Dr. Rhoades.

11:02:30  8        Q.    What was your purpose in sending this letter to Dr.

9    Rhoades?

10        A.    It was to assure that there could be a -- there

11    would be cooperation by the Indian Health Service with

12    addressing the issue of the possibility that an activity that

13    an Indian tribe or a tribal organization -- consortium like

14    Bristol Bay was carrying on and might give rise to a claim

15    wasn't covered by the FTCA because it wasn't part of the scope

16    of work of the contract, and it was -- as the letter explains,

17    it was providing reasons why the IHS should cooperate to carry

18    out the purpose of Congress in assuring FTCA coverage for the

19    activities that these health offerings were carrying on.

11:03:32 20        Q.    You sent this letter on behalf of BBAHC?

21        A.    It appears that it is, because it says so in the

22    first sentence.

11:03:50 23        Q.    Is it accurate to say, then, that this letter was

24    sent after the second extension of the FTCA?

25        A.    Yes.

EXHIBIT F
Page 2 of 8

WITNESS:  SIMPSON BOBO DEAN    2-21-01

49

04:10    1          Q.    In the second paragraph you refer to continuing

2    uncertainty over the proper scope of FTCA coverage.  Do you

3    see that?

4          A.    Uh-huh, yes.

11:04:24    5          Q.    What did you mean by "uncertainty"?  Why were you

6    uncertain?

7          A.    The uncertainty arises from the fact that some of

8    the activities of a health organization may be funded from

9    some source other than the IHS contract.

10               And so the question would arise if a contractor, any

11   contractor with IHS under the Indian Self-Determination Act,

12   obtained a grant from a private organization, or from the

13   state, or from some other source other than the IHS, from some

14   other federal agency, and was providing health care in

15   accordance with its general purpose supplemental to the

16   programs of the Indian Health Service, and a claim arose based

17   on that, the performance of that activity, would it be

18   possible for the United States to say, well, that's not

19   covered by the FTCA because you are not carrying out the

20   contract, you are carrying out this other agreement or grant

21   agreement or whatever, extraneous to the IHS program.

22               So the solution which we recommended was that as

23   long as the IHS had no problem with the activity, and it was

24   truly supplemental to the programs being funded by the IHS,

25   that they refer to them in the contract and identify them

Paradise<>Sherman Realtime Reporting    206-284-7584

EXHIBIT  F
Page 3 of 8

WITNESS:   SIMPSON BOBO DEAN     2-21-01

50

1   perhaps as not being funded by the IHS even though they are

2   part of the contract scope of work.

11:06:08   3        Q.     I understand.  So the uncertainty at this time

4   arose -- uncertainty concerning the scope of the FTCA arose

5   from the fact that BBAHC received funding from sources other

6   than the federal government?

7        A.     Other than the Indian Health Service.

11:06:24   8        Q.     Other than the Indian Health Service?

9        A.     Right.  It could be from another federal agency, it

10   could be from the state, it could be from a private

11   foundation.  These were not major sources of income, but they

12   could result in a major claim depending on the scope of the

13   damage.

11:06:44  14        Q.     Would you have discussed these uncertainties with

15   Lori Wing during one of your telephone conversations?

16        A.     I may have.  I do not recall specifically, but I may

17   well have done that.

11:06:56  18        Q.     Does this, looking at this letter, help refresh your

19   memory perhaps concerning when this meeting you had with Lori

20   Wing occurred?

21        A.     Not really, because the effort that this letter was

22   directed to was to solve the problem by working cooperatively

23   with the IHS, to assure that every activity that BBAHC or any

24   other client of ours that was operating a health program was

25   referenced in the contract, so that the -- so that we could

Paradise<>Sherman Realtime Reporting     206-284-7584

EXHIBIT F

Page 4 of 8

51

1    say we are carrying out the contract even though it's being

2    paid for from some other source.

3              And --

11:07:46  4    Q.    Well, I'm not -- I'm sorry, go ahead.

5    A.    That's all right.  I just don't remember whether

6    these specifics were -- whether I discussed them with Lori

7    Wing or not.

11:07:56  8    Q.    Let me try to narrow the question.  I am not so much

9    referring to your suggestion or your advice concerning how the

10   contract should be modified.  I am referring to the

11   uncertainty concerning the scope of FTCA you referred to.  Is

12   that something you recall discussing with Ms. Wing at this

13   meeting you referred to?

14   A.    I would have probably discussed the need to have

15   some kind of insurance which would protect our client in the

16   event that it was determined that for whatever reason the FTCA

17   did not apply and they were -- that there was some risk.  This

18   uncertainty is one, but there might be other reasons why FTCA

19   might be determined by the United States or by the courts not

20   to be applicable and then what would happen.

