Gary A. Zipkin, Esq.
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, AK  99501
Phone:  (907) 793-2200
Fax:    (907) 793-2299
E-mail: gzipkin@guessrudd.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>vs.<br><br>CNA FINANCIAL CORPORATION<br>AND THE CONTINENTAL<br>CASUALTY COMPANY d/b/a<br>THE CONTINENTAL INSURANCE<br>COMPANY,<br><br>          Defendant. | Case No. 3:98-cv-285-JWS |

REPLY IN SUPPORT OF PETITION FOR
CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b)

Preliminary Statement

The United States opposes Continental's Motion for Certification, contending that none of the three factors for certification of an interlocutory appeal is present in this case. Yet the government's arguments are belied by common sense, as well as by positions taken by the government elsewhere in this same lawsuit.

The government claims that resolution of the bad faith question will not materially advance the termination of this lawsuit.  But the government cannot dispute that Continental has paid the government in full for all it is owed under the policy, except for those damages that might accrue solely from this court's bad faith ruling (i.e., extra-contractual damages and, if imposed, punitive damages).  Continental is faced with the prospect of trying the punitive damages case just to preserve its right to appeal this court's bad faith ruling.  Thus, the entire case at this point turns on final determination of the bad faith issue:  if Continental prevails, there is no further litigation; if the government prevails, there would be no further litigation over extra-contractual damages, and the prospect of a punitive damages trial at that point would certainly make settlement more likely.

Although the government does not acknowledge the logic by which certification would promote the resolution of this case, it certainly must recognize it.  Accordingly, it argues that there are "other" "new" bad faith claims that "this court has never ruled on" which would have to be tried to a jury.  This, of course, is a totally new allegation.  These "new bad faith claims" were never mentioned when the government sought summary judgment of bad faith liability less than a year ago.  They were also never mentioned when the government identified the issues it

sought to try at the upcoming trial. At that time, the government said that the only issue was whether Continental's bad faith -- which had been adjudicated -- warranted punitive damages.

The government further argues that there is no "controlling question of law as to which there is substantial ground for difference of opinion," focusing on the arguments it made (and which succeeded) in persuading this court to grant summary judgment. But that is not the standard -- all cases certified for interlocutory appeal have been ruled upon one way or another. The government avoids the real question by dodging the fact that <u>there have been</u> differences of opinion about the controlling law in this case. <u>This court</u>, at one time, itself viewed Continental's conduct as being appropriate and not in bad faith (Dkt. 115, finding Continental's declination of coverage correct), and at least one Ninth Circuit judge (Judge Kleinfeld) has done the same. To ignore these events -- especially in light of <u>Hillman</u> -- is to ignore the entire thrust of Continental's petition.

Moreover, there are other "substantial grounds for difference of opinion" related to the effect of the government's earlier appeal, and the Ninth Circuit opinion which resulted. For all these reasons, the court should certify an interlocutory appeal as requested by Continental.

Argument

The court is authorized to certify an order for immediate appeal whenever that order involves a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate appeal may advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b).[1]

1. The orders involve controlling questions of law

Although the government is correct that an order is deemed "controlling" only in exceptional circumstances (Opp. at 8), the government's own cited authority goes on to explain that, "at the very least, a controlling question of law must encompass 'every order which, if erroneous, would be reversible error on final appeal.'" In re Cement Antitrust Litigation, 673 F.2d 1020, 1026 (9th Cir. 1982) (citations omitted). There can be no genuine dispute that this court's determination on summary judgment that Continental acted in bad faith as a matter of law

---

[1] Although this standard is well-established, the United States describes it inaccurately when it tells the court that, if an "order is 'subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties (i)t is not appealable.'" The government fails to mention that the case it cites for that proposition involved an appeal from a final judgment under 28 U.S.C. § 1291-- not a interlocutory appeal under 28 U.S.C. § 1292(b). Opp. at 8 (citing Hartford Fire Ins. Co. v. Herrald, 434 F.2d 638 (9th Cir. 1970)). The standards for granting an interlocutory appeal are clear, and satisfied here for the reasons set forth below.

would be reversible on appeal if erroneous, and hence involves a controlling question of law.  <u>See</u> <u>id.</u>; Motion at 4-5 (collecting authorities).

