```
 1              IN THE UNITED STATES DISTRICT COURT
 2                  FOR THE DISTRICT OF ALASKA
 3   _____
 4   UNITED STATES OF AMERICA,            )
                                          )
 5            Plaintiff,                  )      ORIGINAL
                                          )
 6       vs.                              )
                                          )
 7   CNA FINANCIAL CORPORATION, et al.,   )   CORRECTION SHEET:
                                          ) ☒ Signature waived/time expired
 8            Defendants.                 ) ☐ Signature waived
                                          ) ☐ Signed/dated/no corrections made
 9   Case No. A98-285 CV (JWS)              ☐ Signed/dated/corrections made
     _____
10
11              DEPOSITION OF DARREL RICHARDSON
12   _____
13              Pages 1 - 114, inclusive
14            Wednesday, January 10, 2001
                       11:10 A.M.
15
16         Taken by Counsel for Defendants
                          at
17         Bristol Bay Area Health Corporation
                  6000 Kanakanak Road
18                 Dillingham, Alaska
19
20
21
22
23
24
25
```

PACIFIC RIM REPORTING   907/272-4383
www.courtreportingalaska.com



EXHIBIT  D
Page  1  of  10

| | | |
|---|---|---|
| 12:43:15 | 1 | A. No, I don't recall a specific time, no. |
| 12:43:20 | 2 | Q. Do you recall having any such discussions with |
| 12:43:24 | 3 | Ms. Wing regarding the FTCA, prior to September 1993? |
| 12:43:41 | 4 | A. I can't remember a specific date, so I can't |
| 12:43:44 | 5 | really answer you. I can't remember whether it would |
| 12:43:50 | 6 | have been before or after, but I have had discussions. |
| 12:43:53 | 7 | Q. So, you can't say you didn't have any |
| 12:43:56 | 8 | discussions with her regarding the FTCA prior to |
| 12:44:00 | 9 | September 1993, correct? |
| 12:44:03 | 10 | A. I'm sorry, no, I can't say that I haven't. I |
| 12:44:07 | 11 | can't say that I have, either one. I've had |
| 12:44:13 | 12 | discussions, but not -- I can't identify the date. |
| 12:44:16 | 13 | Q. Do you recall the substance of these |
| 12:44:19 | 14 | discussions? Strike that. Let me back up a second. |
| 12:44:24 | 15 | Were any of these discussions about the scope |
| 12:44:30 | 16 | of coverage of BBAHC under the FTCA? |
| 12:44:35 | 17 | A. In general terms, yes. |
| 12:44:39 | 18 | Q. What do you mean when you say "in general |
| 12:44:40 | 19 | terms"? |
| 12:44:41 | 20 | A. Well, having come from the private sector, I |
| 12:44:47 | 21 | was totally unfamiliar with FTCA, and so I asked a |
| 12:44:53 | 22 | number of people, Ms. Wing as well as others, questions |
| 12:44:57 | 23 | about it so that I could try to understand it better. I |
| 12:45:05 | 24 | know that in discussions with Ms. Wing, I have expressed |
| 12:45:10 | 25 | concern about the breadth of coverage of FTCA, about was |

| Time | Line | |
|---|---|---|
| 12:45:19 | 1 | it adequate coverage, because I wanted to ensure, or to |
| 12:45:30 | 2 | ensure as much as possible, that BBAHC had insurance |
| 12:45:36 | 3 | coverage across the breadth. And I had, what I |
| 12:45:41 | 4 | understood of FTCA, is that there were gaps or holes, or |
| 12:45:45 | 5 | at least potential gaps and holes, that I wanted to be |
| 12:45:48 | 6 | covered by private insurance. So, in that general |
| 12:45:55 | 7 | regard I've had discussions. |
| 12:46:22 | 8 | Q. Do you recall what Ms. Wing told you during |
| 12:46:27 | 9 | your discussions concerning these gaps or holes in |
| 12:46:32 | 10 | insurance coverage under the FTCA? |
| 12:46:40 | 11 | A. I can't remember whether I got it from Ms. Wing |
| 12:46:43 | 12 | or other people I may have talked to. So I'd have to |
| 12:46:46 | 13 | answer your question no. |
| 12:46:48 | 14 | Q. Okay. |
| 12:46:50 | 15 | These other people that you talked to regarding |
| 12:46:54 | 16 | this subject, the gaps or holes in FTCA coverage, would |
| 12:47:01 | 17 | that group include a man named Bobo Dean? |
| 12:47:06 | 18 | A. Yes. |
| 12:47:07 | 19 | Q. And who is Bobo Dean? |
| 12:47:11 | 20 | A. It's S. Bobo Dean. |
| 12:47:14 | 21 | Q. Oh, sorry. |
| 12:47:15 | 22 | A. But I forget what his first name is. But he is |
| 12:47:21 | 23 | legal counsel to BBAHC, with the firm of Hobbs, Straus, |
| 12:47:28 | 24 | Dean & Walker, in Washington, D.C. |
| 12:47:32 | 25 | Q. Did you ever provide information that Mr. Dean |

