Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,  )
           Plaintiff,      )
                           )
vs.                        )
                           )
CNA FINANCIAL CORPORATION, et al.,
                           )
           Defendants.     )

Case No. A98-285 CV (JWS)

**ORIGINAL**

CORRECTION SHEET:
☒ Signature waived/time expired
☐ Signature waived
☐ Signed/dated/no corrections made
☐ Signed/dated/corrections made

DEPOSITION OF LIZ HARTSHORN

Friday, January 12, 2001
9:30 a.m.

Taken by Counsel for Defendants
at
Davis Wright Tremaine
701 West Eighth Avenue, Suite 800
Anchorage, Alaska

PACIFIC RIM REPORTING 907/272-4383
www.courtreportingalaska.com

EXHIBIT E
Page 1 of 4

Page 60

1   Q.   (BY MR. DEVLIN) I'm trying to develop
2   this kind of deadpan delivery that Mr. Stewart
3   has. Apparently it's working - not.
4        And once the financial statements were
5   prepared, you would have been the person who
6   would have provided it, along with this
7   application, or these applications, these types
8   of applications, each year?
9   A.   I believe so.
10  Q.   All right. Do you recall ever not
11  providing a financial statement?
12  A.   If they asked for a financial statement,
13  I would provide it. If they did not ask for a
14  financial statement, I would not provide it.
15  Q.   By the way, do you know who took over
16  for you after you stopped being the CFO at BBAHC?
17  A.   I don't know exactly how the chain of
18  command went after that.
19  Q.   We talked earlier about the fact that
20  the concerns regarding FTCA coverage, as
21  expressed in Exhibit A, the July 3, 1991 letter,
22  was something that you considered when working
23  with Ms. Wing regarding how much outside
24  insurance to buy. Right?
25  A.   Correct.

Page 61

1   Q.   Okay. How did the scope of coverage of
2   the FTCA affect your decision concerning how much
3   outside insurance to get?
4   A.   How did it affect it?
5   Q.   Yes, ma'am.
6   A.   Significantly.
7   Q.   In what way? The amount that you
8   bought? Or, in what way did it significantly
9   affect your decision?
10  A.   Trying to figure out what FTCA meant;
11  and were there risks that were not covered, by
12  FTCA, that we needed to have covered. Very
13  similar to the July 3rd, 1991 letter. Those were
14  our concerns.
15  Q.   Do you ever recall a time when you no
16  longer had the concerns about the scope of
17  coverage of the FTCA, as expressed in the
18  July 3rd, 1991 letter?
19  A.   No.
20       Well, actually, can I restate that? Can
21  I have the question repeated to me, just to make
22  sure I'm answering the question right?
23  Q.   Of course.
24  (Record read)
25  A.   No.

Page 62

```
 1      Q.    If you had these concerns about the
 2   scope of coverage, FTCA coverage, why didn't you
 3   just buy insurance that would cover everything
 4   from a private insurer?
 5            MR. STEWART:  Objection.  Counsel, that
 6   assumes facts not in evidence.  The question of
 7   "why didn't you just buy insurance that covers
 8   everything?" assumes that that wasn't in fact
 9   what they ended up doing.
10      Q.    (BY MR. DEVLIN) Did you intend to buy
11   insurance, private insurance, that would cover
12   risks also covered by the FTCA?
13      A.    No.
14      Q.    Why not?
15      A.    Because the FTCA coverage would cover
16   it.
17      Q.    But just to be sure, why didn't you just
18   buy insurance, private insurance, that would
19   cover, you know, everything?
20            MR. STEWART:  Same objection, Counsel.
21   Your question is now shifting from intent to the
22   actual purchase.
23            The first question was:  What did you
24   do?  And your next question was:  What did you
25   intend to do?  Now you're back to:  What did you
```