
```
                                                                    1

 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF ALASKA

 3       ----------------------------------------------

 4   UNITED STATES OF AMERICA,       )

 5               Plaintiff,          )

 6       vs.                         )   Case No. A98-285 CV (JWS)

 7   THE CONTINENTAL CASUALTY        )

 8   COMPANY d/b/a THE CONTINENTAL   )

 9   INSURANCE COMPANY,              )

10               Defendant.          )

11       ----------------------------------------------

12              DEPOSITION UPON ORAL EXAMINATION

13                            OF

14                    SIMPSON BOBO DEAN

15       ----------------------------------------------

16                       9:30 a.m.

17                   February 21, 2001

18              1420 Fifth Avenue, Suite 4100

19                   Seattle, Washington

20

21

22

23

24   Leslie Sherman, CSR, RMR, CRR

25   Court Reporter Ref. # SH-ER-ML-M462KP
```

Stamps: RECEIVED MAR 0 5 2001; LANE POWELL SPEARS LUBERSKY  TIME JS/S  ATTY yor; COPY

Paradise<>Sherman Realtime Reporting    206-284-7584



EXHIBIT F
Page 1 of 8

|   |   |
|---|---|
| 1 | A. Basically at the -- probably at the end of the Bush |
| 2 | administration. He was during the Reagan and Bush |
| 3 | administration. |
| 11:02:12  4 | Q. He was a Bush administration -- |
| 5 | A. Right, talking about Bush 1. Dr. Trujillo was |
| 6 | director during most of the Clinton period. It took a while, |
| 7 | I think, to replace Dr. Rhoades. |
| 11:02:30  8 | Q. What was your purpose in sending this letter to Dr. |
| 9 | Rhoades? |
| 10 | A. It was to assure that there could be a -- there |
| 11 | would be cooperation by the Indian Health Service with |
| 12 | addressing the issue of the possibility that an activity that |
| 13 | an Indian tribe or a tribal organization -- consortium like |
| 14 | Bristol Bay was carrying on and might give rise to a claim |
| 15 | wasn't covered by the FTCA because it wasn't part of the scope |
| 16 | of work of the contract, and it was -- as the letter explains, |
| 17 | it was providing reasons why the IHS should cooperate to carry |
| 18 | out the purpose of Congress in assuring FTCA coverage for the |
| 19 | activities that these health offerings were carrying on. |
| 11:03:32 20 | Q. You sent this letter on behalf of BBAHC? |
| 21 | A. It appears that it is, because it says so in the |
| 22 | first sentence. |
| 11:03:50 23 | Q. Is it accurate to say, then, that this letter was |
| 24 | sent after the second extension of the FTCA? |
| 25 | A. Yes. |

| | | |
|---|---|---|
| 04:10 | 1 | Q. In the second paragraph you refer to continuing |
| | 2 | uncertainty over the proper scope of FTCA coverage. Do you |
| | 3 | see that? |
| | 4 | A. Uh-huh, yes. |
| 11:04:24 | 5 | Q. What did you mean by "uncertainty"? Why were you |
| | 6 | uncertain? |
| | 7 | A. The uncertainty arises from the fact that some of |
| | 8 | the activities of a health organization may be funded from |
| | 9 | some source other than the IHS contract. |
| | 10 | And so the question would arise if a contractor, any |
| | 11 | contractor with IHS under the Indian Self-Determination Act, |
| | 12 | obtained a grant from a private organization, or from the |
| | 13 | state, or from some other source other than the IHS, from some |
| | 14 | other federal agency, and was providing health care in |
| | 15 | accordance with its general purpose supplemental to the |
| | 16 | programs of the Indian Health Service, and a claim arose based |
| | 17 | on that, the performance of that activity, would it be |
| | 18 | possible for the United States to say, well, that's not |
| | 19 | covered by the FTCA because you are not carrying out the |
| | 20 | contract, you are carrying out this other agreement or grant |
| | 21 | agreement or whatever, extraneous to the IHS program. |
| | 22 | So the solution which we recommended was that as |
| | 23 | long as the IHS had no problem with the activity, and it was |
| | 24 | truly supplemental to the programs being funded by the IHS, |
| | 25 | that they refer to them in the contract and identify them |

```
                1   perhaps as not being funded by the IHS even though they are
                2   part of the contract scope of work.
11:06:08        3        Q.   I understand.  So the uncertainty at this time
                4   arose -- uncertainty concerning the scope of the FTCA arose
                5   from the fact that BBAHC received funding from sources other
                6   than the federal government?
                7        A.   Other than the Indian Health Service.
11:06:24        8        Q.   Other than the Indian Health Service?
                9        A.   Right.  It could be from another federal agency, it
               10   could be from the state, it could be from a private
               11   foundation.  These were not major sources of income, but they
               12   could result in a major claim depending on the scope of the
               13   damage.
11:06:44       14        Q.   Would you have discussed these uncertainties with
               15   Lori Wing during one of your telephone conversations?
               16        A.   I may have.  I do not recall specifically, but I may
               17   well have done that.
11:06:56       18        Q.   Does this, looking at this letter, help refresh your
               19   memory perhaps concerning when this meeting you had with Lori
               20   Wing occurred?
               21        A.   Not really, because the effort that this letter was
               22   directed to was to solve the problem by working cooperatively
               23   with the IHS, to assure that every activity that BBAHC or any
               24   other client of ours that was operating a health program was
               25   referenced in the contract, so that the -- so that we could
```

