1

```
 1                  UNITED STATES DISTRICT COURT

 2                       DISTRICT OF ALASKA

 3

 4
     UNITED STATES OF AMERICA,
 5
              Plaintiff,
 6
        vs.        CIVIL ACTION NO. A98-285-CV(JWS)
 7
     CNA FINANCIAL CORPORATION and
 8   THE CONTINENTAL CASUALTY COMPANY,
     d/b/a THE CONTINENTAL INSURANCE COMPANY,
 9
              Defendants.
10

11

12   DEPOSITION OF:   WILLIAM W. HUTSON, JR.

13   DATE:            April 7, 2000

14   TIME:            9:55 AM

15   LOCATION:        Offices of
                      A. William Roberts, Jr., &
16                    Associates
                      Suite 1980, 1201 Main Street
17                    Columbia, SC

18   TAKEN BY:        Counsel for the Plaintiff

19   REPORTED BY:     JANE G. LA PORTE
                      Professional & Merit Certifications
20
     Computer-aided transcription by:
21

22        A. WILLIAM ROBERTS, JR., & ASSOCIATES

23   Charleston, SC              Columbia, SC
     (843) 722-8414              (803) 731-5224
24
     Greenville, SC              Charlotte, NC
25   (864) 234-7030              (704) 537-3919
```

COPY

A. WILLIAM ROBERTS, JR., & ASSOCIATES

EXHIBIT I
Page 1 of 3

29

WILLIAM W. HUTSON  -  EX. BY MR. POMEROY

1  conduct some type of investigation to find out what
2  the facts were.
3          So, no, they couldn't have been able --
4  they would not have been able to do it ahead of time.
5     Q.   Then in this case with Continental, was
6  it you that reviewed the facts and the policy in
7  determining there was a coverage question?
8          MR. DEVLIN:  Which case are you talking
9  about?
10         MR. POMEROY:  The Lori Wilson claim.
11    A.   Yes, okay.
12    Q.   And what was, as far as the coverage
13 question, what was -- what were the questions you had
14 about whether there was coverage under the insurance
15 contract for the Lori Wilson injuries?
16    A.   Well, very early on, the best I can
17 remember is, that we learned about potential problems
18 with a federally-funded program that this was
19 -versus- a state-funded program.
20         And the person that brought this to our
21 attention at first was not people in our company, but
22 was really Robert Stewart.
23         He thought it was not covered under the
24 policy.  And it just come under the Federal Tort
25 Claims Act.  And that's who we initially were dealing

A. WILLIAM ROBERTS, JR., & ASSOCIATES

EXHIBIT  I
Page 2 of 3

WILLIAM W. HUTSON  -  EX. BY MR. POMEROY

1   with in the case.
2              He was the one that brought that up to --
3   for the first time -- to us.  We didn't really know
4   all the issues up there in Alaska.  We knew our
5   policy was intended to only cover those nonfederally
6   funded programs.  And they only cover state-funded
7   programs for general liability.
8              So, I mean, our underwriting people knew
9   that.  I knew that, too.  But we weren't sure about
10  all this Federal Tort Claims Act thing.
11             And Stewart is the one that advised us
12  this should be one that should go under the Federal
13  Tort Claims Act.
14       Q.    When you said that you knew that this was
15  not covering the federally-funded programs, did
16  somebody tell you that?
17       A.    Yeah.
18       Q.    Who?
19       A.    It was one of the underwriting people
20  that, after this happened, after the loss took place.
21       Q.    Could you recall who that was?
22       A.    I can't, I just remember that we were --
23  I was into the investigation of it, and it wasn't
24  uncommon -- our company was set up and structured,
25  one of the first companies to ever do this, and a lot

A. WILLIAM ROBERTS, JR., & ASSOCIATES

EXHIBIT I
Page 3 of 3