DEBORAH M. SMITH
Acting United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail:  richard.pomeroy@usdoj.gov

RICHARD R. STONE, SR.
Trial Attorney
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C.  20044
Phone: (202) 616-4291
Fax: (202) 616-5200
E-mail:  richard.stone@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>  v.<br><br>THE CONTINENTAL CASUALTY COMPANY, dba THE CONTINENTAL INSURANCE COMPANY,<br><br>       Defendant. | Case No. 3:98-cv-285-JWS<br><br>**MOTION FOR SUMMARY JUDGMENT ON BAD FAITH FAILURE TO ACCEPT KALLSTROM RETENDER** |

## <u>INTRODUCTION</u>

The United States moves for partial summary judgment on bad faith regarding

Continental's failure to accept the retender of Ms. Blanche Kallstrom's counterclaim while the

law of this case held that the United States was an insured entitled to a defense. On September

18, 2001, this Court found, as a matter of law, that the United States was insured by Continental

under an applicable policy, that Continental had a duty to defend the United States, and that

Continental had acted in bad faith by repeatedly rejecting the United States' numerous tenders

pursuant to that policy. Dkt. 61. At that time, Ms. Kallstrom's counterclaim was on appeal in

the Ninth Circuit. Less than two months later, on October 30, 2001, the United States again

retendered defense of the Kallstrom counterclaim to Continental, referencing this Court's

September 18, 2001, ruling. Ex. 1, AUSA Roosa ltr. to Evan Schwab, Esq. Nevertheless,

Continental failed to respond to that retender.

Because this Court had held that Continental had a duty to defend the United States and

that Continental's failure to accept retender amounted to bad faith, Continental's continuing

failure to accept retender of the Kallstrom counterclaim, even <u>after</u> the Court entered those

holdings, constitutes both a continuation of the original bad faith and a new act of bad faith. See

Dkt. 61. Indeed, as this Court found in its July 12, 2005 order, "[w]here the insurer owes a duty

to defend but denies coverage, the appropriate course of action is to <u>provide a defense under a</u>

<u>reservation of rights.</u> . . ." (Emphasis added) Dkt. 166 at 17. Continental's continuing failure to

accept the United States' original tenders and its failure to accept the timely retender -- with or

without a reservation of rights -- even after this Court left no doubt that Continental had a duty to

do so, amounts to both a continuation of the same bad faith and a new act of bad faith conduct

that this Court had already found as a matter of law.

U.S. v. Continental
Case No. 3:98-cv-285-JWS               2

## BACKGROUND

On October 14, 1994, Lori Wilson filed suit against the United States under the Federal Tort Claims Act (FTCA) after suffering serious injuries when Blanche Kallstrom, a visitor to Bristol Bay Area Health Corporation's (BBAHC) Alcohol Transition Center, "accidentally gave [Ms. Wilson] a glass of commercial strength dishwashing liquid to drink when Wilson asked for some juice." Dkt. 57 at 3. The United States moved to add Ms. Kallstrom as a third-party defendant, whereupon she brought a counterclaim against the United States for negligent infliction of emotional distress. *Id.* at 4. Following numerous tenders of defense of Ms. Wilson's claims, all of which were improperly rejected by Continental, the United States settled with her on August 28, 1997. *Id.*

On February 12, 1998, the district court granted the United States' motion to dismiss Ms. Kallstrom's counterclaim and she appealed to the Ninth Circuit. *Id.* at 4-5. On July 8, 1998, the United States tendered defense of the Kallstrom counterclaim to Continental. Ex. 1.

On August 14, 1998, the United States filed the instant suit against Continental alleging "five claims for denial of coverage, failure to defend, bad faith, breach of the implied covenant of good faith and fair dealing, and unfair claims settlement practices." Dkt. 57 at 5.

On September 14, 1999, the Ninth Circuit certified an issue in the Kallstrom counterclaim to the Alaska Supreme Court. *Id.* at 5, n.7.

On September 18, 2001, while the Kallstrom issue was still before the Alaska Supreme Court, this Court held that "the United States is entitled to partial summary judgment as a matter of law regarding its implied insured and bad faith claims" against Continental. Dkt. 61 at 18.

