```
                                                                    1
1            IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF ALASKA

3    _____

4    UNITED STATES OF AMERICA,      )
                                    )
5              Plaintiff,           )   ORIGINAL
                                    )
6       vs.                         )
                                    )
7    CNA FINANCIAL CORPORATION AND  )   CORRECTION SHEET:
     THE CONTINENTAL CASUALTY COMPANY)  ☐ Signature waived/time expired
8    d/b/a THE CONTINENTAL INSURANCE )  ☐ Signature waived
     COMPANY,                       )   ☒ Signed/dated/no corrections made
9                                   )   ☐ Signed/dated/corrections made
               Defendant.           )
10   _____)
     Case No. A97-285 CV (JWS)
11

12

13
                    _____
14

15             DEPOSITION OF JOHN TREPTOW
                    _____
16

17            Monday, January 23, 2006
                      1:30 p.m.
18

19         Taken by Counsel for Plaintiff
                         at
20                Dorsey & Whitney
          1031 West Fourth Avenue, Suite 600
21                Anchorage, Alaska

22

23

24

25
```

23

1  legal theory that they had come up with, and I don't
2  recall if he used the word "novel" or what, but, I mean,
3  I would certainly characterize it as a novel argument
4  given what congress said their reasons were for
5  extending the coverage of the FTCA to 638 providers.
6        And as I said, I was interested in the
7  government's position on that, not only as it related to
8  this lawsuit, but just kind of as a point of interest
9  because of my familiarity with the acts.
10    Q.  Turning to the Kallstrom appeal and your
11 conversations with Mr. Roosa regarding that claim, the
12 NIED claim by Ms. Kallstrom.  Did Mr. Roosa ever
13 indicate to you his opinion or view about the likely
14 outcome of that appeal to the Supreme Court?
15    A.  Yeah, he did.  He used the phrase "dead bang
16 winner".  And I think I referenced that in my memo.  I
17 thought that was a pretty cool term and "dead bang
18 winner" I think were the exact words he used.  In fact,
19 I'm sure they were the exact words.
20        That certainly conveyed to me that he thought
21 they were going to win the appeal.  And based upon what
22 I had seen in my analysis, I thought he was right.
23    Q.  Did Mr. Roosa convey to you any sense of the
24 urgency he felt existed or lack of urgency that existed
25 with respect to Continental responding to the tender

                                                                    24

1    defense of the Kallstrom claim?

2        A.  I don't recall that subject coming up in either

3    conversation in January or February.

4        Q.  To state it differently, did he ever indicate to

5    you that there was anything that remained to be done

6    after oral argument except waiting for the decision?

7        A.  Well, I knew that the case had been argued and I

8    didn't think there had been a decision.  That was one of

9    the reasons I called him.

10           And he said there hadn't been a decision.  He did

11   say he was a bit concerned about the length of time that

12   it had been pending, and was concerned that there would

13   be perhaps a divided panel.

14           And I think he and I talked about that, and I

15   said in my experience that was certainly a possibility,

16   but I said I thought that the government was in good

17   shape on the appeal.  I don't remember that.

18       Q.  I was just focusing on any activity or events

19   that Mr. Roosa indicated to you would occur after oral

20   argument and just aside from waiting for the decision.

21           Did he ever disclose, for example, that there

22   were any pending motions or anything else that remained

23   to be dealt with other than waiting for the Supreme

24   Court's decision?

25       A.  No.  Once again, that was one of the reasons that

25

1  I called him to find out what do you want CNA to do, and
2  that was a general inquiry, that I know the status.
3  Now, is there basically anything I don't know, and given
4  the fact that it is on appeal, what do you want CNA to
5  do.
6     Q.   What, if anything, did he say that he wanted CNA
7  to actually do other than write a letter saying, "We
8  accept the tender"?
9     A.   All he wanted them to do was accept the tender.
10  There was nothing -- my recollection is he didn't say,
11  "We need you to do this now," or, "We want you to do
12  this," or "There is this deadline."  It is just, "Take
13  it off our hands."
14     Q.   In terms of taking it off the government's hands,
15  other than entering an appearance or arranging for
16  substitution of counsel, can you think of any single
17  thing that you would have needed to do other than
18  substituting in as counsel?
19     A.   Other than substituting in as counsel, simply
20  wait.
21              MR. ZIPKIN:  I have nothing further.
22                         EXAMINATION
23  BY MR. POMEROY:
24     Q.   Have you in your practice represented Indian
25  Self-Determination Act clients?