# EXPERT WITNESS REPORT OF
# ROBERT N. WAINSCOTT

## The United States of America, Plaintiff vs. CNA Financial Corporation and the Continental Casualty Company dba The Continental Insurance Company



200000

Exhibit 4

the denials of the previous tenders Mr. Rosa had no reason to believe that coverage would be offered and therefore was not prejudiced.

The fourth and final tender was sent to Continental on October 1, 2001, after Judge Sedwick's ruling. The tender was for the Kallstrom N.I.E.D. counterclaims, which were filed against the U.S.A. after she was third partied into the Wilson suit by the Attorney General. At that time the claim was under consideration by the Alaska Supreme Court and Continental was told by Mr. Roosa that there was nothing to do until the court issued its ruling. Mr. Roosa expected the result to be a "dead bang winner". The records reflect that Continental contacted two defense attorneys, but counsel was not assigned. In March of 2002, the Supreme Court denied the Kallstrom claim and it became a moot point. It appears that Continental relied upon Mr. Roosa's assurances that there was no rush to respond because there was nothing to be done. That was inappropriate, and the tender should have been accepted despite Mr. Roosa's assurances.

The U.S.A. had certain obligations to B.B.A.H.C. that would not have allowed them to relinquish the entire defense of this case to Continental. It is my opinion that delays in responding to the United States tenders did not prejudice the United States in any way. They could not have removed themselves from the case under any circumstance. In his tenders, Mr. Rosa wrote,
1/6/95. "Once you assume the defense of this case, the United States will continue its appearance in this case on an "Of Counsel" basis"
6/6/95 "Although 517 prohibits this office from relinquishing all control of the defense of the action"
5/27/97 "Although 517 prohibits this office from relinquishing all control of the defense of this action"

The 1994 internal correspondence Ms. Senn referenced at page 14 of her report are all entries before Continental knew that the claim fell under a 93-638 contract. If the Attorney General had made a finding that it was not an FTCA claim, Continental would have the exposure and be responsible for the coverage. The claim had a huge exposure for both damages and liability.

Ms. Senn is wrong when she states that Continental had an obligation to defend the U.S.A. when coverage did not apply. It is my opinion that when there is no coverage under a policy, an insurance carrier owes no duty to defend, under a "Reservation of Rights" or otherwise. If any of the records revealed that Continental or any of their attorneys believed the U.S.A. possibly had a valid claim for coverage, then it would have been appropriate to defend under a Reservation of Rights while they filed a declaratory action for a judicial reading. The issue here is that no one who looked at the coverage issue found any reason to provide a party who was not insured under the contract any coverage.

As a claims person who handled complex litigation I have written thousands of Reservation of Rights letters. I have never written a Reservation of Rights letter

200029