```
                                                              1

  1              IN THE UNITED STATES DISTRICT COURT

  2              FOR THE DISTRICT OF ALASKA  RECEIVED

  3   ----------------------------------------MAR 0 5 2001

  4   UNITED STATES OF AMERICA,   )       LANE POWELL SPEARS LUBERSKY
                                          TIME _____ ATTY ___
  5              Plaintiff,       )

  6       vs.                     )   Case No. A98-285 CV (JWS)

  7   THE CONTINENTAL CASUALTY    )

  8   COMPANY d/b/a THE CONTINENTAL )

  9   INSURANCE COMPANY,          )
                                                    COPY
 10              Defendant.       )

 11   ----------------------------------------------------------

 12              DEPOSITION UPON ORAL EXAMINATION

 13                            OF

 14                    SIMPSON BOBO DEAN

 15   ----------------------------------------------------------

 16                        9:30 a.m.

 17                    February 21, 2001

 18              1420 Fifth Avenue, Suite 4100

 19                    Seattle, Washington

 20

 21

 22

 23

 24   Leslie Sherman, CSR, RMR, CRR

 25   Court Reporter Ref. # SH-ER-ML-M462KP
```

Paradise<>Sherman Realtime Reporting    206-284-7584

EXHIBIT N
Page 1 of 8

WITNESS: SIMPSON BOBO DEAN    2-21-01

48

| | |
|---|---|
| | 1   A.   Basically at the -- probably at the end of the Bush |
| | 2   administration.  He was during the Reagan and Bush |
| | 3   administration. |
| 11:02:12 | 4   Q.   He was a Bush administration -- |
| | 5   A.   Right, talking about Bush 1.  Dr. Trujillo was |
| | 6   director during most of the Clinton period.  It took a while, |
| | 7   I think, to replace Dr. Rhoades. |
| 11:02:30 | 8   Q.   What was your purpose in sending this letter to Dr. |
| | 9   Rhoades? |
| | 10  A.   It was to assure that there could be a -- there |
| | 11  would be cooperation by the Indian Health Service with |
| | 12  addressing the issue of the possibility that an activity that |
| | 13  an Indian tribe or a tribal organization -- consortium like |
| | 14  Bristol Bay was carrying on and might give rise to a claim |
| | 15  wasn't covered by the FTCA because it wasn't part of the scope |
| | 16  of work of the contract, and it was -- as the letter explains, |
| | 17  it was providing reasons why the IHS should cooperate to carry |
| | 18  out the purpose of Congress in assuring FTCA coverage for the |
| | 19  activities that these health offerings were carrying on. |
| 11:03:32 | 20  Q.   You sent this letter on behalf of BBAHC? |
| | 21  A.   It appears that it is, because it says so in the |
| | 22  first sentence. |
| 11:03:50 | 23  Q.   Is it accurate to say, then, that this letter was |
| | 24  sent after the second extension of the FTCA? |
| | 25  A.   Yes. |

Paradise<>Sherman Realtime Reporting    206-284-7584

WITNESS: SIMPSON BOBO DEAN   2-21-01

49

04:10  1    Q.   In the second paragraph you refer to continuing
       2  uncertainty over the proper scope of FTCA coverage. Do you
       3  see that?
       4    A.   Uh-huh, yes.
11:04:24 5   Q.   What did you mean by "uncertainty"? Why were you
       6  uncertain?
       7    A.   The uncertainty arises from the fact that some of
       8  the activities of a health organization may be funded from
       9  some source other than the IHS contract.
      10         And so the question would arise if a contractor, any
      11  contractor with IHS under the Indian Self-Determination Act,
      12  obtained a grant from a private organization, or from the
      13  state, or from some other source other than the IHS, from some
      14  other federal agency, and was providing health care in
      15  accordance with its general purpose supplemental to the
      16  programs of the Indian Health Service, and a claim arose based
      17  on that, the performance of that activity, would it be
      18  possible for the United States to say, well, that's not
      19  covered by the FTCA because you are not carrying out the
      20  contract, you are carrying out this other agreement or grant
      21  agreement or whatever, extraneous to the IHS program.
      22         So the solution which we recommended was that as
      23  long as the IHS had no problem with the activity, and it was
      24  truly supplemental to the programs being funded by the IHS,
      25  that they refer to them in the contract and identify them

|  |  |
|---|---|
| | 1    perhaps as not being funded by the IHS even though they are |
| | 2    part of the contract scope of work. |
| 11:06:08 | 3    Q.  I understand.  So the uncertainty at this time |
| | 4    arose -- uncertainty concerning the scope of the FTCA arose |
| | 5    from the fact that BBAHC received funding from sources other |
| | 6    than the federal government? |
| | 7    A.  Other than the Indian Health Service. |
| 11:06:24 | 8    Q.  Other than the Indian Health Service? |
| | 9    A.  Right.  It could be from another federal agency, it |
| | 10   could be from the state, it could be from a private |
| | 11   foundation.  These were not major sources of income, but they |
| | 12   could result in a major claim depending on the scope of the |
| | 13   damage. |
| 11:06:44 | 14   Q.  Would you have discussed these uncertainties with |
| | 15   Lori Wing during one of your telephone conversations? |
| | 16   A.  I may have.  I do not recall specifically, but I may |
| | 17   well have done that. |
| 11:06:56 | 18   Q.  Does this, looking at this letter, help refresh your |
| | 19   memory perhaps concerning when this meeting you had with Lori |
| | 20   Wing occurred? |
| | 21   A.  Not really, because the effort that this letter was |
| | 22   directed to was to solve the problem by working cooperatively |
| | 23   with the IHS, to assure that every activity that BBAHC or any |
| | 24   other client of ours that was operating a health program was |
| | 25   referenced in the contract, so that the -- so that we could |

