DEPOSITION OF SALLY PADGITT

1

S42579

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

UNITED STATES OF         )
AMERICA,                 )
                         )
         Plaintiff,      )
                         )
vs.                      )  No. A98-285 CV (JWS)
                         )
CNA FINANCIAL            )
CORPORATION and THE      )
CONTINENTAL CASUALTY     )
COMPANY, dba The         )
Continental Insurance    )
Company,                 )
                         )
         Defendants.     )

CERTIFIED COPY

Deposition of SALLY PADGITT, called as a witness by the Plaintiff, pursuant to the provisions of the Federal Rules of Civil Procedure pertaining to the taking of depositions, before Nancy J. Hopp, C.S.R., R.D.R., a Notary Public in and for the County of Kane, State of Illinois, taken in the offices of Olson, Cortner & McNaboe, 23rd Floor, 200 South Wacker Drive, Chicago, Illinois, on the 3rd day of April, A.D. 2000, at the hour of 9:40 a.m.

Sonntag Reporting Service, Ltd.
Geneva   Chicago   Wheaton
www.sonntagreporting.com
800.232.0265

EXHIBIT O
Page 1 of 6

DEPOSITION OF SALLY PADGITT
BY MR. DEVLIN

51

```
 1         where the funds came from?
 2    A    They came from several sources, primarily from
 3         the federal government but also other
 4         contracts with the State of Alaska.
 5    Q    If you'd turn to Page 5, the bottom paragraph,
 6         what does that say?
 7    A    "BBAHC administers federal, state and local
 8         grants and contracts which are generally of a
 9         cost-reimbursement type, which include
10         provisions for advances and billings for costs
11         incurred."
12    Q    Concerning the administration of federal,
13         state and local grants by BBAHC, was that your
14         understanding when you renewed this policy?
15    A    I'm sorry.  Could you say that again?
16    Q    Was it your understanding, when you renewed
17         this policy effective September, 1990, that
18         BBAHC administered federal, state and local
19         grants and contracts?
20    A    Yes.
21    Q    All right.  Was that fact a consideration when
22         you were evaluating the risk?
23    A    Yes.
24    Q    Did you have an understanding, back when you
```

Sonntag Reporting Service, Ltd.
Geneva   Chicago   Wheaton
www.sonntagreporting.com
800.232.0265

EXHIBIT O
Page 2 of 6

DEPOSITION OF SALLY PADGITT
BY MR. DEVLIN

52

```
 1        were evaluating this risk, concerning the
 2        scope of coverage of the FTCA --
 3   A    Yes.
 4   Q    -- the Federal Tort Claims Act?
 5   A    Yes.
 6   Q    What was that understanding?
 7   A    That they would cover certain aspects of the
 8        entity's operations, and we would cover
 9        whatever else they didn't.
10   Q    How did you determine the certain aspects that
11        the federal government was going to cover --
12        or the FTCA would cover?
13   A    (No response.)
14   Q    Did you know for sure?
15   A    No, I didn't.  That's why I don't know how to
16        answer that.
17   Q    Okay.  Do you recall whether it was your
18        understanding that the FTCA coverage was
19        limited only to medical malpractice?
20   A    No, that wasn't my understanding.
21   Q    Well, what was your understanding?
22   A    That they would cover their portion, the
23        contracts that they awarded to Bristol Bay.
24        They would cover them for their acts.
```

Sonntag Reporting Service, Ltd.
Geneva   Chicago   Wheaton
www.sonntagreporting.com
800.232.0265

EXHIBIT O
Page 3 of 6

DEPOSITION OF SALLY PADGITT
BY MR. DEVLIN

53

1  Q   Would this include general liability type
2      risks?
3  A   It could.
4  Q   Did you have an understanding concerning
5      whether the FTCA would cover Alaska
6      state-funded operations?
7  A   I'm sorry. Could you say that again, please?
8  Q   Did you have an understanding concerning
9      whether the federal government, through the
10     FTCA, would cover any of Bristol Bay's
11     operations that were funded by, for example,
12     the State of Alaska?
13 A   That was where we thought the hole might be,
14     so no, they wouldn't. We weren't certain that
15     they would cover those.
16 Q   What do you mean by "the hole" exactly?
17 A   Well, a gap or a gray area. They weren't --
18     we weren't certain what they were covering and
19     what they weren't. It -- it made some sense
20     to us that if they weren't providing the
21     funds, that there could possibly be an area
22     that they wouldn't cover, and so that's why
23     they purchased the coverage.
24 Q   What was the premium on this policy for the

Sonntag Reporting Service, Ltd.
Geneva   Chicago   Wheaton
www.sonntagreporting.com
800.232.0265

EXHIBIT O
Page 4 of 6

DEPOSITION OF SALLY PADGITT
BY MR. DEVLIN

54

```
 1              coverage on this policy?
 2       A      I think it was --
 3       Q      I know we looked at several --
 4       A      $16,000.
 5       Q      Okay.  That was $16,000 per year?
 6       A      Annually, yes.
 7       Q      Is that premium amount indicative of the scope
 8              of coverage by Continental?
 9       A      Yes.
10       Q      Please tell us what it's indicative of
11              concerning the scope.
12       A      Trying to cover all their liabilities that
13              fall outside of the federal funding, so
14              anything that would fall outside of that.
15       Q      Fall outside of what?
16       A      What the government -- the federal government
17              wouldn't cover.
18                     THE COURT REPORTER:  I'm sorry.
19              "Would not cover"?
20                     THE WITNESS:  Would not cover.
21                     MR. DEVLIN:  Could you read that
22              answer back?  Because I think --
23                     (The record was thereupon
24                      read by the reporter.)
```

Sonntag Reporting Service, Ltd.
Geneva   Chicago   Wheaton
www.sonntagreporting.com
800.232.0265

EXHIBIT O
Page 5 of 6

DEPOSITION OF SALLY PADGITT
BY MR. DEVLIN

55

1    MR. DEVLIN: Is that what you
2    meant to say? Let me ask the question again.
3    BY MR. DEVLIN:
4    Q    We were talking about the premium amount here,
5         $16,000 in this case, and I asked you whether
6         or not that amount was indicative of the scope
7         of coverage under the policy that you renewed.
8    A    I guess I don't understand the question.
9    Q    Okay. Well, if I understood your testimony
10        previously, you stated that the United States
11        government was not intended to be covered
12        under this policy, was not a named insured,
13        was not an additional insured; right?
14   A    Correct.
15   Q    All right. Was it your understanding, while
16        you were underwriting this policy, that the
17        policy was to cover any risks that fell under
18        the FTCA, the Federal Tort Claim Act?
19   A    No.
20   Q    All right. Just looking at the amount of
21        premium that was paid on this policy, was that
22        a consideration in coming up with the amount
23        of premium to be paid?
24   A    The consideration the government --

Sonntag Reporting Service, Ltd.
Geneva   Chicago   Wheaton
www.sonntagreporting.com
800.232.0265

EXHIBIT O
Page 6 of 6