Marcus R. Clapp
Matthew K. Peterson*
Craig F. Stowers*
Thomas V. Van Flein*
John J. Tiemessen

Legal Assistants
Judy L. Holder
Lewis E. Baker*
Yvonne B. Robinson*



**Clapp Peterson Stowers**
Attorneys at Law

*711 H Street, Suite 620
Anchorage, Alaska 99501-3442
Telephone: (907) 272-9272
Fax: (907) 272-9586

1603 College Road, Suite 200
Fairbanks, Alaska 99709-4175
Telephone: (907) 479-7776
Fax: (907) 479-7966

Reply to Anchorage

June 19, 1997

**RECEIVED**
**JUN 19 1997**
Office of
United States Attorney
Anchorage, AK

**Via Hand Delivery**

Kenneth Roosa, Esq.
Assistant United States Attorney
United States Dept. of Justice
United States Attorney's Office
222 W. 7th Ave. #9 Room 253
Anchorage, Alaska 99513-7567

Re:   U.S. Attorney's Tender of Defense of Federal Tort Claim
      Insured:      Bristol Bay Area Health Corporation
      Claimant:     United States, pursuant to its F.T.C.A. liability to Lori Wilson
      Case Name:    Wilson v. United States, A94-488 Civ. (HRH)
      CNA File No.: 751-7-A3892
      Our File No.: 647-464

      Continental GL Policy No. 93 CBP 06114933-94
      Continental GL Policy No. HMA 9500648-4

Dear Mr. Roosa:

    This letter is in response to your several letters to CNA Insurance Companies and most recently to me, in which your office has demanded defense and indemnity in a Federal Tort Claims Act action, under the two above-referenced Continental Insurance Company general liability insurance policies issued to Bristol Bay Area Health Corporation ("BBAHC"). The lawsuit arises out of the alleged negligence by BBAHC acting within the scope and course of its contractual duties as an Indian tribal contractor pursuant to the Indian Self-Determination and Education Assistance Act. It is our opinion that CNA has no duty under the above-referenced policies to defend or indemnify the United States, and we have been directed by CNA to advise you that CNA declines the United States' tender of defense and demand for indemnity.

EXHIBIT B
Page 1 of 9

A584



Assistant U.S. Attorney Kenneth Roosa
June 19, 1997
Page 2

I.  **Summary**

We understand that it is established that Bristol Bay Area Health Corporation's negligence caused the Federal Torts Claims Act plaintiff, Lori Wilson, to suffer severe personal injuries. In accordance with the Federal Tort Claims Act and the Indian Self-Determination and Educational Assistance Act, the torts of BBAHC, while acting as a contractor for the Indian Health Service/Public Health Service, are deemed as a matter of law to be the torts of the United States, and the injured plaintiff's exclusive remedy is to bring her claim against the United States Government in the federal court. Thus, the United States is the defendant in the federal action, and we understand that the United States has been found liable by summary judgment to the plaintiff for the injuries she sustained.

The United States Attorney's Office made a written tender of defense to CNA on February 20, 1997. (We also understand that the United States has on several previous occasions made written demands for defense and indemnity to CNA, and these previous tenders were denied.) The United States has taken the position that it is an insured under both policies. On May 27, you called and wrote me a letter, stating that you intend to begin negotiating a settlement with the plaintiff's attorney, and you indicated that the United States was giving CNA a last opportunity to enter the case, take over the settlement negotiations, and pay under the general liability policies.

It is our opinion that neither of the two referenced general liability insurance policies create in CNA a duty to defend or indemnify the United States in this case. Neither of the policies name the United States as an insured, nor do the facts pertaining to the issuance of the policies suggest that the United States was intended to be an insured under the policies. We do not think that the authorities cited by the United States support the proposition that the government is an additional insured or an implied insured under the policies. Further, one of the policies expressly excludes from coverage the premises where the plaintiff was injured.

