Gary A. Zipkin, Esq.
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, AK  99501
Phone:    (907) 793-2200
Fax:      (907) 793-2299
E-mail:   gzipkin@guessrudd.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> CNA FINANCIAL CORPORATION ) <br> AND THE CONTINENTAL ) <br> CASUALTY COMPANY d/b/a ) <br> THE CONTINENTAL INSURANCE ) <br> COMPANY, ) <br> ) <br> Defendant. ) <br> _____) | Case No. 3:98-cv-285-JWS |

CONTINENTAL CASUALTY COMPANY'S
MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP"), The

Continental Casualty Company d/b/a The Continental Insurance Company (hereinafter

"Continental") hereby moves for an order granting it summary judgment on all claims asserted

against it by the United States. This motion is supported by the following memorandum of points and authorities.

Preliminary Statement

There was no contract between Continental Casualty Company and anyone relevant to this case -- not Bristol Bay, and not the United States. For this reason, Continental Casualty respectfully moves for summary judgment. Even if the other remaining defendant, The Continental Insurance Company, has some liability to the United States, as a matter of basic contract law Continental Casualty does not.

In the context of an insurance coverage case, "bad faith" stems from the breach of a covenant of good faith and fair dealing. That covenant does not exist without a contract because the duties which are owed are owed only by the parties. Here, the only contract at issue is an insurance policy between Bristol Bay and The Continental Insurance Company. There is no contract between Bristol Bay (or the United States) and Continental Casualty. Because there is no contract, there is no implied covenant of good faith and fair dealing. Therefore, there can be no bad faith liability.

Nor is Continental Casualty liable under an alter ego theory. While Continental Insurance was recently acquired by Continental Casualty, there is no evidence that Continental Insurance is a sham corporation or any evidence why the veil between the two companies can or should be pierced. Indeed, the government has not even alleged, let alone proven, that

Continental Casualty is liable for Continental Insurance's debts as Continental Insurance's alter ego.

Statement of Facts

Continental Insurance, which had a net worth of nearly $1.7 billion at the end of 2004, started insuring the Bristol Bay Area Health Corporation ("Bristol Bay") in 1989.[1] The policy at issue in this case, HMA 9500648-5, went into effect on September 30, 1993 and lasted for a term of one year.[2] The parties to that contract are Bristol Bay and The Continental Insurance Company.[3] Although the United States has been deemed an implied insured under this policy (creating an implied contract between the United States and Continental Insurance), Continental Casualty has never been a party to the policy. Accordingly, there is no contract between Continental Casualty and the United States, implied or otherwise.

In May of 1995, after Policy HMA 9500648-5 expired, Continental Casualty and Continental Insurance became corporate affiliates, although neither was owned by the other.[4] Prior to that date, Continental Casualty and Continental Insurance had no relationship.[5]

---

[1] Deposition of Lori Wing dated December 1, 1998 ("Wing Tr.") at 69:12-17, attached as Exhibit A to the Affidavit of Gregory G. Silvey dated March 16, 2006 ("Silvey Aff."); Affidavit of Lawrence Boysen dated March 14, 2006 ("Boysen Aff.") at ¶ 3.
[2] Policy HMA 9500648-5, Silvey Aff. Ex. B.
[3] Id.
[4] Boysen Aff. at ¶ 2.
[5] Id.

Recently, in 2003, Continental Casualty acquired Continental Insurance.[6] Continental Casualty continues to be Continental Insurance's parent, and it provides Continental Insurance with managerial services such as underwriting, investing, claims adjusting, and sales strategizing.[7] However, Continental Insurance is its own corporate entity.[8] As of the end of 2004, Continental Insurance had a net worth of over 1.685 billion dollars.[9] Continental Insurance owns its own property, issues its own insurance policies, has its own bank accounts, and premiums it receives pass through its own books and records.[10] In exchange for Continental Casualty's services, Continental Insurance, like Continental Casualty's other subsidiaries, pays a share of Continental Casualty's expenses.[11]

Argument

1. CONTINENTAL CASUALTY HAS NO CONTRACTUAL RELATIONSHIP WITH THE GOVERNMENT, AND HENCE NO DIRECT LIABILITY

Where there is no contractual relationship, there can be no bad faith. This straightforward rule precludes any direct claims against Continental Casualty.

