DEBORAH M. SMITH
Acting United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov

RICHARD R. STONE, SR.
Trial Attorney
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Phone: (202) 616-4291
Fax: (202) 616-5200
E-mail: richard.stone@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>THE CONTINENTAL CASUALTY COMPANY, dba THE CONTINENTAL INSURANCE COMPANY,<br><br>　　　　　Defendant. | Case No. 3:98-cv-285-JWS<br><br>**PLAINTIFF UNITED STATES' MOTION TO HAVE READ TO JURY THE FACTS FROM SUMMARY JUDGEMENT RULINGS** |

INTRODUCTION

　　　　This court has decided liability and coverage in the United States' favor on summary

judgment. Dkt. 57, 61, 87 and 166. In its opinions, particularly at docket number 57, the Court

has stated the material facts about which there was no genuine issue raised. Those material facts formed the basis for the Courts' opinions and the jury should be permitted to know those facts. Having specified "the facts that appear without substantial controversy...," Federal Rule of Civil Procedure 56(d) further states that " [u]pon the trial of the action the facts so specified <u>shall be deemed established</u>, and the trial shall be conducted accordingly." (Emphasis added) Accordingly, plaintiff United States moves for permission to read the following facts to the jury following the statement: "These facts are established in this case."

## FACTS

1. "This is an insurance coverage dispute." Dkt. 57 at 2.[1]

2. "Pursuant to an agreement with the United States under the Indian Self-Determination and Education Assistance Act, Public Law 93-638 <u>codified</u> at 25 U.S.C. § 450 ("ISDEA"), Bristol Bay Area Health Corporation ("BBAHC") operated an alcohol abuse facility known as "Jake's Place" near Dillingham, Alaska." Dkt. 57 at 2.

3. "The ISDEA (also sometimes referred to as Section 638) was enacted in 1975." Dkt. 57 at 2-3.

4. "Congress . . . amended ISDEA in 1990 to provide that the Federal Tort Claims Act ("FTCA") covers negligence of tribal health center employees acting in the scope of employment based on the performance of self-determination contracts." Dkt. 57 at 3.

---

[1] Docket and page numbers are not part of the facts to be read to the jury, but only for convenience in finding them in the Courts' orders.

     5.    "[A]ny civil suit filed against a tribal health center operating under a Section 638 contract is deemed to be an action against the United States and covered by the FTCA." Dkt. 57 at 3.

     6.    "BBHAC was insured by Continental under a commercial general liability policy numbered HMA 9500648-5. . . ." Dkt. 57 at 3.

     7.    "Policy HMA 9500648-5 is the policy at issue in this case." Dkt. 57 at 3.

     8.    "It was in effect for a one year period beginning September 30, 1993." Dkt. 57 at 3.

     9.    "On November 27, 1993, Lori Wilson attended a dance and social function at Jake's Place." Dkt. 57 at 3.

     10.    "Blanche Kallstrom [another visitor at Jake's Place] accidentally gave Wilson a glass of commercial strength dishwashing liquid to drink when Wilson asked for some juice." Dkt. 57 at 3.

     11.    "Wilson suffered serious internal injuries." Dkt. 57 at 3.

     12.    "Wilson filed suit against BBAHC in the Superior Court for the State of Alaska." Dkt. 57 at 3.

     13.    "BBAHC tendered defense to Continental. Continental accepted defense and retained counsel for BBAHC. BBAHC's counsel moved to dismiss the suit from state court on the grounds that BBAHC's employees were deemed to be employees of the United States for purposes of tort liability under ISDEA, and consequently that the state court lacked jurisdiction. Wilson and the state court agreed. Wilson's state suit was dismissed without prejudice." Dkt. 57 at 3.

14. "Wilson filed suit against the United States in this court. The United States filed a third-party claim against Kallstrom. Kallstrom counterclaimed for negligent infliction of emotional distress. The United States tendered defense to Continental on January 6, 1995 referencing the wrong policy, Policy 93 CBP 06114933-94. BBAHC's counsel responded on February 13, 1995. Identifying himself as Continental's counsel, BBAHC's counsel rejected the tender. BBAHC's counsel argued that the United States was not an additional insured under the insurance policy and that the policy included a premises exclusion barring coverage for the premises where the accident occurred." Dkt. 57 at 4.

15. "BBAHC was covered under a second insurance policy (policy HMA 9500648-5). The United States . . . tendered defense to Continental again on June 6, 1995. This time, BBAHC's counsel advised that he was not authorized to respond on behalf of Continental, and that Continental would respond on its own. Continental did not respond. The United States wrote directly to Continental on September 13, 1995. Continental answered on October 3, 1995. Relying upon the grounds set forth in the February 13, 1995 letter, Continental rejected the tendered defense." Dkt. 57 at 4.

