Gary A. Zipkin, Esq.
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, AK  99501
Phone:   (907) 793-2200
Fax:     (907) 793-2299
E-mail:  gzipkin@guessrudd.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CNA FINANCIAL CORPORATION | ) | |
| AND THE CONTINENTAL | ) | |
| CASUALTY COMPANY d/b/a | ) | |
| THE CONTINENTAL INSURANCE | ) | |
| COMPANY, | ) | Case No. 3:98-cv-285-JWS |
| | ) | |
| Defendant. | ) | |
| | ) | |

DEFENDANTS' MOTION IN LIMINE NO. 5
TO EXCLUDE TESTIMONY OF RICK R. GASKINS

Preliminary Statement

The United States' financial expert, Rick Gaskins, is prepared to testify about

only one company, and he chose the wrong one.  Though he purports to offer net worth opinions

to help the jury decide how much money it should award the Government in punitive damages, Mr. Gaskins' analysis is based exclusively on Continental Casualty Company's financial information. Continental Casualty, however, is not liable for bad faith, and its financial information is therefore irrelevant. Mr. Gaskins ignores the only relevant party, The Continental Insurance Company, entirely. Accordingly, his testimony should be precluded altogether.

Even if Continental Casualty could have some liability, Mr. Gaskins' opinions cannot be admitted as against The Continental Insurance Company. The admission of evidence about Continental Casualty's net worth would likely induce the jury to exaggerate any award of punitive damages against Continental Insurance, which is the party that issued Bristol Bay's insurance policy and rejected the Government's tender. The risk of that undue prejudice requires exclusion of Mr. Gaskins' opinions.

In any case, the Court should exclude Mr. Gaskins' testimony about how well-paid Continental Casualty's and CNA Financial Corporation's executive officers are. That unprecedented testimony is irrelevant and highly prejudicial. Evidence of a defendant's net worth may be admissible to show its ability to pay a punitive damages award, but evidence that a defendant pays its officers a lot of money will only inflame the jury.

## Argument

I. THE COURT SHOULD EXCLUDE THE GOVERNMENT'S EXPERT TESTIMONY UNLESS IT IS RELEVANT, WOULD ASSIST THE JURY, AND IS NOT UNDULY PREJUDICIAL

Under the Federal Rules of Evidence, the Court has a "gatekeeping function" when it comes to expert testimony -- the Court has a duty to exclude testimony that is unreliable,

irrelevant, unduly prejudicial or confusing, or that otherwise will not assist the jury.  Rule 702 "establishes a standard of evidentiary reliability . . . and requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility."  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 590, 592 (1993); see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999).  In order to be admissible, expert testimony must be both reliable and relevant, and its probative value must not be outweighed by dangers of prejudice or confusion of the issues.  See Kumho Tire Co., 526 U.S. at 147; Daubert, 509 U.S. at 590-91.

The relevance of an expert's opinion is measured by the same standards that govern admission of other types of evidence, but is also analyzed under Rule 702 to determine whether the proposed testimony "fits" the facts of the case.  Daubert, 509 U.S. at 591-92.  Even if sufficiently reliable, an expert's opinion is not admissible if it will be "unhelpful" to the trier of fact and does not fit the facts of the case.  Id.; City of Tuscaloosa v. Harcros Chemicals, Inc., 158 F.3d 548, 565 (11th Cir. 1999) ("[An expert's] testimony is admissible only insofar as it assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.").

Further, the Court should exclude even "otherwise admissible" expert testimony if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury under Rule 403.  See Jinro America Inc. v. Secure Investments, Inc., 266 F.3d 993, 1005-06 (9th Cir. 2001).  "[T]he judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than lay witnesses."  Daubert, 509 U.S. at 595 (internal quotations omitted); Elsayed Mukhtar v. California State

University, Hayward, 299 F.3d 1053, 1064 (9th Cir. 2002) (district courts have "broad latitude" in determining whether to admit expert testimony).

The Government bears the burden of demonstrating that Mr. Gaskins' testimony is reliable, relevant, and admissible. General Elec. Co. v. Joiner, 522 U.S. 136, 143 (1997); see also Fed. R. Evid. 702 Ad. Comm. Note, 2000 Amendments.

