**Gaskins Associates, P.C.**
7183 Stillwater Court
Frederick, Maryland 21702
Telephone: 301-698-9777
Fax: 301-698-9779
E-mail: RRGaskins@aol.com
http://www.RickGaskins.com

21 November 2005

Richard L. Pomeroy
Assistant U.S. Attorney
U.S. Attorney's Office
222 West 7th Avenue, No. 9
Anchorage, AK 99513-7567

Re: United States of America
v.
CNA Financial Corporation and
Continental Casualty Company d/b/a Continental Insurance Company

Dear Mr. Pomeroy:

You have asked me for my opinion of the financial information that would assist a jury in assessing punitive damages in the above referenced legal action. This report presents a brief background of the case together with the information I believe would assist the jury, including detailed exhibits that present this information. In a separate letter I provide disclosures in response to Federal Rule 26 pertaining to expert testimony.

Background and Understanding

I understand that the United States sued Continental for failure to defend it in an action arising out of personal injury at a tribal alcohol abuse facility operated by the insured pursuant to insured's contract with the Indian Health Service. The District Court has granted summary judgment in favor of United States that it was an additional implied insured under the insurance policy, that Continental acted in bad faith, and that Continental was subject to punitive damages for bad faith. You have asked me for my opinion as to the financial condition of the defendant, which is one of the factors that a fact finder is to

Richard L. Pomeroy, Esq.			21 November 2005			Page 2

consider in determining the amount of punitive damages to be awarded under Alaska law.

This case is brought against both Continental Casualty Company and Continental Insurance Company. I have presented information for Continental Casualty Company only since Continental Casualty Company owns one hundred percent of Continental Insurance Company, and the financial data of Continental Insurance Company is consolidated in the financial data of Continental Casualty Company.

Scope of Report

This report presents my opinion of the financial information that would assist a jury in considering an award of punitive damages in this matter.

Beyond Scope of Report

I express no opinion of whether punitive damages should be awarded and I express no opinion as to an appropriate amount for such damages.

Basis

I reviewed the NAIC Annual Statement reports of the Continental Casualty Company and the Continental Insurance Company for the years 1988 through 2004; the transcript of the deposition of Lawrence J. Boysen, Senior Vice President and Corporate Controller of the companies, including exhibits to that deposition; and executive compensation disclosures produced by the companies for the years 1987 through 2004. These documents were contained in six boxes or attached to letters that were recently provided by the defendants to the U.S. Attorney's Office during the discovery process. The United States Attorney then provided copies of these documents to me.

I also reviewed various other documents produced in discovery or otherwise provided to me by the Assistant United States Attorney. These documents are listed in report Appendix A, Miscellaneous Documents Reviewed.

Richard L. Pomeroy, Esq.          21. November 2005          Page 3

### Opinion

In my opinion a jury in this matter would be served by knowing the net worth of the companies, the net incomes, or profits, of the companies, and how the companies compensate the officers who control the conduct of the companies.

It is also important that the jury be aware that there are several companies that along with the defendant companies identified in this lawsuit, have a "quota sharing agreement" that may be relevant to issues of earnings and financial position of the defendant companies. I do not have a copy of this agreement. I understand this agreement has been requested by the Department of Justice, but the defendants have not yet provided it.

I have attached schedules which display information about these financial data of Continental Casualty Company. The schedules are:

1. Summary financial data 1995-2004
2. Key financial data 1995-2004
3. Top executive compensation 1995 – 2004
4. Consumer price index

The consumer price index in Schedule 4 will be used to adjust certain dollar amounts in past years to a common year 2004 basis.

Schedule 3 details the compensation of the most highly compensated executive officers from 1995 through 2004. The defendants' executive officers are employees of CNA Financial Corporation or Continental Casualty Company. The information in Schedule 3 is from excerpts of regulatory reports filed by CNA Financial Corporation and provided by defendants in response to discovery requests. For each of the years 1995 through 2004 Schedule 3 shows total compensation by executive officer, both in nominal (as reported) dollars and in 2004 dollars as adjusted by the Consumer Price Index in Schedule 4. Officer compensation is totaled over the years, and the average annual total compensation per executive is calculated. Given defendants' representation that the information provided was part of regulatory filings of the companies, and given the deposition testimony of Mr. Lawrence Boysen for the defendants, in my opinion the compensation information in Schedule 3 could fairly be relied upon by a jury in this matter.

