IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

---

UNITED STATES OF AMERICA,            )
                                     )
                        Plaintiff,   )
                                     )
   vs.                               )  No. A98-285 CV (JWS)
                                     )
CNA FINANCIAL CORPORATION AND THE    )
CONTINENTAL CASUALTY COMPANY d/b/a THE )
CONTINENTAL INSURANCE COMPANY,       )
                                     )
                        Defendant.   )

---

VIDEO-TAPED DEPOSITION UPON ORAL EXAMINATION

OF

DEBORAH SENN

---

9:08 A.M. - 12:18 P.M. & 1:21 P.M. - 5:07 P.M.

Wednesday, January 11, 2005

600 University Street, Suite 320

Seattle, Washington

LORRAINE M. MILLAY, CCR/RPR

EXHIBIT A
Page 1 of 6

SEATTLE DEPOSITION REPORTERS
www.seadep.com      (206)622-6661 * (800)657-1110   FAX: (206)622-6236
cfe5ee7e-209a-4c65-a406-a069d5297898

1   bad faith.  And in fact your own witness, Mr. -- not
2   Mr. Lohr, but your claims witness, Mr. --
3 Q Wainscott?
4 A -- Wainscott veers in his testimony that Continental had a
5   duty to defend the Kalstrom case.
6 Q And I guess my question is, is there anything else about
7   what you believe Erin Finn's conduct that was wrong -- that
8   outrageous other than what you just identified?
9 A On page 17 I discuss it.
10 Q Yeah.  And nothing else besides that?
11 A Well, I just, you know, I want to reiterate that --
12 Q You don't understand.
13 A Well, the case is over.
14 Q I just want to foreclose.
15 A You know, there was nothing to accept is not an excuse, is
16   not an excuse for failing to answer a tender.
17 Q Well, all right.  Is there -- that's in here?  That's in
18   here; right?
19 A Yeah, it's in it.
20 Q Okay.  So my question is simply this, is there anything else
21   that's not in here?
22 A No.  Not that comes to mind right now.
23 Q Okay.  The -- with respect to the Kalstrom case, let me ask
24   you, do you know after the date that it was actually
25   tendered by the United States, do you know whether the

EXHIBIT A
SEATTLE DEPOSITION REPORTERS    Page 2 of 6
www.seadep.com    (206)622-6661 * (800)657-1110    FAX: (206)622-6236
cfe5ee7e-209a-4c65-a406-a069d5297898

```
 1    United States ever suffered any damage based on the lack of
 2    response to that tender?
 3            MR. STONE:  We would stipulate that the United
 4    States did not.
 5            MR. TAYBACK:  Okay.  I'll accept that stipulation.
 6            THE WITNESS:  Okay.
 7            MR. STONE:  All right.
 8  Q (By Mr. Tayback)  Did -- okay.  The two other names I have
 9    here are Friderici, and you've discussed him a little bit,
10    and I want to know if there's anything else.
11            There's the letters you've already discussed and you
12    don't need to discuss those again.  But if you need to to
13    respond, you should do so, but understanding that you've
14    already identified things you believe Mr. Friderici did that
15    was outrageous as outside counsel on behalf of Continental,
16    and I want to know if there's anything else that he did as
17    you sit here now and are prepared to testify was outrageous
18    in this case.
19  A Well, you know, I might want to fill in some of the facts
20    given your questions about Mr. Friderici.
21            You asked about his state of mind with regard to the
22    United States, and I saw a letter in here a moment ago that
23    I didn't reference in my testimony where he talked about
24    BBAHC and its employees being the United States.
25            So I, I would say my discussion of Mr. Friderici is
```

```
 1       analysis in your report about that?
 2   A   Well, I think that I'm aware of the policy limits and the,
 3       and the amounts in the case and certainly -- I'm not sure if
 4       I or Mr., Mr. --
 5              MR. STONE:  Gaskins?
 6   A   -- Gaskins is going to talk about that.
 7   Q   (By Mr. Tayback)  Okay.  Other than the policy limits, I
 8       mean there's really nothing else, I don't think, in your
 9       report on that issue, and maybe -- if I'm wrong, tell me.
10   A   Well, listen.  I talk about the financial condition of
11       insurance companies all the time, and I know what it means
12       to not have to pay a large claim.  And so, I feel like if
13       I'm asked I certainly can --
14   Q   Okay.  Well, what is the amount of financial gain the
15       defendant gained?
16   A   Well, I haven't done the analysis.
17   Q   Okay.  What is the amount of financial gain the defendant
18       expected to gain?  Have you done that analysis?
19   A   Well, you know, basically the policy limits and to the
20       extent that, that the defendants don't have to pay punitive
21       damages, obviously they'll gain that.
22   Q   There is No. 1, so for "the likelihood at the time of the
23       conduct that serious harm would arise from the defendant's
24       conduct."
25              Can you tell me how or who was harmed and how based on
```

```
 1      the defendant's rejection?
 2              MR. STONE:  Can I offer you a stipulation on that?
 3              MR. TAYBACK:  Sure.
 4              MR. STONE:  The United States doesn't contend that
 5      there was serious harm other than the contention that
 6      Continental should have paid the 2.8 million for the
 7      settlement and the cost of the defense.
 8              MR. TAYBACK:  Okay.  I'll take that stipulation.
 9              THE WITNESS:  Well, I'll -- can I disagree with my
10      own counsel a little bit?
11              MR. STONE:  Yeah.  Go ahead.
12              THE WITNESS:  Because on page 3 of my testimony I
13      talk about the availability and integrity of insurance which
14      is essential to our modern economy, and I think that --
15      where is those -- I'm sorry.  Where are those standards
16      again, what page?
17              MR. POMEROY:  Six.
18              THE WITNESS:  Six.  I think that --
19   Q  (By Mr. Tayback)  Oh, yeah.  Standards are six and seven.
20   A  I think that I certainly could talk about and have talked
21      about the serious harm that would arise from allowing this
22      kind of conduct by an insurance company.
23              MR. STONE:  I stand corrected.  She's the expert.
24              MR. TAYBACK:  Okay.  So you withdraw your
25      stipulation?
```

```
1           MR. STONE:  But I will work out a stipulation as
2   to how -- I think the thrust of your questioning here is
3   whether the United States had some harm other than the cost
4   of the litigation below and the paying of the --
5           MR. TAYBACK:  That is thrust of my question.
6           MR. STONE:  We can work out a stipulation on that,
7   I believe.
8 Q (By Mr. Tayback)  Okay.  And so, and so to follow up on your
9   question.  The harm that you are addressing there is the
10  harm that would be the exact same harm any time any carrier,
11  you know, delays or doesn't pay on a claim --
12 A Yes.
13 Q -- that they should?
14 A Yeah, but it --
15 Q It would be the same?
16 A It can be in the -- it could be put in terms of money, you
17  know, effect on the economy.  So, yes.
18 Q Sure.  But I guess I'm just -- I'm trying to compare it to,
19  say, other instances.  It would be the same kind of harm in
20  all instances in which carriers breach their duties?
21 A Well, but --
22 Q Depending on the dollar amount at issue?
23 A Right.  But the, you know -- I go -- you know, all persons
24  means without respect to technical knowledge, wealth and
25  income.
```