Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

---

UNITED STATES OF AMERICA,         )
                                  )
           Plaintiff,             )
                                  )
     vs.                          )
                                  )
CNA FINANCIAL CORPORATION         )
AND THE CONTINENTAL               )
CASUALTY COMPANY d/b/a            )
THE CONTINENTAL INSURANCE         )
COMPANY,                          )
                                  )
           Defendant.             )
_____)
Case No. A98-285 CV (JWS)

---

VIDEOTAPED DEPOSITION OF UNITED STATES OF AMERICA

SUSAN J. LINDQUIST

---

Pages 1 - 128, inclusive

Thursday, February 9, 2006
9:16 A.M.

Taken by Counsel for Defendant
at
GUESS & RUDD
510 L Street, Suite 700
Anchorage, Alaska

EXHIBIT B
Page 1 of 5

PACIFIC RIM REPORTING        907-272-4383
www.courtreportersalaska.com

1   Lori and Ms. Kallstrom.  And that's what I remember
2   about reading that case.
3       Q.   Do you know when Kallstrom -- when the
4   defense of the Kallstrom counterclaim against the
5   United States was tendered to Continental?
6       A.   I don't know when, but I know it was.
7       Q.   And you know -- well, let me ask you:  What
8   was -- what, if anything, was outrageous or
9   malicious or reckless with respect to Continental's
10  handling of that tender, the Kallstrom tender?
11      A.   I don't know.
12      Q.   It's true, isn't it, that -- that after the
13  Kallstrom case was tendered in October of 2001, the
14  government incurred no additional expenses or costs
15  in defending Kallstrom?
16           MR. STONE:  We have stipulated to that.
17           MR. TAYBACK:  Yeah.
18           THE WITNESS:  Sure.  It's true then.
19           MR. TAYBACK:  I'm going to show you -- this
20  one to mark.  Okay.
21           (Exhibit 23 marked.)
22  BY MR. TAYBACK:
23      Q.   Showing you what's been marked as
24  Exhibit 23.  Do you recognize that?
25      A.   No.

Page 105

1    Q.   It's a February 8, 1999 letter to Parry
2    Grover from Robert Bundy.
3    A.   Correct.
4    Q.   That's not a document you reviewed in
5    connection with -- in preparing to testify today?
6    A.   Correct.
7    Q.   You're aware Parry Grover was one of the
8    lawyers representing Bristol Bay?
9    A.   Yes.
10   Q.   And who was Mr. Bundy?
11   A.   He was my boss.  He was the United States
12   Attorney.
13   Q.   I'm going to show you -- directing your
14   attention to the bottom of the first page, where it
15   talks about the -- the settlement agreement between
16   the United States and the Wilsons --
17   A.   Yes.
18   Q.   -- being $2.8 million.
19   A.   Yes.
20   Q.   It's true, isn't it, that -- that nothing
21   about Continental's handling of the United States'
22   tenders to it caused the United States to pay more
23   to the Wilsons than they otherwise would have?
24   A.   I don't know.
25        MR. STONE:  We may be able to enter into a

```
                                                      Page 106
 1    stipulation about that, if you ask.
 2              MR. TAYBACK:  Okay.  I would -- I would ask.
 3    I'm asking.
 4              MR. STONE:  Put it in writing.
 5              MR. TAYBACK:  Okay.  I will put it in
 6    writing.
 7              MR. STONE:  Yeah.  So we know exactly what
 8    we're --
 9              MR. TAYBACK:  Sure.
10              MR. STONE:  -- trying to stipulate to.
11              MR. TAYBACK:  Sure.
12              MR. STONE:  I believe that's an accurate
13    statement --
14              MR. TAYBACK:  Okay.
15              MR. STONE:  -- actually but --
16              MR. POMEROY:  Or that the case ultimately
17    would not -- I mean, would have settled for the same
18    amount.  Now what the United States --
19              MR. STONE:  We don't know the answer to that.
20              MR. POMEROY:  -- would have paid versus a
21    tender to Continental under the policy versus --
22              MR. STONE:  Yeah.  We need to know what your
23    stipulation says --
24              MR. TAYBACK:  Okay.
25              MR. STONE:  -- before we can deal with that.
```

Page 107

1        MR. TAYBACK:  Okay.  I'll -- I'll write
2   something up.
3        Q.   Directing your attention to the second page
4   of this letter where Mr. Bundy quotes, provisions --
5   he indicates that he's quoting provisions from the
6   contract between the United States and Bristol Bay?
7        A.   Correct.
8        Q.   Including an indemnity and insurance
9   provision?
10       A.   Correct.
11       Q.   Do you -- do you have any knowledge at all
12  as to whether or not the United States did anything
13  to ensure that -- to ensure that the -- that the
14  contractor, BBAHC, complied with its contractual
15  obligations to obtain insurance as set forth in this
16  provision quoted by Mr. Bundy?
17       A.   I have no information about that.
18       Q.   So you can't say one way or the other
19  whether the United States did anything to either
20  ensure or not ensure that it was complied with?
21       A.   Correct.
22       Q.   Do you know what the amount was of the
23  policy, what the -- the policy limits were in this
24  case?
25       A.   Yes.  A million dollars.