Gary A. Zipkin, Esq.
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, AK  99501
Phone:      (907) 793-2200
Fax:         (907) 793-2299
E-mail:     gzipkin@guessrudd.com

Attorneys for Defendant


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CNA FINANCIAL CORPORATION | ) | |
| AND THE CONTINENTAL | ) | |
| CASUALTY COMPANY d/b/a | ) | |
| THE CONTINENTAL INSURANCE | ) | |
| COMPANY, | ) | Case No. 3:98-cv-285-JWS |
| | ) | |
| Defendants. | ) | |
| | ) | |


DEFENDANTS' MOTION IN LIMINE NO. 8
TO PRECLUDE THE TESTIMONY OF DEBORAH SENN


Preliminary Statement

        Deborah Senn, the United States' expert on bad faith, should be barred from

testifying.  There is one core issue to be decided by the jury -- whether Continental acted


USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn

Page 1 of 26

outrageously when it rejected the Government's tenders.  Senn has no basis to opine on that

issue, as she admits:

- she has performed literally <u>no</u> analysis of Continental's decision to reject the Government's tender

- she has done no analysis of the doctrine of implied insurance or the legal principles on which Continental relied in rejecting tender, and

- she has done no investigation into whether the Government's tender as an implied insured was unprecedented, fairly debatable or commonplace.

Because Senn did not even consider (let alone analyze) these crucial issues, she cannot offer a

reliable opinion about whether Continental's decision to reject the United States' tenders was

outrageous, malicious, or recklessly indifferent.  Given that Continental rejected the United

States' tenders because it concluded the United States was not an implied insured, the level of

"outrageousness" of Continental's decision to reject tender obviously depends on the status of the

doctrine of implied insurance in Alaska when Continental considered the tender.  Senn ignored

this issue altogether.

Senn addresses many other issues in her report.  However, her opinions on those

issues are neither relevant nor reliable.  Punitive damages can only be awarded in a bad faith case

based on a prior adjudication of bad faith (usually made by a jury, here made by the Court).

There has been only <u>one</u> adjudication of bad faith in this case: the Court has ruled that

Continental acted in bad faith *when it rejected the Government's tenders in 1995 and 1997*.  It is

Continental's reason for those rejections that is at issue here.  Senn's miscellaneous opinions on

actions that are unrelated to Continental's decision to reject tender are irrelevant as a matter of

law.  Acts taken by Continental years after the decision to reject tender had already been made,

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn

Page 2 of 26

for example, have no bearing on the outrageousness of Continental's decision to reject tender in the first place.

Further, Senn improperly assumes that the draft and final orders of the courts in this case existed years before they actually did (and misconstrues those orders). She argues as if Continental was in possession of these orders when it decided the tender question ten years ago. For example, rather than assess whether Continental "wrongfully forced an insured to litigate for recovery" in light of the facts as they existed when the Government tendered, Senn analyzes this issue in light of the rulings in this case, post-hoc. That, of course, violates the basic rule (that even Senn acknowledges) that an insurer's conduct must be analyzed without the benefit of hindsight, based on the facts as they existed when the relevant decisions were made. Senn effectively assumes that the Government was *expressly* listed as a named insured on Bristol Bay's policy even though it was not. That improper assumption undermines the reliability of almost all of the topics she addresses.

To the extent any of Senn's opinions would assist the jury at all, the prejudicial effect and confusion those opinions would cause substantially outweigh their probative worth. The Court should exclude Ms. Senn's unreliable, conclusory opinions altogether.

Statement of Facts

Since 2001, Ms. Senn's primary line of work has been as an expert witness.[1] As an expert witness, she has been retained to testify in 25-30 cases, always on behalf of plaintiffs.[2]

---

[1] Deposition of Deborah Senn dated January 11, 2006 ("Senn Tr,") 20:4-6, attached as Exhibit A to Declaration of Gary Zipkin dated April 5, 2006 ("Zipkin Decl.").

[2] Senn Tr. 22:4-23:3, Zipkin Decl. Ex. A.

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn

Page 3 of 26

A.    Senn's opinions are built upon her understanding of the "law of the case"

Senn has submitted a 25-page expert report in which she concludes that Continental's "numerous, frequent, intentional and knowing acts of bad faith were maliciously intended to deprive the United States of its rights as an insured in this matter."[3]  To reach this conclusion, Senn measures Continental's actions against what she continually refers to as the "law of the case."[4]  This phrase, as used by Senn, refers to all of this Court's and the Ninth Circuit's observations in their prior orders (both tentative and final), as well as the Ninth Circuit's holding that the United States is an implied insured and this Court's holding that Continental acted in bad faith when it rejected the United States' tender.[5]  In fact, Senn claims to have "built" her report upon this Court's multiple "findings" of bad faith.[6]  These "findings" are primarily set forth in the Court's tentative summary judgment ruling from September 4, 2001, which the Court significantly altered when it entered a final summary judgment ruling on September 18, 2001.[7]

B.    Senn has not analyzed the relevant issue at all

Because "the law of the case" is her starting point, Senn analyzes Continental's behavior as though the Government's status as an implied insured were a foregone conclusion back in 1995 when Continental decided to reject tender.  Senn recognizes that bad faith must be assessed without the benefit of hindsight -- that "you've got to look at what the conduct was at

---

[3]  Report at 24, Zipkin Decl. Ex. B.

