*Campbell v. Cal-Gard Surety services v. Prevent-a-Theft* 62 Cal. App. 4th 563 (1998)

*Southern Farm Bureau Casualty Insurance Co. v. Allen* 934 S.W. 527 (Ark. 1996)

*Anderson v. Continental Insurance* 271 N.W. 2d 368 (Wis. 1978)

Depositions of Crystal Brown, Debra Wyatt Brown, Lori Wing, Robert Clark, Laurence Boysen, Erin Finn and Exhibits Attached.

March 8, 1989 Memo from Lori Wing to Kim Cavera at Continental. BBAHC 000837

May 18, 1993 Memo to Debra Wyatt Brown

January 12, 1994 Letter from Julie McCarty to Continental CNA 000555

January 17, 1994 Letter to Bob Stewart of Davis Wright from Ames Luce. CNA 000549

February !6, 1994 Brown to Hutson: recap of coverage BBAHC 000201

January 31, 1994 Claim forwarded to Bill Huston.

February 1, 1994 Continental reserves $475,000 for Wilson occurrence. BBAHC 000192

February 16, 1994 Fax: Debra Wyatt Brown to Bill Hutson BBAHC 000201

February 17, 1994 Letter from Hutson to Kurtz CNA 000512

February 18, 1994 Letter from Hutson to Kurtz CNA 000510

February 18, 1994 Hutson reserve report and recap. BBAHC 000192

March 3, 1994  Mike Cox of Continental to Hutson.

March 18, 1994 George Ertle, director of liability, to Hutson.  CNA 000505

April 6, 1994 Hutson writes Ertle BBAHC 001212-14

May 3, 1994 Ertle replies to Hutson. CNA 000468-470

May 10, 1994 Letter from Friderici to Huston  BBAHC 001191-195

May 19, 1994 Handwritten memo  CNA 000465

May 31, 1994  Memo to file. BBAHC 000177

June 1, 1994 Letter from Friderici to Hutson. CNA000457-459

June 3, 1994 Letter from Friderici to Hutson CNA000454-456

June 23, 1994 Handwritten note received by Debra Wyatt Brown BBAHC 000176

June 23, 1994 Hutson letter to Friderici

July 15, 1994 Letter from Hutson to Cox Alaska. CNA 000453

January 6, 1995 USDOJ tenders defense. CNA 000336-338

January 20, 1995 Friderici letter to Hutson CNA 000562-566

February 1, 1995 USDOJ writes a second tender letter. No bates stamp

February 13, 1995 Fridirici response to DOJ BBAHC 001130-31

February 13, 1995 Letter to Hutson from Friderici enclosing response to USDOJ.
CNA000569-570

May 8, 1995 Hutson to Friderici asking for update. CNA 000430

May 25, 1995 Friderici to Hutson BBAHC 001122-001124

June 1, 1995 Letter from Bob Stewart to James Friderici (marked as Exh. 51, 3 pages)

July 12, 1995 Friderici bill to Continental

June 6, 1995 USDOJ retenders defense. CNA 000342-345

June 8, 1995 Friderici to Hutson 000623-624

September 13, 1995 USDOJ tenders another defense. CNA 000347-348

October 3, 1995 Continental via Hutson rejects the DOJ tender BBAHC 001826

January 5, 1996 claim file notation (6 pages missing)BBAHC 001756

July 26, 1996 CNA claim file moved from Hutson to Jennifer Taylor BBAHC 001825

February 20, 1997 USDOJ tenders to CNA HealthPro, Jennifer Taylor. CNA 000410.

March 18, 1997 Taylor acknowledges tender. No bates

March 18, 1997 DOJ responds CNA 000408

**A7446**

April 18, 1997 Memo from Howard Green claims to Steve Garrett CNA 000406

April 28, 1997 Email from Steve Garrett to Gregory Allen CNA 000388-90

May 16, 1997 DOJ to Ray Faccenda. No bates no.

May 21, 1997 Notation in CNA file activities report:

May 28, 1997 Craig Stowers to Ray Faccenda  CNA 000249-261

June 19, 1997 Letter from Stowers to DOJ 9 pages, no bates no.

July 1, 1997 CNA file notes.

September 26, 2001 United States tenders defense of Kallstrom

October 19, 2001 DOJ letter to Dorsey Whitney re: settlement negotiations

October 23, 2001, Dorsey Whitney to DOJ re: settlement negotiations

October 30, 2001 U.S.retenders defense of Kallstrom suit


United States of America's Motion to Amend Complaint and Memorandum in Support Thereof

Answer to Plaintiff's Second Amended Complaint and Affirmative Defenses to Second Amended Complaint

United States of America Motion for Summary Judgment and Memorandum in Support Thereof and Exhibits attached

Defendant Continental Insurance Company's Motion for Summary Judgment

Plaintiff United States of America's Opposition to Defendant CNA's Motion for Summary Judgment

Motion and Memorandum in Support of the United States' Motion to Strike Inadmissible Evidence Introduced in Support of Defendant's Motion for Summary Judgment and Exhibits Attached

Plaintiff United States of America's Reply to Defendant CNA's Motion for Summary Judgment

Defendant's Memorandum in Support of Motion in Support of Partial Summary Judgment

Memorandum in Support of the United States' Opposition to Defendant CNA"s Motion for Partial Summary Judgment, and United States' Cross Motion for Summary Judgment

United States Reply to Defendant's Opposition to the United States' Cross Motion for Summary Judgment

Joint Status Report

Notices Of deposition by United States

Letter to Richard Pomeroy from Jahna Lindemuth October 21, 2005

Richard Pomeroy to Jahna Lindemuth, October 14, 2005

Letter to Richard Pomeroy from Jahna Lindemuth October 4, 2005

Letter from Richard Pomeroy to Jahna Lindemuth, September, 2005

Letter to Richard Pomeroy from Jahna Lindemuth October 4, 2005 with attachments CNA 007053-007362 and subsequent attachments

Supplemental Responses to Plaintiff's First Requests for Production of Documents from Defendant in Punitive Damages Phase

Supplemental Responses to United States of America's First Interrogatories to Defendant in Punitive Damages Phase

Objections to Notices of Deposition and Documents Requested Therein

Letter to Richard Pomeroy from Jahna Lindemuth September 28, 2005 and documents listed therein: Continental Insurance Company Annual Statements 1995-2004 with Quarterly Statement for 2005 (with Bates nos.), Continental Casualty Company Annual Statements 1995-2004 with Quarterly Statement for 2005 (with Bates nos.)

