DEBORAH M. SMITH
Acting United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov

RICHARD R. STONE, SR.
Trial Attorney
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Phone: (202) 616-4291
Fax: (202) 616-5200
E-mail: richard.stone@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>THE CONTINENTAL CASUALTY COMPANY, dba THE CONTINENTAL INSURANCE COMPANY,<br><br>    Defendant. | Case No. 3:98-cv-285-JWS<br><br>**UNITED STATES' MOTION TO EXCLUDE "EXPERT" TESTIMONY ON THE DECIDED LAW AND FACTS OF THE CASE** |

## INTRODUCTION

Continental has served three purported "expert" reports on the United States. The opinions

stated in those reports and, further explored by deposition, attack the law and the facts already

decided in this case. On July 12, 2005, this Court reaffirmed its September 18, 2001, ruling that, as a matter of law, Continental's conduct in rejecting the United States' tenders to defend and indemnify pursuant to an applicable insurance policy constituted bad faith. Dkt. 166.   This Court also ruled that "Based on the facts of this case a jury could find that Continental's [conduct] was outrageous or done with reckless indifference," and, thus, could award punitive damages. Id. at 17. Nevertheless, subsequent to this Court's unambiguous decisions, Continental served three purported "expert" reports addressing the identical issues resolved by those decisions:  (1) whether or not, as a matter of law, Continental's conduct constituted bad faith; and (2)  whether or not, as a matter of law, a punitive damages case could be presented to a jury. Moreover, all of the conclusions formed in the reports are directly contrary to this Court's rulings.

   Continental cannot be allowed to offer to the jury expert testimony, not only covering issues already decided by this Court, but also containing opinions in direct conflict with the established law and facts of this case.  It is clear from the reports and deposition testimony that these witnesses intend to testify that this Court's prior rulings are wrong and the witnesses intend to petition the jury to disregard them.  There is no legal precedent in favor of allowing a party to present witnesses under the mantle of expert for the sole purpose of attacking before the jury adverse court rulings that establish the law and facts of the case. All three purported experts were hired to opine only about purely legal matters that are inappropriate subjects for expert testimony.  Consequently, Continental's three experts' opinions should be excluded and their authors precluded from testifying at trial.

**PROCEDURAL BACKGROUND**

On June 22, 2001, the United States moved for summary judgment on the issues of whether the United States was an implied additional insured and whether Continental's conduct constituted bad faith. Dkt No. 30. On the same date, Continental opposed the United States' motion and filed its own motion for summary judgment. Dkt. No. 31. On September 18, 2001, this Court denied Continental's motion entirely, and granted in part and denied in part the United States' motion, finding that "The United States is entitled to partial summary judgment as a matter of law regarding its implied insured and bad faith claims." Dkt. 61 at 18.

On March 28, 2003, this Court reversed the September 18, 2001, decision and entered summary judgment in favor of Continental. Dkt 115; 116. On October 20, 2004, in an unpublished opinion, the Ninth Circuit overturned this Court's March 28, 2003, decision, and ruled that "the United States is properly characterized as an implied beneficiary of Bristol Bay's insurance policy, and is therefore entitled to pursue its claim against Continental." Dkt 147 at 2.

On March 17, 2005, Continental moved to dismiss for failure to state a claim. Dkt. 151. Later, Continental again moved for partial summary judgment on the issues of bad faith and punitive damages. Dkt. 155. Next , the United States cross-moved for summary judgment on the issues of bad faith and punitive damages. Dkt. 160.

