# Expert Report

## *USA v. CNA Financial, The Continental Casualty Company d/b/a The Continental Insurance Company.*

By Deborah Senn
November 22, 2005

**Description of Background and Qualifications**

I served two four-year terms as Washington State's Insurance Commissioner from 1993 to 2001. This position is comparable to Alaska's Insurance Commissioner although Alaska's Commissioner is appointed while Washington's is elected. Washington and Alaska insurance commissioners have similar responsibilities and are governed by similar statutes. Both Alaska and Washington are included in the "Western Zone" of the National Association of Insurance Commissioners (NAIC).

I lived in Alaska in the early 1980's and practiced law with the firm then known as Baily and Mason.

Since leaving the Office of Insurance Commissioner in Washington, I have engaged in the practice of law and insurance consulting.

My curriculum vitae and fee schedule are appended to this report. (Attachment A)

As Insurance Commissioner, I regulated Washington's $18 billion per year insurance industry from 1993 to 2001. The regulatory functions of the Office of Insurance Commissioner include:

- Licensing and financial oversight of insurers,
- Detecting and dealing with insurance company insolvencies,
- Approving rates and contract forms,
- Licensing agents, brokers, and public adjusters,
- Interpreting insurance laws and regulations, including the issuance of "bulletins" to the industry,
- Investigating and resolving consumer complaints,
- Examining market conduct in sales and claim settlement practices,
- Bringing enforcement actions against insurers,
- Consumer education, and
- Coordinating insurance regulatory activities in Washington with those in other jurisdictions.

During my tenure as Insurance Commissioner, I served on numerous NAIC committees and task forces, including the Property & Casualty Insurance ("C") Committee. I also served on the NAIC's Executive Committee, and held the office of Vice President and President of the Western Zone. The Western Zone is responsible for conducting periodic "zone examinations" of insurance company finances.

In preparing this report, I have reviewed files in this case and other documents, listed in Attachment B.

### Purpose

In this report I shall summarize the facts surrounding the case of United States of America v. CNA Financial, the Continental Casualty Company d/b/a the Continental Insurance Company (referenced herein as Continental or the Company) and evaluate the Company's conduct in its handling the underlying insurance claim at issue.

I shall briefly review the regulatory standards of good faith by which an insurance company such as Continental is required to conduct itself. These standards are well defined by National Association of Insurance Commissioners (NAIC) model legislation and rules that in turn have become a template for state insurance regulation, including that in the State of Alaska. Continental acknowledges observance of this regulatory framework as essential in its claim settlement policies, practices and procedures.

It is already established in the law of this case that Continental's behavior breached necessary and acceptable standards for the conduct of the business of insurance. That is, the District Court has found that the Company has acted in bad faith. I shall further examine Continental's bad faith in light of the standards set forth in Alaska Statutes and the Alaska Administrative Code in order to address the precise nature and degree of Continental's bad faith—whether Continental's bad faith conduct was outrageous and in reckless disregard of the rights of the insured.

My opinions are based upon my experience and knowledge as the chief insurance regulator for the State of Washington for eight years and as an expert in insurance regulation over the past four years

### Continental's corporate structure

CNA Financial Corp (CNAF or Continental Financial) maintains a rather complex corporate structure, briefly described in its 2004 annual report to shareholders as follows: "CNA Financial Corporation (CNAF) was incorporated in 1967 and is an insurance holding company whose primary subsidiaries consist of property and casualty insurance companies. Collectively, CNAF and its subsidiaries are referred to as CNA or the Company. CNA's property and casualty insurance operations are conducted by Continental Casualty Company (CCC), incorporated in 1897, and its affiliates, and The Continental Insurance Company (CIC), organized in 1853, and its affiliates. CIC became

an affiliate of the Company in 1995 as a result of the acquisition of The Continental Corporation (Continental)."

The current Continental Insurance Company is a corporate shell created, maintained and 100% owned by Continental Casualty Company. Together, they comprise a unified insurance business enterprise. CIC has no employees—none. CCC designs and markets the insurance products sold under the CIC label. CCC performs the underwriting (decides who gets insurance). CCC receives premiums and invests money on behalf of CIC, whose current net worth is approximately $1.6 billion[1]. CCC acts as the claims adjustor for CIC insureds. CCC negotiates insurance pooling agreements on behalf of CIC. CIC periodically pays dividends to CCC as dictated by CCC employees ($262 million over the past 10 years). The cost of all the services performed by CCC personnel on behalf of CIC is charged to various expense accounts of CIC.

Bad faith arises from human activity. Employees of CCC and contractors retained by CCC personnel performed all of the acts, or today are responsible for all the acts, described in this report. CCC provides the business and legal leadership, training, and supervision for all of its employees and agents.

### The availability and integrity of insurance is essential to our modern economy

Insurance is a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies.[2] In general, the concept of insurance is founded on the principle of indemnity—to be made whole. As a popular insurance slogan aptly puts it—it "gets you back where you belong."

Insurance is a product that affects the health, life and property of everyone in a modern society. Obtaining insurance, for example, is normally a prerequisite for purchasing a home or an automobile. Because of its importance in our lives and its relative complexity as a consumer product, the fifty United States, as well as nations around the world, regulate the business of insurance so it is widely available and so that public confidence in the integrity of the industry remains high. Many states' statutes explicitly recognize the public interest that clothes insurance. The Revised Code of Washington, for example, states, "The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, their providers, and their representatives rests the duty of preserving inviolate the integrity of insurance."[3] "All persons" means everyone without respect to technical knowledge (expert and unsophisticated), wealth and income (rich and poor), or role (insured and insurer). An insurer's duty of good faith does not vary depending on the wealth or circumstances of

---

[1] CCC's current net worth is approximately $6 billion.
[2] This is the definition of "insurance" found in RCW 48.01.040, Washington's insurance statute.
[3] RCW 48.01.030