Gary A. Zipkin, Esq.
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, AK 99501
Phone: (907) 793-2200
Fax: (907) 793-2299
E-mail: gzipkin@guessrudd.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CNA FINANCIAL CORPORATION AND THE CONTINENTAL CASUALTY COMPANY d/b/a THE CONTINENTAL INSURANCE COMPANY,<br><br>Defendant. | Case No. 3:98-cv-285-JWS |

**DEFENDANTS' OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING KALLSTROM RE-TENDER**

**Preliminary Statement**

The Government seeks a ruling that Continental acted in bad faith by failing to accept its October 2001 re-tender of defense of the claim brought by Ms. Kallstrom. However, the Government never pled a bad faith claim about its October 2001 re-tender or Continental's response thereto. After the Court adjudicated the only bad faith claim the Government has ever pled on summary judgment, the Court ordered that no unadjudicated bad faith claims remain in

this case. Until a few weeks ago, the Government never indicated that it intended to contest that order or pursue additional bad faith claims at trial. In fact, when the Court asked the parties what issues they thought remain in the case, the Government expressed its agreement that its prayer for punitive damages was the only remaining issue. If the Government had sought leave to amend to add its new claim -- which it made a tactical choice not to do -- its request would properly have been denied. It cannot fare better by moving for summary judgment without bothering to seek leave to add the claim in the first place.

In any case, the Government's new bad faith claim fails, and certainly cannot be summarily adjudicated in the Government's favor. For starters, there are no damages. In fact, the Government has stipulated that it did not suffer any damages at all from Continental's failure to accept the Kallstrom re-tender. Without damages, the claim fails.

Moreover, the claim was not covered by Continental's policy in the first place. The rulings of the courts in this case establish, as of today, that the United States was an implied insured under the Bristol Bay policy as a matter of Alaska law. That policy, however, covers only "bodily injury," not emotional distress. Ms. Kallstrom's claim for negligent infliction of emotional distress alleged purely emotional harm, not physical harm. Therefore, the claim was not covered under the policy. Continental would not have had a duty to defend Kallstrom's claim even if she had alleged it against Bristol Bay.

In all events, Continental never rejected the Government's re-tender of Kallstrom. Continental was in the process of investigating whether the claim was covered (i.e., whether a claim for emotional distress fell under the policy) and, out of an abundance of caution, actually planned on accepting the tender (an acceptance letter had been drafted and attempts to locate

counsel who would represent the United States were being made) when the Alaska Supreme Court issued an opinion that ended Kallstrom's case. After that, there was nothing left to accept or reject -- the tender was mooted. The Government cites no authority that holds that an insurer acts in bad faith when, while it is investigating a claim and communicating to the tendering party, the claim moots itself four months after tender. The reasonableness of Continental's response under the circumstances is at least a question of fact that would have to go to a jury -- if the Kallstrom re-tender claim were properly in this case in the first place.

## Argument

### I. THE GOVERNMENT HAS NEVER PLED AND CANNOT PURSUE THE CLAIM FOR WHICH IT SEEKS SUMMARY JUDGMENT

#### A. Both the Court and the Government acknowledged long ago that there are no unadjudicated bad faith claims left in this case

Almost four years ago, in June 2002, the Court ruled that “[t]he only remaining claim is the governments’ claim for punitive damages, which was recently added in an amended complaint.” Dkt. 87 at 6. Just six months ago the United States concurred, representing in a joint status report (which the Court required the parties to submit in its 2005 summary judgment ruling) that the only issue left in the case is “[w]hether punitive damages should be awarded against Continental and, if so, in what amount.” Dkt. 119 at 1. Thus, until recently, everyone -- including the United States -- agreed that there are no unadjudicated bad faith claims left in the case.

B. The Government never pled its new claim about the *Kallstrom* re-tender

The parties' and the Court's longstanding recognition that no unadjudicated bad faith claims remain was logical because the Government's operative Second Amended Complaint contains only one bad faith claim. Dkt. 71 at 8 (claim three). The Court adjudicated that claim on summary judgment. Dkt. 61 at 10 (the Court addressing the Government's "claim for bad faith denial of coverage"). Even though the Second Amended Complaint was filed in 2002, after the Court entered summary judgment in 2001, that complaint does not even mention the 2001 re-tender of Kallstrom or Continental's purported bad faith response thereto. Dkt. 71.

