DEBORAH M. SMITH
Acting United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov

RICHARD R. STONE, SR.
Trial Attorney
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Phone: (202) 616-4291
Fax: (202) 616-5200
E-mail: richard.stone@usdoj.gov

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>THE CONTINENTAL CASUALTY COMPANY, dba THE CONTINENTAL INSURANCE COMPANY,<br><br>    Defendant. | Case No. 3:98-cv-285-JWS<br><br>**THIRD AMENDED COMPLAINT** |

The United States of America alleges its complaint against Continental Casualty Company and

The Continental Insurance Company (Continental), collectively "the defendants", as follows:

COMMON ALLEGATIONS

1.  The court has jurisdiction over this action pursuant to 28 U.S.C. §1345.

2.  On information and belief, CNA is the holding company for Continental.  CNA is a publicly owned corporation traded on the New York Stock Exchange. Continental Casualty, together with its sister company, Continental Insurance Company, is one of the largest property/casualty insurance groups in the United States, and the largest commercial insurance carrier.

3.  Continental issued a policy of insurance (the policy) to Bristol Bay Area Health Corporation (BBAHC) which was in effect during a one year time period beginning September 30, 1993.  That policy was numbered HMA 9500648-5.

4.  Policy number HMA 9500648-5 was a commercial general liability insurance policy for which the defendants were paid a premium of $19,346.00.

5.  The policy had a personal injury liability limit of $1,000,000.00 per incident.  See  Exhibit 1 to First Amended Complaint.  The policy provided insurance against certain negligent actions by BBAHC's employees.

6.  As a matter of fact and law, the United States was within the class of beneficiaries intended by the parties to the policy.

7.  Inclusion of the United States as an implied insured  does not increase the risk undertaken by Continental when it issued the policy in question.

8.  Exclusion of the United States as an implied insured will result in a windfall to Continental. BBAHC, the United States' contractor, paid the agreed premium, and Continental has refused to defend and indemnify against the very risks which it undertook to insure against when it issued the policy.

FACTUAL ALLEGATIONS UNDERLYING THE CLAIMS

9.  BBAHC was at all times relevant hereto operating, *inter alia*,  an alcohol abuse transitional care facility near Dillingham, Alaska, known as "Jake's Place".   BBAHC operated Jake's Place under an agreement with the United States of America, pursuant to the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 450.

10. On or about November 27, 1993, Lori Dee Wilson attended a dance and social function at Jake's Place.  While Lori Dee Wilson was at Jake's Place, she was accidentally given a glass of commercial strength liquid dishwashing detergent when she asked for a drink of juice. She drank the detergent and suffered serious internal injuries. The detergent, which is a hazardous substance, was stored in an improperly marked container by BBAHC employees, in violation of Alaska law and BBAHC's own internal safety regulations.

11. As a result of her injuries, Lori Dee Wilson and her mother, Marilyn Wilson (the Wilsons), filed suit against BBAHC in the Superior Court for the State of Alaska.

12. BBAHC tendered defense of the suit to its insurer, Continental.  Continental accepted the claims as covered by the policy, and engaged James Frederici, of the firm of Delaney, Wiles, Hayes, Reitman, & Brubaker, Inc., as counsel for BBAHC.

13. On May 10, 1994 James Fredrici wrote to William Hutson, Claims Director, Continental Insurance Healthcare explaining "once we represent the insured, we can no longer advise you on coverage. See Continental Insurance Co. v. Bayless & Roberts, Inc., 608 P.2d 281, 294 (Alaska 1980). "  (BBHC 001191-95 @ p. 1194-5.)  At that time Fredrici agreed to keep Continental informed anyway.

14.  The suit filed in state court was voluntarily dismissed after Mr. Frederici filed a motion seeking dismissal on jurisdictional grounds.  He asserted that the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 450, deems employees of the tribal corporation to be employees of the United States for purposes of tort liability.  Accordingly, he argued, the state court had no jurisdiction over the action, and the proper defendant in the case was the United States.

15. The Wilsons subsequently filed suit against the United States in the Federal District Court for the District of Alaska in case number A94-488 Civil (HRH).

16. Following institution of suit by the Wilsons against the United States, the United States filed a third party claim against Blanche Kallstrom, the person who poured the detergent from the improperly marked container, and gave it to Lori Wilson to drink.  The United States' amended third party complaint sought allocation of fault against Ms. Kallstrom.

17. After being served with the third party complaint filed by the United States, Ms. Kallstrom counterclaimed against the United States for negligent infliction of emotional distress.

18. On several occasions during the pendency of the lawsuit filed in federal court by the Wilsons, and once with respect to the claims asserted by Ms. Kallstrom, the United States tendered defense of all the claims to The Continental Insurance Company and/or its subsidiary, CNA Healthpro.

19. The United States first tendered defense of the Wilson's claims on January 6, 1995 (Exhibit 2 to First Amended Complaint).  The written tender was addressed to Lori Wing, an employee of Brady and Company, the entity that brokered the liability policies to BBAHC, and referenced Policy Number 93 CPB 06114933-94.