21             And the claim would -- could be a very substantial

22   amount.  It could be a death.  And the only money the BBAHC

23   has is the money that it has to provide health services.  So

24   that would cut into -- it might be a couple million dollars

25   that would cut into the money that would otherwise be used to

EXHIBIT F
Page 5 of 8

52

1    provide health care for the natives.  So it would be important

2    to look at the need for other insurance besides the FTCA.  And

3    this would be one of the reasons at that time for there being

4    this uncertainty.

11:09:44    5         Q.    Do you recall any other reasons for such

6    uncertainty?

7         A.    There are limitations in the FTCA statute itself,

8    and I can only speculate about that.  I don't know whether

9    there was discussion about getting insurance that would cover

10   those kinds of limits on FTCA coverage.  But that would be one

11   possibility.

11:10:22  12         Q.    On the second page, sir, you refer to "checkerboard

13   or 'Swiss cheese' coverage."  Do you see that?  It's at the

14   very top.

15        A.    Which?

11:10:30  16         Q.    The first full sentence at the very top of the page,

17   do you see that?

18        A.    Uh-huh.  Yes.

11:10:48  19         Q.    And again, you refer to, you know, this uncertainty,

20   and specifically you state that it would -- I will just read

21   the sentence:  "If FTCA coverage only covers activities

22   actually paid for by IHS, the result is a kind of checkerboard

23   or 'Swiss cheese' coverage which will defeat the Congressional

24   purpose by leaving contractors and their employees uncertain

25   as to the scope of FTCA protection."  Do you see that?

EXHIBIT  F

Page 6 of 8

WITNESS:    SIMPSON BOBO DEAN      2-21-01

94

1    Stewart was on the -- in the meeting by teleconference at

2    least for part of the meeting.

13:35:52  3        Q.    Well, anyway, the first letter, the May 2nd, 2000,

4    letter, Exhibit 20, if you could skip to the second page, page

5    2.  The third paragraph down, there is a sentence there that

6    says, "We understand that the insurance policy applicable in

7    1993 was obtained for the purpose of protecting BBAHC against

8    claims outside the scope of the FTCA and that BBAHC's broker

9    at that time has signed a declaration stating that the premium

10    cost to BBAHC reflected the existence of FTCA coverage."  Do

11    you see that?

12        A.    Yes.

36:34  13        Q.    You wrote that, right?

14        A.    I wrote that, yes.

13:36:44  15        Q.    How did you gain that understanding?

16            MR. STEWART:  That's a compound question.  There is

17    two things stated.

18            MR. DEVLIN:  Let's break it down.  That's okay.

19    That's fair.

13:36:54  20        Q.    The first part, it says that "We understand that the

21    insurance policy applicable in 1993 was obtained for the

22    purpose of protecting BBAHC against claims outside the scope

23    of the FTCA."  How did you gain that -- I mean, that was your

24    understanding at the time, right?

25        A.    Right.  That was my understanding from discussions

Paradise<>Sherman Realtime Reporting    206-284-7584

EXHIBIT F

Page 7 of 8

WITNESS:  SIMPSON BOBO DEAN      2-21-01

95

1    with BBAHC, with -- probably the discussions that I had had

2    with Lori Wing at the time, that the purpose was to make sure

3    that in case the FTCA did not cover something that the -- they

4    were not -- they would not have a loss, that they would be

5    covered by insurance.  That reflects my recollection in 2000

6    of the discussions that took place in 1993.

13:37:44  7        Q.    All right.  So the -- and of course, the policy you

8    are referring to is the Continental policy at issue in this

9    case, right?

10        A.    I think that's correct, yes.

13:37:54  11        Q.    And you gained this understanding from discussions

12    with Lori Wing as well as from people from BBAHC?

13        A.    Yes.  Yes, I would say that.

13:38:10  14        Q.    Through meetings and telephone calls?

15        A.    Not -- but I am talking here about meetings or

16    discussions that we have previously referred to that took

17    place during that period, not immediately prior to writing

18    this letter.

13:38:22  19        Q.    I understand.

20        A.    Right.

13:38:24  21        Q.    But it was during the course of your representation

22    of BBAHC?

23        A.    That's correct.  That's what I understood the

24    purpose was, obtaining insurance.

38:32  25        Q.    The second part of this statement, or the sentence

Paradise<>Sherman Realtime Reporting    206-284-7584


EXHIBIT F
Page 8 of 8