       To attempt to avoid this conclusion, the United States contends that "a ruling in Continental's favor would not <u>end</u> the case" because the United States purportedly "has new and continuing bad faith claims that this court has never ruled on that would still have to be resolved either on summary judgment or by the jury."  Opp. at 3 (underlining in original).  For starters, that misses the point.  An order contains a controlling question of law whenever it would be reversible following a final judgment.  <u>In re Cement Antitrust Litigation</u>, 673 F.2d at 1026; 16 Wright & Miller, Fed. Prac. & Proc., Jurisdiction 2d § 3930 (2005) ("There is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment, either for further proceedings or for a dismissal that might have been ordered without the ensuing district court proceedings.").  Thus, whether or not the United States has the "new and continuing bad faith claims" that it thinks it has, the Orders contain a controlling question of law.  If erroneous, the court's conclusion that Continental acted in bad faith as a matter of law obviously would be reversible.

       In any case, the United States does not have "several bad faith claims pending against Continental" as it contends.

Opp at 9. These "new" claims -- that Continental purportedly acted in bad faith by failing to accept the United States' retender of Kallstrom in 2001 and not paying its policy limits under the Bristol Bay policy immediately after the Ninth Circuit reversed in 2004 (Opp. at 9) -- have never been pleaded or presented as claims in any other fashion, until now. Indeed, just six months ago, the United States represented in a joint status report to the court (which the court required the parties to submit in its 2005 summary judgment ruling) that the only issue left for trial is "[w]hether punitive damages should be awarded against Continental and, if so, in what amount." Dkt. 119 at 1. As far back as June 2002, the court had ruled that "[t]he only remaining claim is the government's claim for punitive damages, which was recently added in an amended complaint." Dkt. 87 at 6. And the government's operative complaint contains no mention of its new claims. Instead, the government pleaded a single bad faith claim that the court addressed on summary judgment. Dkt. 71 at 8 (claim three). The government cannot hope to avoid certification under Section 1292(b) by springing new claims in its opposition brief, on the eve of trial, that it never bothered to plead.[2]

---

[2] Even if the government were to move to amend its complaint to add its "new" claims--which it has not sought leave to do--it could not. The presence of factors such as "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment" militate against granting such leave. Schlacter-Jones v. General Telephone of California, 936 F.2d 435, 443 (9th Cir. 1991) (citation omitted). The government can proffer no explanation for its tactical choice to wait until the eve of a trial (scheduled to cover only punitive damages)--and on the cusp of the discovery
(footnote continued)

I.   THE COURT'S RULINGS ARE SUBJECT TO A SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION

   A.   *Hillman* and The Genuine Dispute Rule Control

   *Hillman* adopted, as a matter of Alaska law, the rule that prevails in many jurisdictions:  Where an insurer's denial of benefits under a policy is reasonable, including when that denial is based on a genuine dispute or a fairly debatable question about whether the insured is entitled to benefits under the policy, the insurer cannot be liable for bad faith.  855 P.2d 1321 (1993).  This principle is sometime referred to as the insurer's "right to be wrong," and is supported by legions of authorities.  It applies here.

   The United States' tender presented novel legal issues that had never before been addressed.  Before this case, <u>no case</u> had ever found anyone -- let alone the United States -- to be an "implied insured" on a general liability policy, and no case had

---

cutoff--to attempt to add new claims.  It knew about its ostensible claim relating to the <u>Kallstrom</u> re-tender in 2001, before it last amended its complaint in 2002, yet never sought leave to add a claim.  It knew about its ostensible non-payment of policy limits claim since 2004, when the Ninth Circuit reversed, yet never sought leave.  This tactical delay alone precludes amendment.  <u>See</u> <u>McGlinchy v. Shell Chemical Co.</u>, 845 F.2d 802, 809 (9th Cir. 1988) (delay of six months after plaintiffs became aware of their new claims before they sought leave to amend precluded amendment).  Coupled with the prejudice Continental would suffer from having new claims sprung just months before trial, the interference with these proceedings amendment would occasion (among other things, discovery would have to be re-opened and trial would have to be bifurcated), and the inherent futility of the claims (among other things, the government has no damages, and "[a]n insurer's failure to pay the 'undisputed amount' of the claim is not bad faith," <u>Aronson v. State Farm Ins. Co.</u>, 2000 WL 667285 *10 (C.D. Ca. 2000)), the government could not possibly add its "new and continuing" claims now, even if it sought leave to do so.

ever held that the United States could obtain reimbursement from an insurer for payments it made pursuant to the Federal Tort Claims Act as an "implied-at-law" insured.  Continental hired outside lawyers who, after performing legal and factual investigations, advised Continental that the United States had no rights under the Bristol Bay policy.  <u>Two judges</u> (at different points in time) later agreed with that conclusion.  There were at least genuine issues as to whether the United States had any rights under the Bristol Bay policy when the United States first tendered.  Under <u>Hillman</u>, that precludes bad faith.  <u>See</u> <u>Aronson</u>, 2000 WL 667285 *12 ("The 'genuine issue' standard, or a similar standard, has been applied with particular force where, as here, the insurance claim presented either a complex or unresolved issue of law in the jurisdiction.").