54

```
12:47:36   1    gave you, regarding the scope of FTCA coverage, to
12:47:43   2    Ms. Wing?
12:47:45   3         A.   I personally did not, no.
12:47:47   4         Q.   Do you know of anybody else who did?
12:47:51   5         A.   Again, I don't know.  I've heard that.
12:47:58   6         Q.   I'm sorry?
12:48:00   7         A.   I've heard that, but I do not know.
12:48:02   8         Q.   You've heard what?
12:48:03   9         A.   That there may have been a letter that -- or I
12:48:08  10    shouldn't say letter.
12:48:09  11         Q.   A memorandum?
12:48:11  12         A.   Yeah.  Yeah, I'm sorry, yes.
12:48:17  13         Q.   It was a memorandum from Mr. Dean's firm that
12:48:20  14    was provided to Ms. Wing through BBAHC personnel?
12:48:24  15         A.   It's absolutely pure hearsay, so I can't answer
12:48:29  16    whether that did or didn't occur.  That's hearsay on my
12:48:32  17    part.
12:48:34  18         Q.   Who did you hear that from?
12:48:34  19         A.   I can't even remember at this point.
12:48:36  20         Q.   Okay.
12:48:57  21              Regarding your understanding that there were --
12:49:04  22    or concern that there were gaps or holes in FTCA
12:49:07  23    coverage of BBAHC, I understand you don't recall exactly
12:49:12  24    where you gained this understanding, but what is your
12:49:18  25    understanding in that regard?
```

| | | |
|---|---|---|
| 12:49:21 | 1 | MR. STEWART: Well, I'm going to offer a |
| 12:49:25 | 2 | cautionary objection. And it is this: That legal |
| 12:49:32 | 3 | opinions have been provided to BBAHC, Mr. Richardson |
| 12:49:37 | 4 | would have been privy to them, by both the Hobbs Straus |
| 12:49:41 | 5 | firm and my firm, Davis Wright. Certain of those |
| 12:49:45 | 6 | opinions, and I think you're aware simply from discovery |
| 12:49:48 | 7 | in this matter, have been the subject of discussion with |
| 12:49:52 | 8 | insurance brokers, for example, others, third parties, |
| 12:49:56 | 9 | and so they certainly would not be privileged today. |
| 12:50:01 | 10 | The scope of coverage under the FTCA, however, |
| 12:50:04 | 11 | continues to be a current concern for this organization |
| 12:50:09 | 12 | and are current subject to dialogue, and certainly some |
| 12:50:13 | 13 | of that has not been shared with third parties. And so |
| 12:50:18 | 14 | there probably are discussions that have been had with |
| 12:50:22 | 15 | counsel which are no longer privileged, and others which |
| 12:50:26 | 16 | are privileged. |
| 12:50:27 | 17 | So, I want you to be able to engage in some |
| 12:50:30 | 18 | discovery here. I'm not going to jump in and tell him |
| 12:50:34 | 19 | he can't answer the question, period, but I think the |
| 12:50:36 | 20 | witness needs to be mindful of that distinction where |
| 12:50:41 | 21 | there's been counsel and advice and then it's been |
| 12:50:43 | 22 | shared with the world at large, that certainly isn't. |
| 12:50:47 | 23 | Where there's perhaps current issues, those remain |
| 12:50:51 | 24 | subject to privilege. |
| 12:50:52 | 25 | MR. DEVLIN: Would it make things easier if I |

```
12:50:55  1   limit my question to his understanding?
12:51:02  2           MR. STEWART:  I think you can go with your
12:51:03  3   question as it is, and I'll certainly go on record that
12:51:09  4   I want him to answer it, but I think as long as there's
12:51:12  5   a common understanding that the purpose for the answer
12:51:15  6   is not to waive any extant privilege as it exists today.
12:51:19  7           MR. DEVLIN:  I understand.  I'm trying to craft
12:51:23  8   this --
12:51:24  9           MR. STEWART:  If we all agree it isn't going to
12:51:25 10   be a waiver, it isn't going to be a waiver.
         11           MR. DEVLIN:  Okay.
         12           MR. STEWART:  Mr. Pomeroy?
12:51:29 13           MR. POMEROY:  Fully understood.
12:51:32 14           MR. STEWART:  Agreed?
12:51:33 15           MR. POMEROY:  Agreed.
12:51:34 16   BY MR. DEVLIN:
12:51:34 17       Q.  All right.  Well, then, maybe you need to have
12:51:36 18   the question read back.
12:51:37 19       A.  I was going to ask for that.
12:52:09 20   (Record read.)
12:52:11 21           THE WITNESS:  Well, I was aware that
12:52:20 22   intentional torts was an area that wouldn't be covered.
12:52:26 23   I think one of the things that -- well, no.  I think.
12:52:31 24   One of the things that concerned me about FTCA coverage
12:52:36 25   was that it appeared to me that they were the determiner
```