|  |  |
|---|---|
| 1 | say we are carrying out the contract even though it's being |
| 2 | paid for from some other source. |
| 3 | And -- |
| 11:07:46  4 | Q. Well, I'm not -- I'm sorry, go ahead. |
| 5 | A. That's all right. I just don't remember whether |
| 6 | these specifics were -- whether I discussed them with Lori |
| 7 | Wing or not. |
| 11:07:56  8 | Q. Let me try to narrow the question. I am not so much |
| 9 | referring to your suggestion or your advice concerning how the |
| 10 | contract should be modified. I am referring to the |
| 11 | uncertainty concerning the scope of FTCA you referred to. Is |
| 12 | that something you recall discussing with Ms. Wing at this |
| 13 | meeting you referred to? |
| 14 | A. I would have probably discussed the need to have |
| 15 | some kind of insurance which would protect our client in the |
| 16 | event that it was determined that for whatever reason the FTCA |
| 17 | did not apply and they were -- that there was some risk. This |
| 18 | uncertainty is one, but there might be other reasons why FTCA |
| 19 | might be determined by the United States or by the courts not |
| 20 | to be applicable and then what would happen. |
| 21 | And the claim would -- could be a very substantial |
| 22 | amount. It could be a death. And the only money the BBAHC |
| 23 | has is the money that it has to provide health services. So |
| 24 | that would cut into -- it might be a couple million dollars |
| 25 | that would cut into the money that would otherwise be used to |

|  |  |
|---|---|
|  | 1  provide health care for the natives.  So it would be important |
|  | 2  to look at the need for other insurance besides the FTCA.  And |
|  | 3  this would be one of the reasons at that time for there being |
|  | 4  this uncertainty. |
| 11:09:44 | 5       Q.   Do you recall any other reasons for such |
|  | 6  uncertainty? |
|  | 7       A.   There are limitations in the FTCA statute itself, |
|  | 8  and I can only speculate about that.  I don't know whether |
|  | 9  there was discussion about getting insurance that would cover |
|  | 10 those kinds of limits on FTCA coverage.  But that would be one |
|  | 11 possibility. |
| 11:10:22 | 12      Q.   On the second page, sir, you refer to "checkerboard |
|  | 13 or 'Swiss cheese' coverage."  Do you see that?  It's at the |
|  | 14 very top. |
|  | 15      A.   Which? |
| 11:10:30 | 16      Q.   The first full sentence at the very top of the page, |
|  | 17 do you see that? |
|  | 18      A.   Uh-huh.  Yes. |
| 11:10:48 | 19      Q.   And again, you refer to, you know, this uncertainty, |
|  | 20 and specifically you state that it would -- I will just read |
|  | 21 the sentence:  "If FTCA coverage only covers activities |
|  | 22 actually paid for by IHS, the result is a kind of checkerboard |
|  | 23 or 'Swiss cheese' coverage which will defeat the Congressional |
|  | 24 purpose by leaving contractors and their employees uncertain |
|  | 25 as to the scope of FTCA protection."  Do you see that? |

WITNESS: SIMPSON BOBO DEAN    2-21-01

94

1  Stewart was on the -- in the meeting by teleconference at
2  least for part of the meeting.
13:35:52  3       Q.    Well, anyway, the first letter, the May 2nd, 2000,
4  letter, Exhibit 20, if you could skip to the second page, page
5  2.  The third paragraph down, there is a sentence there that
6  says, "We understand that the insurance policy applicable in
7  1993 was obtained for the purpose of protecting BBAHC against
8  claims outside the scope of the FTCA and that BBAHC's broker
9  at that time has signed a declaration stating that the premium
10 cost to BBAHC reflected the existence of FTCA coverage."  Do
11 you see that?
12      A.    Yes.
36:34  13      Q.    You wrote that, right?
14      A.    I wrote that, yes.
13:36:44  15      Q.    How did you gain that understanding?
16            MR. STEWART:  That's a compound question.  There is
17 two things stated.
18            MR. DEVLIN:  Let's break it down.  That's okay.
19 That's fair.
13:36:54  20      Q.    The first part, it says that "We understand that the
21 insurance policy applicable in 1993 was obtained for the
22 purpose of protecting BBAHC against claims outside the scope
23 of the FTCA."  How did you gain that -- I mean, that was your
24 understanding at the time, right?
25      A.    Right.  That was my understanding from discussions

Paradise<>Sherman Realtime Reporting    206-284-7584

EXHIBIT F
Page 7 of 8

```
              1    with BBAHC, with -- probably the discussions that I had had
              2    with Lori Wing at the time, that the purpose was to make sure
              3    that in case the FTCA did not cover something that the -- they
              4    were not -- they would not have a loss, that they would be
              5    covered by insurance.  That reflects my recollection in 2000
              6    of the discussions that took place in 1993.
13:37:44      7         Q.   All right.  So the -- and of course, the policy you
              8    are referring to is the Continental policy at issue in this
              9    case, right?
             10         A.   I think that's correct, yes.
13:37:54     11         Q.   And you gained this understanding from discussions
             12    with Lori Wing as well as from people from BBAHC?
             13         A.   Yes.  Yes, I would say that.
13:38:10     14         Q.   Through meetings and telephone calls?
             15         A.   Not -- but I am talking here about meetings or
             16    discussions that we have previously referred to that took
             17    place during that period, not immediately prior to writing
             18    this letter.
13:38:22     19         Q.   I understand.
             20         A.   Right.
13:38:24     21         Q.   But it was during the course of your representation
             22    of BBAHC?
             23         A.   That's correct.  That's what I understood the
             24    purpose was, obtaining insurance.
    38:32    25         Q.   The second part of this statement, or the sentence
```

Paradise<>Sherman Realtime Reporting    206-284-7584



EXHIBIT F
Page 8 of 8