Specifically, this Court ruled that Continental "lacked a reasonable basis for denying benefits of

the policy and that [Continental] had knowledge that no reasonable basis existed to deny the

claim or acted in reckless disregard for the lack of a reasonableness basis for denying the claim."

*Id.* at 10, citing *Hillman v. Nationwide Fire Ins. Co.*, 855 P.2d 1321, 1324 (Alaska 1993). The

Court also found that

> the undisputed evidence establishes that Continental repeatedly
> failed to accept tenders from the United States, failed to reasonably
> evaluate the facts and legal principles supporting the United States'
> position . . . . In denying tender, Continental also adopted
> positions which . . . were simply wrong. Furthermore . . . , Crystal
> Renee Brown, Continental's 30(b)(6) witness, testified that
> Continental had a duty to defend . . . . employees of the United
> States. . . . It is difficult to understand how Continental would
> admit it had a duty to defend employees of the United States, but
> not a duty to defend the United States.

Dkt. 61 at 9-10.

United States counsel, Kenneth Roosa, in an October 30, 2001, retendered the Kallstrom

counterclaim to Continental. In a letter to counsel for Continental, Evan Schwab, Mr. Roosa

stated that "[i]n light of Judge Sedwick's ruling of September 18, 2001, . . . the United States

hereby retenders defense of the Kallstrom counter claims to Continental. . . ." Ex. 1. The letter

also referenced the United States' previous July 8, 1998, tender of the Kallstrom claim. *Id.*

Continental never accepted Mr. Roosa's October 30, 2001, retender. More than four months

later, on March 15, 2002, the Alaska Supreme Court issued its opinion in favor of the United

States, and Ms. Kallstrom's counterclaim was dismissed without Continental ever having

accepted tender of the defense.

At least as of October 30, 2001, CNA attorney Erin M. Finn was assigned to manage the

litigation for Continental. Ex. 2, Finn Deposition, at p. 29 lns. 13-16. In early October Continental retained the law firm of Dorsey & Whitney, and Ms. Finn began working with Dorsey & Whitney attorney John Treptow on the instant case, including the Kallstrom matter. *Id.* at p. 15 lns. 15-18; p. 16 lns. 19-20. Ms. Finn acknowledged that she was aware of this Court's September 18, 2001 finding that, as a matter of law, the United States was insured by Continental under the policy. *Id.* at p. 37 lns. 3-9. She also testified that she was aware of Mr. Roosa's October 30, 2001 retender letter, and that "there was no question in [her] mind that the United States was again retendering the Kallstrom case." *Id.* at p. 29 lns. 17-22; p. 30 lns. 1-20.

Ms. Finn acknowledged that she "had no direct discussions with Mr. Roosa." *Id.* at p. 39, lns. 8-9. Mr. Treptow was asked "what, if anything, did [Mr. Roosa] say that he wanted CNA to actually do other than write a letter saying, 'we accept the tender?'" He responded: "All he wanted them to do was accept the tender." Ex. 3, John Treptow dep. at p. 25 ln 9. Ms. Finn admitted that it was her decision whether or not to accept the United States' retender of the Kallstrom counterclaim and that Continental "never formally accepted the tender of defense, because during the [four and one half months following the United States' retender], the United States was successful in its case with Ms. Kallstrom." Ex. 2 at p. 34 lns. 12-18; p. 24 lns. 9-12. [1]

Ms. Finn was asked about Continental's "procedure regarding accepting or rejecting tender of defense in a case where a court has already held that the insured is an insured of

---

[1] Ms. Finn testified that, Mr. Treptow, Continental's Anchorage counsel, would have needed her permission to tell Mr. Roosa that Continental would accept tender with a reservation of rights (Ex. 2 at p. 40 lns. 9-14), and Ms. Finn had no recollection of giving Mr. Treptow such permission. *Id.* at p. 39 lns.10-13.

U.S. v. Continental
Case No. 3:98-cv-285-JWS          5

Continental."[2]  She responded: "even in light of Judge Sedwick's opinion where he indicated

that the U.S. government was an implied additional insured under the Continental Insurance

policy, there were still coverage issues.  The only claim by Kallstrom was for emotional distress

damages.  So that may or may not be covered under the policy under Alaska law where, in terms

of the policy, there must be bodily injury.  So that was an issue that we needed to investigate."