Paradise<>Sherman Realtime Reporting   206-284-7584

EXHIBIT  N
Page  4  of  8

```
                    say we are carrying out the contract even though it's being
                    paid for from some other source.
                             And --
11:07:46            Q.   Well, I'm not -- I'm sorry, go ahead.
                    A.   That's all right.  I just don't remember whether
                    these specifics were -- whether I discussed them with Lori
                    Wing or not.
11:07:56            Q.   Let me try to narrow the question.  I am not so much
                    referring to your suggestion or your advice concerning how the
                    contract should be modified.  I am referring to the
                    uncertainty concerning the scope of FTCA you referred to.  Is
                    that something you recall discussing with Ms. Wing at this
                    meeting you referred to?
                    A.   I would have probably discussed the need to have
                    some kind of insurance which would protect our client in the
                    event that it was determined that for whatever reason the FTCA
                    did not apply and they were -- that there was some risk.  This
                    uncertainty is one, but there might be other reasons why FTCA
                    might be determined by the United States or by the courts not
                    to be applicable and then what would happen.
                             And the claim would -- could be a very substantial
                    amount.  It could be a death.  And the only money the BBAHC
                    has is the money that it has to provide health services.  So
                    that would cut into -- it might be a couple million dollars
                    that would cut into the money that would otherwise be used to
```

WITNESS:  SIMPSON BOBO DEAN    2-21-01

52

```
                1   provide health care for the natives.  So it would be important
                2   to look at the need for other insurance besides the FTCA.  And
                3   this would be one of the reasons at that time for there being
                4   this uncertainty.
11:09:44        5       Q.  Do you recall any other reasons for such
                6   uncertainty?
                7       A.  There are limitations in the FTCA statute itself,
                8   and I can only speculate about that.  I don't know whether
                9   there was discussion about getting insurance that would cover
               10   those kinds of limits on FTCA coverage.  But that would be one
               11   possibility.
11:10:22       12       Q.  On the second page, sir, you refer to "checkerboard
               13   or 'Swiss cheese' coverage."  Do you see that?  It's at the
               14   very top.
               15       A.  Which?
11:10:30       16       Q.  The first full sentence at the very top of the page,
               17   do you see that?
               18       A.  Uh-huh.  Yes.
11:10:48       19       Q.  And again, you refer to, you know, this uncertainty,
               20   and specifically you state that it would -- I will just read
               21   the sentence:  "If FTCA coverage only covers activities
               22   actually paid for by IHS, the result is a kind of checkerboard
               23   or 'Swiss cheese' coverage which will defeat the Congressional
               24   purpose by leaving contractors and their employees uncertain
               25   as to the scope of FTCA protection."  Do you see that?
```

Paradise<>Sherman Realtime Reporting    206-284-7584

EXHIBIT N
Page 6 of 8

WITNESS: SIMPSON BOBO DEAN    2-21-01

94

```
13:35:52    1    Stewart was on the -- in the meeting by teleconference at
            2    least for part of the meeting.
            3         Q.   Well, anyway, the first letter, the May 2nd, 2000,
            4    letter, Exhibit 20, if you could skip to the second page, page
            5    2.  The third paragraph down, there is a sentence there that
            6    says, "We understand that the insurance policy applicable in
            7    1993 was obtained for the purpose of protecting BBAHC against
            8    claims outside the scope of the FTCA and that BBAHC's broker
            9    at that time has signed a declaration stating that the premium
           10    cost to BBAHC reflected the existence of FTCA coverage."  Do
           11    you see that?
           12         A.   Yes.
   36:34   13         Q.   You wrote that, right?
           14         A.   I wrote that, yes.
13:36:44   15         Q.   How did you gain that understanding?
           16              MR. STEWART:  That's a compound question.  There is
           17    two things stated.
           18              MR. DEVLIN:  Let's break it down.  That's okay.
           19    That's fair.
13:36:54   20         Q.   The first part, it says that "We understand that the
           21    insurance policy applicable in 1993 was obtained for the
           22    purpose of protecting BBAHC against claims outside the scope
           23    of the FTCA."  How did you gain that -- I mean, that was your
           24    understanding at the time, right?
           25         A.   Right.  That was my understanding from discussions
```

Paradise<>Sherman Realtime Reporting    206-284-7584

EXHIBIT N
Page 7 of 8

WITNESS:   SIMPSON BOBO DEAN    2-21-01

95

1   with BBAHC, with -- probably the discussions that I had had
2   with Lori Wing at the time, that the purpose was to make sure
3   that in case the FTCA did not cover something that the -- they
4   were not -- they would not have a loss, that they would be
5   covered by insurance.  That reflects my recollection in 2000
6   of the discussions that took place in 1993.
13:37:44  7       Q.   All right.  So the -- and of course, the policy you
8   are referring to is the Continental policy at issue in this
9   case, right?
10      A.   I think that's correct, yes.
13:37:54 11       Q.   And you gained this understanding from discussions
12  with Lori Wing as well as from people from BBAHC?
13      A.   Yes.  Yes, I would say that.
13:38:10 14       Q.   Through meetings and telephone calls?
15      A.   Not -- but I am talking here about meetings or
16  discussions that we have previously referred to that took
17  place during that period, not immediately prior to writing
18  this letter.
13:38:22 19       Q.   I understand.
20      A.   Right.
13:38:24 21       Q.   But it was during the course of your representation
22  of BBAHC?
23      A.   That's correct.  That's what I understood the
24  purpose was, obtaining insurance.
38:32 25       Q.   The second part of this statement, or the sentence

Paradise<>Sherman Realtime Reporting   206-284-7584

EXHIBIT   N
Page   8   of   8