From our factual investigation, it appears that the policies were obtained in recognition that although most of BBAHC's liabilities would be covered by the Federal Tort Claims Act (F.T.C.A.), there was a small risk that there might be instances where the F.T.C.A. would not apply to cover liability arising out of torts committed by BBAHC. Therefore, the two Continental polices were purchased to provide protection from liability in cases where the United States (or a court) might determine that the liability was not covered by the F.T.C.A. We have been informed that the premiums charged for the policies were relatively small, reflecting the relatively small risk being insured against. We have found no cases where a court has held that the United States is an additional insured or an implied insured under a general liability policy in the circumstances presented in this case.

EXHIBIT  *B*
Page  *2*  of  *9*

A585



Assistant U.S. Attorney Kenneth Roosa
June 19, 1997
Page 3

II. **The Indian Self-Determination Act and the Federal Tort Claims Act**

In 1975, the United States Congress enacted the Indian Self-Determination and Education Assistance Act, also known as Public Law 93-638 ("§ 638"). The terms of the Act are set forth at 25 U.S.C. § 450, et seq., as amended. The Congressional declaration of policy states that Congress recognizes the obligation of the United States to respond to the American Indian people's need for self-determination by assuring maximum Indian participation in the planning, conduct, and administration of educational and other programs and services (including health care programs and services) for the benefit of American Indians and Native Alaskans. 25 U.S.C. § 450a, as amended. The Secretary of Health and Human Services was authorized to enter into contracts ("§ 638 contracts") with any tribal organization to carry out any or all of his functions, authorities and responsibilities under the Indian Self-Determination Act. 25 U.S.C. § 450g (later repealed and transferred). Under these provisions, the federal government, through the Public Health Service and the Indian Health Service, has contracted with health care facilities to provide health and related services to American Indians and Alaska Natives.

Pursuant to P.L. 93-638 and 25 U.S.C. § 450g, BBAHC has contracted with the United States Public Health Service - Alaska Area Native Health Service "to provide a health service system for the Alaska Native People who live in the Contractor's regional area." U.S. Contract No. 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, dated October 1, 1987, p. 3 , § 1, Scope of Work. As such, BBAHC is a § 638 tribal contractor with the Indian Health Service/Public Health Service.

Pursuant to its § 638 contract, one of the services BBAHC provides is alcohol treatment services to Alaska Natives. BBAHC's Alcohol Transition Center, also known as Jake's Place, is a resident alcohol treatment facility.

As you know, Lori Wilson originally sued BBAHC for her injuries in the Alaska Superior Court. BBAHC was defended by CNA-appointed counsel pursuant to one of the above-referenced GL policies. BBAHC filed a motion to dismiss on the grounds that plaintiff's exclusive remedy was against the United States Government in federal court, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. The Alaska court and the plaintiff agreed, and the case was dismissed without prejudice. The case was refiled against the United States in the United States District Court for Alaska in Anchorage. This result obtained because the Federal Tort Claims Act, in conjunction with the Indian Self-Determination and Education Assistance Act, makes the United States directly liable for the torts of BBAHC and its employees, while acting within the scope of their duties as § 638 contractors.

EXHIBIT B
Page 3 of 9

A586


Clapp Peterson Stowers

Assistant U.S. Attorney Kenneth Roosa
June 19, 1997
Page 4

### III. Legal and Factual Analysis

You make the following arguments why CNA has a duty under one or both policies to accept the government's tender of defense and to provide indemnity. First, you assert that federal courts have consistently held that the fact that an insured is entitled to coverage by the United States pursuant to the Federal Tort Claims Act does not excuse the insured's insurance company from responsibility for an otherwise meritorious, covered claim. As discussed below, we disagree with this overly broad assertion. The cases you have cited do not state the asserted proposition, and we have found no case where the court has held that the insurer of a § 638 contractor is required to provide a defense and to indemnify the United States for liabilities that would otherwise be covered under the Federal Tort Claims Act.