A bad faith cause of action must be premised on contractual duties. State Farm Fire & Casualty Co. v. Nicholson, 777 P.2d 1152, 1154 (Alaska 1989) ("The tort of bad faith in

---

[6] Id.
[7] Boysen Aff. at ¶ 3.
[8] Id.; see Order dated September 4, 2001, Dkt. 57 ("it now seems undisputed that Continental Casualty Company is a separate corporate entity from Continental Insurance Company").
[9] Id.
[10] Id.
[11] Id.

the insurance context can be traced to the covenant of good faith and fair dealing, a contractual duty implied in all insurance policies."). As the duty of good faith and fair dealing is an implied contractual duty, it does not exist independent of contract. O.K. Lumber Co., Inc. v. Providence Washington Insurance Co., 759 P.2d 523, 526 (Alaska 1988) ("we decline to recognize a tort duty of good faith and fair dealing independent of a contractual relationship"). Therefore, there must be an underlying contract between a claimant and defendant for the defendant to be liable for bad faith. Id.; cf. Nicholson, 777 P.2d at 1156 (holding that there could be bad faith only because there was a contract between the parties). Third-party claimants are consistently barred from bringing bad faith suits against insurers. O.K. Lumber Co., 759 P.2d at 526; see also Niemeyer v. United States Fidelity & Guar. Co. 789 P.2d 1318, 1322 (Okla. 1990) (without a statutory or contractual relationship, third party claimants cannot bring bad faith action against insurer because they are strangers to the contract).[12]

       For the same reason, an insured cannot bring an implied covenant action against a third party. See Continental Insurance Co. v. Bayless and Roberts, Inc., 609 P.2d 281, 287-88 (Alaska 1980) (claims supervisor who is not party to insurance contract is not bound by implied covenant of good faith and fair dealing); Iverson v. Superior Ct., 127 Cal. Rptr. 49, 51 (Cal. App. 1976) (although an unreasonable failure to settle would constitute a breach of the insurer's contractual duty of good faith and fair dealing, claims supervisor owed no contractual duty of

---

[12] Even Deborah Senn, the Government's bad faith expert, recognizes that bad faith requires privity. Deposition of Deborah Senn dated January 11, 2006 ("Senn Tr.") at 105:20-24, Silvey Aff. Ex. C ("in order to commit bad faith you have to do it against your own insured. And so, if the U.S. was not an implied insured, then the bad faith arguments go away because their status is not such that they can have bad faith committed against them.").

good faith to the insured).  Even where an entity serves as agent for a contracting party, there still can be no implied covenant claim against the agent because there is no privity.  <u>Coulson v. March & McLennan</u>, 973 P.2d 1142, 1147 (Alaska 1999) (implied covenant claim against agent of contracting party fails because the agent does not owe any duty under an implied covenant).

These authorities preclude any direct cause of action against Continental Casualty.

2.  CONTINENTAL CASUALTY IS NOT INDIRECTLY LIABLE
    FOR THE CONDUCT OF ITS LATER-ACQUIRED SUBSIDIARY

Continental Casualty cannot be liable under an alter ego theory either.  Under Alaska law, there is a well-settled presumption of corporate separateness.  <u>Marine Solution Services, Inc. v. Horton</u>, 70 P.3d 393, 401 (Alaska 2003) ("It is well established that a corporate entity is distinct although all or a majority of its stock is owned by a single individual or corporation") (internal citations omitted).  Even when the subsidiary is wholly-owned, a parent corporation ordinarily is not liable for the alleged wrongs of its subsidiary.  <u>Id.</u>; <u>see</u> <u>Jackson v. General Electric Co.</u>, 514 P.2d 1170, 1172-1173 (Alaska 1973) (refusing to pierce the corporate veil and hold the parent liable for an intentional tort committed by the subsidiary even though there was a very close relationship between the two corporations).

While there are limited circumstances in which a parent company may be held liable for the conduct of its subsidiaries, such circumstances are rare.  <u>See</u>, <u>e.g.</u>, <u>Sonora Diamond</u>

Corp. v. Superior Court, 83 Cal. App. 4th 523, 539 (2000) (given the strong presumption of corporate separateness, the doctrine of alter ego is "an extreme remedy, sparingly used") (citations omitted).