16. "The United States tendered defense to CNA Healthpro, a successor to Continental, on February 20, 1997. The United States advised CNA that discovery was nearing a close. Thereafter, in May 1997, the United States notified CNA that a settlement with Wilson was pending. CNA rejected the tender of defense on June 19, 1997." Dkt. 57 at 4.

17. "The United States settled all claims with Wilson on August 28, 1997 for $2.8 million." Dkt. 57 at 4.

18. "In February 1998, the United States secured summary judgment in its favor dismissing Kallstrom's counterclaim . . . . Kallstrom appealed to the Ninth Circuit."  Dkt. 57 at 4-5.

19. "The United States filed this suit on August 14, 1998, and filed an amended complaint on October 26, 1998."  Dkt. 57 at 5.

20. "The insurance policy at issue in this case, HMA 9500648-5, was effective from September 30, 1993 to September 30, 1994."  Dkt. 57 at 5.

21. "CNA's underwriter for this policy was Debra Patricia Wyatt-Brown ("Wyatt-Brown")."  Dkt. 57 at 5.

22. "Crystal Renee Brown, Continental's designated Rule 30(b)(6) witness, testified that Continental had a duty to defend (if not indemnify) the United States."  Dkt. 57 at 8.

23. "[T]he premium was determined by the square footage of the premises."  Dkt. 57 at 8.

24. "Wyatt-Brown testified that the premium was never reduced because of the FTCA."  Dkt. 57 at 8.

25. "[T]he policy lists numerous exclusions, none of which excludes acts also covered by the FTCA."  Dkt. 57 at 8.

26. "[T]he policy contains no language indicating that the parties intended to provide coverage for risks related to activity which would not be covered by the FTCA."  Dkt. 57 at 8-9.

27. "No contemporaneous written documentation appears to confirm any intent to not cover acts also covered by the FTCA."  Dkt. 57 at 9.

28. "Wyatt-Brown testified that she likely would have documented any intention to exclude acts also covered by the FTCA". Dkt. 57 at 9.

29. "Wyatt-Brown testified that she had not seen and was not aware of any documentation memorializing an intent to exclude coverage for acts falling under the FTCA." Dkt. 57 at 9.

30. "[P]remiums increased from approximately $13,000 in 1989 (when the FTCA did not cover acts of BBAhC's employees) to over $19,000 in 1993 (when the FTCA covered acts of BBAHC's employees)." Dkt. 57 at 9-10.

31. "The purpose for the insurance policy was to provide commercial general liability coverage." Dkt. 57 at 14.

32. "BBAHC's employees were considered employees of the United States under ISDEA." Dkt. 57 at 14.

33. "As amended in 1990, ISDEA provides that the FTCA covers negligence of tribal health center employees acting in the scope of employment based on the performance of self-determination contracts." Dkt. 57 at 14.

34. "[C]ivil suits filed against a tribal health center such as BBAHC operating under a Section 638 contract are deemed to be actions against the United States and covered by the FTCA." Dkt. 57 at 14-15.

35. "Continental must have known this in 1993 when issuing the policy to BBAHC." Dkt. 57 at 15.

36. "The premium was not reduced because of the FTCA." Dkt. 57 at 15.

37.  "Although the policy includes a provision addressing other primary insurance coverage, the policy does not identify FTCA coverage as primary or excess insurance coverage." Dkt. 57 at 15.

38.  "[I]f the parties actually intended to exclude acts covered by the FTCA or to only provide coverage for gaps where the FTCA did not apply, premiums should have been reduced during these years." Dkt. 57 at 16.

39.  "[T]he premium was established without reference to FTCA liability." Dkt. 57 at 16.

40.  "The United States first tendered Wilson's claims to Continental on January 6, 1995." Dkt. 57 at 21.

41.  "Citing case authorities, the United States briefly summarized its position that it was covered under the policy." Dkt. 57 at 21.

42.  "Continental had already retained James B. Friderici of the law firm of Delaney, Wiles et al. To represent BBAHC." Dkt. 57 at 21.

43.  "As retained counsel for BBAHC, Friderici owed BBAHC his full and undivided loyalty and allegiance." Dkt. 57 at 21.

44.  "Friderici authored a February 13, 1995 letter on behalf of Continental in which he rejected the United States' tender." Dkt. 57 at 22

45.  "Friderici rejected tender primarily because the specific policy referenced and relied upon by the United States excluded acts arising on the premises of the Alcohol Transition Center ("Jake's Place")." Dkt. 57 at 22.

46.  "Friderici neither cited nor discussed any relevant case law." Dkt. 57 at 22.

47. "Friderici and Continental did not advise the United States that there was a separate policy covering Jake's Place." Dkt. 57 at 22.