II. THE COURT SHOULD PRECLUDE MR. GASKINS FROM TESTIFYING ALTOGETHER BECAUSE HIS OPINIONS ARE IRRELEVANT AND PREJUDICIAL

Mr. Gaskins offers testimony on only two topics: (1) Continental Casualty's financial condition, and (2) the compensation of Continental Casualty's most well-paid executive officers.[1] Gaskins admits that he can provide no testimony at all about Continental Insurance and did not assess its financial status.[2]

The topics Gaskins addresses are irrelevant. Financial information is admissible in a bad faith case only to the extent it helps determine the amount of punitive damages the jury should assess against the party that acted in bad faith by showing ability to pay. Norcon, Inc. v. Kotowski, 971 P.2d 158, 175 (Alaska 1999); Herman v. Sunshine Chemical Specialities, Inc.,

---

[1] See Gaskins' Expert Report ("Report"), attached as Exhibit A to the Declaration of Gary Zipkin ("Zipkin Decl."). Mr. Gaskins is prepared to testify regarding Continental Casualty's annual assets, liabilities, net worth, net income, and dividends for the years 1995 through 2004. Id. at Schedule 2. As to executive compensation, Gaskins is prepared to testify regarding the total compensation for Continental Casualty's and CNA Financial's top four executives from 1995 through 2004. Id. at Schedule 3. The highest listed salary is $3,378,671. Id. The Report also includes a summary of this information. Id. at Schedule 1.

[2] Report at 2 ("I have presented information for Continental Casualty Company only"), Zipkin Decl. Ex. A; Deposition of Rick Gaskins dated January 25, 2006 ("Gaskins Tr.") at 25:15-18 (Gaskins has not analyzed Continental Insurance's net worth), Zipkin Decl. Ex. B.

133 N.J. 329, 345 (New Jersey 1993) (for the purpose of assessing punitive damages, "'financial condition' roughly means ability to pay"). Continental Casualty has no contractual relationship with the United States and therefore is not liable for bad faith or punitive damages. See generally Continental Casualty Company's Motion for Summary Judgment dated March 16, 2006, Dkt. 237 (citing, inter alia, O.K. Lumber Co., Inc. v. Providence Washington Insurance Co., 759 P.2d 523, 526 (Alaska 1988) ("we decline to recognize a tort duty of good faith and fair dealing independent of a contractual relationship")). Since Continental Insurance is the only potentially liable party, only its financial information could be relevant or admissible.

The fact that Continental Casualty recently acquired Continental Insurance does not change that conclusion. A parent company's financials are not relevant to the punitive damages that a subsidiary should pay where the plaintiff has not shown that the subsidiary's corporate veil should be pierced. United Tech. Corp. v. American Home Assur. Co., 118 F. Supp. 2d 174, 180 (D. Conn. 2000) (it is improper to use a parent company's net worth to assess punitive damages against subsidiary); Walker v. Signal Companies, Inc., 84 Cal. App. 3d 982, 1002 (1978) (upholding exclusion of parent company's annual reports in action for damages against subsidiary where there was no alter ego showing); Tomaselli v. Transamerica Ins. Co., 25 Cal. App. 4th 1269, 1282-85 (1994). This rule is based on straightforward logic: "A verdict for punitive damages against a defendant based on the wealth of someone else is plain error." Cap Gemini America, Inc. v. Judd & Software Synergy, Inc., 597 N.E. 2d 1272, 1286 (Ind. 1992) (evidence regarding financial condition of parent company is inadmissible); see Tomaselli, 25 Cal. App. 4th at 1285 (plaintiff must show that an injustice would result "if the punitive

damage award were limited to a percentage of [defendant's] value rather than that of the parent company").

As the Government has not even alleged, let alone proven, that Continental Insurance's corporate veil should be pierced, Continental Casualty's financial information is irrelevant and inadmissible.

### III. EVEN IF CONTINENTAL CASUALTY COULD BE LIABLE, MR. GASKINS' TESTIMONY IS INADMISSIBLE

Mr. Gaskins' opinions about Continental Casualty's wealth should be precluded because Continental Casualty has no liability of its own. However, even if Continental Casualty could be liable for punitive damages, Gaskins' opinions are inadmissible as against Continental Insurance.

The introduction of financial condition evidence about only the wealthier defendant where two defendants may be liable for punitive damages is improper. Washington Gas-Light Co. v. Lansden, 172 U.S. 534, 553 (1899) ("there is no justice in allowing the recovery of punitive damages, in an action against several defendants, based upon evidence of the wealth and ability to pay such damages on the part of one of the defendants only"). The prejudice is obvious: the jury's award against both defendants inevitably will be premised on the wealth and ability to pay of the defendant with more money. To avoid that undue prejudice, courts preclude the introduction of financial condition evidence even as to both defendants when the admission of such evidence would prejudice the less wealthy party. See, e.g., Life & Casualty Insurance Company of Tennessee v. Padgett, 407 S.W.2d 728, 730 (Arkansas 1966) (in action against insurer and its agent, insured cannot introduce net worth evidence of both insurer

and agent); Wolfersberger v. Miller, 39 S.W.2d 758, 765 (Missouri 1965) ("Where a number of defendants are sued jointly, their wealth, either individually or collectively, cannot be shown for the purpose of punitive damages, for one defendant cannot be punished because of the wealth of another.").