Richard L. Pomeroy, Esq.  21 November 2005  Page 4

Schedule 2 details key financial data for the years 1995 through 2004 for Continental Casualty Company. The information in Schedule 2 is from National Association of Insurance Commissioners (NAIC) Annual Statement form reports. These reports, which would be filed with state insurance commissioners, were produced in discovery by defendants. NAIC Annual Statement reports are prepared on a regulatory basis of accounting which emphasizes the reporting of the realizable value of assets. Schedule 2 shows the reported amounts for assets, liabilities, net worth, net income and dividends paid in each of the years. Assets are things of value, such as cash, accounts receivable, stocks, bonds, real estate, and equipment, which are owned by a company. Liabilities are obligations of the company to others, such as accounts payable, loan balances, and outstanding bond indebtedness. The difference between assets and liabilities is the net worth or stockholder equity in the company. On the basis of accounting used in these reports, the net worth represents the amount that would be available to the stockholders of the company should the company elect to cease operations. Net income is the earnings or profit/loss of the company. Dividends are amounts paid by the company to its stockholders by virtue of their ownership of interests in the company. Given defendants' representation that the information provided was part of regulatory filings of the companies, and given the deposition testimony of Mr. Lawrence Boysen for the defendants, in my opinion the information about assets, liabilities, net worth, net income and dividends paid in Schedule 2 could fairly be relied upon by a jury in this matter.

Schedule 1 presents summary financial data from Schedules 2 and 3 for profits, dividends, net worth and executive compensation, plus executive pension information. The first four elements of information have been described above and detailed in Schedules 2 and 3. The illustrative pension calculation is based on the only disclosure of pension plan terms provided by defendants. It is contained in the disclosures of executive compensation referenced for the preparation of Schedule 3 of this report, and it relates to the year 1989. The information provided was analyzed in a statistical multiple regression model to estimate the pension applicable to an executive with thirty years of credited service and a highest average consecutive sixty months compensation of $2,000,000. The indicated pension, subject to social security offset, which would not be material, is $1,014,048 per year for life. Given defendants' representation that the information provided was part of regulatory filings of the companies, and given the deposition testimony of Mr. Lawrence Boysen for the defendants, in my opinion the information about assets, liabilities, net worth, net income, dividends paid and executive pensions in Schedule 1 could fairly be relied

A7478

EXHIBIT A
Page 4 of 18

Richard L. Pomeroy, Esq.　　　21 November 2005　　　Page 5

upon by a jury in this matter. I would appreciate the opportunity to apply more recent disclosure of pension terms should this information be provided by defendants.

Certification

1. The statements of fact, reported analyses, opinions and conclusions expressed in this study are to the best of my knowledge and belief true and correct.

2. This valuation was performed on a basis of non-advocacy, and I have no present or contemplated interest in the property, nor any interest or bias, which would impair a fair and unbiased appraisal. My compensation for this appraisal is independent of the value reported and is not contingent on any action or event resulting from the appraisal.

3. This appraisal has been conducted and this report issued in conformity with the Statement of Ethical Principles and Principles of Professional Practice of the National Association of Forensic Economics and the Statement of Ethical Principles of the American Academy of Economic and Financial Experts.

4. No one provided significant professional assistance to me in the conduct of this appraisal.

* * * * * * * * *

Should resolution of this matter require a trial, it may be necessary, and I would appreciate the opportunity, to incorporate any additional data then known, and to further document and illustrate the underlying facts and assumptions for examination in court.

If at any time it is determined, for any reason, that the data for Continental Insurance Company should be separately presented and broken out from the data for Continental Casualty Company, I will use the same types of financial documents and perform the same procedures and analyses as shown in this report, along with appropriate adjustment of the presentation of Continental Casualty Company information.

I hope this information contributes to a fair resolution of this matter. If you require further assistance, I would be pleased to respond.