[4]  Senn Tr. at 83:21-22, 107:6-15, 138:24-139:7, Zipkin Decl. Ex. A.

[5]  Id. at  83:21-22 ("So basically I built my opinion based up the law of the case, which is Judge Sedwick's findings about bad faith"); id. at 107:6-15.

[6]  Id. at 83:21-22.

[7]  Report passim, Zipkin Decl. Ex. B; compare Dkt. 57 with Dkt. 61.

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn

Page 4 of 26

the time" because "hindsight's perfect".[8]  Senn assumes, however, that "if the U.S. is an insured, then you have to look at it [Continental's conduct] in light of the fact the U.S. is an insured."[9]

Given that assumption, Senn admits that she performed no analysis of the "implied insurance" doctrine at all, including whether the doctrine's application in this case was debatable:

> Q.    Does it matter to you at all in your analysis of bad faith as to whether or not it was genuinely debatable as to whether or not the United States was an implied insured?
>
> A.    I'm relying on the law of the case.  And the Ninth Circuit, a very venerable Court, has found that the United States is an implied insured, so that is where my analysis begins. . . .  [T]he law of the case is that the U.S. is an implied insured.  And I have not spent any time establishing an independent opinion because (A) I wasn't asked to do that, and (B) it's the law of the case.[10]
>
> * * *
>
> Q.    So you haven't spent any time looking at or -- it doesn't figure into your analysis and your opinion as to whether or not the question about whether the United States was an implied insured was fairly debatable, you just didn't --

---

8    Senn Tr. at 138:24-139:5, Zipkin Decl. Ex. A.

9    Id. at 139:5-7.

10    Id. at 107:3-15.

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn
Page 5 of 26

A     No.

Q     -- you didn't consider that?

A     No.[11]

* * *

Q.     And did you, did you research the concept of an implied insured?

A     No.  As I told you earlier, I did not research that.[12]

Senn also admits that she did not analyze whether there was any legal or factual precedent for the Government's tender or whether, on the other hand, its tender was novel:

Q     Now you're aware that as of certainly up to and including January 20th, 1995, and for some period of time after that the United States was contending that they were an implied insured?

A     I believe so.

Q     And as of that time do you know whether there was any case anywhere in the United States in which the United States had been found to be an implied insured on any insurance contract ever?

---

[11]  Id. at 108:6-12.

[12]  Id. at 199:2-4.

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn
Page 6 of 26

> A    I did not make that investigation.  I don't know the answer
>
> to that.[13]

Thus, Senn did not consider the undisputed fact -- to which the United States has admitted[14] --

that *no on-point legal precedent existed when the Government tendered*.  Nor did she consider

the merits of Continental's factual investigation or legal analysis regarding the question whether

the United States was an implied insured.  Accordingly, as she must, even Senn admits that she

cannot opine on the merits or reasonableness of Continental's discussion of the implied insurance

doctrine in its tender rejection letters.[15]

### C.    Senn opines on a variety of other topics

While she does not analyze the doctrine of implied insurance, the Avi-Truck

decision,[16] the parties' intent to benefit the United States (or lack thereof), or any of the other

issues bearing on the "outrageousness" of Continental's conclusion that the Government was not

covered under Bristol Bay's policy, Senn does address topics on other issues.  Senn believes

---

[13]    Id. at 135:17-136:2.

[14]    United States' Amended Responses to Defendant's First Set of Discovery Requests in the Punitive Damages Phase ("Amended Responses"), Response to Request for Admission No. 4, Zipkin Decl. Ex. C.

[15]    Senn Tr. at 179:1-15, 199:2-14 ("Q  And so, this analysis about him [Craig Stowers] not finding any case anywhere in which the United States was found to be an implied insured -- A  I did not research.  Q  Do you think it's unreasonable, his position on that?  A  I haven't asked -- been asked to offer an opinion on it, but if I need to I will.  Q  Well, I'm asking you now.  Do you -- you don't have an opinion right now?  A  On the issue of the implied insured in that letter, no."), Zipkin Decl. Ex. A.

[16]    Stewart-Smith Haidinger, Inc. v. Avi-Truck, Inc., 682 P.2d 1108, 1113 (Alaska 1984). This is the primary case on which the United States relied in its tender letters.