· Continental Casualty Company annual Statement to Insurance Departments 1995-2004

CNA Financial Annual Report 1996-2004 Bates no. 013892-015049

CNA 10K Reports 1996-2001 Bates No. 015090-015292

CNA Notice of Annual Meeting 1995 Bates no. 015391-015629, 2004 Bates 015391-015629

NAIC Annual Statement Instructions

A7448

EXHIBIT  B

Page 34 of 60

Continental Insurance Company Annual Statement to New Hampshire Insurance Department 1995-2001

Letter to Richard Pomeroy from Jahna Lindemuth September 22, 2005 with accompanying Declaration of Laurence Boyson

Stipulation Regarding Discovery

Pre-trial Order

Letter from John Neeleman to Ken Roosa May 10, 1999

Letter from Ken Roosa to John Neeleman May 19,1999

Email from Evan Schwab to Richard Pomeroy  September 1, 2005

Email from Richard Pomeroy to Evan Schwab August 31, 2005

Letter from Richard Pomeroy to Evan Schwab and Jahna Lindemuth August 25, 2005

Supplemental Answers to Plaintiff's Interrogatory Nos. 5 through 8 to Defendant in Punitive Damages Phase

Defendant's Answers to United States of America's First Interrogatories to Defendant in Punitive Damages Phase

Defendant's Responses to Plaintiff's First Requests for Production of Documents from Defendant in Punitive Damages Phase

United States's Opposition to Defendants' Motion for Protection Order

Defendant's Amended Answers to United States of America's First Interrogatories to Defendant in Punitive Damages Phase

Continental Casualty Company's Reply on Motion for Protective Order

Defendant's Supplemental Answers to Plaintiff's First Interrogatories to Defendant in Punitive Damages Phase

Motion to Dismiss by CNA, and CCC

Reply in Support of Motion to Dismiss

United States Memorandum in Opposition to Defendant's Motion to Dismiss

**Addendum B**
*Unfair Claim Practices Defined*

*NAIC Model Act:*

Any of the following acts by an insurer, if committed in violation of Section 3, constitutes an unfair claims practice:

A. Knowingly misrepresenting to claimants and insureds relevant facts of policy provisions relating to coverage at issue; [CA, (h)(1); TX (1)]

B. Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies; [CA, (h)(2); TX (2)]

C. Failing to adopt and implement reasonable standards for the prompt investigation and settlement of claims arising under its policies; [CA, (h)(3); TX (3)]

D. Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear; [CA, (h)(5); TX (4)]

E. Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them; [CA (h)(6); TX (5)]

F. Refusing to pay claims without conducting a reasonable investigation; [TX (15)]

G. Failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims; [TX (10)]

H. Attempting to settle or settling claims for less than the amount that a reasonable person would believe the insured or beneficiary was entitled by reference to written or printed advertising material accompanying or made part of the application; [CA, (h)(7); TX (12)]

I. Attempting to settle or settling claims on the basis of an application that was materially altered without notice to, or knowledge or consent of, the insured; [CA, (h)(8)]

J. Making claims payments to an insured or beneficiary without indicating the coverage under which each payment is being made; [CA, (h)(9)]

K. Unreasonably delaying the investigation or payment of claims by requiring both a formal proof of loss form and subsequent verification that would result in duplication of information and verification appearing in the formal proof of loss form; [CA, (h)(11)]

L. Failing in the case of claims denials or offers of compromise settlement to promptly provide a reasonable and accurate explanation of the basis for such actions; [CA, (h)(13); TX (9)]

M. Failing to provide forms necessary to present claims within fifteen calendar days of a request with reasonable explanations regarding their use; [TX (7)]

A7450
EXHIBIT _B_    CNA 015724
Page _36_ of _60_

Attachment D

ALASKA STATUTES
Title 21. Insurance.
Chapter 36. Trade Practices and Frauds.
Sec. 21.36.125 Unfair claim settlement practices.

(a) A person may not commit any of the following acts or practices:

(1) misrepresent facts or policy provisions relating to coverage of an insurance policy;

(2) fail to acknowledge and act promptly upon communications regarding a claim arising under an insurance policy;

(3) fail to adopt and implement reasonable standards for prompt investigation of claims;

(4) refuse to pay a claim without a reasonable investigation of all of the available information and an explanation of the basis for denial of the claim or for an offer of compromise settlement;

(5) fail to affirm or deny coverage of claims within a reasonable time of the completion of proof-of-loss statements;

(6) fail to attempt in good faith to make prompt and equitable settlement of claims in which liability is reasonably clear;

(7) engage in a pattern or practice of compelling insureds to litigate for recovery of amounts due under insurance policies by offering substantially less than the amounts ultimately recovered in actions brought by those insureds;

(8) compel an insured or third-party claimant in a case in which liability is clear to litigate for recovery of an amount due under an insurance policy by offering an amount that does not have an objectively reasonable basis in law and fact and that has not been documented in the insurer's file;

(9) attempt to make an unreasonably low settlement by reference to printed advertising matter accompanying or included in an application;

(10) attempt to settle a claim on the basis of an application that has been altered without the consent of the insured;

(11) make a claims payment without including a statement of the coverage under which the payment is made;

(12) make known to an insured or third-party claimant a policy of appealing from an arbitration award in favor of an insured or third-party claimant for the purpose of compelling the insured or third-party claimant to accept a settlement or compromise less than the amount awarded in

arbitration;

(13) delay investigation or payment of claims by requiring submission of unnecessary or substantially repetitive claims reports and proof-of-loss forms;

(14) fail to promptly settle claims under one portion of a policy for the purpose of influencing settlements under other portions of the policy;

(15) fail to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement; or

(16) offer a form of settlement or pay a judgment in any manner prohibited by AS 21.89.030;

(17) violate a provision contained in AS 21.07.

(b) The provisions of this section do not create or imply a private cause of action for a violation of this section.

(§ 6 ch 163 SLA 1976; am §§ 5, 6 ch 97 SLA 2000; am § 3 ch 99 SLA 2000)

Attachment E

Washington State Unfair Practices Act and Regulations

RCW 48.30.010
Unfair practices in general -- Remedies and penalties.

(1) No person engaged in the business of insurance shall engage in unfair methods of competition or in unfair or deceptive acts or practices in the conduct of such business as such methods, acts, or practices are defined pursuant to subsection (2) of this section.