On July 12, 2005, this Court denied Continental's motions to dismiss and for partial summary judgment on the issues of bad faith and punitive damages, granted the United States' cross-motion for summary judgment on the issues of liability and bad faith, and ordered the parties to confer and suggest trial dates to litigate the remaining issues. Dkt. 166. This Court held that the Ninth Circuit's October 20, 2004 decision restored as "the law of the case" this

Court's September 18, 2001, ruling that "(1) the United States was an implied additional insured; and [that] (2) Continental acted in bad faith."[1] Dkt. 166 at 11. Regarding the bad faith issue, this Court explicitly and unambiguously rejected Continental's argument that, under Alaska law, "because the issue of whether the United States was an implied additional insured is 'fairly debatable,' as a matter of law it could not have acted in bad faith." *Id.* at 13-17. Regarding punitive damages, "for the same reasons [that the Court rejected] Continental's bad faith argument," this Court also explicitly and unambiguously rejected Continental's argument that "the denial of coverage was not outrageous as a matter of law." *Id.* at 17. Finally, this Court found that, "[b]ased on the facts of this case, a jury could find that Continental's [conduct] was outrageous or done with reckless indifference," and, thus, also could choose to award punitive damages. *Id.* Continental's proffered experts, according to their reports and deposition testimony, intended to opine to the jury that this Court's and the Ninth Circuit's decisions on these matters are incorrectly decided.

1. DOUGLAS J. SERDAHELY'S REPORT

On December 22, 2005, Continental served a report authored by former Alaska Superior Court Judge Douglas J. Serdahely [hereinafter "Serdahely"]. Ex. 1. According to Serdahely, his report "render[s] expert legal opinions on (1) whether Continental had, under Alaska law, engaged in bad faith conduct in denying and responding to the United States of America's [] tenders of defense . . . , and (2) whether in doing so, such conduct gave rise to any punitive

---

[1] The Court "treat[ed] [Continental's] motion for summary judgment at docket 155 as a motion for reconsideration of the orders at dockets 61 and 87 and the [United States'] cross-motion at docket 160 as an opposition to reconsideration." Dkt. 166 at 11.

liability." (Emphasis added) Ex. 1, at 3.

Regarding "whether Continental had . . . engaged in bad faith," Serdahely interpreted and analyzed "[t]he standard in Alaska for establishing 'bad faith' liability," *i.e., Hillman, et al. v. Nationwide Mutual Fire Insurance Company*, 855 P.2d 1321 (Alaska 1993) (*"Hillman II"*) and the "fairly debatable" concept discussed in that case, 855 P.2d at 1324. Serdahely Report, at 4. Serdahely then concluded that he "respectfully disagreed" with this Court's July 12, 2005 finding that "Continental's reliance on the fairly debatable legal defense is merely a '*post hoc rationale.*'" *Id.* at 20 (*quoting* Dkt. 166 at 16). Serdahely also "respectfully disagree[d]" with the Court's September 18, 2001, ruling that "Continental may have acted in bad faith by not defending the USA under a reservation of rights." Ex. 1 at 21. Instead, Serdahely concluded that, "[i]n my view, Continental . . . did not act in bad faith." *Id.*

Regarding whether Continental's "conduct gave rise to any punitive liability," Serdahely again analyzed and interpreted what he believed to be the "Applicable Standard of <u>Law</u>." (Emphasis added) *Id.* at 25. He then concluded that "I find nothing about the conduct of Continental or its coverage counsel that qualifies as outrageous, malicious or reckless conduct, which could be established by clear and convincing proof, so as to give rise to punitive liability. . . . Accordingly, it is my opinion that <u>the USA's punitive damages claims should, as a matter of law, be rejected by the Court and not be submitted to the jury</u>." *(*Emphasis added) *Id.* at 27.