C. The Government cannot add its new claim now

Although Continental's allegedly improper conduct occurred more than four years ago, the Government never sought leave to add its putative claim about the Kallstrom re-tender. That is because such leave would likely have been denied, and should be denied now.

The presence of factors such as "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment" militate against granting leave to amend. Schlacter-Jones v. General Telephone of California, 936 F.2d 435, 443 (9th Cir. 1991) (citation omitted) overruled in part on other grounds, Cramer v. Consol Freightways, Inc., 255 F.3d 683 (9th Cir. 2001) (en banc). The Government can proffer no explanation for its decision to wait until the eve of a trial scheduled to cover only punitive damages to seek summary judgment on a new bad faith claim. It knew about its ostensible claim relating to the Kallstrom re-tender in 2001, before it last amended its complaint, yet never sought leave to add a claim. This tactical delay alone precludes amendment. See McGlinchy v. Shell Chemical Co., 845 F.2d 802, 809 (9th Cir. 1988)

(delay of six months after plaintiffs became aware of their new claims before they sought leave to amend precluded amendment).

When the Government's delay is coupled with the interference with these proceedings amendment would occasion (among other things, the jury would have to address more than just punitive damages, possibly requiring bifurcation or even trifurcation of the proceedings[1]), the prejudice Continental would suffer from having new claims sprung on the eve of trial (among other things, Continental did not move for summary judgment on the Government's new claim since it did not (and does not) believe there is any such claim), and the futility of amendment (which is discussed in detail below), the fact that the Government could not amend its complaint to add its new claim if it sought such leave is clear.

## II. IF THE NEW CLAIM WERE PART OF THE CASE, THE GOVERNMENT WOULD NOT BE ENTITLED TO SUMMARY JUDGMENT

If the Government's new claim were part of this case, the Government would not be entitled to summary judgment. To the contrary, Continental would be entitled to such judgment -- and, therefore, adding the claim now would be futile.

### A. The Government has no damages

The first point is simple. The Government has stipulated -- twice -- that it has no damages -- that, "after the date that it was actually tendered by the United States," the United

[1] As defendants show in their Motion in Limine No. 10 to bifurcate trial, bifurcation of the issues of liability for punitive damages and the amount of such damages is appropriate. If the jury also has to address a new bad faith claim, trifurcation will likely be necessary.

States did not "suffer[] any damages based on the lack of response to that tender".[2] A claim for bad faith fails as a matter of law without damages. Hillman v. Nationwide Mut. Fire Ins. Co., 855 P.2d 1321, 1323 (Alaska 1993) (bad faith claims dismissed under Alaska law because plaintiffs "failed to demonstrate that they could show damages"); Emerald Bay Community Ass'n v. Golden Eagle Ins. Corp., 130 Cal. App. 4th 1078, 1093-96, 31 Cal. Rptr. 3d 43, 55-58 (Cal. App. 2005) ("To support a bad faith action, plaintiff needed to establish actual financial loss"); Blake v. Aetna Life Ins. Co., 99 Cal. App. 3d 901, 925, 160 Cal. Rptr. 528, 542 (Cal. App. 1979) (without evidence of damages, bad faith claim should not have reached jury). And, of course, without compensatory damages, punitive damages -- the only issue properly before the jury -- are unavailable. DeNardo v. GCI Communication Corp., 983 P.2d 1288, 1292 (Alaska 1999) ("A punitive damages claim cannot stand alone; because we reject DeNardo's underlying claim, we also necessarily affirm summary judgment on his punitive damages claim.").

B. There was no duty to defend the tendered claim

Putting aside the lack of damages, Continental had no duty to defend the claim tendered by the Government in the first place.