20. By February 1, 1995, Brady and Company had not yet responded to the tender; the United States thereupon wrote a letter requesting a response (Exhibit 3 to First Amended Complaint).

21. James Frederici, counsel for BBAHC, responded on February 13, 1995, to the United States' tender of defense of the claims.  Mr. Frederici identified himself as counsel for Continental Insurance Company, and on behalf of Continental, rejected the United States' tender (Exhibit 4 to First Amended Complaint), asserting that the United States was not an additional insured, and that the policy of insurance to which the United States referred in its tender letter contained premises exclusions which barred coverage for the premises on which the accident occurred.

22.  On April 6, 1994,  Hutson had written George Ertle that "[w]e do have other sources of contribution ... possibly under the Continental CBP policy.  No one is aware of the CBP policy as of this date except myself and John Kurtz, resident adjuster in Spokane, Washington."  Yet, knowing of the possible coverage afforded by the CPB policy, and of the GCL policy that provided premises liability at Jake's Place, Hutson instructed Fredrici to notify the United States Attorney's Office that Jake's Place was not a covered premises.   Fredrici also suggested that Continental not make any reference to policy HMA 9500648-5, the CGL policy.

23. On June 6, 1995, the United States re-tendered defense of the Wilson claims to Continental in a letter addressed to James Frederici (Exhibit 5 to First Amended Complaint).  In that letter the United States specifically drew attention to a second policy of insurance (policy HMA 9500648-5) issued by Continental to BBAHC, of which the United States was unaware at the time of the first tender.

24. On June 8, 1995, James Frederici acknowledged receipt of the second tender, but indicated that he was at that time "not authorized" to respond to the United States' letter, and that Continental would respond to the United States' tender (Exhibit 6 to First Amended Complaint).

25. Fredrici continued to advise Continental even after notifying Hutson again of the conflict when it was raised by Robert Stewart in June of 1995.

26. On September 13, 1995, the United States wrote directly to Continental, seeking a response to its June 1995 tender (Exhibit 7 to First Amended Complaint).

27. On October 3, 1995, Mr. Bill Hutson, on behalf of Continental, rejected the United States' tender, indicating his reliance on the February 13, 1995, coverage opinion provided by Mr. Frederici (Exhibit 8 to First Amended Complaint).

28. On February 20, 1997, the United States tendered defense of this matter for a third time to Continental, this time in a letter written to Ms. Jennifer Taylor, a claims consultant for CNA Healthpro, a successor entity to Continental (Exhibit 9 to First Amended Complaint). The United States cited the history of the case, and notified CNA Healthpro that discovery was nearing a close.

29. On March 18, 1997 CNA Healthpro acknowledged receipt of the February 20, 1997, tender (Exhibit 10 to First Amended Complaint).

30. On May 16, 1997 the United States was informed by Jennifer Taylor, the CNA Healthpro claims consultant, that the case had been reassigned to Mr. Ray Faccenda. Accordingly, on that date the United States notified Mr. Faccenda of a settlement demand made by counsel for the Wilson plaintiffs (Exhibit 11 to First Amended Complaint).

31. On June 19, 1997, the United States received a letter from Craig Stowers, of the law firm of Clapp, Peterson, and Stowers, in which CNA Healthpro again rejected the United States' tender of defense of the Wilson claims (Exhibit 12 to First Amended Complaint).

32. On August 28, 1997, the United States settled all claims asserted by the Wilson plaintiffs for a total amount of two million eight hundred thousand dollars ($2,800,000.00) (Exhibit 13 to First Amended Complaint).

33. The United States fully cooperated with Continental, offering complete access to its files and discovery, including expert reports and depositions taken in the case.

34. All efforts to convince Continental to defend the claims tendered by the United States failed.

35. Continental rejected the United States' tenders of defense of the claims. Continental failed to accept the tenders under a reservation of rights. Continental denied that the United States was an additional or implied insured under the policy.

36. In February of 1998, the United States obtained summary judgment in its favor against Blanche Kallstrom, in Case No. A94-488 CV (HRH), resulting in the dismissal of all claims asserted by Blanche Kallstrom against the United States in her counterclaim to the United States' Third Party Complaint. Blanche Kallstrom appealed the dismissal, and the appeal is now pending in the United States Court of Appeals for the Ninth Circuit. In the United States District Court, and in the United States Court of Appeals for the Ninth Circuit, the United States has expended and will be required in the future to expend substantial attorney time and costs in its continued defense of the claims asserted by Blanche Kallstrom.

### First Cause of Action -- Denial of Coverage

37. The United States realleges the allegations contained in paragraphs 1 through 33, and incorporates those allegations herein.

38. The complaints filed by the Wilsons and by Kallstrom alleged claims which fell within the coverage of the policy, i.e., injuries caused by negligent acts committed by employees of BBAHC.

39. Continental breached its duties to the United States under the policy by denying coverage to the United States as an additional or implied insured, as required by Alaska law, and by failing to indemnify the United States against claims asserted by the Wilsons.