The United States asserts that "[t]here has never been a court in this case, even in dissent, that has agreed that Continental had the right to reject the tender of the defense." Opp. at 13.  That is incorrect.  <u>This court</u> entered judgment in Continental's favor on all claims in 2003 -- ***including*** the United States' second claim for failure to defend.  Dkt. 116 (judgment), 71 (complaint).  The Ninth Circuit dissent would have <u>affirmed</u> this court's judgment.  Thus, two judges have in fact concluded that Continental had the right to reject the tender of defense. By definition, this reflects "substantial differences of opinion on the tender of defense issue."  Opp. at 13.

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Petition for Certification

Page 8 of 21

The United States also argues that "[t]here simply can be no difference of opinion under insurance law -- Continental was not entitled to deny a defense if the coverage was 'fairly debatable.'" Opp. at 6. That misses the point. Accepting that (as the Ninth Circuit has now ruled) Continental was incorrect in denying a defense, it does <u>not</u> follow that Continental acted in bad faith when it did so. To the contrary, an insurer cannot be liable in bad faith for rejecting a tender -- including a tender seeking both defense and indemnity -- when it has a plausible, good faith belief that the tendering party has no rights under the policy. <u>Hillman</u> and its many sister decisions are uniform on that point. <u>See</u>, e.g., <u>Lunsford</u>, 18 F.3d at 656 (reversing summary judgment for insurer on duty to defend coverage claim but affirming judgment for insurer on bad faith claim under genuine dispute doctrine); <u>Dewitt Construction Inc. v. Charter Oak Fire Ins. Co.</u>, 307 F.3d 1127, 1138 (9th Cir. 2002) (although insurer breached its duty to defend, it was entitled to summary judgment on bad faith claim because insurer's "duty to defend was not unambiguous" and "[t]he policy coverage was unclear in light of legitimate factual and legal issues pertinent to contract interpretation and application") (Washington law); <u>Zurich Ins. Co. v. Killer Music, Inc.</u>, 998 F.2d 674, 680 (9th Cir. 1993) ("Although Zurich breached its duty to defend, breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself.")

(internal quotations omitted) (California law); <u>Nevada VTN v. General Ins. Co. of America</u>, 834 F.2d 770, 777 (9th Cir. 1987) (although insurer breached its duty to defend, "it is not at all clear that [it] violated that duty in bad faith and hence is liable in tort.") (Nevada law).

The United States also repeats this court's distinctions of <u>Hillman</u> when it granted summary judgment against Continental on the bad faith issue. Of course this court decided the matter as it did, hence there is a need by one party to appeal. But the mere fact that this court <u>made</u> distinctions does not speak to whether those distinctions are "substantially debatable." For example, Judge Kleinfeld based his Ninth Circuit dissent on the distinction between casualty and liability insurance whereas this court based its 2003 ruling in Continental's favor on the fact that the Bristol Bay policy "clearly did not embrace risks associated with insuring the United States" (Dkt. 115 at 4). The fact remains, however, that two judges have viewed Continental's rejection as proper (and therefore reasonable), and <u>Hillman</u> should apply.

Respectfully, the court's other distinctions are also subject to significant debate. Under <u>Hillman</u>, the dispositive question is "whether [the insurer's] decision to deny coverage lacked a reasonable basis." 855 P.2d at 1325-26. Indeed, in <u>Hillman</u>, the plaintiff articulated at least ten different reasons