| | | |
|---|---|---|
| 12:52:40 | 1 | of whether there was coverage or not. |
| | 2 | BY MR. DEVLIN: |
| 12:52:42 | 3 | Q.   They, being the U.S.? |
| 12:52:44 | 4 | A.   The U.S. |
| 12:52:47 | 5 | And a good portion of my concern was, while the |
| 12:52:55 | 6 | U.S. was trying to determine whether they were or not |
| 12:52:59 | 7 | covering, you know, whatever situation, there were |
| 12:53:04 | 8 | obligations that needed to be met within certain time |
| 12:53:08 | 9 | frames.  And defense costs might be incurred before the |
| 12:53:17 | 10 | U.S. ever decided whether it did or didn't cover. |
| 12:53:21 | 11 | So, I was concerned twofold, I suppose, of what |
| 12:53:27 | 12 | about those things that needed to be done legally, and |
| 12:53:30 | 13 | the cost of them prior to their determination; and then |
| 12:53:34 | 14 | secondly, what if they determined they wouldn't cover? |
| 12:53:39 | 15 | So I had concerns about making sure we had -- to me, |
| 12:53:47 | 16 | that's the holes, the gaps that I'm talking about.  That |
| 12:53:50 | 17 | we had some other layer of insurance available to us in |
| 12:53:54 | 18 | that event. |
| 12:54:08 | 19 | Q.   So, it was your understanding that these gaps |
| 12:54:13 | 20 | or holes in FTCA coverage of BBAHC would occur in two |
| 12:54:19 | 21 | events.  One, if there were defense costs incurred or |
| 12:54:24 | 22 | things, you know, that needed to be done while the U.S. |
| 12:54:27 | 23 | was deciding whether or not there was FTCA coverage, |
| 12:54:31 | 24 | right? |
| 12:54:32 | 25 | A.   Correct. |