*Id.* at p. 19, lns. 6-22.[3]

According to Continental's proffered expert, Robert N. Wainscott, Continental's failure

to accept the Kallstrom retender "was inappropriate, and the tender should have been

accepted...."  Ex. 4, Wainscott Report at 29.[4]

**LEGAL STANDARDS**

**1. Summary Judgment Standard**

As this Court has stated, "[u]nder Federal Rule of Civil Procedure 56(c) summary

judgment is appropriate if, when reviewing the evidence in the light most favorable to the non-

---

[2]  In addition to being a fact witness in this case, Continental designated Ms. Finn as its Rule 30(b)(6) witness for purposes of responding to issues related to claims.  Ex. 2.

[3]  Ms. Finn further testified that Continental was "hopeful that the case was going to resolve at the mediation in December.  When it didn't, we immediately focused on the Kallstrom issues. . . . [Y]ou have to realize this was shortly after September 11th.  This, you know, was a very stressful time . . . . As soon as we could, we reviewed the Kallstrom issues.  There were coverage issues involved.  We talked with Roosa.  We talked with outside counsel.  There were attorneys that weren't willing to take on the defense of the U.S. . . .  And then we discussed our reservation of rights, and then we found out that the U.S. was successful."  Ex. 2 at p. 36 lns. 4-22.

[4]  When asked at his deposition "[d]id Mr. Roosa convey to you any . . . lack of urgency . . . with respect to Continental responding to the [Kallstrom] tender," Mr. Treptow responded "I don't recall that subject coming up. . . ."  Ex. 3 at p. 23 lns. 23-25; p.24 lns 1-2.

U.S. v. Continental
Case No. 3:98-cv-285-JWS                    6

moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Dkt. 166, at 3, citing *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989). "In response to a properly supported motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." Dkt. 166 at 3-4, citing *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002). "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment.'" Dkt. 166 at 4, quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "However, there is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion." Dkt. 166 at 4, citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### 2. Bad Faith Standard

Additionally, "[t]o establish a claim for bad faith denial of coverage, a plaintiff must show that the defendant-insurer lacked a reasonable basis for denying benefits of the policy and that the defendant-insurer had knowledge that no reasonable basis existed to deny the claim or acted in reckless disregard for the lack of a reasonable basis for denying the claim." Dkt. 57 at 21, citing *Hillman v. Nationwide Fire Ins. Co.*, 855 P.2d 1321, 1324 (Alaska 1993).

### 3. Law of the Case

On July 12, 2005, this Court reaffirmed as "the law of the case" its September 18, 2001 ruling that "(1) the United States was an implied additional insured; and (2) Continental acted in bad faith in declining to defend and indemnify the United States under the policy." Dkt. 166 at

U.S. v. Continental
Case No. 3:98-cv-285-JWS                    7

11. Regarding the United States' "implied additional insured" status, Continental argued that its position on coverage was fairly debatable, and thus, as a matter of law, Continental could not have acted in bad faith. This Court rejected that argument because "the Alaska Supreme Court, in determining whether an insurer has acted in bad faith, would look to the reasonableness of the reason articulated for denying coverage, not to a *post hoc* rationale first fully articulated in litigation over the rejection of the insured's tenders." *Id.* at 16. The Court explicitly rejected Continental's argument that the issue whether the United States was covered under the policy was "fairly debatable." *Id.* at 13-17. Referencing Continental's own 30(b)(6) witness' admission that Continental had a duty to defend the United States' employees, the Court ruled that "[w]here the insurer owes a duty to defend but denies coverage, the appropriate course of action is to provide a defense under a reservation of rights, thereby preserving its rights to disclaim coverage if its coverage defense is either acquiesced to by the insured or determined to be valid. Continental did not avail itself of this procedure." Dkt. 166 at 17, citing *CHI of Alaska, Inc.*, 844 P.2d 1113, 1115-16 (Alaska 1993).