The cases you have primarily relied upon are Government Employees Insurance Company v. United States, 349 F.2d 83 (10th Cir. 1965), cert. denied 382 U.S. 1026 (1966) ("GEICO"), and Dorcas v. Swanson, No. A93-0129 Civ. (Unpub. Order, U.S. District Court for District of Alaska, October 12, 1994). In GEICO, the United States was found to be an additional insured under an automobile liability insurance policy, which defined who was an "insured" to include the named insured and "any person or organization legally responsible for the use" of the automobile. The owner and operator of the automobile indicated in the application for insurance that he was a government employee, and that the intended use of the automobile was for personal and government business. The court held that the insurer was bound to know at the time that it issued the policy that only the United States was liable for the torts committed by its employees acting within the scope of their employment, that the insurer therefore knew that the named insurer could not be sued for liability caused by his negligence while performing his duties as a government employee, and that by insuring a government employee for the use of his vehicle on government business, the insurer obligated itself to pay on behalf of the United States in a Federal Tort Claims action. Thus, the language of the policy in defining who was an insured, plus the facts and conditions under which the policy was issued, and the provisions of the Federal Tort Claims Act, dictated the conclusion that the United States was an "additional insured" under the policy definition of the term "insured." A number of other courts have reached similar conclusions in the context of automobile liability insurance polices.

You have argued that in Dorcas, U.S. District Court Judge Holland (who is assigned as the judge in the instant case) ruled that Allstate Insurance Company was required to defend and indemnify the United States on the basis of an insurance policy issued to the insured even where the insured had no liability. Dorcas is entirely distinguishable from the instant case. In Dorcas, the Court held simply that the Federal Deposit Insurance Corporation was an insured under the policy because the policy expressly provided that any person or organization acting as the named insured's



Assistant U.S. Attorney Kenneth Roosa
June 19, 1997
Page 5

property manager was an insured, and that the FDIC was acting as the named insured's property manager following the default on the mortgage by the named insured.

    In this case, the general liability policies do not contain a definition of who is the "insured" that can reasonably be read to include the United States. The Commercial General Liability Coverage Part Declarations for both policies indicate that BBAHC is the Named Insured, and that it is an "Organization (Other than Partnership or Joint Venture)." The Commercial General Liability Coverage Forms (CG 00 01 11 88) for both policies state:

> 1. Insuring Agreement
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. . . .

Thus, the crux of the issue is to determine who is the insured. The CGL Coverage Form answers this question as follows:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. . . .
>
> The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Section II – WHO IS AN INSURED, provides in pertinent part:

> 1. If you are designated in the Declarations as:
>
> * * *
>
>    c. An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers and directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.
>
> 2. Each of the following is also an insured:
>
>    a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you. . . .

EXHIBIT B
Page 5 of 9    A588



Assistant U.S. Attorney Kenneth Roosa
June 19, 1997
Page 6

These provisions do not expressly state or reasonably suggest that the United States is an insured under the policies, nor do any other provisions state or suggest that the United States is an insured. Unlike the broadly encompassing automobile liability policy definition of who is an insured ("any person or organization legally responsible for the use") cited in the GEICO line of cases, there is no similar encompassing definition of the insured in the general liability coverage forms. From the plain language of the policy, we conclude that CNA would have a duty to pay those sums which BBAHC and its employees become legally obligated to pay in circumstances where BBAHC would be directly and actually liable for injuries its employees caused, however, inasmuch as BBAHC and its employees could not as a matter of law be held to be liable to the plaintiff in this case, and because the United States is not a named insured under either of the policies, CNA has no duty to defend or indemnify the United States.