        The burden falls on the party seeking to pierce the corporate veil to show that this extreme remedy should be invoked. Volkswagenwerk, A.G. v. Klippan GmbH, 611 P.2d 498, 506 (Alaska 1980). The United States has not even attempted to shoulder that burden. Nowhere in its complaint does the United States even allege that Continental Casualty is the alter ego of Continental Insurance, let alone allege facts that would support such a conclusion. See Second Amended Complaint, Dkt. 71. That alone precludes application of the doctrine. See Kennecorp Mortg. & Equities, Inc. v. First Nat. Bank of Fairbanks, 685 P.2d 1232, 1240 (Alaska 1984) (refusing to make a finding of alter ego where appellee failed to list facts which would meet the tests of corporate alter ego); Zinaman v. USTS New York, Inc., 798 F. Supp. 128, 132 (S.D.N.Y. 1992) (dismissing parent corporation where plaintiff alleged that parent corporation "owns and controls" subsidiary but did not allege "control and domination," an alter ego requirement); Nielson v. Union Bank of California, NA, 290 F. Supp. 2d 1101, 1116-1118 (C.D. Cal. 2003) ("[A] plaintiff must allege specifically . . . the elements of alter ego liability, as well as facts supporting [them]."); Wady v. Provident Life and Accident Ins. Co. of America, 216 F. Supp. 2d 1060, 1067 (C.D. Cal. 2002) (alter ego cannot be raised in opposition to summary judgment motion where not pleaded).

In any event, no evidence supports application of the doctrine. A party seeking to pierce the corporate veil of a corporation must engage in a fact-intensive, eleven-prong analysis that questions whether the subsidiary is grossly undercapitalized, whether the subsidiary pays its own expenses and losses, whether the subsidiary was incorporated by the parent, whether the subsidiary has any business other than that with the parent, whether the subsidiary has followed the formal requirements of a corporation, and other factors. Jackson, 514 P.2d at 1173; see Elliot v. Brown, 569 P.2d 1323 (Alaska 1977) (piercing the corporate veil requires "considerably more than mere control; it exists to prevent a party from obtaining an advantage through deceptive or manipulative conduct"). Other Alaska cases require a showing that the corporate entity to be pierced was used "to defeat public convenience, justify wrong, commit fraud, or defend crime." Murat v. F/V Shelikof Strait, 793 P.2d 69, 76 (Alaska 1990).

Here, the relevant factors do not apply. There is no evidence that Continental Insurance is undercapitalized. To the contrary, the record establishes that Continental Insurance has a substantial net worth, owns its own property, has its own bank accounts, and its receivables flow through its own books and records.[13] Continental Insurance was organized in 1853, over one hundred and forty years before Continental Casualty had anything to do with it.[14] The United States cannot show that Continental does not pay its own expenses. To the contrary, the record shows that Continental Insurance pays for its share of the services provided by Continental Casualty.[15] There is no evidence that Continental Insurance's creditors are

---

[13] Boysen Aff. ¶ 3.
[14] Boysen Aff. ¶ 2.
[15] Boysen Aff. ¶ 3.

disadvantaged or that it is anywhere close to insolvency. There is also no evidence that Continental Insurance has failed to follow the formal requirements of a corporation. There is no evidence that it has not paid its taxes or filed appropriate corporate papers. There is no evidence that Continental Insurance only does business with its parent company. There is no evidence that Continental Insurance has been used to defeat public convenience, justify wrong, commit fraud, or defend crime. There is, in short, no evidence that even comes close to satisfying the heavy burden the Government must meet to pierce the corporate veil.[16]

Conclusion

For the foregoing reasons, Continental Casualty Company respectfully requests that the Court grant it summary judgment on all claims asserted against it by the United States.

---

[16] Even Ms. Senn, the Government's expert, admits that there is no evidence that Continental Insurance was structured to avoid liability. Senn Tr. at 114:23, Silvey Aff. Ex. C.

DATED at Anchorage, Alaska, this 16th day of March, 2006.

        GUESS & RUDD P.C.
        Attorneys for Defendants

By:     s/Gary A. Zipkin
        Guess & Rudd P.C.
        510 L Street, Suite 700
        Anchorage, Alaska  99501
        Phone: 907-793-2200
        Fax:   907-793-2299
        Email: gzipkin@guessrudd.com
        Alaska Bar No. 7505048


QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
Attorneys for Defendants

By:    s/A. William Urquhart
        Quinn Emanuel Urquhart
          Oliver & Hedges, LLP
        865 South Figueroa Street, 10th Floor
        Los Angeles, CA  90017
        Phone: 1-213-443-3000
        Fax:   1-213-443-3100
        Email: billurquhart@quinnemanuel.com

CERTIFICATE OF SERVICE

I hereby certify that on the
16th day of March, 2006, a copy
of the foregoing document was served
electronically on:

Richard L. Pomeroy, Esq.
A. William Urquhart, Esq.

and by regular U.S. mail on:

Richard Stone, Esq.
Civil Division, Torts Branch
U.S. Department of Justice
1331 Pennsylvania Avenue, N.W.
Washington, D.C.  20530

Guess & Rudd P.C.


By:    s/Gary A. Zipkin

F:\DATA\6024\1\pleading\00service.doc