48. "[A]s of June 1, 1995, over three months after Friderici's February 13, 1995 letter authored on Continental's behalf, BBAHC's counsel had 'not yet formed a final opinion whether the United States is an insured person under the applicable general liability policy.'" Dkt. 57 at 22. In that letter, BBAHC's counsel, Mr. Stewart, rejected any contrary conclusion held by Friderici and advised him that 'if either you or Continental had been relying on any verbal statements I may have made . . ., it would have been prudent to confirm your understandings in writing.'" Dkt. 57 at 22.

49. "Friderici (BBAHC's litigation counsel) rejected tender even though his client (BBAHC) had not reached any conclusion regarding whether the United States was an implied insured under its policy." Dkt. 57 at 22.

50. "On June 6, 1995, after discovering the existence of the second policy covering Jake's Place, the United States again tendered defense to Continental." Dkt. 57 at 22.

51. "Friderici answered this second tender on June 8, 1995 advising that he was not authorized to respond, but that he would forward the tender to Continental." Dkt. 57 at 22-23.

52. "Friderici represented that 'someone on behalf of Continental will respond to your tender.' However, no one ever did." Dkt. 57 at 23.

53. "After three additional months passed, the United States wrote directly to Continental and submitted copies of all correspondence pertaining to its tenders." Dkt. 57 at 23.

54. "Continental responded on October 3, 1995 by again rejecting tender." Dkt. 57 at 23.

55. In rejecting the tender, "Continental expressly relied upon Friderici's February 13, 1995 rejection letter . . . ."  Dkt. 57 at 23.

56. "[T]he February 1995 letter did not address the applicable policy."  Dkt. 57 at 23

57. "Continental made no attempt to discuss or distinguish the legal authorities cited in the United States' correspondence."  Dkt. 57 at 23.

58. "Sixteen . . . months passed during which the United States reached a point where it was engaging in final settlement negotiations with Wilson."  Dkt. 57 at 23.

59. "On February 20, 1997, the United States wrote CNA Healthpro, Continental's successor corporation, and again tendered Wilson's claim for a third time."  Dkt. 57 at 23.

60. "The United States set forth all relevant facts, including the procedural history related to Wilson's lawsuit, and again discussed in considerable detail the legal principles supporting tender."  Dkt. 57 at 23.

61. "On March 18, 1997, CNA acknowledged receipt of the United States' third tender, and promised to respond."  Dkt. 57 at 23.

62. "No further word was heard."  Dkt. 57 at 23.

63. "On May 16, 1997, the United States contacted CNA and notified it that it had received a settlement demand from Wilson's counsel."  Dkt. 57 at 23.

64. "CNA retained Craig Stowers of the law firm of Clapp, Peterson and Stowers to respond to the United States' tender."  Dkt. 57 at 24.

65. "Stowers rejected tender in a June 19, 1997 letter."  Dkt. 57 at 24.

66. "Stowers advised the United States, 'It is our opinion that neither of the two referenced general liability insurance policies create in CNA a duty to defend or indemnify the United States in this case.'"  Dkt. 57 at 24.

67. "Continental's . . . 30(b)(6) witness later testified that Continental did have a duty to defend even if it did not have a duty to indemnify."  (Emphasis in original) Dkt. 57 at 24.

68. "Stowers advised the United States that '[f]rom our factual investigation. . . .the two Continental policies were purchased to provide protection from liability in cases where the United States (or a court) might determine that the liability was not covered by the F.T.C.A.'" Dkt. 57 at 24.

69. "Stowers also stated that '[w]e have been informed that the premiums charged for the policies were relatively small, reflecting the relatively small risk being insured against.'" Dkt. 57 at 24.

70. "[T]he undisputed factual record developed during this case shows that the premiums were based on square footage, increased over the course of years, and were never reduced in light of any consideration related to FTCA coverage." Dkt. 57 at 24.

71. "[B]ased on the record in this case, the United States' tenders where not reasonably evaluated by Continental either on the facts or relevant legal principles." Dkt. 57 at 24.

## CONCLUSION

For the foregoing reasons the United States moves the Court to permit the listed facts to be read to the jury.

Respectfully requested this 4th day of April, 2006, in Anchorage, Alaska.

DEBORAH M. SMITH
Acting United States Attorney

s/Richard L. Pomeroy
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov
AK #8906031

s/Richard R. Stone, Sr.
Trial Attorney
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Phone: (202) 616-4291
Fax: (202) 616-5200 fax
E-mail: richard.stone@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2006,
a copy of the foregoing PLAINTIFF
UNITED STATES' MOTION TO HAVE
READ TO JURY THE FACTS FROM
SUMMARY JUDGEMENT RULINGS
was served electronically on Gary A. Zipkin
and William Urquhart, and via U.S. mail on

Rebecca L. Ross
Ross, Dixon & Bell, LLP
55 West Monroe Street, Suite 3000
Chicago, IL 60603-5758

s/ Richard L. Pomeroy