The policy under which the United States has been deemed covered was issued by Continental Insurance, and that is the entity that denied the Government's tender. Nonetheless, the Government, through Mr. Gaskins, intends to discuss only Continental Casualty's financial status, hoping the jury will punish Continental Insurance based on the wealth of its parent. That is improper. If the jury is given a chance to award punitive damages against both Continental Insurance and Continental Casualty, most if not all of its award will undoubtedly run against Continental Insurance. The Court cannot permit the jury to base its award against Continental Insurance on Mr. Gaskins' testimony about Continental Casualty's wealth. Fed. R. Evid. 401, 403, 702; Las Palmas Assocs. v. Las Palmas Ctr. Assocs., 235 Cal. App. 3d 1220, 1231 (1991) (citing the "presumption that evidence of defendant's wealth can induce fact finders to abandon their objectivity and return a verdict based on passion and prejudice").

IV. IN ALL EVENTS, MR. GASKINS' EXECUTIVE COMPENSATION OPINIONS ARE IRRELEVANT AND PREJUDICIAL

In any case, Mr. Gaskins cannot opine about the salaries of Continental Casualty's and CNA Financial's highest-paid officers. Although Gaskins claims that "a jury in this matter would be served by knowing . . . how the companies compensate the officers who control the

conduct of the companies" because that is "an indicator of how the company spends,"[3] the amount a defendant pays its officers is both irrelevant and prejudicial, and CNA Financial has already been dismissed from this case.

While a defendant's ability to pay is a relevant factor when deciding how much punitive damages to award, Herman, 133 N.J at 345, net worth information more than suffices to show ability to pay.  See Diesel Machinery, Inc. v. B.R. Lee Industries, Inc., 328 F. Supp. 2d 1029, 1054 (S.D. 2003) (net worth is the traditional guideline for determining financial condition for punitive damage awards); Vossler v. Richards Manufacturer. Co., 143 Cal. App. 3d 952, 967 (1983) (net figures, such as net income, are the "best yardstick in determining punitive damages") disapproved on other grounds by Adams v. Murakami, 54 Cal. 3d 105, 115-116 (1991).  Both Continental Casualty and Continental Insurance have produced their financial information from 1988 to 2004, including net worth and net income information.[4]  The salaries of Continental Casualty's or CNA Financial's officers adds nothing to the ability-to-pay analysis. Even Mr. Gaskins admits that he is unaware of any precedent that allows consideration of executive compensation information.[5]

---

[3]    Report at 3, Zipkin Decl. Ex. A; Gaskins Tr. at 23:5-17, Zipkin Decl. Ex. B.

[4]    Zipkin Decl. at ¶ 4; see also Report at 2 (Gaskin reviewed Continental Insurance's and Continental Casualty's annual statements from 1988 through 2004 in preparing his report), Zipkin Decl. Ex. A

[5]    Gaskins Tr. at 17:16-18:2, Zipkin Decl. Ex. B.

If there is any probative value to executive salaries at all, it is substantially outweighed by the undue prejudice the admission of such information would cause. That no doubt is why the Government proffers such evidence: to unduly prejudice defendants by enticing the jury to give the Government the millions defendants pay their officers. That, of course, is improper. Fed. R. Evid 403, 702.

## Conclusion

For all of the above reasons, the Court should exclude the testimony of Rick R. Gaskins in its entirety.

DATED at Anchorage, Alaska, this 5th day of April, 2006.

GUESS & RUDD P.C.
Attorneys for Defendants

By:         S/Gary A. Zipkin
    Guess & Rudd P.C.
    510 L Street, Suite 700
    Anchorage, Alaska  99501
    Phone: 907-793-2200
    Fax:   907-793-2299
    Email: gzipkin@guessrudd.com
    Alaska Bar No. 7505048

        QUINN EMANUEL URQUHART
          OLIVER & HEDGES, LLP
        Attorneys for Defendants

By:    S/A. William Urquhart
       Quinn Emanuel Urquhart
        Oliver & Hedges, LLP
       865 South Figueroa Street, 10th Floor
       Los Angeles, CA 90017
       Phone: 1-213-443-3000
       Fax:   1-213-443-3100
       Email: billurquhart@quinnemanuel.com

CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of April, 2006, a copy of the foregoing document was served electronically on:

Richard L. Pomeroy, Esq.
Christopher Tayback, Esq.
A. William Urquhart, Esq.

and by regular U.S. mail on:

Richard Stone, Esq.
Civil Division, Torts Branch
U.S. Department of Justice
1331 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Guess & Rudd P.C.

By:     S/Gary A. Zipkin