A7479

EXHIBIT A
Page 5 of 18

Richard L. Pomeroy, Esq.          21 November 2005          Page 6

Very truly yours,

*[signature]*

Rick R. Gaskins, MBA, CPA

Attachments:   Schedules 1 through 4
               Appendix A: Miscellaneous Documents Reviewed
               Resume of Rick R. Gaskins, MBA, CPA

**A7480**

EXHIBIT A
Page 6 of 18

Richard L. Pomeroy, Esq.　　　　21 November 2005　　　　Page 7

Appendix A: Miscellaneous Documents Reviewed

|    | Date | Item | Description |
|----|------|------|-------------|
| a. | 12/31/95 | Correspondence | Package: To/From Continental re: Bristol Bay, various dates in 1994-1995 |
| b. | 12/31/00 | Correspondence | Package: To/From Continental and Alaska Division of Insurance (various dates, years) |
| c. | 06/11/02 | Letter | John Treptow, Esq. to Ken Roosa, AUSA |
| d. | 10/28/02 | Responses | Defendant's Responses to Plaintiff's First Requests |
| e. | 10/28/02 | Answers | Defendant's Answers to USA's First Interrogatories |
| f. | 12/06/02 | Answers | Defendant's Supplemental Answers |
| g. | 02/18/03 | Answers | Defendant's Supplemental Answers |
| h. | 09/23/05 | Order | For Pre-Trial Proceeding and Final Pre-Trial Conference |
| i. | 09/30/05 | Objections | Defendant's Objections to Notices |
| j. | 09/30/05 | Responses | Defendant's Supplemental Responses (partial) |
| k. | 09/30/05 | Responses | Defendant's Supplemental Responses (partial) |
| l. | 10/10/05 | Stipulation | Filed |
| m. | 10/10/05 | Notice of Deposition | By Defendants |
| n. | 10/10/05 | Notice of Deposition | By Defendants |
| o. | 10/10/05 | Interrogatories | Defendant's to US, First Set |
| p. | 10/11/05 | Interrogatories | Defendant's to US, First Set |
| q. | 11/21/05 | Correspondence | Package: To/From Continental and the USDOJ, various dates in 2005 |

A7481

EXHIBIT A
Page 7 of 18

Schedule 1
USA v. CNA
Continental Casualty Company
Summary financial data 1995 - 2004
In dollars, non-compensation figures rounded to neareast million dollars

| | |
|---|---:|
| Average annual profit 1995-2004 | $ 296,000,000 |
| Total profit 1995-2004 | $ 2,961,000,000 |
| Average annual dividends paid 1995-2004 | $ 341,000,000 |
| Total dividends paid 1995-2004 | $ 3,407,000,000 |
| Average net worth 1995-2004 | $ 5,568,000,000 |
| Net worth December 31, 2004 | $ 6,815,000,000 |
| Average top executive compensation 1995-2004 (2004$) | $ 1,837,035 |
| Highest top executive compensation 1995-2004 (2004$) | $ 3,378,671 |
| Illustrative pension: $2,000,000 compensation, 30 years service | $ 1,014,048 |

A7482

EXHIBIT A
Page 8 of 18

Schedule 2
USA v. CNA
Continental Casualty Company
Key financial data 1995 - 2004
In dollars, rounded to nearest million dollars

| Year | Assets | Liabilities | Net worth | Net income | Dividends paid |
|---|---|---|---|---|---|
| 1995 | 20,535,000,000 | 16,548,000,000 | 3,987,000,000 | 729,000,000 | 325,000,000 |
| 1996 | 21,169,000,000 | 16,530,000,000 | 4,638,000,000 | 825,000,000 | 545,000,000 |
| 1997 | 22,185,000,000 | 16,803,000,000 | 5,382,000,000 | 529,000,000 | 175,000,000 |
| 1998 | 23,149,000,000 | 17,204,000,000 | 5,944,000,000 | 88,000,000 | 410,000,000 |
| 1999 | 23,413,000,000 | 16,703,000,000 | 6,709,000,000 | 73,000,000 | 570,000,000 |
| 2000 | 22,974,000,000 | 16,631,000,000 | 6,342,000,000 | 973,000,000 | 400,000,000 |
| 2001 | 21,723,000,000 | 17,023,000,000 | 4,700,000,000 | -882,000,000 | 460,000,000 |
| 2002 | 25,312,000,000 | 20,196,000,000 | 5,116,000,000 | 1,667,000,000 | 117,000,000 |
| 2003 | 34,589,000,000 | 28,543,000,000 | 6,046,000,000 | -1,563,000,000 | 93,000,000 |
| 2004 | 34,212,000,000 | 27,396,000,000 | 6,815,000,000 | 521,000,000 | 312,000,000 |
| Totals | | | | 2,961,000,000 | 3,407,000,000 |
| Averages | | | 5,568,000,000 | 296,000,000 | 341,000,000 |