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn

Page 7 of 26

some of these topics track what supposedly are "clearly findings of bad faith that is the law of this case," including:

- Continental failed to provide a prompt and reasonable explanation for coverage denial and deliberately misconstrued the facts around the purchase of coverage,

- Continental knowingly allowed a conflicted attorney to represent its interest,

- Continental knowingly and deliberately concealed coverage,

- Continental deliberately failed to reply to tenders, and

- Continental failed in its duty to defend.[17]

Senn also addresses other topics that exceed even her understanding of "the law of the case," including:

- Continental compelled its insured to litigate for recovery,

- Continental's corporate structure potentially evidences bad faith conduct,

- Continental's response to the Kallstrom re-tender in 2001 was bad faith conduct, and

- Continental has engaged in additional acts of ongoing acts of bad faith.[18]

Even Senn admits, however, that acts that go beyond the Court's bad faith holding at least arguably are not admissible to support punitive damages.[19]

Throughout her report, Senn discusses and relies on the requirements of Alaska's Unfair Claims Settlement Practices Act to support her conclusions.[20]  Senn acknowledges that

---

[17]    Senn Tr. at 95:5-22, Zipkin Decl. Ex. A; Report at Sections A, B, C, D, F, Zipkin Decl. Ex. B.

[18]    See, e.g., Senn Tr. at 83:18-20 (Senn: "forcing a--an insured to litigation is not something cited by Judge Sedwick in his exposition of common law faith."); id. at 95:5-96:9, Zipkin Decl. Ex. A.; Report at Sections D, E, G, Zipkin Decl. Ex. B.

[19]    Senn Tr. at 97:5-13, Zipkin Decl. Ex. A.

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn

Page 8 of 26

she uses the Act as a "measuring stick" by which she judges Continental.[21]  Senn also

acknowledges that the standards for violating the Act are less stringent than those needed for

finding "common law bad faith."[22]  However, while the Government pled a claim for violation of

the Act, see Dkt. 71 at 9 (claim five), that claim has never been adjudicated in the United States'

favor.  Indeed, it cannot be, because there is no viable private cause of action under the Act as a

matter of Alaska law.  See OK Lumber v. Providence Washington Ins., 759 P.2d 523, 527

(Alaska 1988) ("In our view, there is much in the statute which suggests that the legislature did

not intend to create a private cause of action for damages . . . .  [I]t does not readily lend itself to

enforcement by a private cause of action arising from a single claim.").

<u>Argument</u>

I.     THE COURT MUST EXCLUDE SENN'S TESTIMONY UNLESS THE UNITED
       STATES SHOWS IT IS RELEVANT AND RELIABLE, WOULD ASSIST THE JURY
       AND IS NOT UNDULY PREJUDICIAL OR CONFUSING

           Under the Federal Rules of Evidence, the Court has a "gatekeeping function"

when it comes to expert testimony -- the Court has a duty to exclude testimony that is unreliable,

irrelevant, unduly prejudicial or confusing, or that otherwise will not assist the jury.  Rule 702

provides:

> If scientific, technical, or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact
> in issue, a witness qualified as an expert by knowledge, skill,
> experience, training, or education may testify thereto in the form of
> an opinion or otherwise, if (1) the testimony is based upon

---

[20]   Report <u>passim</u>, Zipkin Decl. Ex. B.

[21]   Senn Tr. at 83:7-20, Zipkin Decl. Ex. A.

[22]   <u>Id</u>.

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn

Page 9 of 26

sufficient fact or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Thus, Rule 702 "establishes a standard of evidentiary reliability . . . and requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 590. 592 (1993); see also Kumho Tire Co. v. Carmichael, 52 U.S. 137, 149 (1999). In order to be admissible, expert testimony must be both reliable and relevant, and its probative value must not be outweighed by dangers of prejudice or confusion of the issues. See Kumho Tire Co., 526 U.S. at 147; Daubert, 509 U.S. at 590-91.

Assessment of the reliability of an expert's opinion involves an examination of both the factual bases and assumptions underlying the opinion and the soundness of the expert's methodology -- a reliable opinion can result only from the use of an appropriate methodology to extrapolate from reasonable assumptions and data. See General Elec. Co. v. Joiner, 522 U.S. 136, 147 (1997). The Court must assess reliability in light of the expert's industry, analyzing overall "whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'" Kumho Tire Co., 526 U.S. at 148 (quoting Daubert, 509 U.S. at 592).

The relevance of an expert's opinion is measured by the same standards that govern admission of other types of evidence, but is also analyzed under Rule 702 to determine whether the proposed testimony "fits" the facts of the case. Daubert, 509 U.S. at 591-92. Even if sufficiently reliable, an expert's opinion is not admissible if it will be "unhelpful" to the trier of fact and does not fit the facts of the case. Id.; see also City of Tuscaloosa v. Harcros Chemicals, Inc., 158 F.3d 548, 565 (11th Cir. 1999) ("[An expert's] testimony is admissible only insofar as it

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn
Page 10 of 26

assists the trier of fact, through the application of scientific, technical, or specialized expertise, to

understand the evidence or to determine a fact in issue.").

Moreover, the Court, acting as a gatekeeper, should exclude even "otherwise

admissible" expert testimony if its probative value is substantially outweighed by the danger of

unfair prejudice, confusion of the issues, or misleading the jury under Rule 403.  See Jinro

America Inc. v. Secure Investments, Inc., 266 F.3d 993, 1005-06 (9th Cir. 2001).  The burden of

demonstrating that Senn's testimony is reliable, relevant and helpful rests with the United States.