(2) In addition to such unfair methods and unfair or deceptive acts or practices as are expressly defined and prohibited by this code, the commissioner may from time to time by regulation promulgated pursuant to chapter 34.05, RCW, define other methods of competition and other acts and practices in the conduct of such business reasonably found by the commissioner to be unfair or deceptive after a review of all comments received during the notice and comment rule-making period.

WAC 284-30-330   Specific unfair claims settlement practices defined.   The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance, specifically applicable to the settlement of claims:

(1) Misrepresenting pertinent facts or insurance policy provisions.

(2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

(3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.

(4) Refusing to pay claims without conducting a reasonable investigation.

(5) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed.

(6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear. In particular, this includes an obligation to effectuate prompt payment of property damage claims to innocent third parties in clear liability situations. If two or more insurers are involved, they should arrange to make such payment, leaving to themselves the burden of apportioning it.

(7) Compelling insureds to institute or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings.

(8) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application.

(9) Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which the payments are being made.

(10) Asserting to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration.

(11) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring subsequent submissions which contain substantially the same information.

(12) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy

coverage.

(13) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

(14) Unfairly discriminating against claimants because they are represented by a public adjuster.

(15) Failure to expeditiously honor drafts given in settlement of claims. A failure to honor a draft within three working days of notice of receipt by the payor bank will constitute a violation of this provision. Dishonor of any such draft for valid reasons related to the settlement of the claim will not constitute a violation of this provision.

(16) Failure to adopt and implement reasonable standards for the processing and payment of claims once the obligation to pay has been established. Except as to those instances where the time for payment is governed by statute or rule or is set forth in an applicable contract, procedures which are not designed to deliver a check or draft to the payee in payment of a settled claim within fifteen business days after receipt by the insurer or its attorney of properly executed releases or other settlement documents are not acceptable. Where the insurer is obligated to furnish an appropriate release or settlement document to an insured or claimant, it shall do so within twenty working days after a settlement has been reached.

(17) Delaying appraisals or adding to their cost under insurance policy appraisal provisions through the use of appraisers from outside of the loss area. The use of appraisers from outside the loss area is appropriate only where the unique nature of the loss or a lack of competent local appraisers make the use of out-of-area appraisers necessary.

(18) Failing to make a good faith effort to settle a claim before exercising a contract right to an appraisal.

(19) Negotiating or settling a claim directly with any claimant known to be represented by an attorney without the attorney's knowledge and consent. This does not prohibit routine inquiries to an insured claimant to identify the claimant or to obtain details concerning the claim.

Attachment F

# BBAHC GCL Policies, 1989 Through 1995

| Insurer | Type of Policy | Policy Number | Effective Dates | FTCA Applicability | Underwriter | Premium Charged |
|---------|----------------|---------------|-----------------|--------------------|-------------|-----------------|
| Continental | Commercial General Liability | HMA 9500648 | 3/16/89 through 9/30/89 | Not to non-medical torts | McCavera | $6661.00 |
| Continental | Commercial General Liability | HMA 9500648-1 | 9/30/89 through 9/30/90 | Not to non-medical torts | McCavera | $13,322.00 |
| Continental | Commercial General Liability | HMA 9500648-2 | 9/30/90 through 9/30/91 | Not until 11/05/90, after policy was issued. | Padgitt | $16,000.00 |
| Continental | Commercial General Liability | HMA 9500648-3 | 9/30/91 through 9/30/92 | Yes | Wyatt-Brown | $16,000.00 |
| Continental | Commercial General Liability | HMA 9500648-4 | 9/30/92 through 9/30/93 | Yes | Wyatt-Brown | $16,788.00? |
| Continental | Commercial General Liability | HMA 9500648-5 | 9/30/93 through 9/30/94 | Yes | Wyatt-Brown | $19,346.00 |
| Continental | Commercial General Liability | HMA 9500648-6 | 9/30/94 through 9/30/95 | Yes | Wyatt-Brown | $19,459.00 |

A7455

EXHIBIT _B_

Page _41_ of _60_

# Liability

## Claim Handling Guidelines

### COVERAGE

- A claim file is established in response to every notice of claim or potential claim.

- The policy is confirmed in force for the date of loss. Prior acts, date limitations or extended reporting period coverages are identified, confirmed and documented.

- The person(s) or entity against whom the claim is made is an insured under the policy. Permissive users are verified.

- Policy limits and deductibles/SIRs are reviewed to identify aggregate or single policy limits applicable to occurrence or claim made.

- Coverage interpretation considers loss location, insuring agreements, definitions, policy exclusions and endorsements, etc. Relevant policy language (e.g., liquor liability, contractual liability, personal injury, completed operations, etc.) is analyzed and applied.

- All facts relevant to coverage are identified, researched and documented. Coverage is re-evaluated as new and additional facts are obtained.

- Possible coverage (e.g., excess, primary, concurrent) from other carriers of the insured is investigated, assessed and acted upon as appropriate.

- Communication with the insured is maintained and documented. The potential financial impact to them is explained and they are aware of what they should do/not do while the claim is pending.

- Reservation of rights/non-waiver is tendered as appropriate and in a timely manner based upon jurisdictional requirements.

- The coverage decision is fully supported, documented and made timely.


### LIABILITY/CAUSATION DETERMINATION

- The investigation is timely, objective and well balanced. The claim handler controls and conducts the investigation throughout the life of the claim and does NOT abandon the investigation to counsel. Multiple avenues of investigation are pursued simultaneously.

- The need for outside/field resources and experts is identified early. The claim handler assures resource expertise, gives clear direction, and agrees upon and enforces deadlines. Law enforcement records (police, fire, arson), EMT and state health department records, weather reports, OSHA reports, insured files and records, etc., are obtained as appropriate. Site or accident scene visits are conducted; photos and diagrams are obtained where needed. Medical record release permission/authorizations are obtained from the claimant whenever possible to avoid legal action to obtain such records.

- Witness statements from everyone with first-hand information about the loss (including the insured and claimant) are obtained and summarized.

- Timely initial contact is made with the claimant, the insured, the attorney and physicians as appropriate. The relationships between/among the parties are identified.

- Claims will document key information from the insured (e.g., dates of completion, phases of the project on which the insured worked, names and last known location of persons with first hand information about the accident/ events/injury).

- All relevant documents (e.g., lease agreements, maintenance records, risk transfer agreements, contracts, etc.) are identified, obtained, thoroughly reviewed and considered, and submitted to experts for analysis as appropriate.