2. <u>ROBERT N. WAINSCOTT'S REPORT</u>

On December 22, 2005, Continental served an "Expert Witness Report of Robert N. Wainscott" [Hereinafter "Wainscott"], containing Wainscott's "opinion on whether or not Continental's actions warrant a finding of bad faith and an award of punitive damages." Ex. 2 at

2. Like Serdahely, Wainscott "respectfully disagree[d] with the Federal Court's finding of bad faith." Ex. 2 at 18. When asked at his deposition if he was "bound" by this Court's bad faith finding, Wainscott answered "[t]he definition of 'bound,' if you're talking about the fact that - - is that the law of this case as it stands right now, as we sit here? Yes, it is. Am I bound by it to say that I think he was right? Well I hope not, because I don't think he was right." Ex. 3, Wainscott Dep., at p. 9, lns. 10-25; p. 10, lns. 1-8. Then, when asked if he thought he would "be permitted to testify to the jury in a manner contradictory to the law of the case," Wainscott answered, "I don't know." *Id*. at p. 10, lns. 9-13.

Wainscott also concluded that this Court's ruling that, as a matter of law, the punitive damages issue would be tried to the jury was wrong; instead he contended that, "even with a finding of bad faith, the court should not allow this case to be presented to a jury on the issue of punitive damages." Ex. 2 at 33. Finally, Wainscott concluded that the Ninth Circuit's ruling, that as a matter of law the United States was an implied insured, also was incorrect. Ex. 2 at 32.

      3.   <u>AFFIDAVIT OF ROBERT A. LOHR</u>

Also, on December 22, 2005, Continental served an "Affidavit of Robert A. Lohr," [Hereinafter "Lohr"] a former Director of the Alaska Division of Insurance. Ex. 4. Like Wainscott, Lohr opined that the Ninth Circuit's ruling that the United States was an implied insured was incorrect; according to Lohr, "[h]olding that the United States qualified as an 'implied insured' in this case would turn one of the Alaska Supreme Court's key <u>Avi-Truck</u> standards on its head." Ex. 4 at 14. Moreover, Lohr acknowledged at his deposition that, if the Ninth Circuit's ruling actually was correct but, rather, it was Lohr's (a "non-attorney") analysis

that was flawed, then Lohr's "opinions would be different . . . ." Ex.5, Lohr Dep., at p. 196, lns. 5-13. This witness' report does not address Continental's acts and whether they meet Industry standards.

Like both Serdahely and Wainscott, Lohr concluded that this Court's bad faith ruling was wrong, instead finding "that Continental had a reasonable basis for denying tender." Ex. 4 at 18.[2] Finally, Lohr concluded that this Court's ruling that a jury could award punitive damages was wrong, instead finding that "[p]unitive damages are inappropriate in this case because there were no outrageous, malicious or recklessly indifferent acts by the insurer." Ex. 4 at 17.

## APPLICABLE LAW

Pursuant to Federal Rule of Evidence 104(a), the admissibility of expert testimony is a preliminary question for the Court. Fed. R. Evid. 104(a). According to the Supreme Court, "neither the difficulty of the task nor any comparative lack of expertise can excuse the judge

---

[2] Continental's counsel even stipulated to this at Mr. Lohr's deposition:

> Q. The law of the case at this time, however, sir, is that Continental acted in bad faith. Isn't that true?
> A. That is my understanding, but that's a non-attorney's understanding of the law of the case.
> Q. Okay. Since you do not have listed, in this first section here, a key issue of whether or not Continental acted in bad faith towards the United States, you're accepting the court's determination that bad faith occurred in this case, aren't you?
> [Counsel for Continental]: What? Give me a break. Objection. Argumentative, assumes facts not in evidence. Of course he doesn't accept the court's opinion.
> [Counsel for the United States]: Is that a stipulation from you, that he doesn't accept the court's opinion?
> [Counsel for Continental]: Absolutely it is.

Ex. 5, Lohr Dep., at p. 25, lns. 18-25; p. 26, lns. 1-10.

from exercising the 'gatekeeper' duties that the Federal Rules of Evidence impose – determining, for example, whether particular testimony is reliable and 'will assist the trier of fact,' [as required by] Fed. R. Evid. 702." *General Electric v. Joiner*, 522 U.S. 136, 147 (1997).  In order to determine whether testimony is admissible, Rule 702 is the "primary locus." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592 (1993).