---

[2] Deposition of Deborah Senn dated January 11, 2006 at 169:23-170:7 (counsel stipulating to lack of damages) (emphasis added), Zipkin Aff. Ex. A; see also Deposition of Susan Lindquist (the Government's designated Rule 30(b)(6) witness) dated February 9, 2006 at 104:12-18, Zipkin Aff. Ex. B ("Q. It's true, isn't it, that -- that after the Kallstrom case was tendered in October of 2001, the government incurred no additional expenses or costs in defending Kallstrom? MR. STONE: We have stipulated to that. MR. TAYBACK: Yeah. THE WITNESS: Sure. It's true then.").

As pertinent here, Continental was obligated under the policy to defend and indemnify only claims for "bodily injury."[3] Ms. Kallstrom's claim was for purely emotional distress. Nowhere in her complaint did she allege any physical injury or manifestations at all.[4] In fact, that is why her claim ultimately failed: as the Alaska Supreme Court eventually ruled, a plaintiff like Kallstrom "who has not suffered physical injury[] may [not] recover damages for the negligent infliction of emotional distress" except under specific circumstances. Kallstrom v. United States, 43 P.3d 162, 164 (Alaska 2002).

As courts across the country have repeatedly held, an insurance policy covering claims for "bodily injury" ***does not apply*** to claims for pure emotional distress, and the insurer has no duty to defend against such a claim for pure emotional distress. See, e.g., Rolette Cty. v. Western Casualty & Surety Co., 452 F. Supp. 125, 130 (D.N.D 1978) ("no 'bodily injury' was alleged in the complaint. Therefore, the court concludes Western had no duty to defend on the basis of the policy provisions for bodily injury coverage"); St. Paul Fire & Marine Ins. Co. v. Campbell Cty. School Dist. No. 1, 612 F. Supp. 285, 287-88 (D. Wy. 1985) ("the type of damage alleged, i.e., emotional suffering, does not constitute 'bodily injury' . . . . [The] insurance company has no duty to defend or cover any losses"); American & Foreign Ins. Co. v. Church Schools, 645 F. Supp. 628, 632 (E.D. Va. 1986) ("In giving the 'bodily injury' coverage its plain meaning, it simply does not cover the Johnson's' claim for purely emotional injury"); McLaughlin v. National Union Fire Ins. Co., 23 Cal. App. 4th 1132, 1150-51, 29 Cal. Rptr. 2d

---

[3] Policy, Commercial General Liability Form at 1, Zipkin Aff. Ex. C.

[4] Kallstrom Answer and Counterclaim to Third-Party Complaint dated September 14, 1995, Zipkin Aff. Ex. D.

559, 569 (Cal. App. 1994) (no duty to defend: "The policy defines 'bodily injury' as 'bodily injury, sickness or disease....' This clause limits coverage to physical injury to the body; it does not encompass nonphysical, emotional or mental harm."); Farm Bureau Mutual Ins. Co. of Michigan v. Royal Globe Ins. Co., 356 N.W.2d 630, 633 (Mich. App. 1984) (no duty to defend where complaint alleged only "humiliation and mental anguish" without "alleged physical manifestation"); Allstate Ins. Co. v. Diamant, 518 N.E.2d 1154, 1156 (Mass. 1988) ("'Bodily injury' . . . is a narrow term and encompasses only physical injuries to the body and the consequences thereof.").

Because Kallstrom did not allege bodily injury, Continental had no duty to defend. See State, Dept. of Transp. and Public Facilities v. State Farm Fire and Cas. Co., 939 P.2d 788, 792 (Alaska 1997) ("The factual allegations made in the complaint of the underlying litigation determine whether there is a duty to defend."). Therefore, Continental did not act in bad faith by failing to accept the Government's tender. See, e.g., Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 35-37 (1995) (where there is no duty to defend the tendered claim, there can be no bad faith of any type); Oppenheim v. Reliance Ins. Co., 804 F. Supp. 305, 310 (M.D. Fla. 1991) (without a duty to defend, there can be no bad faith refusal to defend).

C. Even if there were a duty to defend the tendered claim, the Court cannot find bad faith as a matter of law

Assuming there were a duty to defend, the Court still cannot find bad faith as a matter of law. In fact, Continental would remain entitled to summary judgment on bad faith. At most, it is a jury issue.