### Second Cause of Action -- Failure to Defend

40. The United States realleges the allegations contained in paragraphs 1 through 36, and incorporates those allegations herein.

41. The complaints filed by the Wilsons and by Kallstrom alleged claims which fell within the coverage of the policy, i.e., injuries caused by negligent acts committed by employees of BBAHC.

42. Under Alaska law, insurance companies have a duty to defend an insured, separate and apart from any available coverage defense, when the complaint alleges a claim within policy coverage.

43. Continental breached its duty to the United States under the policy by refusing to appear and defend the United States against the claims asserted by the Wilsons and by Kallstrom.

### Third Cause of Action -- Bad Faith

44. The United States realleges the allegations contained in paragraphs 1 through 40, and incorporates those allegations herein.

45. Continental unreasonably and in bad faith refused to honor its obligations to the United States as an additional or implied insured under the policy. Continental's actions constitute a series of repeated acts of bad faith on the part of Continental, in violation of A.S. 21.36.125.

## Fourth Cause of Action -- Breach of the Covenant of Good Faith and Fair Dealing

46. The United States realleges the allegations contained in paragraphs 1 through 42, and incorporates those allegations herein.

47. Continental's refusals to honor its obligations to the United States as an additional or implied insured under the policy constitutes a violation of the implied covenant of good faith and fair dealing which exists as a matter of law in every policy of insurance issued within the State of Alaska.

48. Continental breached the covenant of good faith and fair dealing by, among other actions, (1)obtaining a last minute legal opinion just to "paper the file" and for the main purpose of denying the claim and (2) unreasonably delaying its response to tenders by the United States.

## Fifth Cause of Action -- Unfair Claims Settlement Practices

49. The United States realleges the allegations contained in paragraphs 1 through 45, and incorporates those allegations herein.

50. Continental engaged in unfair claims settlement practices in violation of A.S. 21.36.125 by, among other actions, failing to acknowledge and act promptly upon communications regarding a claim arising under an insurance policy, and by failing to attempt in good faith to make a prompt and equitable settlement of claims in which liability was reasonably clear, as well as other unfair claims settlement practices as yet unknown to the United States.

**Sixth Cause of Action – Continental Casualty Is Liable for Its Own Acts and Those of Its "Mere Instrumentality" or "Alter Ego" Continental Insurance Company**

51. The United States realleges the allegations contained in paragraphs 1 through 50, and incorporates those allegations herein.

52. Continental Insurance Company has no employees. Continental Casualty employees perform all physical acts of Continental Insurance. Continental Casualty is responsible for all causes of action alleged above to the same degree and extent that Continental Insurance is responsible.

53. Continental Casualty has operated Continental Insurance since on or about May 1995 as Continental Casualty's "mere instrumentality" or "alter ego." Bad faith acts since that time that are attributable to Continental Insurance are also attributable to Continental Casualty whose employees operated, managed and totally controlled Continental Insurance company and performed the acts that plaintiff has complained of . Indeed, the majority of bad faith acts that are alleged by plaintiff were performed by employees of Continental Casualty Company.

54. The two corporations have been so closely intertwined that they do not merit treatment as separate entities. For example, Continental Casualty's officers and directors also hold the same positions at Continental Insurance. Continental Insurance cannot do business unless that business is conducted by employees of Continental Casualty. Indeed, without employees, Continental Insurance cannot act independently of Continental Casualty and therefore has no individual status.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that:

1.  Judgment be entered for the United States and against the defendants on this complaint in the amount of two million eight hundred thousand dollars and no cents ($2,800,000.00), with legal interest from the date of payment of the Wilson claim by the United States, plus all costs and reasonable attorney fees associated with the of defense the claims asserted by Lori Dee and Marilyn Wilson;

2.  Judgment be entered for the United States and against the defendants on this complaint for all costs and reasonable attorney fees associated with the continuing defense of the claims asserted by Blanche Kallstrom;

3.  That plaintiff United States be awarded its costs of prosecuting this lawsuit, including all reasonable costs and attorney's fees;

4.  .Punitive damages resulting from the defendants' outrageous denial of coverage, defense, and indemnification to the United States, which denials were committed with malice or bad motives or reckless indifference to the interests of the United States; and

5.  Such other and further relief as the court deems just and proper.

Respectfully requested this 7th day of April, 2006, in Anchorage, Alaska.

DEBORAH M. SMITH
Acting United States Attorney

s/Richard L. Pomeroy
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov
AK #8906031

s/Richard R. Stone, Sr.
Trial Attorney
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Phone: (202) 616-4291
Fax: (202) 616-5200 fax
E-mail: richard.stone@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2006,
a copy of the foregoing
THIRD AMENDED COMPLAINT
was served electronically on Gary A. Zipkin
and William Urquhart, and via U.S. mail on

Rebecca L. Ross
Ross, Dixon & Bell, LLP
55 West Monroe Street, Suite 3000
Chicago, IL 60603-5758

s/ Richard L. Pomeroy