why the insurer acted with subjective bad faith -- including egregious conduct such as denying coverage without making any investigation of the facts or law -- but these all had "little or no relevance" to the reasonableness of the decision to deny coverage.  <u>Id.</u>  This court's distinctions likewise do not bear on the reasonableness of Continental's decision to deny coverage. The court observed in its ruling that Continental relied on the fact that the United States "was not a named insured in the policy" rather than "an express exclusion in the policy," Dkt. 166 at 14-15, but that is immaterial.  The relevant question is whether coverage was fairly debatable or genuinely disputed, not what the precise basis for the genuine dispute was.  See <u>American Casualty Co. of Reading, Pennsylvania v. Krieger</u>, 181 F.3d 1113, 1120-23 (9th Cir. 1999) (insurer's reasonable understanding that appellant was not additional insured under policy precluded bad faith liability in third-party case) (California law); <u>Hanson v. Prudential Ins. Co. of America</u>, 772 F.2d 580, 584 (9th Cir. 1985) (insurer's reasonable understanding that facility where incident occurred was not a covered hospital under policy precluded bad faith under genuine issue rule) (cited in <u>Hillman</u>, 855 P.2d at 1326 n.9).  This court also observed that Continental's interpretation was held to be "incorrect," but that too is immaterial.  The point of the genuine issue as to coverage rule is that insurers are not liable in bad faith merely for being incorrect, as long as they are <u>reasonably</u> incorrect.

This court also observed that Continental "admitted" that it had a duty to defend, if not indemnify, Bristol Bay's employees. But it is undisputed that Continental had a duty to defend Bristol Bay and its employees because they were named insureds. Indeed, it is undisputed that Continental lived up to that duty by appointing defense counsel when the Wilsons sued Bristol Bay in state court. It does not follow that Continental had a duty (or knew it had a duty) to defend a third party not listed in its policy -- the United States -- as an insured even if Bristol Bay's employees might be "deemed" U.S. employees for certain purposes (such as under the FTCA). The legal fiction of treating one's employees as the employees of another for certain limited purposes and thereby bringing the unnamed entity within the scope of a general liability insurance policy was itself a novel issue subject to debate, at a minimum.

Lastly, this court faulted Continental for asserting "that the subjective intent of Continental and BBAHC was to exclude coverage for those acts that would fall within the FTCA." Id. As set forth in the footnote that follows, Continental believes the testimony adduced from both contracting parties shows that was in fact the parties' subjective intent -- at the least, it was not unreasonable for Continental to assert as much.[3] But in any case, this is irrelevant. Continental

---

[3] Declaration of Lori Wing (Bristol Bay's broker) dated December 1, 1998, ¶¶ 6, 8, Declaration of Gary Zipkin dated February 13, 2006, Ex. A:
(footnote continued)

rejected the United States' tender because the United States was not listed as an insured and it reasonably believed (and persuaded two judges) that the doctrine of implied insurance did

---

> BBAHC and its counsel instructed us specifically that BBAHC did not desire insurance coverage that would duplicate protection from liabilities provided by the United States under Section 638 and the FTCA. . . . We conveyed all of this information, including the written memoranda from BBAHC's counsel, to Continental Insurance Company's underwriters, to assist them in assessing and underwriting BBAHC's risks.

Deposition of Lori Wing (Bristol Bay's broker) dated November 30, 1999 ("Wing Tr."), at 80:13-17, 100:2-101:21, 116:16-25, 117:20-118:9, Zipkin Dec. Ex. B (in purchasing insurance on Bristol Bay's behalf, "[w]e did not want to duplicate what the Federal Tort Claim Act was providing. But we wanted to -- what the Federal Tort claims Act was not providing, that is what we wanted to insure"; Bristol Bay's outside counsel explained to Wing and Robert Clark that the FTCA would not cover all potential liability claims against Bristol Bay, and Clark specifically instructed Wing that Bristol Bay did not want to duplicate FTCA coverage); Deposition of Robert Clark (Bristol Bay's CEO) dated January 11, 2001 at 27:2-13, 82:21-83:2, 94:5-7, 94:15-18, 108:5-110:2, Zipkin Dec. Ex. C (the statutory amendments providing FTCA coverage were new, and Bristol Bay was uncertain what exactly was covered, so it wanted to purchase "supplemental and other insurance" to make sure it was protected; Bristol Bay's "goal is to get private insurance, but not so much private insurance that you're duplicating what you'd have under the FTCA," and it "bought insurance to be a supplement to, and kind of an over layer or something different than the government's insurance"); Deposition of Darrel Richardson (Bristol Bay's COO) dated January 10, 2001, at 52:20-60:25, Zipkin Dec. Ex. D (same); Deposition of Liz Hartshorn (Bristol Bay's CFO) dated January 12, 2001, at 60:19-62:16, Zipkin Dec. Ex. E (Hartshorn wanted insurance that would not duplicate FTCA coverage); Deposition of Simpson Bobo Dean (Bristol Bay's outside counsel) dated February 21, 2001 at 48:8-52:11, 94:3-95:24, Zipkin Dec. Ex. F (Dean advised Wing that it was uncertain what the FTCA would cover and that Bristol Bay needed "some kind of insurance which would protect [it] in the event it was determined that for whatever reason the FTCA did not apply"; Dean understood that Continental's policy "was obtained for the purpose of protecting BBAHC against claims outside the scope of the FTCA"); Deposition of Debra Wyatt Brown (a Continental underwriter) dated April 5, 2000 at 38:15-39:10, 161:15-21, 172:6-173:18, 186:2-9, Zipkin Dec. Ex. G (as the underwriter of the policy, Brown did not intend to provide general liability coverage where the FTCA provided coverage; rather, the policy was intended, and Brown and Wing agreed, that Continental would only provide coverage when Bristol Bay's employees were acting in a capacity that would not be covered by the FTCA, such as "when the insured were performing services funded by the State of Alaska"); Deposition of Sally Padgitt (a Continental underwriter) dated April 3, 2000, at 51:16-55:19, Zipkin Dec. Ex. H (the Bristol Bay policy was not designed to "cover any risks that fell under the FTCA"); Deposition of William Hutson (Continental's claims handler) dated April 7, 2000, at 29:12-30:13, Zipkin Dec. Ex. I ("We knew our policy was intended to only cover those nonfederally funded programs. And they only cover state-funded programs for general liability.").