58

```
12:54:33  1         Q.   And two, in situations where the U.S. may just
12:54:38  2    say, "Hey, there is no FTCA coverage, you're on your
12:54:41  3    own."  Correct?  Those are the two types of situations?
12:54:45  4              MR. STEWART:  And intentional torts.
12:54:47  5              THE WITNESS:  Yeah, I was going to add, the
12:54:49  6    intentional torts.  That sort of goes along with the
12:54:54  7    second one.  And I'll explain just a little bit.
12:54:59  8    BY MR. DEVLIN:
12:54:59  9         Q.   Sure.
12:55:00 10         A.   This is hearsay.  But I had a physician on
12:55:03 11    staff who told me that he had a relative that had been
12:55:10 12    sued, I think it was for breach of confidentiality, who
12:55:14 13    was an IHS physician, and that the feds had refused to
12:55:20 14    defend him on the basis that that was an intentional
12:55:25 15    tort, and therefore that person ended up having to
12:55:30 16    defend it himself, you know, without any coverage.  And
12:55:39 17    bear the cost himself.  I do not know whether that was
12:55:42 18    true or not true, but it caused me concern.
12:55:47 19              So -- because, to me, an intentional tort,
12:55:54 20    while I realize many policies exclude intentional torts,
12:55:58 21    on the other hand, defending -- I mean, just because
12:56:01 22    you're accused doesn't mean you're guilty.  And
12:56:04 23    defending, you know, an intentional tort was something I
12:56:08 24    was concerned about.
12:56:14 25         Q.   So, then, the whole possible area of
```

59

```
12:56:20   1    intentional tort lawsuits falls within the second gap or
12:56:25   2    hole in FTCA coverage that you were concerned about, and
12:56:28   3    that is a situation where the United States would just
12:56:30   4    say not covered by the FTCA, right?
12:56:34   5         A.   Correct.
12:56:34   6         Q.   All right.
12:56:34   7              Let's talk about that second gap or hole that
12:56:39   8    you were concerned about.  Leave aside the concern that
12:56:45   9    you'd have to spend money or incur costs in defending
12:56:51  10    while the U.S. was deciding whether or not there was
12:56:53  11    coverage.
12:56:54  12              Now, I just want to talk about the area where
12:56:56  13    the U.S. would just say, sorry, no coverage.  All right?
12:56:58  14         A.   Uh-huh.  Yes.
12:57:01  15         Q.   You mentioned one area and that was intentional
12:57:03  16    torts, that you can think of.
12:57:05  17              Did you have any understanding concerning FTCA
12:57:15  18    coverage in the context of different programs that are
12:57:20  19    carried out here at BBAHC?
12:57:26  20         A.   Yes, and probably this would add an additional
12:57:33  21    concern.  My understanding is that FTCA coverage
12:57:38  22    extended to, quote, the scope of work, unquote, that we
12:57:45  23    had with the Indian Health Service.  So, I had concerns
12:57:52  24    about, was everything that we did covered by that scope
12:57:57  25    of work?
```

60

| | | |
|---|---|---|
| 12:58:02 | 1 | Again, I know that our medical staff, at least |
| 12:58:09 | 2 | a portion of our medical staff, had concerns about |
| 12:58:12 | 3 | specifically the home health program, as to whether or |
| 12:58:14 | 4 | not that was covered. |
| 12:58:15 | 5 | Q.   What's the home health program? |
| 12:58:17 | 6 | A.   That's the nursing program that provides home |
| 12:58:27 | 7 | visits to patients under a physician's care, under a |
| 12:58:32 | 8 | physician's order. |
| 12:58:34 | 9 | Q.   And the concern was because they were going to |
| 12:58:38 | 10 | different folks' homes, away from this facility, that it |
| 12:58:41 | 11 | might not be covered?  Is that -- by the FTCA? |
| 12:58:45 | 12 | A.   Personally, I felt that we were covered by |
| 12:58:48 | 13 | FTCA, because it was listed, as I recall, in our scope |
| 12:58:54 | 14 | of work.  What I'm trying to say is that, but I know |
| 12:58:57 | 15 | that we had physicians that were on staff that were |
| 12:58:59 | 16 | concerned about it. |
| 12:59:00 | 17 | And so, while I believed we were covered, it's |
| 12:59:06 | 18 | just a concern -- I'm trying to use that as an example |
| 12:59:11 | 19 | of a concern about were there things that FTCA would not |
| 12:59:17 | 20 | cover because they were beyond or -- beyond the scope of |
| 12:59:24 | 21 | the service that we had as a contractual relationship |
| 12:59:27 | 22 | with IHS. |
| 12:59:48 | 23 | Q.   You've referred to IHS now a couple times. |
| 12:59:52 | 24 | Could you tell us what that stands for, please. |
| 12:59:52 | 25 | A.   I'm sorry.  Indian Health Service. |



EXHIBIT D
Page 10 of 10