Further, the Court found that "[a]n insurer is not only required to give prompt notice to the insured of its decision to deny coverage and defense, its notice must also 'provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of the claims.'" Dkt. 166 at 16, quoting *Sauer v. Home Indemnity Co.*, 841 P.2d 176, 182 (Alaska 1992) (quoting AS 21.36.125(a)(15)). Additionally, "[n]ot only was Continental dilatory in responding to the tenders by the United States, but the reasons articulated

by Continental as the basis for denying coverage and a defense did not provide a reasonable explanation for rejecting the tenders. . . ." Dkt. 166 at 16.

## ARGUMENT

Just as this Court found that Continental "lacked a reasonable basis" for rejecting the prior tenders by the United States, so too was there no "reasonable basis" for Continental failing to accept the October 30, 2001, Kallstrom counterclaim retender. Moreover, because the retender was made soon after, and even referenced, this Court's September 18, 2001 order, there is no doubt that Continental "had knowledge that no [such] reasonable basis existed." See Dkt. 57 at 21. Indeed, Continental's inexcusable failure to accept the United States' retender, particularly after this Court made clear that it had a duty to do so, amounts to a new and an even more egregious act in continuation of the bad faith that this Court had already found as a matter of law.

This Court had left no doubt that (1) the United States was insured by Continental under the policy; (2) Continental had a duty to defend the United States pursuant to that policy; and (3) Continental's repeated failure to accept the tenders of defense constituted bad faith. Nevertheless, Continental again failed to respond to Mr. Roosa's retender of the Kallstrom counterclaim less than two months after the Court's ruling and in the face of Mr. Roosa's reminder to Continental of that ruling.

As this Court has held, "[a]n insurer is . . . required to give prompt notice to the insured of its decision to deny coverage and defense, [and] its notice must also 'provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial

U.S. v. Continental
Case No. 3:98-cv-285-JWS                    9

of a claim.'" (Emphasis added). Dkt. 166 at 16. Further, "in determining whether an insurer has acted in bad faith, [the Alaska Supreme Court] would look to the reasonableness of the reason articulated for denying coverage, not to a *post hoc* rationale first fully articulated in litigation over rejection of the insured's tenders." *Id.*

The United States first tendered the Kallstrom counterclaim to Continental on July 8, 1998. Ex. 1. When the Court issued its September 18, 2001 decision, the Kallstrom case was still pending and Continental had not accepted the original tender. Continental should not have needed a reminder that this Court's Order required Continental to accept the original tender. Having just received a bad faith finding for failing to accept tender in the very same case, Continental should have promptly accepted the United States' July 8, 1998 tender. Continental did not. Moreover, when Mr. Roosa retendered the Kallstrom counterclaim on October 30, 2001 and referenced this Court's September 18, 2001 decision Continental still did not accept the tender. In fact, during the more than six month period between the September 18, 2001, Order, and the March 15, 2002 Alaska Supreme Court decision dismissing the Kallstrom counterclaim (and four-and-a-half months between Mr. Roosa's retender letter and the Alaska Supreme Court decision), Continental failed to provide any "notice," much less "prompt" notice, and failed to provide any "explanation," much less a "reasonable" one, despite this Court's then recent ruling that such "notice" and "explanation" were required.

This Court held that the determination whether the failure to accept tender was reasonable should focus on the actual "reason articulated" when the tender was denied, not "a *post hoc* rationale first fully articulated in litigation." Dkt. 166 at 16. Consequently, since Continental did

U.S. v. Continental
Case No. 3:98-cv-285-JWS          10

not articulate contemporaneously <u>any</u> reason for failing to accept the United States' retender of

the Kallstrom case, any purported reason offered for the first time during litigation discovery is

irrelevant. Nonetheless, even the "*post hoc*" reasons Continental now offers <u>as a matter of law</u>

do not amount to a justifiable excuse.

Ms. Finn, Continental's manager responsible for deciding whether Continental would

accept the United States' retender, acknowledged that she was well aware of Mr. Roosa's

October 30, 2001 retender letter and that "there was no question in [her] mind that the United

States was again retendering the Kallstrom case." Ex. 2, p. 29 lns. 17-22; p. 30 lns. 1-20. She

also acknowledged that she was aware of this Court's September 18, 2001, decision, which held

that the United States was insured under the policy and that Continental, therefore, had a duty to

accept the United States' tender of defense. Thus, Continental "had knowledge that no

reasonable basis existed to deny the claim," or at the very least "acted in reckless disregard of the

lack of a reasonable basis for denying the claim." Yet, Ms. Finn testified that she never informed

Mr. Roosa herself, nor gave permission to Mr. Treptow to inform Mr. Roosa, that Continental

accepted the United States' retender of the Kallstrom case. *Id.* at p. 39 lns. 8-9; p. 40 lns. 9-14;

p. 39 lns. 10-13.