You have further argued that the United States is an implied insured under the general liability policies, asserting that it would be unfair to allow CNA to disavow providing a defense and coverage where the risk was anticipated and substantial premiums were not only paid, but were paid by federal dollars provided to BBAHC under its § 638 contracts. Your reasoning is as follows: Continental Insurance Company knew at the time that it issued the two GL policies to BBAHC that the torts of BBAHC's employees who act within the scope of a § 638 contract are covered by the Federal Tort Claims Act. Continental also knew that a claimant's exclusive remedy for torts committed by BBAHC's employees acting within the scope of a § 638 contract is against the United States under the Federal Tort Claims Act. Thus, you argue that Continental sold general liability policies under which it knew it had no risk of liability unless it were required to defend and indemnify the United States, yet Continental received substantial premiums for issuing the GL policies. To now permit CNA to deny defense and indemnity by shifting liability to the United States under the Federal Tort Claims Act would be to give the insurer an unfair windfall for selling insurance for no real risk at all. Moreover, you argue that there is no exclusionary language in either of the GL policies excluding defense or coverage for the United States' liability under the Federal Tort Claims Act. For all of these reasons, the United States takes the position that it is an additional insured under the policies. We disagree with these arguments, for the following reasons.

We have spoken with Lori Wing of Brady & Company, who is the broker who sold the two GL policies at issue. Ms. Wing has extensive experience in providing insurance to § 638 contractors, including BBAHC. Ms. Wing informs us that BBAHC has long been aware that the torts that its employees might commit while acting within the scope of their duties under a § 638 contract would be covered by the Federal Tort Claims Act. However, BBAHC also recognized that not all of its services and programs are provided under its § 638 contracts. BBAHC also provides services and programs

EXHIBIT B
Page 6 of 9      A589



Assistant U.S. Attorney Kenneth Roosa
June 19, 1997
Page 7

that are conducted outside of § 638 contracts, and which are funded by non-§ 638 (and indeed, non-federal) sources. BBAHC also provides housing and services to its employees, the provision of which exposes BBAHC to potential liability for personal injury and property damage. Liabilities arising from these non-§ 638 services and programs would not be covered by the United States. There has also been the concern that a tort might be committed by BBAHC in a borderline case where § 638 might or might not be implicated, and the United States might take the position that it was not responsible for defending and covering liability for that tort under the Federal Tort Claims Act because BBAHC was not acting in the scope of a § 638 contract. Thus, after internal deliberations, and upon advice of its counsel, BBAHC elected to purchase general liability insurance to cover those cases where Federal Tort Claims Act coverage was not or might not be available.

Ms. Wing explained that the two above-referenced Continental Insurance Company policies were specifically sold to provide general liability insurance under these rare but foreseeable circumstances. Thus, Continental policy HMA 9500648-5 was purchased to provide general liability insurance covering BBAHC's hospital and dental clinic operations in cases where liability might be incurred under non-§ 638 contract circumstances. Continental policy 93 CBP 06114933-94 was purchased to provide general liability insurance for all other BBAHC premises and activities in cases where liability might be incurred in non-§ 638 contract circumstances. These two policies were designed and intended to supplement each other, but not to provide overlapping coverage. The CBP policy contains an exclusion that specifically excludes from coverage all hazards in connection with the ownership, maintenance, and use of the Alcohol Transition Center (Jake's Place), and the HMA policy insures hospital and dental clinic premises, and was calculated based on square footage that includes Jake's Place.

According to Ms. Wing, and contrary to the government's assertions, the premiums charged for these two policies were relatively small, and do not reflect the substantial cost of risk that would have been charged if the policies were intended to provide defense and indemnity to the United States for § 638 liabilities under the Federal Tort Claims Act. The premiums are small because BBAHC's exposure to liability for non-Federal Tort Claims Act torts is relatively rare. The premium charged for the HMA policy, which was calculated on square footage that included Jake's Place, was only $19,346. This premium purchased a $2 million general aggregate limit; a $2 million products limit; a $1 million personal and advertising injury limit; a $1 million each occurrence personal injury/property damage limit; a $50,000 fire damage limit; and a $1 million employee benefits liability. The premium for the CBP policy, which insured BBAHC maintenance and warehouse facilities, single and multiple family dwellings, apartment buildings, dormitories, and which provided for similar or somewhat higher limits than the HMA policy, and which also provided additional coverages,