A7483

EXHIBIT A
Page 9 of 18

Schedule 3
USA v. CNA
Top executive compensation 1995 - 2004
(Prepared for CNA only. Top executives are the same for Continental Casualty Company.)
In nominal and 2004 dollars

| Year | Executive Number | Executive's Total Compensation | CPI Factor | Executive's Total Comp 2004$ |
|---|---|---|---|---|
| 1995 | 1 | 1,659,614 | 1.2395 | 2,057,094 |
| 1995 | 2 | 973,016 | 1.2395 | 1,206,055 |
| 1995 | 3 | 791,407 | 1.2395 | 980,950 |
| 1995 | 4 | 1,091,602 | 1.2395 | 1,353,042 |
| 1996 | 1 | 2,451,362 | 1.2040 | 2,951,321 |
| 1996 | 2 | 1,240,131 | 1.2040 | 1,493,058 |
| 1996 | 3 | 942,200 | 1.2040 | 1,134,363 |
| 1996 | 4 | 823,100 | 1.2040 | 990,973 |
| 1997 | 1 | 2,729,288 | 1.1769 | 3,212,227 |
| 1997 | 2 | 1,363,226 | 1.1769 | 1,604,445 |
| 1997 | 3 | 1,105,200 | 1.1769 | 1,300,762 |
| 1997 | 4 | 990,100 | 1.1769 | 1,165,295 |
| 1998 | 1 | 2,061,758 | 1.1589 | 2,389,362 |
| 1998 | 2 | 1,167,794 | 1.1589 | 1,353,351 |
| 1998 | 3 | 1,505,669 | 1.1589 | 1,744,913 |
| 1998 | 4 | 741,000 | 1.1589 | 858,742 |
| 1999 | 1 | 2,043,363 | 1.1339 | 2,316,874 |
| 1999 | 2 | 2,486,534 | 1.1339 | 2,819,365 |
| 1999 | 3 | 1,023,660 | 1.1339 | 1,160,681 |
| 1999 | 4 | 908,027 | 1.1339 | 1,029,570 |
| 1999 | 5 | 1,806,633 | 1.1339 | 2,048,457 |
| 1999 | 6 | 1,338,204 | 1.1339 | 1,517,327 |
| 2000 | 1 | 1,968,300 | 1.0970 | 2,159,186 |
| 2000 | 2 | 1,191,240 | 1.0970 | 1,306,767 |
| 2000 | 3 | 1,280,281 | 1.0970 | 1,404,443 |
| 2000 | 4 | 933,676 | 1.0970 | 1,024,224 |
| 2001 | 1 | 2,030,683 | 1.0666 | 2,165,985 |
| 2001 | 2 | 1,875,613 | 1.0666 | 2,000,583 |
| 2001 | 3 | 1,751,568 | 1.0666 | 1,868,273 |
| 2001 | 4 | 741,176 | 1.0666 | 790,560 |
| 2002 | 1 | 2,479,383 | 1.0500 | 2,603,421 |
| 2002 | 2 | 1,477,192 | 1.0500 | 1,551,093 |
| 2002 | 3 | 1,576,594 | 1.0500 | 1,655,468 |
| 2002 | 4 | 1,745,541 | 1.0500 | 1,832,867 |
| 2002 | 5 | 874,067 | 1.0500 | 917,795 |
| 2002 | 6 | 2,838,791 | 1.0500 | 2,980,809 |
| 2003 | 1 | 3,131,037 | 1.0266 | 3,214,418 |
| 2003 | 2 | 2,217,638 | 1.0266 | 2,276,695 |
| 2003 | 3 | 3,178,832 | 1.0266 | 3,263,486 |
| 2003 | 4 | 1,970,908 | 1.0266 | 2,023,394 |
| 2003 | 5 | 1,150,087 | 1.0266 | 1,180,714 |
| 2004 | 1 | 3,378,671 | 1.0000 | 3,378,671 |
| 2004 | 2 | 1,479,956 | 1.0000 | 1,479,956 |
| 2004 | 3 | 3,365,923 | 1.0000 | 3,365,923 |
| 2004 | 4 | 1,881,615 | 1.0000 | 1,881,615 |
| 2004 | 5 | 1,036,959 | 1.0000 | 1,036,959 |
| 2004 | 6 | 2,289,120 | 1.0000 | 2,289,120 |
| Totals | | 79,087,739 | | 86,340,652 |
| 47 person years | Average executive | 1,682,718 | | 1,837,035 |