General Elec. Co. v. Joiner, 522 U.S. 136, 143 (1997); see also Fed. R. Evid. 702 Ad. Comm.

Note, 2000 Amendments.

II.     THE COURT SHOULD EXCLUDE SENN'S TESTIMONY IN ITS ENTIRETY
        BECAUSE SHE PERFORMS NO ANALYSIS OF THE RELEVANT ISSUE

        A.     Senn's opinions that Continental acted outrageously, maliciously, and with
               reckless indifference are unreliable because she did not analyze the legal or
               factual basis for Continental's decision to reject tender

Here, the point is simple: where an expert has done no analysis on a topic, she

cannot offer reliable testimony.  Senn admits that she has done no analysis of the legal principles

Continental relied on in rejecting the United States' tenders, has never investigated the doctrine

of implied insurance, has never examined whether the application of the doctrine in this case was

novel, did not consider whether the application of the doctrine was genuinely debatable, and does

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn

Page 11 of 26

not know whether the United States' tenders were unprecedented.[23]  Without having examined the circumstances Continental faced when the United States tendered or the bases for Continental's conclusion that the United States was not covered under Bristol Bay's policy, Senn clearly cannot opine on whether that decision was outrageous, malicious, reckless, or anything else.  Just as "the fact 'that one Ninth Circuit judge and this court at one point in time sanctioned Continental's decision to reject the government's tenders diminishes the reprehensibility of Continental's conduct,'" which the Court recognized in a recent order, the factual investigation and legal analysis conducted by Continental prior to its rejection of tender -- and the undisputed novelty of the tender itself -- also "diminish[] the reprehensibility of Continental's conduct."[24]  Senn's failure to consider these factors is striking.

      1.      <u>Senn cannot use subsequent Court orders as the basis for her opinions</u>

      Senn's reliance on "the law of the case" is not a legally acceptable substitute for independent analysis.  As Senn recognizes,[25] whether conduct amounts to bad faith (or worse) must be examined in light of the state of the law that existed <u>when the conduct occurred</u>, without the benefit of hindsight.  <u>See</u>, <u>e.g.</u>, <u>Ramirez v. Transcontinental Ins. Co.</u>, 881 S.W.2d 818, 822 (Tex. App. 1994) ("Whether there is no reasonable basis for denial must be judged by the facts before the insurer at the time it handled the claim."); <u>Miller v. Allstate Ins. Co.</u>, 1998 WL

---

    [23]   Senn Tr. at 107:3-15, 108:6-12; 135:17-136:2, 151:5-11, 179:1-15, 199:2-14, Zipkin Decl. Ex. A.

    [24]   Dkt. 225 at 9-10 (quoting Dkt. 210).

    [25]   Senn Tr. at 138:24-139:7, Zipkin Decl. Ex. A.

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn

Page 12 of 26

937400 at *4, *6 (C.D. Cal. 1998). The fact that the Ninth Circuit found the United States to be an implied insured in 2004 (over a dissent) obviously does not show that Continental acted outrageously when it concluded otherwise nine years earlier. See Peter v. Progressive Corp., 2006 WL 438658, *7 (Alaska 2006) (where issue was an "open question to which an answer could not have been known until this court actually [] ruled" when insurer acted, subsequent ruling unfavorable to insurer does not imply that insurer acted in bad faith before that ruling existed); Paulson v. State Farm Mutual Automobile Ins. Co., 867 F. Supp. 911, 919 (C.D. Cal. 1994) ("The fact that ... the arbitrator subsequently found that State Farm owed [the insured] the limit of his policy does not imply that State Farm acted in bad faith in the first instance.").

Further, the Court's ruling on summary judgment was predicated on a legal standard that differs dramatically from the standard for the jury. The standards for establishing a bad faith denial of coverage are different from those necessary to support punitive damages. State Farm Mutual Automobile Ins. Co. v. Weiford, 831 P.2d 1264, 1266 (Alaska 1992). On summary judgment, the Court ruled that Continental acted unreasonably in rejecting tender where that fact had to be proven only by a preponderance of the evidence. Dkt. 61 at 10. The question for the jury -- whether the United States shows by clear and convincing evidence that Continental acted outrageously in rejecting tender -- is quite different. The Court's ruling on unreasonableness does not support Senn's opinions on outrageousness.

Even if some of Senn's analysis tangentially touches on Continental's evaluation of the United States' tenders (which it really does not), Senn still cannot opine on outrageousness. She has not conducted any investigation into core issues, leaving huge gaps in her analysis. Significant gaps or omissions in an expert's reasoning render her opinions

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn

Page 13 of 26

unreliable and inadmissible.  Microstrategy Inc. v. Business Objects, S.A., 429 F.3d 1344, 1355-

56 (Fed. Cir. 2005) ("the district court has the responsibility to exclude an expert opinion that

overlooks factors that render the testimony unreliable and/or speculative.") (emphasis added);

McMahon v. Bunn-O-Matic Corp., 150 F.3d 651, 657-58 (7th Cir. 1998) (a "bare conclusion"

offered without explanation or empirical support fails the reliability requirement of Rule 702).