- All jurisdictional considerations, applicable laws and codes are identified and assessed.

- Standard of care issues are investigated thoroughly.

**A7456**

EXHIBIT _B_

Page _42_ of _60_

1

CNA 015712

- On excess claims, all necessary information is obtained from the underlying carrier or SIR administrator and effective direction is provided to the underlying carrier.

- The rationale for the liability/causation decision is fully supported and documented.

- An up-to-date plan of action with clearly identified next-steps moves the file toward resolution. The plan should be updated every 90 days at a minimum.

- Appropriate investigations are assigned and conducted when fraud is suspected.

- Index reports are filed timely.

- Underwriting Hazard Notices are filed as early as possible and re-filed as/if new information emerges.

- All documents and claim file information are maintained in the claim file and are not removed from the file or otherwise altered or modified in any way.

- The claim file will not contain any derogatory comments.

## RESERVES

- Information relevant to reserving is actively sought out to allow a reserve to be established as early as possible.

- Initial reserves are established timely and are consistent with ultimate claim payment expectations.

- Reserve revisions in response to new information are timely and accurate.

- Prejudgment interest statutes are identified and considered as part of the reserve, if appropriate.

- The facts and analysis supporting all reserving decisions are documented.

- A final reserve is due on the file as soon as possible, but no later than 6 months.

## DAMAGE DETERMINATION and MANAGEMENT

- The appropriate standard is used to develop damage assessments (e.g., ACV v. RCV, business interruption revenue versus income, subsequent injuries, the number of properties involved, etc.)

- The type and extent of injury are investigated and evaluated timely. The injury evaluation takes into consideration pre-existing conditions.

- Exaggerated injuries and any change in nature or severity of medical condition are identified, documented, and acted upon as appropriate.

- Management of and intervention on type and length of treatment occur as feasible. A case manager is assigned if conditions dictate. Medical management vendors are contracted as appropriate.

- A needs assessment for medical experts, IMEs and second opinions is conducted and documented.

- Damage verification (e.g., medical reports, profit and loss reports, business records, property appraisals, average repair costs, wage documentation, economist reports, etc.) is requested and documented in a timely manner.

- When a fatality is involved, dependency and survivor assessments are conducted and documented. Damages are measured within applicable Wrongful Death/Survivor statutes.

- The potential for special damages is identified.

- Applicable caps or other limitations on damages are identified and considered.

**A7457**

CNA 015713

206-569-3310    P.5

## EVALUATION/NEGOTIATION/SETTLEMENT

- All liability, standard of care, causation and damage facts are considered in the evaluation.

- The liability of third parties is considered in the evaluation; co-defendants and their respective liability and financial viability or insurance limits are identified and factored into the evaluation.

- Settlement value is based upon a complete analysis of the facts, to include theory of liability, defenses, applicable law, contractual relationships, duties owed, obligations of other parties to pay, etc.

- If in suit, evaluation includes potential verdict value, trial date, jurisdiction (conservative or liberal) and plaintiff counsel.

- A negotiation plan is developed and documented.

- Claims to be settled will be resolved as early as possible; however, evaluations will be revised as/if new information emerges.

- A case without merit will proceed to trial in a timely and appropriate manner.

- Insured consent to settle (medical malpractice and professional liability) is obtained as required by the policy, and prior to settlement.   Conditional consent is not acceptable.

- Settlement offers are proper and timely. Demands are responded to promptly.

- Settlement type is proper (e.g., lump sum, structure, etc.).

- Settlement properly considers other relief (e.g., SIR, contribution, apportionment, etc.).

- ADR is utilized as appropriate and as permitted by law, but not as a substitute for direct negotiations.

- The claim is resolved in a timely manner.  A closing letter is sent to the insured.

- Claim resolution includes the proper use of releases, court approvals, and state and federal closing forms and filings (e.g., National Practitioner Data Bank)

## LITIGATION MANAGEMENT

- Attorney selection and referral reflects a complete assessment of case facts and demonstrates use of staff counsel, except where customer requirements dictate otherwise.

- Experienced *trial* counsel, familiar with the nuances of the jurisdiction, and selected from an approved panel firm is used. Counsel will provide early recommendations to settle or try.

- The claim handler adequately prepares the claim file for counsel.   The claim is NOT abandoned to counsel by the claim handler.  Tasks are properly divided between claim handler and counsel.

- A Litigation Plan and a Litigation Budget are documented and followed, and reflect a collaborative process between claim handler and counsel.  The insured will be involved as appropriate.   The level of detail in the plan and budget will correspond to the value and complexity of the case.

- The Litigation Plan includes an agreement as to who performs required tasks, an identification of critical facts and issues, a clear set of desired goals and outcomes, and an organized discovery outline.

- The Litigation Budget includes an estimate of costs, and an agreement that no unplanned activity will occur without a documented amendment to the budget detailing why the change is required.

- Discovery is focused on facts relevant to early evaluation and resolution.

- Owed cases are settled by making an early fair offer before incurring significant litigation costs.

- ADR/mediation/arbitration is utilized as appropriate and as permitted by law.

- A case to be tried will be fully developed and prepared in a timely and efficient manner.

**A7458**

3

EXHIBIT B
Page 44 of 60

CNA 015714

- Appeal strategy is fully reasoned and documented.

- Attorney bills are reviewed and the fee structured within approved guidelines. Receipts or invoices document the expenses incurred. Vendor and attorney bills are paid timely.

## RECOVERY/CONTRIBUTION

- Recovery potential (e.g., subrogation, indemnity/contribution, salvage, deductible/SIR, etc.) is identified and investigated, and the negligence theory is documented.

- Contracts, leases and hold harmless agreements are obtained and analyzed for applicability.

- Cost benefit of recovery pursuit is analyzed and documented.

- Recovery pursuit is timely, meeting statutory requirements

- Evidence is identified and preserved/protected.

- Third parties are identified and placed on notice in a timely manner.

- Experts are used where appropriate.

- Reinsurance is identified and appropriate notice given to the reinsurance specialist.

**A7459**

EXHIBIT _B_
Page _45_ of _60_

4

CNA 015715

*CNA Pro*

*Claim Handling Best Practices*

**Introduction**

CNA Pro's claim goals include the efficient handling of claims, the provision of superior claim service for our customers and compliance with all applicable claim handling regulations. With these objectives in mind, the following Best Practices have been developed to provide general guidance for all CNA Pro Claim Professionals. Each CNA Pro Claim Handling Unit should consider the specific claims handling and service needs of their policyholders and their relevant coverage terms and should adopt such further best practices or guidelines as is deemed necessary for a particular business.