Expert testimony is permissible when "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  Although expert testimony "otherwise admissible is not objectionable [merely] because it embraces an ultimate issue," it is clear that "matters of law [are] for the court's determination [and are] inappropriate subjects for expert testimony."  Fed.R.Evid. 704; *Aguilar v. International Longshoremen's Union Local,* 966 F.2d 443, 447 (9th Cir. 1992).  Indeed, "instructing the jury as to the applicable law 'is the distinct and exclusive province' of the court."  *Hangarter v. Provident Life and Accident Insurance Co.*, 373 F.3d 998, 1016 (9th Cir. 2004), *quoting U.S. v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993).  Finally, "opinions which would merely tell the jury what result to reach" also are not admissible. Fed. R. Evid. 704, Advisory Committee note.  "Thus, the question, 'Did T have the capacity to make a will?' would be excluded, while the question, 'Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?' would be allowed." *Id*.

In *Aguilar*, the Ninth Circuit upheld the exclusion of the testimony of "an avowed expert in employment application interpretation . . . that the reliance of the casual workers . . . '[was] reasonable,' and that the Committee should have forseen this reliance."  *Aguilar,* 966 F.2d at

447. The Ninth Circuit found that "the reasonableness and forseeability of the causal workers' reliance were matters of law for the court's determination," and not for that of an expert. *Id.*

In *Hangarter*, an insurance case involving a bad faith claim, the Ninth Circuit upheld the lower court's admission of expert testimony that the insurer's termination letter "fell below industry standards", and that the insurer's alleged "round table process violated the insurance industry principle of looking at each policy claim objectively and on a case-by-case basis." 373 F.3d at 1010-1011. The Ninth Circuit recognizes that an expert cannot give an opinion as to a legal conclusion. *Id.* at 1016, *citing Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002)). The Ninth Circuit in <u>Hangarter</u> rejected the insurer's argument that the expert "inappropriately reached legal conclusions on the issue of bad faith" because, while, the expert's testimony that the insurer "deviated from industry standards supported a finding that they acted in bad faith, [the expert] never testified that he had reached a legal conclusion that Defendants actually acted in bad faith." 373 F.3d at 1010-1011.

## **ARGUMENT**

On July 12, 2005, this Court reaffirmed as "the law of the case" its previous ruling that Continental's conduct, as a matter of law, constituted bad faith. This Court also found that, as a matter of law, "a jury could find that Continental's [conduct] was outrageous or done with reckless indifference," and, thus, also as a matter of law, that the issue of punitive damages would be tried to the jury. Indeed, the issues of whether Continental's conduct constituted bad faith and whether a punitive damages claim could be presented to a jury have been fully litigated and this Court's rulings regarding them are unequivocal. Nevertheless, Continental submitted three expert reports opining on those very same issues. Even more remarkable, the "expert"

conclusions formed in those reports are <u>directly</u> <u>contrary</u> to the rulings of this Court. Unless Rule 702 is meaningless, certainly testimony to the effect of "this Court's prior rulings are wrong" cannot possibly "assist the trier of fact to understand the evidence or to determine a fact in issue." Moreover, the conclusions contained in those reports and about which the purported experts intend to testify at trial concern neither "fact[s]" (but rather matters of law), nor anything "in issue" (as the two issues about which the "experts" were hired to discuss have already been decided by this Court).

    <u>1. The opinions contained in Serdahely's, Wainscott's and Lohr's "Expert Report[s]" are directly contrary to rulings by this Court.</u>

Rule 702 allows expert testimony only when it would "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Clearly, providing legal opinions <u>directly</u> <u>contrary</u> to the rulings of this Court could not possibly "assist" a jury, but, rather, could only misguide and confuse a jury.