1. Continental did not act in bad faith when it investigated the Government's tender before communicating acceptance

Although the Government glosses over this fact, one point is crucial: Continental did not reject the Government's re-tender. In fact, as an exercise of extreme caution, Continental actually planned to accept the tender under a reservation of rights. Continental did not consummate its acceptance only because, as it was concluding its investigation, the Alaska Supreme Court issued an opinion effectively mooting the Government's tender. Thus, all the Government can latch on to is a four month delay in communicating a final answer. There is no authority, and the Court cannot conclude as a matter of law, that Continental's four month delay in responding constituted bad faith.

Although an insurer must promptly investigate claims, what is "prompt" depends on the circumstances -- it is a question of reasonableness. AS § 21.36.125(3) (all that is required is the implementation of "reasonable standards for prompt investigation of claims"). The purpose of prompt notice is "to avoid prejudice to the insured which may result from delays in the insured undertaking its own defense or from delays in gathering evidence". Sauer v. Home Indem. Co., 841 P.2d 176, 182 (Alaska 1992) (insurer who did not communicate denial for 5 years, and who thereby prejudiced insured, acted in bad faith).

Here, Continental's response to the Government's re-tender was wholly reasonable and -- as the Government has stipulated -- did not prejudice the Government in any way. The Government tendered the Kallstrom defense on October 30, 2001 in a letter drafted by Kenneth

Roosa.[5] At that time (and for a year prior), there was no ongoing litigation activity in Kallstrom -- the case was pending on appeal before the Alaska Supreme Court (to which the Ninth Circuit had certified the question whether Kallstrom's claim could proceed given the lack of physical injury and the other circumstances of her claim), oral argument had been held, and the parties were waiting for a decision.[6] At the same time, the parties were preparing for and communicating about a mediation they hoped would resolve all claims to be held in early December 2001.[7]

When the mediation proved unsuccessful, Continental "immediately" investigated the Government's tender.[8] To that end, Continental contacted Mr. Roosa several times to discover what exactly the Government wanted Continental to defend because it appeared that "absolutely nothing was happening because they were waiting for the Supreme Court to decide whether or not Ms. Kallstrom had a cause of action under Alaska law."[9] Roosa never indicated that there was any activity or that the Government might be prejudiced absent an urgent

---

[5] Motion Ex. 1. The Government had previously tendered the Kallstrom defense in 1997, and Continental rejected that tender in the nine page rejection letter authored by now Judge Craig Stowers.

[6] Deposition of Erin Finn dated November 8, 2005 ("Finn Tr.") at 16:11-18, 20:5-12, Zipkin Aff. Ex. E; Deposition of Kenneth Roosa dated December 15, 2005 ("Roosa Tr.") at 90:14-91:17, Zipkin Aff. Ex. F; Deposition of John Treptow dated January 23, 2006 ("Treptow Tr.") at 11:20-12:5, Zipkin Aff. Ex. G.

[7] Finn Tr. at 16:5-10, 30:20-31:1, Zipkin Aff. Ex. E; Treptow Tr. at 8:23-9:5, Zipkin Aff. Ex. G.

[8] Finn Tr. at 36:4-7, Zipkin Aff. Ex. E

[9] Finn Tr. at 21:1-3, Zipkin Aff. Ex. E; Treptow Tr. at 10:10-12:12, 14:23-15:5, Zipkin Aff. Ex. G.

response.[10] In fact, Roosa told Continental's lawyers that he thought the Government's position on appeal was "a dead bang winner" and that Kallstrom's claims would not go forward.[11] As Continental's in-house lawyer handling the issue testified, "it wasn't as if the United States government is banging down our door jumping up and down. Roosa says, look, nothing's happening, the case has been pending for quite some time, we've got a dead bang winner on our hands."[12]

While Continental investigated the status of Kallstrom and what the Government wanted Continental to do, it also analyzed whether Kallstrom's claim for emotional distress was covered under the policy.[13] Although Continental did not believe there was any potential for coverage, it decided to accept the tender under a reservation of rights as a precaution. To that end, Continental's outside counsel drafted an acceptance letter in the February/March 2002 time period.[14] At the same time, Continental contacted outside lawyers to try to find someone who would represent the United States -- which is a logical precursor to the assignment of defense counsel in an acceptance letter.[15] Although the lawyers initially contacted by Continental indicated at first that they would be willing to take the case on, they later retracted that acceptance and Continental had to contact other counsel.[16]