not apply.  That is literally all that matters.  Any purported collateral bad acts, such as purportedly inappropriate litigation assertions, are irrelevant to the protections afforded by <u>Hillman</u>.

Accordingly, there undoubtedly are substantial grounds for differences of opinion as to the court's application of <u>Hillman</u>, its decision not to grant Continental summary judgment on the bad faith claim, and its decision to find for the government on that claim as a matter of law.

    A.   <u>The United States waived its bad faith claim</u>.

A second ruling which provides substantial grounds for a difference of opinion is this court's ruling regarding the scope of the Ninth Circuit's mandate.  There is no dispute that the United States did not appeal this court's earlier ruling in Continental's favor on bad faith, and indeed explicitly declared on appeal that its "bad faith claim is not at issue."  Br. for Appellant in No. 03-35446 (9th Cir.) (filed October 9, 2003) at 13 n.10.  The only dispute is whether it <u>could have</u> done so -- according to the United States, "[t]his court never reached the issue of bad faith for there to be an issue that the United States could have appealed to the Ninth Circuit."  Opp. at 11.  That is untrue.  In 2003, the court granted Continental summary judgment on all claims stated by the United States and entered a

final judgment in Continental's favor. Dkt. 115, 116. Since the court entered judgment on all claims in Continental's favor, *a fortiori,* the court entered judgment on the United States' third and fourth claims for bad faith and breach of the covenant of good faith and fair dealing, as pleaded in the Second Amended Complaint. Dkt. 71. The United States has never cited any authority for its contention that, even though the court entered judgment against the government on its bad faith claim, it somehow could not appeal that claim. It could have, and the Ninth Circuit has previously affirmed on bad faith under the genuine dispute doctrine in precisely analogous circumstances. <u>See</u> <u>Lunsford v. American Guarantee & Liability Ins. Co.</u>, 18 F.3d 653, 656 (9th Cir. 1994) (where, as here, (1) the district court granted summary judgment on all claims, including the bad faith claim, ruling that there was no coverage but without directly addressing the claim for bad faith, (2) insured appealed on all claims, and (3) the Ninth Circuit reversed on coverage holding that insurer owed duty to defend, (4) the Ninth Circuit nonetheless affirmed on bad faith because insurer based its refusal to defend on "a reasonable construction of the policy"). The government's tactical choice not to appeal when it could have, and the waste and delay that choice occasioned, yielded a waiver.

    B.    The court's 2001 summary judgment <u>ruling was not law of the case</u>.

The third ruling that provides substantial ground for difference of opinion is this court's order on the effective scope of its prior summary judgment ruling in Continental's favor after the Ninth Circuit appeal. Here as well, there is no dispute as to what actually happened: the court "held that the Ninth Circuit's decision on October 20, 2004 returned this case to its status before the court's ruling at Docket 115," and reviewed its original 2001 summary judgment ruling for clear error or manifest injustice under the strictures of the law of the case doctrine. Opp. at 11; Dkt. 166 at 10-12. The only dispute is whether the court's deference to its 2001 ruling was proper. Under Vanhorn, it was not. United States v. Vanhorn, 344 F.3d 729 (8th Cir. 2003). The application of Vanhorn to this case is well within the parameters of being "substantial grounds for a difference of opinion."