Further, when asked about Continental's procedure regarding tenders where, in

circumstances like these, "a court has already held that the insured is an insured of Continental,"

Ms. Finn responded that, even given this Court's ruling that the United States was an insured,

"there were still coverage issues. . . . So that may or may not be covered under the policy . . . .

So that was an issue that we needed to investigate." *Id.* at p. 19 lns. 6-22. Continental simply

U.S. v. Continental
Case No. 3:98-cv-285-JWS                11

ignored its duty to accept tender of the defense of its insured, and now, offers the need to "investigate" purported "coverage issues" as a reason for failing to accept tender. Continental simply ignored this Court's clear ruling that "[w]here the insurer owes a duty to defend but denies coverage, the appropriate course of action is to provide a defense under a reservation of rights . . .," not to do nothing for almost five months while the insurer first "investigate[s]" purported "coverage issues." (Emphasis added) Dkt. 166 at 17.

Even Continental's own proffered expert, Mr. Wainscott, acknowledged that Continental's failure to accept the United States' retender "was inappropriate, and [that] the tender should have been accepted...." Ex. 4 p. 29. There simply is no "reasonable explanation" for Continental again failing to accept the United States' tender.

In sum, this Court's September 18, 2001 ruling that, as a matter of law, Continental acted in bad faith by failing to accept prior tenders by the United States requires a similar finding, also as a matter of law and the specific law of the case, that Continental's failure to accept the United States' retender of the Kallstrom counterclaim constitutes a new act of bad faith and an act of continuing bad faith. Continental unjustifiably failed to accept the United States' October 30, 2001 retender, failed to provide any, much less "prompt," notice, and failed to provide any, much less a "reasonable," explanation why it did not accept the retender, all of which this Court has found are required. Indeed, even Continental's own proffered expert found Continental's failure to accept the retender "inappropriate." Finally, Continental's "*post hoc*" excuse offered for the first time during discovery in this litigation, that certain purported "coverage issues" needed to be "investigate[d]," simply ignores this Court's mandate that "[w]hen the insurer owes a duty to

U.S. v. Continental
Case No. 3:98-cv-285-JWS              12

defend but denies coverage, the appropriate course of action is to provide a defense under a reservation of rights . . . ." (Emphasis added). Dkt. 166 at 17. Accordingly, there being no genuine issue of material fact and the United States being entitled to judgment as a matter of law, the United States requests that the Court enter summary judgment in its favor on Continental's bad faith failure to accept the retender of the Kallstrom counterclaim.

### CONCLUSION

For the foregoing reasons, the United States requests that this Court find, that Continental's failure to accept the United States' October 30, 2001, retender of the Kallstrom counterclaim constitutes a new act of bad faith and/or a continuation of the bad faith that this Court has already found as a matter of law.

Respectfully requested this 13th day of March, 2006, in Anchorage, Alaska.

DEBORAH M. SMITH
Acting United States Attorney

s/Richard L. Pomeroy
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov
AK #8906031

s/Richard R. Stone, Sr.
Trial Attorney
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Phone: (202) 616-4291
Fax: (202) 616-5200 fax
E-mail: richard.stone@usdoj.gov

U.S. v. Continental
Case No. 3:98-cv-285-JWS                        13

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2006,
a copy of the foregoing Plaintiff
MOTION FOR SUMMARY JUDGMENT
ON BAD FAITH FAILURE TO ACCEPT
KALLSTROM RETENDER was served
electronically on Gary A. Zipkin
and William Urquhart, and
via U.S. mail  on

Rebecca L. Ross
Ross, Dixon & Bell, LLP
55 West Monroe Street, Suite 3000
Chicago, IL 60603-5758

s/ Richard L. Pomeroy

U.S. v. Continental
Case No. 3:98-cv-285-JWS                14