EXHIBIT B
Page 7 of 9

A590



Assistant U.S. Attorney Kenneth Roosa
June 19, 1997
Page 8

including, for example, commercial automobile coverage and commercial property coverage, was $43,480. These premiums are also relatively small for the coverage and limits they purchased. If BBAHC had sought to purchase general liability insurance to cover Federal Tort Claims Act liabilities, the premiums would have been much larger, reflecting the true cost of insuring against that increased degree of risk.

You have also relied on an Alaska Supreme Court case, <u>Stewart-Smith Haidinger, Inc. v. Avi-Truck, Inc.</u>, 682 P.2d 1108 (Alaska 1984), for the proposition that the United States is an implied insured where the risk assumed by Continental is exactly the same whether the insured is BBAHC or the United States. Under this reasoning, it is argued that Continental issued general liability policies to cover liabilities arising on covered BBAHC's premises from the negligence of its employees during a covered period of time. In this context, you contend that CNA is unjustly enriched having collected a premium paid by BBAHC with funds provided by the United States, yet being exposed to no potential liability. As discussed above, these assertions are factually incorrect, and on this basis distinguish BBAHC's case from that cited above.

In <u>Stewart-Smith</u>, the Alaska Supreme Court held that where the risk to the insurer was unchanged and where a third party is within a class intended to be benefited by the parties to an insurance contract, a third-party beneficiary insurance contract may be implied at law. The court based its conclusion on the principle that before a third party right in a contract will be recognized, the parties to the contract must intend that at least one purpose of the contract is to benefit the third party. In our case, neither BBAHC nor Continental intended that the general liability coverage would cover the risk of liabilities covered by the Federal Tort Claims Act. To the contrary, the intention of the parties to the contracts was to cover the small risk of liability arising in cases where the Federal Tort Claims Act would not apply.

There is an additional reason why the United States should not be held to be an implied insured in this case. Had the United States wished to be a beneficiary of BBAHC's general liability insurance policies, or had the United States wanted to require BBAHC to obtain general liability insurance as a condition of receiving § 638 contracts, it could have so specified in its § 638 contracts with BBAHC. The Indian Self-Determination Act's provision authorizing the Secretary of Health and Human Services to enter into § 638 contracts also expressly authorizes the Secretary to require liability insurance as a prerequisite to the contract if he so chooses:

> The Secretary of Health and Human Services is authorized to require any tribe requesting that he enter into a contract pursuant to the provisions of this subchapter to obtain adequate liability insurance . . . .

EXHIBIT B
Page 8 of 9

A591



Assistant U.S. Attorney Kenneth Roosa
June 19, 1997
Page 9

25 U.S.C. § 450g(c); see also 25 U.S.C. § 450f(c) (identical provision pertaining to the Secretary of the Interior's authority to make § 638 contracts and to require liability insurance). As far as we have found, there is no requirement in any of BBAHC's § 638 contracts with the Indian Health Service/Public Health Service that BBAHC obtain liability insurance for the benefit of the United States. The United States' failure to require that BBAHC obtain general liability insurance for the benefit of the United States should serve as an additional reason to deny the United States' claim that it is an implied insured or an implied third party beneficiary of BBAHC's Continental general liability policies.

    Based on the foregoing factual understanding and legal analysis, we conclude, and CNA agrees, that CNA has no duty under either of the two policies to defend or indemnify the United States. If you have any questions about our analysis, or if you have additional information which you believe we have not considered that would be material to our analysis, we urge you to immediately call or correspond.

                            Sincerely,

                            Clapp, Peterson & Stowers
                            Counsel to CNA Insurance Companies

                            By: _____
                                  Craig F. Stowers

CFS/jkt

EXHIBIT B
Page 9 of 9

A592