A7484
EXHIBIT A
Page 10 of 18

Schedule 4
Consumer price index
For the 25 year period from 1979 to 2004

| Year | CPI Index |
|------|-----------|
| 1979 | 72.6 |
| 1980 | 82.4 |
| 1981 | 90.9 |
| 1982 | 96.5 |
| 1983 | 99.6 |
| 1984 | 103.9 |
| 1985 | 107.6 |
| 1986 | 109.6 |
| 1987 | 113.6 |
| 1988 | 118.3 |
| 1989 | 124.0 |
| 1990 | 130.7 |
| 1991 | 136.2 |
| 1992 | 140.3 |
| 1993 | 144.5 |
| 1994 | 148.2 |
| 1995 | 152.4 |
| 1996 | 156.9 |
| 1997 | 160.5 |
| 1998 | 163.0 |
| 1999 | 166.6 |
| 2000 | 172.2 |
| 2001 | 177.1 |
| 2002 | 179.9 |
| 2003 | 184.0 |
| 2004 | 188.9 |

**Gaskins Associates, P.C.**
7183 Stillwater Court
Frederick, Maryland 21702
Telephone: 301-698-9777
Fax: 301-698-9779
E-mail: RRGaskins@aol.com
http://www.RickGaskins.com

March 2005

<u>Resume of Rick R. Gaskins, MBA, CPA</u>

<u>Experience:</u>   Rick Gaskins has 29 years of experience in the public accounting profession and 27 years of experience as an expert witness and consultant in the fields of forensic economics and accounting. He has extensive experience in performing and directing consulting engagements involving:

> Economic and accounting analysis of damages
> Asset valuation studies
> Settlement design and evaluation
> Computer based modeling, simulation and forecasting

Prior to forming Gaskins Associates he was senior Management Advisory Services Partner with a regional certified public accounting (CPA) firm. Earlier he was a senior consultant with the health care consulting division of a national CPA firm. His experience also includes management positions in banking and higher education.

He is a past adjunct instructor at the Georgetown University School of Business Administration where he taught financial and managerial accounting theory. He also serves as an instructor for continuing professional education seminars on forensic economics, forensic accounting and business damages/valuation.

He augments his consulting capabilities with computer programming skills in high-level languages and database management systems. He is experienced in the use of on-line database research tools, computer modeling and statistical analysis tools. In addition, he has special training in computer controls evaluation and computer auditing.

**A7486**

EXHIBIT _A_
Page _12_ of _18_

Resume of Rick R. Gaskins, MBA, CPA    March 2005    Page 2 of 4

**Representative Engagements:**

Forensic accounting, economic analysis and expert testimony

Economic loss in personal injury and wrongful death cases, before federal and state courts.

Identification, valuation and analysis for distributions of marital property.

Business valuation and lost profits analysis for commercial torts, before state courts.

Lost profits analysis and business valuation for business interruption, before state courts.

Funds flow analysis in criminal fraud and RICO case, before federal court.

Business valuation and pension valuation in marital dissolutions.

Economic analysis of a real estate investment trust's (REIT's) management of a major real estate development project, before bankruptcy court.

Economic value of management services, before federal court.