Senn's analytical omissions here are extraordinary:

- she ignored the issue in the case

- she failed to look at the relevant law as it existed when the Government tendered,

- she failed to consider Continental's analysis of that law, and

- she failed to consider whether there was any precedent for the United States' request.

Those failures preclude her from testifying about the purported outrageousness of Continental's

response.[26]

---

[26]    Senn also misunderstands the law of the case doctrine.  Senn admits that she "built [her] opinion based upon the law of the case," by which she means the Ninth Circuit's holding that the United States is an implied insured, the Court's holding that Continental acted in bad faith, and all of the other "findings about bad faith" made by the Court in its orders.  Senn Tr. at 83:21-22, 107:6-15, 138:24-139:7, Zipkin Decl. Ex. A.  However, the factual observations and dicta in the Court's orders are not law of the case.  See Ducey v. United States, 830 F.2d 1071, 1072 (9th Cir. 1987) ("Dicta is not given preclusive effect under the law of the case doctrine in this circuit."); Milgard Tempering, Inc. v. Selas Corp. of America, 902 F.2d 703, 715 (9th Cir. 1990) ("A significant corollary to the [law of the case] doctrine is that dicta have no preclusive effect."); Russell v. C. I. R., 678 F.2d 782, 785 (9th Cir. 1982) ("Because the res judicata discussion in our prior Russell decision was dicta, it is not part of the law of the case."); Bernhardt v. Los Angeles County, 339 F.3d 920, 924 (9th Cir. 2003) (law of the case only applies to "legal issue[s]").

   Because Senn relies heavily (at times, exclusively) on non-binding statements made by the Court instead of her own analysis--and even admits that her report is "built" on those statements--the reliability of Senn's ultimate conclusions is diminished.  In any case, Senn clearly (footnote continued)

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn

Page 14 of 26

B.    <u>The outrageousness of Continental's decision to reject tender is the only relevant issue</u>

Although she cannot testify about it, the <u>only</u> issue for trial is whether Continental's decision to reject tender was outrageous.  Because Senn cannot testify on that topic, she cannot testify at all.

As the Court has recognized, the <u>only</u> theory of bad faith pursued by the Government in this case is a "bad faith denial of coverage" theory.  Dkt. 61 at 10.  To establish its bad faith claim, the Court required the Government to "show that the defendant-insurer lacked a reasonable basis for denying benefits of the policy and that defendant-insurer had knowledge that no reasonable existed to deny the claim or acted in reckless disregard".  <u>Id.</u>  The remaining punitive damages claim involves the same questions, but the quantum of proof and the legal standard by which that proof is judged are different.  Now, instead of showing by a preponderance that Continental lacked a reasonable basis for rejecting tender, the Government must show by clear and convincing evidence that Continental's tender rejection was outrageous.  <u>Weiford</u>, 831 P.2d at 1266 (Alaska 1992); <u>Chizmar v. Mackie</u>, 896 P.2d 196, 210 (Alaska 1995).

While Senn is prepared to discuss a variety of topics that do not bear on the merits of Continental's decision that the United States was not an implied insured, only evidence that bears on the claim of bad faith ***actually being litigated*** -- a bad faith rejection of tender claim -- is relevant, helpful, and admissible.  <u>See</u> <u>Fed. R. Evid.</u> 402, 403, 702; <u>Aceves v. Allstate Ins. Co.</u>, 69 F.3d 1160, 1165-66 (9th Cir. 1995) (where only one of several bad faith claims goes to the

---

cannot discuss the Court's non-binding "findings" in its orders in any testimony she is permitted to give, as she does throughout her report.

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn

Page 15 of 26

jury, <u>only the acts of bad faith that are relevant to the bad faith claim submitted to jury are</u> <u>admissible</u>; acts of bad faith that bear on other theories of bad faith are irrelevant and inadmissible); <u>Peter</u>, 2006 WL 438658 at *6 (where, as here, bad faith issue is whether insurer's tender rejection was made without a reasonable basis, "questions raised as to particular practices of the insurance company 'have little or no relevance on that point'") (quoting <u>Hillman v.</u> <u>Nationwide Mutual Fire Ins. Co.</u>, 855 P.2d 1321, 1324-26 (Alaska 1993)).

Senn cannot opine on the purported outrageousness of Continental's tender rejections. As that is the only issue for the jury, Senn cannot testify at all. The Court should not permit the Government, through its expert, to confuse the jury with opinions about irrelevant conduct which does not bear on the justifiability of Continental's tender rejection.