The following guidelines track the development of a claim from initial set up to resolution. Of course, the circumstances of particular claims will differ and certain of these stages may not be applicable to a given claim depending upon when and how it is resolved.

**Claims Handling Best Practices**

*Establishment of Claim Files*

Assuring proper establishment of policyholder data and claim particulars in our processing systems is necessary to assure prompt handling of claims for our policyholders.

Best Practices should include:

◻ All claim files established for potential claim notices and actual claims should be technically completed in our claim systems within three working days of receipt by the claim professional of the assignment from his/her manager or designee.

◻ All claim data including occurrence, loss and notice dates, policy numbers, policy limits, deductibles, policy periods, insured information, claimant identification, cause of loss coding (LENS coding), suit screens, and claim coding should be accurately entered into the claim systems for each claim.

◻ All financial transactions, including reserving for indemnity and expense, payments and recoveries should be timely and accurately entered into the appropriate claim systems.

*Communications*

It is important to contact our insureds and claimants, when indicated, in a timely manner. This includes timely returning of telephone messages, responses to letters, explanation of coverage issues and/or assignment of counsel.

**A7460**

Best Practice should include:

EXHIBIT _B_
Page _46_ of _60_

CNA 015716

- Claim professionals should attempt to contact the insured within two working days after their receipt of an initial assignment provided through normal claim unit processing of first notice of claims.

- An acknowledgement letter should be sent to the insured within a reasonable time frame after receipt of the first notice of claim. The acknowledgement letter should identify the CNA underwriting company issuing the policy of insurance, the policy period, policy limits, applicable deductibles/SIR, assigned claim number and claim professional's contact information.

- All other communications relating to a claim should be responded to in a timely and appropriate manner or as more specifically required by law.

### Coverage Determination

CNA Pro is committed to analyzing coverage promptly upon receipt of claims and communicating the relevant coverage decision to policyholders. With that principle in mind, CNA Pro claims professionals should strive to inform insureds of acceptance, rejection or a reservation of rights on coverage issues in a clear and timely manner. When extensive investigation will be required to determine the existence or non-existence of coverage, insureds should be notified of the nature of the coverage issues involved as well as the investigation necessary to resolve such issues.

Best Practices should include:

- Claim professionals should provide a timely analysis of the coverage afforded based upon the available facts, the pleadings involved in the case (if any) and the applicable insurance coverage terms.

- Coverage should be documented in the claim file.

- Coverage positions should be communicated to the insured as soon as practicable.

- All coverage letters should clearly identify the CNA underwriting company issuing the policy of insurance.

- Where applicable, the insured should be notified, in writing, of potential excess exposures beyond the limits of the insurance policy.

- Reservation of rights letters should be sent promptly and clearly identify the rights that are being reserved, the basis for the reservation and the rights of the insured arising from the reservation.

- Denials of coverage should be sent promptly and clearly set forth the basis for the denial. If required by law, the insured should be informed of entities to which a dispute, relating to the coverage position taken, may be reported. The claim file should reflect the basis for the denial.

- Coverage denials should be approved by the designated Claims Department Management.

EXHIBIT __B__
Page __47__ of __60__

**A7461**    CNA 015717

OCT. 26. 2005 11:18AM    CNA    NO. 334    P. 3    206-568-3310    P. 8

□ The insured should be notified of their financial responsibility to pay the deductible or self-insured retention (SIR). The claim professional is responsible for verifying satisfaction of the deductible or SIR. Any failure of the insured to pay the deductible or SIR pursuant to the policy terms should be brought to the attention of Claims Department Management. Claim professionals should not enter into deductible waivers or periodic payment plans without prior management approval.

## File Documentation

The claim file should accurately reflect the status of a claim, and all material actions taken with respect to it. The dates of significant events should be recorded in the claim file. The file should record all financial transactions, coverage analysis, and the investigation, analysis and evaluation of liability and damages. With these principles in mind, the following Best Practices should be followed:

□ Claim files should accurately document the dates of file opening and closure. Files should also reflect diary and review dates.

□ Claim files should accurately document financial transactions, including the dates and amounts of case estimates and reserves, deductible billings and payment, expense payments, settlement/indemnity payments and subrogation pursuit and recovery.

□ Claim files should record the dates of conversations with the claimant, insured, counsel, consultants or witnesses as to the claim and the substance of those conversations. All documents received, generated or forwarded as to the claim should also be included in the claims file.

□ Claim files should be maintained in an orderly fashion and documents should be in reverse chronological order.

## Investigation

Because of the complexity of certain issues, some claims investigations may require months or even years to complete, while others may be completed in a relatively short time. The access to records, cooperation of all parties and outcomes of other factors outside our control can speed the process or slow it down. Claim professionals should strive to move the investigation forward in as timely a manner as the individual claim situation permits.

CNA 015718

Best Practices for investigation include:

□ Claim professionals should obtain background information as to the basis for the claim from insured and/or claimant interviews or correspondence. This information should include the theory of liability (including duty owed, duty breached, causation and the damages sought by the claimant) and verification and proof of liability and damages. The issues raised by the claim should be promptly determined with the goal of achieving an early resolution of the claim.

□ The claim professional should determine what information is required to evaluate the issues on a timely basis. The necessary documentation should then be requested for review.

EXHIBIT __B__
Page __48__ of __60__

A7462

❏   As necessary, prompt expert evaluation or legal consultation should be conducted.

*Evaluation and Resolution*

Once coverage has been determined and the claim has been adequately investigated, a timely evaluation should be made as to liability, causation and damages. Claim professionals should have as their goal the prompt, fair and reasonable resolution of claims in which liability is reasonably clear, consent has been provided by the insured, unless not applicable, and damages can reasonably be substantiated. In such cases, appropriate steps should be implemented towards resolution, consistent with CNA Pro's obligation to its policyholder.

Best Practices include:

❏   The claim professional should analyze liability and damages and develop an appropriate resolution strategy for the claim. The resolution strategy should be developed in conjunction with the insured and, as may be applicable, defense counsel. The decision to settle or reject the claim should also be promptly communicated.

*Case Reserving*

Accurate and timely case reserving is required by insurance regulations and is necessary for the effective assessment of the financial performance of a book of business. Case reserves are not intended to be admissions of coverage or exposure on any particular claim. They represent the claims professional's estimate of the probable ultimate outcome based upon the facts known at the time of the setting of the case reserve.