Each of the three reports offered by Continental provide legal opinions on two particular <u>legal</u> issues: (1) whether or not, as a matter of law, Continental's conduct constituted bad faith, and (2) if it did, whether or not, as a matter of law, a punitive damages case could be presented to a jury, both of which have already been decided, reconsidered and reaffirmed by this Court. Indeed, in specifically rejecting Continental's "fairly debatable" argument, this Court found that, as a matter of law, "Continental acted in bad faith," and that, as a matter of law, "[b]ased on the facts of this case, a jury could find that Continental's [conduct] was outrageous or done with reckless indifference." Dkt. 166 at 13-17. Nevertheless, each of Continental's three witnesses was hired apparently for the sole purpose of addressing those identical legal issues and analyzing

this Court's rulings on them. All three witness intend to contend to the jury that this Court was wrong on both issues.

Indeed, relying on his legal interpretation of *Hillman II* and the "fairly debatable" concept discussed in that case, Serdahely concluded that this Court's finding of bad faith was incorrect: "[i]n my view, Continental . . . did not act in bad faith." Ex. 1, at 21. Regarding punitive damages, Serdahely also concluded that this Court was incorrect: "it is my opinion that . . . the USA's punitive damages claims should . . . , as a matter of law, be rejected by the Court and not be submitted to the jury." (emphasis added). *Id*. at 27.

Similarly, Wainscott also concluded that this "Court's finding of bad faith" was in error, a position Mr. Wainscott was not shy about at his deposition: "Am I bound by it to say that I think he was right? Well I hope not, because I don't think he was right." Ex. 2 at 18; Wainscott Dep. at p. 9, lns. 10-25; p. 10, lns. 1-8. Wainscott also concluded that this Court's ruling on punitive damages was incorrect: "even with a finding of bad faith, the court should not allow this case to be presented to a jury on the issue of punitive damages." Ex. 2 at 32.

Finally, Lohr also concluded that this Court's rulings on both bad faith and punitive damages were wrong. In addition, Lohr opined that the Ninth Circuit's finding that the United States was an implied insured was wrong, reasoning that "[h]olding that the United States qualified as an 'implied insured' in this case would turn one of the Alaska Supreme Court's key Avi-Truck standards on its head." Ex. 4 at 14. Lohr even acknowledged at his deposition that if it turned out that the Ninth Circuit indeed was correct, Lohr's "expert" opinions would change.

This Court has already rejected Continental's "fairly debatable" argument and has ruled that Continental did act in bad faith and that the question of punitive damages will be decided by

a jury. Continental's submission of "Expert" opinions arguing that the Ninth Circuit and this Court were wrong is nothing more than an attempt to re-litigate issues that were not decided in Continental's favor. Continental cannot simply hire its own judges, and other witnesses, call them "experts," and have them testify to a jury to ignore both the trial and appellate courts' prior decisions that are adverse to Continental. All three witnesses were hired solely to address two legal issues, both of which have already been decided by this Court. And, <u>all</u> of the "expert" conclusions concerning those issues are <u>directly</u> <u>contrary</u> to the law of this case, as established by this Court's and the Ninth Circuit's prior rulings. Thus, admitting their testimony, as stated in the reports, to the jury to contradict the law and facts already decided in this case is inappropriate. This testimony is not permitted. Fed. Rule Evid. 702. The reports of all these witnesses are attached hereto and must be read in their entirety to observe how inappropriate their intended testimony would be if allowed to the jury.

<u>2. Even if his conclusions were not directly contrary to the law of this case, Serdahely's Report is based solely on his interpretation of caselaw, and thus involves "inappropriate subjects for expert testimony."</u>

Serdahely directly states that his report provides only "<u>legal</u> opinions." (Emphasis added). Ex. 1 at 3. Moreover, those "legal opinions" are based solely on Serdahely's own <u>interpretation</u> of <u>caselaw</u>. Just as the Ninth Circuit ruled in *Aguilar,* a case in which the lower court had <u>not</u> resolved the issues of "reasonableness and forseeability," merely analyzing and interpreting caselaw concerning bad faith and punitive damages undoubtedly are "matters of law for the court's determination." 966 F.2d at 447. Serdahely's very opinions make clear that his testimony will involve the province of the Court: "the USA's punitive damages claims should, <u>as a matter of law</u>, be rejected by the Court" (emphasis added). Ex. 1 at 27.