---

[10] Finn Tr. at 21:1-8, Zipkin Aff. Ex. E; Treptow Tr. at 25:6-20, Zipkin Aff. Ex. G.
[11] Treptow Tr. at 23:10-22, Zipkin Aff. Ex. G; Finn Tr. at 17:1-3, Zipkin Aff. Ex. E.
[12] Finn Tr. at 21:1-8, Zipkin Aff. Ex. E.
[13] Finn Tr. at 18:2-9, 19:13-22, Zipkin Aff. Ex. E.
[14] Treptow Tr. at 15:19-23, Zipkin Aff. Ex. G.
[15] Finn Tr. at 17:16-18:9, 21:18-22:15, 26:13-19, Zipkin Aff. Ex. E.
[16] Id.

On March 15, 2002, while all of this was proceeding, the Alaska Supreme Court issued its opinion effectively ending the Kallstrom case.[17] As even the Government acknowledges, the issuance of that opinion effectively mooted its tender -- after that, there was nothing to accept.[18] That was four-and-a-half months after the Government re-tendered.

The Government cites no authority suggesting that a four month investigation of a complex claim involving significant coverage issues and the unusual scenario of finding counsel to represent the United States *ipso facto* constitutes bad faith, yet that is what its claim amounts to. To the contrary, the relevant authorities suggest that such a "delay" clearly is not bad faith. See Guebara v. Allstate Ins. Co., 237 F.3d 987, 995 (9th Cir. 2001) (no bad faith in delaying response by more than a year while investigation proceeded, even if insurer was guilty of "investigating too much"); Blake, 99 Cal. App. 3d at 921-922, 160 Cal. Rptr. at 540 (reversing bad faith judgment based on unreasonable delay of a year-and-a-half: "In assessing the reasonableness of Aetna's conduct, it is necessary to keep in mind that Aetna never denied the claim, but persisted in seeking information essential to a determination of its merits."); Love v. Fire Ins. Exchange, 221 Cal. App. 3d 1136, 1152, 271 Cal. Rptr. 246, 255 (Cal. App. 1990) (an insurer can only act in bad faith by delaying a claim if the claim was covered and the delay was unreasonable and without cause).

---

[17] Roosa Tr. at 92:5-93:10, Zipkin Aff. Ex. F; Finn Tr. at 27:16-28:2, Zipkin Aff. Ex. E.

[18] Motion at 4 ("on March 15, 2002, the Alaska Supreme Court issued its opinion in favor of the United States, and Ms. Kallstrom's counterclaim was dismissed without Continental ever having accepted tender of the defense.").

2. Even if Continental breached its duty to defend by not immediately communicating its acceptance of tender, genuine issues as to Continental's defense and indemnification obligations preclude a finding of bad faith

Even if Continental somehow breached its duty to defend by conducting a full investigation without immediately communicating its acceptance of tender, Continental still did not act in bad faith. The Government acknowledges that its burden on a bad faith claim is to show "that the defendant-insurer lacked a reasonable basis for denying benefits of the policy ***and that the defendant-insurer had knowledge that no reasonable basis existed to deny the claim*** or acted in reckless disregard for the lack of a reasonable basis for denying the claim." Motion at 7 (quoting the Court, Dkt. 61 at 10) (emphasis added). Here, there is no evidence of either objective unreasonableness or subjective knowledge of unreasonableness on the part of Continental.

Although it intended to defend under a reservation of rights as a precaution, Continental reasonably believed it had no duty to defend at all. As discussed above, Kallstrom's complaint did not allege bodily injury. In light of the traditional rule that "[t]he factual allegations made in the complaint of the underlying litigation determine whether there is a duty to defend," State, Dept. of Transp. and Public Facilities, 939 P.2d at 792, Continental's belief that there was no duty to defend was reasonable even if erroneous -- it was based on a reasonable interpretation of both the Bristol Bay policy and Kallstrom's complaint. Therefore, there can be no bad faith liability. See Hillman, 855 P.2d at 1324-26 (an insurer does not act in bad faith where its denial of coverage was "based on a reasonable interpretation of the insurance contract"); American Casualty Co. v. Krieger, 181 F.3d 1113, 1123 (9th Cir. 1999) (genuine

dispute whether "sport or athletic contest/event" language included bungee jumping precludes bad faith liability) (California law); Franceschi v. American Motorists Ins. Co., 852 F.2d 1217, 1220 (9th Cir. 1988) (genuine dispute about the meaning of "medical treatment" precludes bad faith liability) (California law).