Vanhorn is virtually on all fours with this case. In both cases, the trial court issued an initial order (here, the court's 2001 ruling on bad faith, and in Vanhorn the court's order establishing a particular payment schedule for restitution payments) and subsequently vacated that initial order in a second order. On appeal in both cases, the Court of Appeals reversed the trial court's second order without considering the merits of the first order. Just as in Vanhorn "the previously vacated payment schedule [i.e., the initial order] is not the law of this case because we did not reinstate that order or consider its

merits," the court's initial 2001 bad faith ruling was not law of the case post-remand because the Ninth Circuit did not reinstate that order or consider its merits.  344 F.3d at 731-32.

Although it purports to distinguish <u>Vanhorn</u>, the government's analysis does not diverge.  Opp. at 11 (describing <u>Vanhorn</u>: "the payment schedule previously vacated did not become law of the case because the appellate court did not reinstate it").  Instead, the government vaguely asserts that the district court in <u>Vanhorn</u> was somehow limited in a way that the court was not.  Yet in both cases, the Court of Appeals reversed the district court's order vacating its prior order without providing specific instructions as to the effect of the prior order.  <u>Compare</u> <u>United States v. CNA Financial Corp.</u>, 113 Fed. Appx. 205 (9th Cir. 2004), <u>with</u> <u>United States v. Vanhorn</u>, 296 F.3d 713, 721 (8th Cir. 2002).  The government's contention that the Eighth Circuit in <u>Vanhorn</u> imposed a "restriction . . . regarding the law of the case that had been previously established by the district court" that the Ninth Circuit did not impose here simply does not exist in the text of the case.  Opp. at 12.

2. An immediate appeal likely would materially <u>advance the ultimate termination of the litigation</u>.

This factor also favors certification.  Continental is being forced to try the punitive damages case simply to preserve its right to appeal from this court's summary judgment order

against it on the bad faith issue.  Even if a plaintiff "will be prejudiced by further delays" -- and the United States has not shown that it will be prejudiced in any way if the court grants Continental's petition -- this criterion is still satisfied because "[a]n immediate appeal would conserve judicial resources and spare the parties from possibly needless expense if it should turn out that this court's rulings are reversed."  <u>APPC Services Inc. v. Sprint Communications Co.</u>, 297 F. Supp. 2d 90, 100 (D.D.C. 2003).  There can be no doubt that a reversal of the court's order granting the United States summary judgment of bad faith liability would vitiate any punitive damages ruling for the United States at the upcoming trial.  There are no "new and continuing issues of bad faith not yet resolved by the contested orders" (Opp. at 14), and, even if there were, that does not diminish the importance of the existing bad faith Orders.  The Orders are dispositive, substantially debatable, and present issues of law that will be reviewed <u>de novo</u>.  The court should give the Ninth Circuit the opportunity to review the Orders now, without further delay and expense.

## Conclusion

　　　　For the foregoing reasons, the court should grant Continental's petition in its entirety.

DATED at Anchorage, Alaska, this 13th day of February, 2006.

>GUESS & RUDD P.C.
>Attorneys for Defendants
>
>By: _____S/Gary A. Zipkin_____
>      Guess & Rudd P.C.
>      510 L Street, Suite 700
>      Anchorage, Alaska  99501
>      Phone: 907-793-2200
>      Fax:   907-793-2299
>      Email: gzipkin@guessrudd.com
>      Alaska Bar No. 7505048
>
>QUINN EMANUEL URQUHART
>   OLIVER & HEDGES, LLP
>Attorneys for Defendants
>
>By: ___S/A. William Urquhart___
>      Quinn Emanuel Urquhart
>         Oliver & Hedges, LLP
>      865 South Figueroa
>      Street, 10th Floor
>      Los Angeles, CA  90017
>      Phone: 1-213-443-3000
>      Fax:   1-213-443-3100
>      Email:
>      billurquhart@quinnemanuel.com

F:\data\6024\1\pleading\42 reply certif.DOC

<u>CERTIFICATE OF SERVICE</u>
I hereby certify that on the
13th day of February, 2006, a copy
of the foregoing document was served
electronically on:

Richard L. Pomeroy, Esq.
A. William Urquhart, Esq.

Guess & Rudd P.C.


By:   S/Gary A. Zipkin