Assessment of damages for contract cancellation and misappropriation of intellectual property (software), before federal court.

Cost of proposed (injunctive relief) worldwide medical treatment program, financial management, and accounting to the court, in federal court.

Assessment of damages resulting from cancellation of wholesale distribution agreement, before federal court.

Forensic accounting regarding fraud, embezzlement and Securities Acts violations by bank management, before federal court.

Economic loss of foreign nationals for injury and death, before federal courts.

**A7487**

EXHIBIT A
Page 13 of 18

Resume of Rick R. Gaskins, MBA, CPA          March 2005          Page 3 of 4

**Representative Engagements (continued)**

Cost studies and economic analyses not in litigation:

Fraud and abuse detection system for a federal health insurance program.

Market assessment and forecast for worldwide demand of a pharmaceutical product for private placement of securities.

Differential costs of two policy options for a federal program.

Stock valuation for wholly-owned subsidiary of national professional association.

Medicare data collection cost.

Economics of burn injury treatment in 500 hospitals.

Business valuation and negotiation for purchase of a technical consulting firm.

Computer system consulting and software development:

Comprehensive automation for 245-bed acute care general hospital: system specification and selection.

Distribution system for 500,000-member not-for-profit association: remedy flawed system selection and stalled software development.

Point-of-sale system for 15-store retail chain: specification and selection.

Real-time order entry and dispatch system for delivery of highly perishable product: custom software design and development.

Design and development of programs for preparation and transmission of Federal Reserve (NACHA) formatted direct deposit payroll and direct debit transactions to banks via data communications. The software applications have been marketed nationally since 1988.

License:    Certified Public Accountant, Maryland, Certificate 5039, issued January 31, 1977.

A7488

EXHIBIT A
Page 14 of 18

Resume of Rick R. Gaskins, MBA, CPA        March 2005        Page 4 of 4

| | |
|---|---|
| **Education:** | Continuing professional education seminars and teaching |
| | Wharton School, University of Pennsylvania, 1975, Master of Business Administration (emphasis in accounting, economics, finance, statistics and quantitative methods) |
| | University of Rhode Island, studies in mathematics and accounting |
| | Brown University, 1971, BA in English literature, minor in sciences |
| **Professional Affiliations:** | American Academy of Economic and Financial Experts<br>Board of Directors 2001 - 2004 |
| | American Institute of Certified Public Accountants |
| | Institute of Business Appraisers |
| | National Association of Forensic Economics<br>Vice-president, Eastern Region 2002 - 2005 |
| **Publications:** | *The Costs of Acute Care Utilization Review Activities Conducted by Medicare Fiscal Intermediaries, Medicaid State Agencies, and State Licensing and Certification Agencies* (Report OPEL 77-12), Gaskins, Rick R., et al., U.S. National Technical Information Service, Washington, DC. |
| | "Worklife Estimates by Occupation: A Comment", Gaskins, Rick R. and Paul C. Taylor, *Journal of Forensic Economics*, Vol. 11, No. 2, Spring/Summer 1998, pp. 139-141. |

**A7489**

## Gaskins Associates, P.C.

7183 Stillwater Court
Frederick, Maryland 21702
Telephone: 301-698-9777
Fax: 301-698-9779
E-mail: RRGaskins@aol.com
http://www.RickGaskins.com

21 November 2005

Richard L. Pomeroy
Assistant U.S. Attorney
U.S. Attorney's Office
222 West 7th Avenue, No. 9
Anchorage, AK  99513-7567

Re:   United States of America
v.
CNA Financial Corporation and
Continental Casualty Company d/b/a Continental Insurance Company

Dear Mr. Pomeroy:

In response to your request for Rule 26 disclosures by an expert witness, I am able to provide the following at this time.

1. My current resume, dated March 2005, is attached to my report in this matter. It includes a list of all publications authored by me over the past ten years.

2. A list of cases in which I have testified at deposition or trial during the past 4 years is attached. The list includes the testimony date, indication of deposition (D) or trial (T), the name of either the attorney conducting the examination or the attorney who engaged me, and the name of a party or parties to further identify the matter.

3. My compensation is based on the time required to accomplish my assignment at my standard billing rate, plus out of pocket expenses, if any. My standard hourly billing rate is $275 per hour. I have not rendered a bill in this matter as of this date.