III.    <u>SENN'S OTHER OPINIONS ARE UNIFORMLY IRRELEVANT, UNRELIABLE,</u> <u>AND INADMISSIBLE</u>

Considered on an individual basis, Senn's miscellaneous opinions are also inadmissible. Most suffer from the same analytical flaw discussed above: by improperly considering Continental's conduct <u>with</u> the benefit of hindsight, as though the Ninth Circuit's ruling existed ten years ago or the United States were a named insured, the reliability of Senn's conclusions is compromised. Further, most of the topics Senn addresses are irrelevant because they do not bear on the merits of Continental's tender rejection, which is the only real issue in this case.

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn
Page 16 of 26

A.    Senn improperly measures Continental's conduct against the Unfair Claims Settlement Practices Act

Senn discusses the requirements of the current version of the Unfair Claims Settlement Practices Act extensively, and admits that she uses that Act as a "measuring stick" by which she judges Continental -- even though the Act's requirements vary from, and are more stringent than, "common law bad faith" requirements.[27]  That is improper for several reasons. First, there has been no finding that Continental violated the Act.  Second, the Government's claim for alleged violations of the Act (claim five in its complaint) is not at issue in the upcoming trial -- its claim for common law bad faith (claim three) is.[28]  Indeed, there is no private cause of action to enforce the Act at all.  See OK Lumber, 759 P.2d at 527.  Senn cannot opine on alleged violations that have nothing to do with the claim actually being litigated -- here, a claim for punitive damages based on a prior adjudication of common law bad faith.  Moreover, Senn examines the current version of the Act instead of the version that existed when Continental allegedly acted wrongly.  That is improper as well.

Senn's reliance on the requirements of the Act throughout her report undermines the reliability of her conclusions.  In any case, Senn should not be permitted to discuss the requirements of the Act in her presentation to the jury, if she is permitted to testify at all.

---

[27]    Senn Tr. at 83:7-20, Zipkin Decl. Ex. A.

[28]    Dkt. 71 at 8-9; see Dkt. 61 (holding in Government's favor on bad faith claim but not addressing Unfair Claims Settlement Practices Act claim).

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn
Page 17 of 26

     B.    <u>Senn's opinion that Continental failed to provide a prompt and reasonable explanation for coverage denial is inadmissible</u>

Relying exclusively on the Court's prior statements, Senn opines in Section A of her report that "Continental failed to provide a reasonable explanation for denial of coverage, because, as the District Court found, there is no reasonable explanation."[29]  Because Senn has not analyzed the implied insurance doctrine, she obviously cannot opine on whether Continental's explanation for its tender rejection was outrageous or not.[30]

     C.    <u>Senn's opinion that Continental failed in its duty to defend is inadmissible</u>

Senn opines in Section F of her report that Continental's refusal to defend "was an outrageous act done with bad motive" because "when an insurer believes there is no coverage" it still has a "duty to defend with a reservation of rights."[31]  Senn cannot reliably opine on the outrageousness of Continental's refusal to defend or what Continental's motives were, however, without having examined the bases for Continental's conclusion that the United States <u>had no rights</u> at all under Bristol Bay's policy.  As a matter of Alaska law, an insurer has <u>no</u> duty to defend -- including under a reservation of rights -- when the facts alleged in a claimant's complaint and the other facts of which the insurer is aware do not present a potentially covered claim.  <u>See</u>, <u>e.g.</u>, <u>State, Dept. of Transp. and Public Facilities v. State Farm Fire and Cas. Co.</u>,

---

[29]   Report at 10, Zipkin Decl. Ex. B.

[30]   Senn's opinions on this issue are primarily set forth on pages 8-9 of her report (excluding the last paragraph of page 9) and at the top of page 10.  Senn's discussion of "promptness" is set forth in a different section of her report.

[31]   Report at 20, Zipkin Decl. Ex. B.

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn

Page 18 of 26

939 P.2d 788, 792 (Alaska 1997) ("The factual allegations made in the complaint of the underlying litigation determine whether there is a duty to defend.").

D.    Senn's opinion that Continental deliberately misconstrued the facts around the purchase of coverage is inadmissible

In Section A of her report, Senn also opines that Continental engaged in "stealthy behavior" and "lied in this case" based on the Court's observations in its 2001 summary judgment ruling that Continental's summary judgment papers contained "incorrect citations."[32] Continental's counsel's citations in motion papers in 2001 have no bearing on the purported outrageousness of Continental's decision not to provide coverage and are irrelevant and prejudicial.  See Nies v. National Auto & Casualty Ins. Co., 199 Cal. App. 3d 1192, 1201 (1998) (admission of expert testimony on alleged bad faith litigation tactics is reversible error:  "insurers will be disabled from conducting a vigorous defense in a bad faith insurance action if their pleadings may be used to prove preexisitng bad faith"); Palmer by Diacon v. Farmers Ins. Exchange, 861 P.2d 895, 914 (Mont. 1993) ("There is no need to penalize insurers when their attorneys represent them zealously within the bounds of litigation conduct.  To allow a jury to find that an insurer acted in bad faith by zealously defending itself is to impose such a penalty."); see generally Defendants' Motion in Limine No. 4.  Because Senn's opinion that Continental "deliberately misconstrued" the facts is based on irrelevant summary judgment assertions by counsel, the opinion is irrelevant, unreliable, prejudicial and inadmissible.