Best Practices include:

❏   Claim professionals should record all case reserves for indemnity and expenses in the claim system.

❏   Reserves should be determined based upon the facts, investigation and evaluation of the claim on a "Probable Ultimate Outcome" basis. This evaluation should be documented in the claim file.

❏   Initial "signal" reserves have been identified by CNA Pro claims areas and should be used as follows:

  ❏   $1   Full Denial/No Coverage  (All lines except for A&E and Real Estate)

  ❏   $2   Claim made, but evaluated for expected resolution within the policy deductible/SIR   (All lines)

  ❏   $3   Notice of potential claim or incident report  (All lines)

CNA 015719

  ❏   $3/$1   Notice of potential claim with pre-claim assistance in A&E which includes a $3 case estimate on suffix 011 and a $1 case estimate on suffix 021

**A7463**

  ❏   $8   Claim resolved, file open pending deductible recovery (Lawyers)

❑  **$12**    Case resolved, file open pending final billing only  (Lawyers)

❑  **$100**    Full Denial/No Coverage (A&E and Real Estate)

## Litigation Management

CNA Pro is committed to achieving early, successful disposition of all litigated cases for the benefit of our policyholders.  CNA Pro has established Defense Counsel Guidelines in order to achieve this goal.

Best Practices include:

❑  Claim professionals should be familiar with the CNA Pro approved Preferred Counsel panel and assist such counsel in complying with the Defense Counsel Guidelines.

❑  Counsel assignments should be made to one of the CNA Pro Preferred Counsel in all cases where the company has the right and duty to control the defense of the claim and in situations where monitoring or coverage counsel are being hired.

❑  Selection of Non-Preferred counsel where Preferred Counsel is available shall be specifically approved by the designated Claims Department Management.

❑  Resolution Plans, outlined in Addendum A, drafted by defense counsel and agreed upon by the insured and claim professional, should set forth specific strategies for moving the case towards resolution efficiently and economically, consistent with defense counsel's professional judgement.

## Professionalism

Claim professionals should demonstrate professionalism in their relationships with policyholders, third parties and vendors.

Best Practices include:

❑  Familiarity and commitment to state regulatory requirements pertaining to the good faith handling of claims.  See Addendum B for reference and California regulations attached thereto.

❑  Invoices from outside vendors and law firms should be reviewed, approved and paid on a timely basis.  Questions or disputes should be handled quickly and final resolution documented in the claim file.

❑  Claim professionals should exhibit integrity and objectivity in all business relationships.  Claim professionals should not accept a gift, including meals and entertainment, from a law firm or outside vendor with a value in excess of $25 without prior approval from their Claim Department Management.  Management should exercise discretion as to the appropriateness, frequency and duration of entertainment.

## Management Reporting

**A7464**

EXHIBIT  B

Page 50  of 60

CNA 015720

Certain claim handling situations suggest or necessitate the additional authority from or interaction with CNA Pro management and/or other CNA areas.

Best Practices for these situations include:

□  Policy Limit Demand Cases

Claim professionals should report all policy limit demands to their immediate supervisors/managers for input and oversight. The immediate supervisor/manager is responsible for escalating any significant issues or occurrences to the Business Unit's Claim Officer.

□  Actions Against a CNA Company

Claim Professionals should report any threat or filing of a legal action alleging "bad faith" against CNA or a CNA underwriting company in the handling of a claim to their immediate supervisor/manager who is responsible for advising the Business Unit's Claim Officer of the occurrence and issues involved. The matter should in turn be reported to CNA Pro's Director of Quality Assurance and CNA's Claim Counsel Division.

□  Strategic Claim Reporting

All claims falling within the definition of "Strategic Claim" should be reported to CNA Pro's Director of Quality Assurance and to CNA's Claim Counsel.

The following are considered to be Strategic Claims:

—  Any claim with exposure of more than $5 million (this includes claims that would have a net exposure after reinsurance recovery of less than $5 million).

—  Claims involving new liability trends, e.g., e-commerce, tobacco.

—  Claims with the potential to set either favorable or unfavorable legal precedent for CNA or its insureds.

—  Claims involving actual or potential media exposure for CNA.

□  Reinsurance Reporting

Claim Professionals are responsible for familiarity with and satisfaction of all reinsurance reporting requirements.

**Addendum A**
**Resolution Plan Documents**

**A7465**

EXHIBIT _B_
Page _51_ of _loo_

CNA 015721

CNA Pro is committed to achieving early, successful disposition of all litigated claims. In every litigated claim, defense counsel will draft a Resolution Plan that will be agreed upon by the claims professional and the insured. The Resolution Plan will set forth a specific strategy, with the necessary steps to be taken for moving the case to resolution as quickly as possible, consistent with counsel's duty of zealous representation of the insured. The Resolution Plan will be updated as strategy changes over the course of the litigation.

Overview of Resolution Plans

All CNA Pro Preferred Counsel and claim professionals are responsible for the creation, update and implementation of a Resolution Plan on each claim.

- The Resolution Plan is a document that sets forth the agreement among counsel, the claim professional and the insured for moving the case towards resolution. The Plan shall be the product of consensus among all parties to the tripartite relationship.

- The Plan should set forth an effective resolution strategy following a careful, early analysis of the claim, applicable law and other factors. An effective resolution strategy is one that will serve the interests of our insureds in resolving claims quickly and favorably.

Creation of the Resolution Plan

- The Resolution Plans are to be written documents and are to be completed as soon as practicable and in no event, later than 90 days after assignment of the claim to counsel unless prior approval of the claim unit's management is provided and documented. Counsel should draft the Resolution Plan before significant discovery is undertaken.

- Anytime there is a significant change in strategy for reaching early resolution, a new Resolution Plan shall be developed. It is the claims professionals' responsibility to ensure that this is completed on a timely basis.

Format and Content of the Resolution Plan

Resolution Plans should conform to the following format:

EXHIBIT  B
Page 52 of 60

**Resolution Plan**

*as of* _____
*(month, day and year)*

**A7466**

**Insured:**      Identify name of all insureds being rendered a defense by counsel in the action.

**Plaintiff(s):**   Identify name and relationship of all plaintiff(s) in the action

CNA 015722

**Claim No.:**    Claim number of the CNA claim file(s)

**Date of Assignment to Firm:**    Date firm received the defense assignment from CNA

**Objective:**
This section should briefly describe the proposed method of resolution, which usually will be either a dispositive motion, alternative dispute resolution method and/or settlement process.