As the Ninth Circuit recognized in *Hangarter*, experts cannot give an opinion as to their legal conclusions, which is precisely what Serdahely expects to do by "render[ing] expert legal opinions" on the legal issues of bad faith and punitive damages. 373 F.3d at 1016. Serdahely opines that, "[i]n my view, Continental . . . did not act in bad faith," and "the USA's punitive damages claims should, as a matter of law, be rejected by the Court and not be submitted to the jury." Ex. 1 at 27. Unlike *Hangarter*, where the expert testified about "industry standards" and did not "reach[] a legal conclusion [regarding] bad faith," Serdahely's opinions have nothing to do with industry standards, but rather consist only of his "legal conclusions" regarding interpretation of law, and do "reach[] a legal conclusion [regarding] bad faith." *See Hangarter*, 373 F.3d at 1010-11. Serdahely states that, "[i]n my view, Continental . . . did not act in bad faith". Regarding punitive damages he states "it is my opinion that . . . the USA's punitive damages claims should . . . , as a matter of law, be rejected by the Court and not be submitted to the jury." Ex 1 at 27.

Serdahely's "legal opinions" are precisely what the Advisory Committee advised are prohibited: "opinions which would merely tell the jury what result to reach." Indeed, his "legal opinions" would petition the jury to disregard this Court's prior rulings, and instead to find that Continental did not act in bad faith. Serdahely's "legal opinions" regard pure "matters of law," and, in addition to being directly contrary to rulings by the Ninth Circuit and by this Court, those opinions concern subjects improper for expert testimony and should be excluded pursuant to Rule 702.

**CONCLUSION**

For the foregoing reasons, this Court should exclude testimony based on all three "Expert Report[s]" offered by Continental,[3] or, alternatively, strike Serdahely's report altogether and limit testimony by Wainscott and Lohr to matters consistent with the already established "law of the case," if that is possible.

Respectfully requested this 5th day of April, 2006, in Anchorage, Alaska.

>     DEBORAH M. SMITH
>     Acting United States Attorney
>
>     s/Richard L. Pomeroy
>     Assistant U.S. Attorney
>     222 West 7th Ave., #9, Rm. 253
>     Anchorage, AK 99513-7567
>     Phone: (907) 271-5071
>     Fax: (907) 271-2344
>     E-mail: richard.pomeroy@usdoj.gov
>     AK #8906031
>
>     s/Richard R. Stone, Sr.
>     Trial Attorney
>     U.S. Department of Justice
>     P.O. Box 888
>     Benjamin Franklin Station
>     Washington, D.C. 20044
>     Phone: (202) 616-4291
>     Fax: (202) 616-5200 fax
>     E-mail: richard.stone@usdoj.gov

---

[3] Although the United States has taken the depositions of Wainscott and Lohr, in the interest of saving time and resources, the United States did not depose Serdahely, believing his opinions in their entirety subject to exclusion. If, however, the Court denies this motion to strike, the United States respectfully requests permission to schedule and take Serdahely's deposition.

**CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2006,
a copy of the foregoing Plaintiff
United States' MOTION TO EXCLUDE
"EXPERT" TESTIMONY ON THE DECIDED
LAW AND FACTS OF THE CASE was served
electronically on Gary A. Zipkin and William Urquhart
and on

Rebecca L. Ross
Ross, Dixon & Bell, LLP
55 West Monroe Street, Suite 3000
Chicago, IL 60603-5758
(312) 759-1920
(312) 759-1939 fax

by U.S. mail
s/ Richard L. Pomeroy