Notably, this rule is not limited to failures to indemnify -- it applies equally to genuine issues about the duty to defend. See Dewitt Construction Inc. v. Charter Oak Fire Ins. Co., 307 F.3d 1127, 1138 (9th Cir. 2002) (although insurer breached duty to defend, it was entitled to summary judgment on bad faith claim because its "duty to defend was not unambiguous" and "[t]he policy coverage was unclear in light of legitimate factual and legal issues pertinent to contract interpretation and application") (Washington law); Lunsford v. American Guarantee & Liability Ins. Co., 18 F.3d 653, 656 (9th Cir. 1994) (insurer breached duty to defend but did not act in bad faith in doing so: "as a matter of law . . . an insurer's denial of a claim is not unreasonable, so long as there existed a genuine issue as to the insurer's liability") (California law); Zurich Ins. Co. v. Killer Music, Inc., 998 F.2d 674, 680 (9th Cir. 1993) ("Although Zurich breached its duty to defend, breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself.") (internal quotations omitted) (California law); Nevada VTN v. General Ins. Co. of America, 834 F.2d 770, 777 (9th Cir. 1987) (although insurer breached its duty to defend, "it is not at all clear that [it] violated that duty in bad faith and hence is liable in tort") (Nevada law).

Under the genuine issue rule, Continental is entitled to summary judgment on the Government's new bad faith claim, if it has such a claim. At worst, this is a question for the jury. The Court cannot find bad faith as a matter of law.

**Conclusion**

For the foregoing reasons, the United States' motion should be denied in its entirety, and the Court should rule that the Government may not pursue its unpleaded bad faith claim at trial. If the Court permits the Government to pursue its undisclosed claim at all, the Government's motion for partial summary judgment should still be denied. In that event, Continental respectfully requests leave to file a supplemental motion for summary judgment addressing the claim.

DATED at Anchorage, Alaska, this 6th day of April, 2006.

GUESS & RUDD P.C.
Attorneys for Defendants

By: ___S/Gary A. Zipkin___

Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, Alaska 99501
Phone: 907-793-2200
Fax: 907-793-2299
Email: gzipkin@guessrudd.com
Alaska Bar No. 7505048

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
Attorneys for Defendants

By: ___S/A. William Urquhart___________
Quinn Emanuel Urquhart
Oliver & Hedges, LLP
865 South Figueroa
Street, 10th Floor
Los Angeles, CA 90017
Phone: 1-213-443-3000
Fax: 1-213-443-3100
Email:
billurquhart@quinnemanuel.com

F:\DATA\6024\1\Pleading\64oppmsj kallstrom.DOC

CERTIFICATE OF SERVICE
I hereby certify that on the 6th day of April, 2006, a copy of the foregoing document was served electronically on:

Richard L. Pomeroy, Esq.
Christopher Tayback, Esq.
A. William Urquhart, Esq.

and by regular U.S. mail on:

Richard Stone, Esq.
Civil Division, Torts Branch
U.S. Department of Justice
1331 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Guess & Rudd P.C.

By:____S/Gary A. Zipkin

# EXHIBITS TABLE OF CONTENTS


| | |
|---|---|
| Exhibit A | Deposition Deborah Senn, excerpts |
| Exhibit B | Deposition of Susan Lindquist, excerpts |
| Exhibit C | CGL Policy |
| Exhibit D | Kallstrom Answer and Counterclaim, dated September 14, 1995 |
| Exhibit E | Deposition of Erin Finn, excerpts |
| Exhibit F | Deposition of Kenneth Roosa, excerpts |
| Exhibit G | Deposition of John Treptow, excerpts |