4. My report identifies my opinions and the bases therefore in this matter, presents the details of my analytical work, and identifies the significant documents and data sources I relied on in reaching my opinions in this matter.

**A7490**

EXHIBIT _A_
Page _16_ of _18_

| Richard L. Pomeroy, Esq. | 21 November 2005 | Page 2 |

5. I would anticipate using the schedules contained in my report as exhibits at trial in support of my testimony, together with any or all of the documents I relied on in reaching my opinions.

Very truly yours,

*[signature]*

Rick R. Gaskins, MBA, CPA

Attachments: Deposition and trial testimony listing

**A7491**

EXHIBIT A
Page 17 of 18

Page 1 of 1

Rick R. Gaskins, MBA, CPA
Deposition and trial testimony listing
1 January 2001 to 21 November 2005

| Date | Dep/Trial | Attorney | Parties |
|---|---|---|---|
| 01/31/01 | T | Peters, Esq., Paula | Wrege v. Tsamouras |
| 03/15/01 | D | Nielson, Esq., Christine Saver | Kovalsky v. Kovalsky |
| 04/04/01 | D | Downs, Esq., Mary Alane | Hazell v, |
| 04/30/01 | D | Cullen, Esq., Stephen J. | Pinkert v. Roane, MD |
| 05/10/01 | T | Escoto, Esq., Henry | Fuentes v. Rodriguez |
| 06/12/01 | D | Murphy, Esq., Michael J. | McKan v. Lockheed Martin |
| 07/18/01 | T | Meiselman, Esq., Alyson | Hays v. Bookhultz |
| 08/06/01 | D | Ferguson, Esq., Sheila | Wilder v. Howard University |
| 08/23/01 | D | Kantruss, Esq., McKenzie | Wallace v. Wallace |
| 11/06/01 | T | Blumenfeld, Esq., Norman | Barnes v. Sherman |
| 11/27/01 | T | Mahone, Esq., Daniel | Loechler v. Loechler |
| 12/18/01 | D | Doran, Esq., | Lurton v. |
| 01/30/02 | T | Booth, Esq., Curtis | Clingerman v. |
| 04/26/02 | D | English, IV, Esq., Joseph | Calderon v. Stihl |
| 04/30/02 | T | Clarke, Esq., Nadira | Cockfield v. USA |
| 06/10/02 | D | Collins, Esq., Francis J. | Barkley v. Diamond Engineering |
| 08/21/02 | D | Kelly, Esq., Heather J. | Ross v. Bobrow |
| 10/02/02 | T | Nester, Esq., Forrest A. | Weigle v. W. O. Slane Glass Co. |
| 10/30/02 | T | Brown, Esq., Barry S. | Freeman v. Blank |
| 10/31/02 | T | Goodson, Esq., Robert W. | Kozin v. Kaiser Health Plan |
| 01/29/03 | T | Baker, Esq., Richard C. | Wilder v. Howard University |
| 02/25/03 | D | Leder, Esq., Steven E. | Lee v. P&G Wood Erectors, Inc. |
| 05/18/03 | D | Troy, III, Esq., William J. | Christopher Ryan |
| 06/03/03 | D | Halperin, Esq., Jonathan E. | Harry Force |
| 06/17/03 | D | Lapidus, Esq., Lawrence | Paul Hargrove |
| 06/18/03 | D | Basdekis, Esq., Thanos | Hernan Bunces |
| 09/10/03 | D | Chadwick, Esq., Kimberly A. | John Ivey |
| 04/29/04 | T | Basdekis, Esq., Thanos | Hernan Bunces |
| 12/15/04 | D | Kessel, Esq., J. Philip | William Schmidt |
| 12/29/04 | D | Mitchell, Esq., William L. | Rufus Williams |
| 05/24/05 | D | McKee, Esq., Dana W. | William Gilson |
| 06/24/05 | D | Foret, Esq., L. Palmer | Debra Yellock |
| 06/28/05 | D | Mahoney, Esq., Christopher | Wright's Express v. CAPS |

A7492

EXHIBIT A
Page 18 of 18