---

[32]    Report at 9, 10, Zipkin Decl. Ex. B.

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn

Page 19 of 26

E.    Senn's opinion that Continental allowed a conflicted attorney to represent its
interest is inadmissible.

Senn opines in Section B of her report that Continental and its counsel, James
Friderici, "obviously acted out of bad motives" and issued a "faulty coverage analysis" because,
or in part because, Friderici allegedly was conflicted when he advised Continental on coverage.
Friderici's alleged conflict has nothing to do with the substance of Continental's rationale for
rejecting tender, which Senn of course did not examine at all.  Senn's conclusion that Continental
acted out of "bad motives" and issued a "faulty coverage analysis" because Friderici allegedly
was conflicted is wholly unreliable.

Whether Friderici owed a duty of loyalty to Bristol Bay is distinct from whether
Continental's decision to rely on his substantive reasoning was outrageous.  Nor is there any
basis for Senn's conclusions about intent -- that Continental's actions "were designed to deprive
the United States of its rights" and that Continental acted out of "bad motives" merely because it
relied on the substantive analysis of an attorney that allegedly was conflicted.  Senn wholly
ignored the substance of Friderici's analysis.  Senn also wholly ignored the fact that Continental
independently analyzed the substantive issues before it rejected tender.[33]  Given the gaps in her
analysis, Senn's conclusions are unreliable and inadmissible.

---

[33]    As Continental's claim director testified, Continental "looked at the case and all of the
merits independently" and "came to the conclusion that we agreed with [Mr. Friderici]."
Deposition of William Hutson dated April 7, 2000 at 77:15-20, Zipkin Decl. Ex. D.

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn

Page 20 of 26

F.    <u>Senn's opinion that Continental knowingly and deliberately concealed coverage is inadmissible</u>

Senn concludes in Section C of her report that Continental's "most shocking" violation was to attempt to conceal "coverage" by not volunteering the existence of the policy covering Jake's Place, where Lori Wilson was injured.[34]  She admits, however, that an insurer does <u>not</u> "owe the same duty to non-purchasers of its policy that it owes to its purchasers."[35]  Senn claims that Continental owed the United States a duty to disclose the second policy only because "the United States has been found to be an implied insured."[36]  Of course, the United States was only "found to be an implied insured" in 2004.  Thus, Senn improperly analyzes this issue <u>with</u> the benefit of hindsight, not without.

More importantly, this topic does not bear on Continental's decision to reject tender.  In his coverage opinion, Mr. Friderici concluded that the United States had no rights under <u>either</u> of the policies issued to Bristol Bay.[37]  Judge Stowers later gave identical advice and he was not even allegedly conflicted.  Continental's decision not to volunteer the existence of one of those policies has nothing to do with its conclusion that the United States was not insured under either policy.

---

[34]    Report at 13, Zipkin Decl. Ex. B.

[35]    <u>Id</u>. at 13; Senn Tr. at 137:8-15, Zipkin Decl. Ex. A.

[36]    Senn Tr. at 150:25-151:23, Zipkin Decl. Ex. A.

[37]    Letter from James Friderici to Bill Hutson dated January 20, 1995, Zipkin Decl. Ex. E.

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn

Page 21 of 26

G.    Senn's opinion that Continental wrongly compelled its insured to litigate for recovery is inadmissible

Citing to an Unfair Claims Settlement Practices Act provision that precludes an insurer from compelling an insured to litigate where "liability is clear," Senn opines in Section E of her report that Continental "outrageously" forced the United States to litigate its claim.[38]  This opinion is both unreliable and irrelevant.  Even under the Act (which does not apply), it is only wrongful to compel an insured to litigate where liability is clear.[39]  Thus, Senn's opinion that Continental wrongfully compelled the United States to litigate assumes both that liability was clear when the United States tendered and that Continental knew that.  Senn never considered the doctrine of implied insurance or the substance of Continental's tender rejection, and hence there is no foundation for her opinion.  In any case, this opinion does not bear on the merits of Continental's decision to reject tender, and it therefore is irrelevant.

H.    Senn's opinion that Continental repeatedly and deliberately failed to reply to the United States' tenders is inadmissible

In Section D of her report, Senn opines that Continental "acted deliberately and repeatedly in a manner calculated to frustrate and wear down its insured" by delaying or failing to respond to the United States' tenders.[40]  Here as well, Senn's opinion is unreliable because she ascribes intent (and even claims Continental acted "unconscionably") without even considering Continental's evaluation of the United States' tenders.  Senn's failure to analyze Continental's

---

[38]    Report at 18-20, Zipkin Decl. Ex. B.

[39]    Id. at 18.

[40]    Report at 15-16, 18, Zipkin Decl. Ex. B.

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn

Page 22 of 26

deliberative process or the merits of Continental's tender evaluations precludes her from testifying about whether Continental "deliberately" delayed its responses.