**Plan:**
This section should describe the strategy for achieving the stated resolution objective. For example, if a motion for summary judgment is the objective, this section should identify the discovery needed, if any, to support the motion and counsel's opinion as to the merits and likelihood of success in eliminating all or part of the allegations. If an early mediation is the objective, this section should describe the exchange of information that should occur before the mediation session and how that exchange is to be implemented.

**Time Frame for Reaching Objective:**
This section should project the amount of time absolutely necessary to reach the objective. Note that the objective is the decision point, not the successful conclusion of the dispute necessarily. For a motion for summary judgment, this means the date for getting the motion on file, not when it may be decided. For mediation, this means the date of the first mediation session.

**A7467**

EXHIBIT __B__
Page __53__ of __60__

CNA 015723

**Addendum B**
*Unfair Claim Practices Defined*

**NAIC Model Act:**

Any of the following acts by an insurer, if committed in violation of Section 3, constitutes an unfair claims practice:

A. Knowingly misrepresenting to claimants and insureds relevant facts of policy provisions relating to coverage at issue; [CA, (h)(1); TX (1)]

B. Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies; [CA, (h)(2); TX (2)]

C. Failing to adopt and implement reasonable standards for the prompt investigation and settlement of claims arising under its policies; [CA, (h)(3); TX (3)]

D. Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear; [CA, (h)(5); TX (4)]

E. Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them; [CA (h)(6); TX (5)]

F. Refusing to pay claims without conducting a reasonable investigation; [TX (15)]

G. Failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims; [TX (10)]

H. Attempting to settle or settling claims for less than the amount that a reasonable person would believe the insured or beneficiary was entitled by reference to written or printed advertising material accompanying or made part of the application; [CA, (h)(7); TX (12)]

I. Attempting to settle or settling claims on the basis of an application that was materially altered without notice to, or knowledge or consent of, the insured; [CA, (h)(8)]

J. Making claims payments to an insured or beneficiary without indicating the coverage under which each payment is being made; [CA, (h)(9)]

K. Unreasonably delaying the investigation or payment of claims by requiring both a formal proof of loss form and subsequent verification that would result in duplication of information and verification appearing in the formal proof of loss form; [CA, (h)(11)]

L. Failing in the case of claims denials or offers of compromise settlement to promptly provide a reasonable and accurate explanation of the basis for such actions; [CA, (h)(13); TX (9)]

M. Failing to provide forms necessary to present claims within fifteen calendar days of a request with reasonable explanations regarding their use; [TX (7)]

EXHIBIT __B__
Page __54__ of __60__

**A7468**

CNA 015724

N. Failing to adopt and implement reasonable standards to assure that the repairs of a repairer owned by or required to be used by the insurer are performed in a workmanlike manner.

*California Insurance Code:*

The following additional requirements are included in specific California requirements:

- Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured;

- Making known to insureds or claimants a practice of the insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration.

- Failing to settle claims promptly, where liability has become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage; [TX(8)]

- Directly advising a claimant not to obtain the services of an attorney;

- Misleading a claimant as to the applicable statute of limitations;

- Delaying the payment or provision of hospital, medical, or surgical benefits for services provided with respect to acquired immune deficiency syndrome or AIDS-related complex for more than 60 days after the insurer has received a claim for those benefits, where the delay in claim payment is for the purpose of investigating whether the condition preexisted the coverage. However, this 60-day period shall not include any time during which the insurer is awaiting a response for relevant medical information from a health care provider.

*These guidelines will be reviewed and updated, as necessary, annually in line with certification training of claim adjusters by September 1 each year.*

*Texas Insurance Code:*

The following additional requirements are included in specific Texas requirements:

- Failure of any insurer to maintain a complete record of all complaints, which it has received during the preceding three years, or since the date of its last examination by the commissioner of insurance, whichever time is shorter.

- Except as may be specifically provided in the policy, to refuse, fail, or unreasonably delay offer of settlement under applicable first-party coverage on the basis that other coverage may be available or third parties are responsible in law for damages suffered

- Undertaking to enforce a full and final release from a policyholder when, in fact, only a partial payment has been made.

- Failing to respond promptly to a request by a claimant for personal contact about or review of the claim

EXHIBIT __B__

Page __55__ of __60__

**A7469**

CNA 015725

- Requiring a claimant, as a condition of settling a claim, to produce the claimant's federal income tax returns for examination or investigation by the insurer unless the claimant is ordered to produce those tax returns by a court of competent jurisdiction, the claim involves a fire loss, or the claim involves a loss of profits or income.

**A7470**

CNA 015726

**Addendum C**
*CNA Complaint Handling Guide*

**Purpose:** To provide CNA Pro claim professionals with guidance for the handling of consumer complaints and the process to follow in recording, responding and tracking such complaints pursuant to company guidelines and applicable statutes.

Our goal is to provide our customers with a quality product and timely, courteous and efficient service. By treating our customers fairly, it is often possible to change a dissatisfied customer to a satisfied one.

**Definitions:**

Complaint: is any correspondence or telephone message expressing dissatisfaction with the company, including an agent of the company. Complaints can be brought by policyholders, their representatives or attorneys, claimants, their representatives or attorneys, state insurance departments, competitors, news media, rating bureaus, consumer protection agencies, state's attorney's offices and other governmental agencies.

Customer: is the policyholder or an individual representing the policyholder as an employee or attorney.

Agent: is one of our business unit's agents, either the Program Administrator or an approved Open Brokerage.

Home Office Complaint: is a complaint addressed to the Home Office.

Executive Complaint: is a complaint addressed to the President, Chairman or an executive officer of the company.

State Insurance Department Complaint: is a complaint initiated by a state insurance department.

**Objectives:**

⇒ Complaints should be acted upon promptly

⇒ Complaints should receive a thorough impartial review of the circumstances

⇒ Management should be involved in the evaluation process as necessary

⇒ Useful reports should be prepared and maintained relating to complaints received

⇒ Action should be taken, when appropriate, to prevent similar future complaints

**Process:**

For the following types of complaints, immediate escalation to the Business Unit Claim Officer is required prior to any attempt to respond.

♦ State insurance department complaints

♦ Executive or Home Office complaints

♦ Complaints indicating a copy has been directed to any of the above parties.