More significantly, this topic is irrelevant. Unreasonably delayed responses to tenders theoretically may give rise to a bad faith claim, but not the bad faith claim pursued by the Government in this case. As the Court observed on summary judgment, the Court's bad faith theory is a "bad faith <u>denial of coverage</u>" theory, Dkt. 61 at 10 (emphasis added), and the outrageousness of Continental's conclusions on coverage is what is now at issue. Any alleged delays in Continental's rejections are irrelevant at this stage. <u>Aceves</u>, 69 F.3d at 1165-66.

I.     <u>Any opinion about the Kallstrom re-tender is inadmissible</u>

Senn also incorporates in Section D of her report the United States' new bad faith claim about the <u>Kallstrom</u> re-tender. As discussed in detail in Continental's opposition to the United States' motion for summary judgment on that claim and Continental's Motion in Limine No. 2 to exclude evidence relating to new, unpleaded claims of purported bad faith, this new claim is not properly at issue. Therefore, Senn's opinions are inadmissible.

J.     <u>Any opinion as to Continental's corporate structure is irrelevant</u>

In the preface of her report, Senn includes information about Continental's corporate structure such as its relationship with affiliated companies, its net worth, its dividend payouts, and so on.[41] She does so apparently because she has "seen in litigation this kind of corporate structure used to avoid liability" and this "lays the groundwork for [her] to offer an opinion on this subject if it comes up."[42] However, there has not even been an allegation in this

---

[41]   Report at 2-3, Zipkin Decl. Ex. B.

[42]   Senn Tr. at 116:13-117:9, Zipkin Decl. Ex. A.

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn

Page 23 of 26

case to date that Continental's corporate structure reveals bad faith in any way.  Even Senn admits that she has no opinion as to whether Continental is engaged in what she calls a "corporate structure dodge."[43]

In all events, Senn's opinions regarding corporate structure have nothing to do with Continental's decision to reject the United States' tenders or anything else properly at issue. These irrelevant opinions should be excluded.

<u>Conclusion</u>

As the Supreme Court has observed, conclusions offered by experts have the potential to be quite misleading, and courts should preclude experts from testifying more frequently than lay witnesses.  <u>Daubert</u>, 509 U.S. at 595 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than lay witnesses.").  For all of the foregoing reasons, the Court should preclude Senn's testimony altogether.  Senn's testimony will confuse the jury, not assist it.

If the Court permits Senn to testify at all, defendants respectfully request that she be precluded from offering the improper opinions specifically identified above, including any opinions that:

- Continental acted outrageously, maliciously, or with reckless indifference

- Continental failed to provide a prompt and reasonable explanation for coverage denial

- Continental violated the Unfair Claims Settlement Practices Act

---

[43]    Senn Tr. at 114:21-23, 237:7-9, Zipkin Decl. Ex. A.

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn
Page 24 of 26

- Continental failed in its duty to defend

- Continental deliberately misconstrued the facts around the purchase of coverage

- Continental allowed a conflicted attorney to represent its interest

- Continental knowingly and deliberately concealed coverage

- Continental wrongly compelled its insured to litigate for recovery

- Continental repeatedly and deliberately failed to reply to the United States' tenders

- Continental wrongly did not accept the Kallstrom re-tender

- Continental's corporate structure is improper, and

- Any other opinions that have not already been disclosed.  Fed. R. Civ. P. 26(a)(2).

DATED at Anchorage, Alaska, this 5th day of April, 2006.

GUESS & RUDD P.C.
Attorneys for Defendants

By: _____S/Gary A. Zipkin_____
        Guess & Rudd P.C.
        510 L Street, Suite 700
        Anchorage, Alaska  99501
        Phone: 907-793-2200
        Fax:  907-793-2299
        Email: gzipkin@guessrudd.com
        Alaska Bar No. 7505048

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn

Page 25 of 26

QUINN EMANUEL URQUHART
  OLIVER & HEDGES, LLP
Attorneys for Defendants


By: ____S/A. William Urquhart_____
          Quinn Emanuel Urquhart
           Oliver & Hedges, LLP
          865 South Figueroa
          Street, 10th Floor
          Los Angeles, CA  90017
          Phone: 1-213-443-3000
          Fax:   1-213-443-3100
          Email:
          billurquhart@quinnemanuel.com

F:\data\6024\1\pleading\79 Mtn Lim #8.DOC


CERTIFICATE OF SERVICE
I hereby certify that on the
5th day of April, 2006, a copy
of the foregoing document was served
electronically on:

Richard L. Pomeroy, Esq.
Christopher Tayback, Esq.
A. William Urquhart, Esq.

and by regular U.S. mail on:

Richard Stone, Esq.
Civil Division, Torts Branch
U.S. Department of Justice
1331 Pennsylvania Avenue, N.W.
Washington, D.C.  20530

Guess & Rudd P.C.


By:_____S/Gary A. Zipkin_

USA v. Continental; Case No. 3:98-cv-285-JWS
Defendants' Motion in Limine No. 8 to Preclude the Testimony of Deborah Senn