**A7471**

EXHIBIT _B_
Page _57_ of _60_

CNA 015727

**Corporate Consumer Services Record of Complaint Form:**

The receipt of any complaint through the Corporate Consumer Services area will be logged into a complaint register maintained by CNA Pro's Consumer Services officer and referred to the Claims Officer of the responsible Business Unit, or a designated manager in their absence, for assignment or handling.

The complaints will be reviewed and responded to on a priority basis as indicated in the Corporate Complaint Handling Guide.

**Other Complaint Handling:**

Customer Complaint letters received in the general handling of claim matters should be responded to, in writing, within one week from receipt. Initial complaints should be responded to by the claim professional assigned to the claim in a timely manner. All complaints should be handled on an objective and fair basis. A secondary complaint should be responded to by the claim professional with a copy to his/her immediate supervisor/manager. A third complaint should be handled by the manager and copied to the Business Unit's Claim Officer.

If the complaint relates to coverage issues and threatens suit against the company or includes actual litigation, the matter should be brought to the immediate attention of the supervisor/manager to which you report. The manager should advise the Business Unit's Claim Officer immediately.

Telephone complaints from customers should be handled in a similar manner based upon the judgment of the individual receiving the complaint. When in doubt as to the seriousness of a complaint, discussion with management is recommended.

**Complaint tracking:**

Each claim unit should designate an appropriate individual to maintain a tracking log of all Consumer Complaints received through the Corporate or CNA Pro Consumer Services area. Each complaint should be logged in upon receipt and logged out upon completion of the response. A date and brief explanation of the type of complaint and resolution should be provided in the tracking log. Any complaint, which has not been logged out within 72 hours of log-in should be reported to the Claim Officer.

The Claim Officer should review the log at regular intervals during the year to monitor responses, issues and potential trends.

**A7472**

EXHIBIT B
Page 58 of 60

CNA 015728

**WAC 284-43-200 Network adequacy.** (1) A health carrier shall maintain each plan network in a manner that is sufficient in numbers and types of providers and facilities to assure that all health plan services to covered persons will be accessible without unreasonable delay. Each covered person shall have adequate choice among each type of health care provider, including those types of providers who must be included in the network under WAC 284-43-205. In the case of emergency services, covered persons shall have access twenty-four hours per day, seven days per week. The carrier's service area shall not be created in a manner designed to discriminate against persons because of age, sex, family structure, ethnicity, race, health condition, employment status, or socioeconomic status. Each carrier shall ensure that its networks will meet these requirements by the end of the first year of initial operation of the network and at all times thereafter.

(2) Sufficiency and adequacy of choice may be established by the carrier with reference to any reasonable criteria used by the carrier, including but not limited to: Provider-covered person ratios by specialty, primary care provider-covered person ratios, geographic accessibility, waiting times for appointments with participating providers, hours of operation, and the volume of technological and specialty services available to serve the needs of covered persons requiring technologically advanced or specialty care. Evidence of carrier compliance with network adequacy standards that are substantially similar to those standards established by state agency health care purchasers (e.g., the state health care authority and the department of social and health services) and by private managed care accreditation organizations may be used to demonstrate sufficiency. At a minimum, a carrier will be held accountable for meeting those standards described under WAC 284-43-220.

(3) In any case where the health carrier has an absence of or an insufficient number or type of participating providers or facilities to provide a particular covered health care service, the carrier shall ensure through referral by the primary care provider or otherwise that the covered person obtains the covered service from a provider or facility within reasonable proximity of the covered person at no greater cost to the covered person than if the service were obtained from network providers and facilities, or shall make other arrangements acceptable to the commissioner.

(4) The health carrier shall establish and maintain adequate arrangements to ensure reasonable proximity of network providers and facilities to the business or personal residence of covered persons. Health carriers shall make reasonable efforts to include providers and facilities in networks in a manner that limits the amount of travel required to obtain covered benefits. For example, a carrier should not require travel of thirty miles or more when a provider who meets carrier standards is available for inclusion in the network and practices within five miles of enrollees. In determining whether a health carrier has complied with this provision, the commissioner will give due consideration to the relative availability of health care providers or facilities in the service area under consideration and to the standards established by state agency health care purchasers. Relative availability includes the willingness of providers or facilities in the service area to contract with the carrier under reasonable terms and conditions.

(5) A health carrier shall monitor, on an ongoing basis, the ability and clinical capacity of its network providers and facilities to furnish health plan services to covered persons.

(6) Beginning July 1, 2000, the health carrier shall disclose to covered persons that limitations or restrictions on access to participating providers and facilities may arise from the health service

**A7473**

referral and authorization practices of participating providers and facilities. The carrier shall provide instructions to covered persons as to how they can receive details about such practices from their primary care provider or through other formally established processes. For example, a covered person relying on such instructions or processes could discover if the choice of a particular primary care provider would result in the covered person's inability to obtain a referral to certain other participating providers.

(7) To provide adequate choice to covered persons who are American Indians, each health carrier shall maintain arrangements that ensure that American Indians who are covered persons have access to Indian health care services and facilities that are part of the Indian health system. Carriers shall ensure that such covered persons may obtain covered services from the Indian health system at no greater cost to the covered person than if the service were obtained from network providers and facilities. Carriers are not responsible for credentialing providers and facilities that are part of the Indian health system. Nothing in this subsection prohibits a carrier from limiting coverage to those health services that meet carrier standards for medical necessity, care management, and claims administration or from limiting payment to that amount payable if the health service were obtained from a network provider or facility.

[Statutory Authority: RCW 48.02.060, 48.18.120, 48.20.450, 48.20.460, 48.30.010, 48.44.050, 48.46.100, 48.46.200, 48.43.505, 48.43.510, 48.43.515, 48.43.520, 48.43.525, 48.43.530, 48.43.535. 01-03-033 (Matter No. R 2000-02), § 284-43-200, filed 1/9/01, effective 7/1/01. Statutory Authority: RCW 48.02.060, 48.18.120, 48.20.450, 48.20.460, 48.30.010, 48.44.050, 48.46.030, 48.46.200. 00-04-034 (Matter No. R 99-2), § 284-43-200, filed 1/24/00, effective 3/1/00. Statutory Authority: RCW 48.02.060, 48.20.450, 48.20.460, 48.30.010, 48.44.020, 48.44.050, 48.44.080, 48.46.030, 48.46.060(2), 48.46.200 and 48.46.243. 98-04-005 (Matter No. R 97-3), § 284-43-200, filed 1/22/98, effective 2/22/98.]