DEBORAH M. SMITH
Acting United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov

RICHARD R. STONE, SR.
Trial Attorney
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Phone: (202) 616-4291
Fax: (202) 616-5200
E-mail: richard.stone@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>   v.<br><br>THE CONTINENTAL CASUALTY COMPANY, dba THE CONTINENTAL INSURANCE COMPANY,<br><br>     Defendant. | Case No. 3:98-cv-285-JWS<br><br>**UNITED STATES' OPPOSITION TO CONTINENTAL'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PUNITIVE DAMAGES AT DOCKET 231** |

## INTRODUCTION

Defendant, Continental, has moved for partial summary judgment, claiming that the United

States cannot obtain punitive damages in this case as a matter of law, because 1) the United

States tender of coverage was "novel"; 2) Continental reasonably relied on the advice of coverage counsel; 3) coverage was "fairly debatable"; and 4) Continental did not act with reckless indifference.  Continental also argues that an award of punitive damages against it would be unconstitutional because its conduct is not reprehensible, as defined in <u>State Farm v. Campbell</u>, 538 U. S. 408 (2003).  Continental finally argues that the Court has already awarded the United States punitive damages by virtue of its ruling that policy limits do not apply.

Though the standard for finding punitive damages is more stringent than that required for a finding of bad faith, Defendant ignores the various acts that have been determined to constitute bad faith and focuses on the original denial of coverage.  This denial is not the sole act that the United States contends merits punishment.  Further, Continental does not raise any new material facts or arguments nor does it raise genuine issues of material fact that defeat anything already decided in this case.  As discussed herein, Continental cannot prevail through relitigation of facts and law of the case.  Further, it has raised no new appropriate supporting probative evidence.


FACTS

After this Court granted the United States' motion for summary judgment on the issue of coverage and found that Continental had acted in bad faith, see Dkts. 57 and 61, the United States moved to amend its complaint to add a cause of action for punitive damages.  Dkt. 69.  The United States argued that:

> On April 6, 1994,  William Hutson, Claims Director, Continental Insurance Healthcare (now merged with CNA), wrote to George Ertle, Director of Liability Claims for Continental, during the instant tender of defense process, stating "[w]e do have other sources of contribution . . . possibly under the Continental CBP policy.  No one is aware of the CBP policy as of this date except myself and John Kurtz, resident adjuster in Spokane, Washington."  Yet, knowing of this policy and of the policy that actually covered premises liability at Jake's Place, Hutson instructed attorney James Friderici, whom he had hired to represent BBAHC, to ignore those policies and notify the United States Attorney's Office that Jake's Place was not a covered premises under the tendered policy.  Both Friderici and Hutson knew that the United States had incorrectly tendered under an earlier policy that did not include Jake's Place.  Friderici also had recommended that Continental not make any reference to policy HMA 9500648-5.  This is the policy that the Court later held actually provided coverage of

the United States. Friderici's letter admits that he knew of this policy. As BBAHC's counsel, he also knew that it specifically covered Jake's Place by name, because he had been involved in the earlier state law action on that policy, which action was dismissed so that the plaintiff in Wilson could pursue the case against the government in federal court. CNA and counsel for BBAHC (hired by CNA) ignored the appropriate policy and rejected tender of the defense, knowing that other policies existed that covered the premises and required acceptance of the tender and a defense by CNA.

In addition, Hutson knew that Friderici had a conflict of interest, but relied on him anyway for the coverage analysis. Indeed, on May 10, 1994, Friderici had written to Hutson, explaining "once we represent the insured, we can no longer advise you on coverage. See Continental Insurance Co. v. Bayless & Roberts, Inc., 608 P.2d 281, 294 (Alaska 1980)." At that time Friderici agreed to keep Continental informed anyway even though he was employed by Continental to represent the insured (BBAHC), which had contracted to run the health care facility for the United States. Friderici continued to advise Continental, even after notifying Hutson again of the conflict when it was raised by Robert Stewart, BBAHC's outside corporate counsel.

Dkt. 69 at 6-7. Continental did not oppose the motion. Dkt. 70. The United States' motion to amend was granted, Dkt. 69-2, and the amended complaint was filed. Dkt. 71.

## DISCUSSION

### A. STANDARDS FOR SUMMARY JUDGMENT

Less than a year ago, this Court had an opportunity in this very case to set out the standards that must be met in a summary judgment motion.

Under Federal Rule of Civil Procedure 56(c) summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Facts supporting and opposing motions for summary judgment must be based on admissible evidence in affidavits, depositions, and discovery responses. In response to a properly supported motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." However, there is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.

United States v. CNA Financial Corp., 381 F.Supp.2d 1088, 1091 (D. Alaska 2005)(citations omitted). In the present case, Continental is not entitled to judgment as a matter of law, rather there are triable issues for a jury to decide.

## B. AUTHORITY FOR PUNITIVE DAMAGES

In Alaska, to support punitive damages, "the wrongdoer's conduct must be 'outrageous, such as acts done with malice or bad motives or reckless indifference to the interests of another.'" State Farm Fire & Casualty Co. v. Nicholson, 777 P.2d 1152, 1158 (Alaska 1989) (quoting Sturm, Ruger & Co., Inc. v. Day, 594 P.2d 38, 46 (Alaska 1979), overruled on other grounds, Dura Corp. v. Harred, 703 P.2d 396 (Alaska 1985)). Punitive damages serve two purposes: "to punish the wrongdoer and to deter the wrongdoer and others like him from repeating the offensive act." State Farm Mut. Ins. Co. v. Weiford, 831 P.2d 1264, 1266 (Alaska 1992). The availability of such damages "turn[s] on the wrongdoer's motive, state of mind, and degree of culpability." Alyeska Pipeline Serv. Co. v. O'Kelly, 645 P.2d 767, 774 (Alaska 1982). They are a harsh remedy and "not favored in law [and]...are to be allowed only with caution and within narrow limits." Alyeska Pipeline Serv. Co. v. Beadles, 731 P.2d 572, 574 (Alaska 1987). By statute "[p]unitive damages may not be awarded in an action . . . unless supported by clear and convincing evidence." AS 09.17.020; See, Lee Houston & Assocs. v. Racine, 806 P.2d 848, 856 (Alaska 1991) ("The plaintiff must prove by clear and convincing evidence that the defendant's conduct was outrageous, such as acts done with malice, bad motive or reckless indifference to the interests of another."). The plaintiff must establish at a minimum "reckless indifference to the rights of others, and conscious action in deliberate disregard of those rights." State v. Haley, 687 P.2d 305, 320 (Alaska 1984).

Alaska has adopted the definition of "reckless disregard" set forth in the comments to Restatement (Second) of Torts § 500 (1964), which state at comment (g) that reckless misconduct differs from negligence which consists of "mere inadvertence, incompetence, unskillfulness," because reckless misconduct requires a conscious choice of a course of action. Hayes v. Xerox Corp. 718 P.2d 929, 934-35 (Alaska 1986). Actual malice is not required; it may be "inferred if the acts exhibit 'a callous disregard for the rights of others.'" State Farm Mut.

Auto. Ins. Co. v. Weiford, 831 P.2d 1264, 1266 (Alaska 1992) (quoting, Alyeska Pipeline Serv. Co. v. O'Kelly, 645 P.2d 767, 774 (Alaska 1982)).[1]

## C.    CONTINENTAL IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW

Continental's truncated arguments completely misunderstand the United States' claim for punitive damages. The claim for punitive damages is not based solely on Continental's rejection of the four tenders of defense. The United States contends that several acts of Continental subject it to punitive damages. These are as follows:

- Continental failed to provide prompt and reasonable explanations for its denials of coverage and deliberately misconstrued the facts surrounding the purchase of coverage.
- Continental knowingly allowed a conflicted attorney to represent its interests to the detriment of its insured.
- Continental knowingly and deliberately concealed coverage from its insured.
- Continental repeatedly and deliberately failed to reply to tenders of defense by its insured.
- Continental compelled its insured to litigate for a recovery that Continental knew it owed its insured.
- Continental failed in its duty to defend and to indemnify its insured.
- Continental's knowledge of its wrongdoing toward its insured is demonstrated by its

---

[1] In state court, a plaintiff may recover punitive damages even though it did not ask for punitive damages in the complaint at any time. In Alaska, as in federal court, the decision whether to allow a claim for punitive damages is committed to the discretion of the trial court. Alaska Marine Pilots v. Hendsch, 950 P.2d 98, 111 (Alaska 1997). In Hendsch, plaintiff neither pled punitive damages nor gave any indication of an intent to seek punitive damages (nor even offered a jury instruction on punitive damages) until two days before trial. The court held that the trial court did not abuse "its broad decision in allowing Hendsch to present his punitive damages claim to the jury. We will not reverse such a decision unless we have a 'definite and firm conviction upon review of the entire record that the court was mistaken.'" The court reversed and remanded the punitive damages award on other grounds – improper instruction on burden of proof. (Quoting Vertecs Corp. v. Reichhold Chems., Inc., 671 P.2s 1273, 1277 (Alaska 1983).

own Claims Handling Guidelines, Best Practices, and the testimony and documents of
its employees.

See Dkt. 285, Joint Statement of Issues.

The importance of the duty to defend, which is only touched on in passing by Continental,
is highlighted in Tibbs v. Great American Insurance Co., 755 F.2d 1370 (9th Cir. 1985. In Tibbs,
punitive damages were awarded for the insurer's breach of its duty to defend, even though there
was no duty to indemnify since the jury entered a defense verdict.

The first seven pages of Continental's brief are not referenced to factual statements. Thus,
they are contested and impossible to accept as "Additional Facts Revealed in Discovery" or facts
which "Preclude Punitive Damages." Dkt. 231 at 2-7. Indeed, they are based on hearsay, are
general in nature, misstate the facts and constitute summary, opinion and argument. Further,
Continental often exaggerates. Continental's brief in its entirety suffers from its earlier briefing
deficiencies: 1) It states "subjective declarations of intent expressed during ongoing litigation
[which] are not probative of a party's reasonable expectations absent some relevant extrinsic
evidence." Dkt. 61 at 15. Indeed, as in the past "Continental has not pointed to any relevant,
admissible, extrinsic evidence. . . ." that creates any genuine issue of material fact. See, Id.;
Fed.R.Civ.P. 56. That said, plaintiff states that the eight bulleted contentions beginning on page
three are contested as follows:

1. Continental contends that the government contracting officer "never thought the
Government was covered under the policies in any way." Dkt. 231 at 3. That is a statement of
her opinion, not a statement of fact. There is no evidence that she is qualified to speak to the
insurance law of Alaska and/or to interpret the relevant policy in this case under implied insured

law of Alaska. Her opinion is not relevant to the interpretation of the policy under Alaska Law. The United States is an implied insured as a matter of law. See Ninth Circuit opinion Dkt. 147; Dkt. 166. The contracting officer's opinion has no probative value on that decided issue, and Continental does not demonstrate that it does. Her opinion also has no probative value regarding why Continental rejected the government's tenders of defense. Her opinion about coverage stated thirteen or more years later does not demonstrate that Continental had a reasonable basis in any way to deny a defense or coverage. Further, all other alleged facts in that paragraph address whether the United States was a "named" insured in the policy not whether it was an "implied" insured. As this Court has held, the claim here is not about a named insured, but is about an implied insured. Dkt. 61 at 17-18. The alleged facts also have no probative value as to why Continental did not exclude coverage of the United States. See Dkt. 61 at 7-8.

2. The government attorney's statements to the contracting officer in the "early- to mid-1990s" are general in nature and based on hypotheticals. If those counsel told the contracting officer that it was not clear whether the "FTCA would cover all claims when Bristol Bay complained that it was unclear what the FTCA would cover and what it would not," they were providing advice to her based on hypothetical liability. In the instant case involving Lori Wilson's injury, there is no question that the FTCA covered the risk, but Continental continued to take a premium and to raise that premium even after the ISDEA eviscerated Continental's risk. Dkt. 147 at 4, Dkt. 61 at 6-9. That paragraph also has no probative value as to why Continental did not reduce its premium and exclude the FTCA coverage after the FTCA began to apply three years before the effective dates of the relevant policy here.

3. The opinion of the United States 30(b)(6) witness as stated here does not address facts

USA v. The Continental Casualty Company
Case No. 3:98-cv-285-JWS                    -7-

that are a part of this litigation. Dkt. 231 at 3. The United States does not contend that BBAHC could not have purchased a policy to cover acts of its employees who were not carrying out the 638 contract. Continental also could have written a policy that would have covered only those acts and that would have excluded any acts covered by the FTCA. Further, the statement is general in nature. Specifics are required to support summary judgment.

4. Continental's contentions that Bristol Bay purchases insurance now at a higher premium, thirteen years later, are not uncontested factual allegations that relate to facts of this case. Continental counsel and its proffered expert, Mr. Lohr made this argument at Mr. Lohr's deposition. Counsel for Continental and Mr. Lohr agreed to provide the policies upon which they relied, but to this date have not done so. If today's policies exclude the United States, these have been negotiated between BBAHC and the insurer under today's dollars, and with the knowledge of the law of this case, and not 1990-93 dollars. Evaluating today's rates on a different policy does not add probative evidence to the inquiry. Further, Continental has cited no law that requires the United States to compare today's policy, at today's costs, to the 1990-93 policy to show that Continental in 1993 assumed no increased risk and wrote a policy back then that covered a class to be benefitted by the policy. That comparison has been timely made and it is now law of the case that the United States is an implied insured. Dkt. 147.

5. That the United States' original tender cited "no case 'holding that the United States qualified as an implied additional insured under a liability policy,'" does not address the fact that the United States' tenders cited Stewart Smith Haidinger v. Avi-Truck, Inc., 682 P.2d 1108 (Alaska 1984), which was the controlling law and is still valid 22 years later. Further, the opinion of a "Bristol Bay's lawyer, that "it 'was all virgin territory,'" does not state a fact and has

no probative value in this case. See Dkt. 231 at 4. This cannot excuse Continental for rejecting the tender of defense and coverage without finding a single contrary case to Avi-Truck. The government's tender letter stated law that has been relied on by both the Ninth Circuit and this Court for the implied insured status of the United States. Additionally, after this Court ruled in September 2001 that the United States was an implied insured, the United States retendered Kallstrom. Dkt. 61; Dkt. 227. It was no longer "virgin territory" or a "novel" issue, yet Continental did not accept tender again.

6. This paragraph is argumentative, opinionated and not factually based. First, Continental has not provided all attorney client privileged materials that relate to this case. In the John Treptow deposition Mr. Zipkin referred to a letter from Mr. Treptow to Ms. Erin Finn which Continental would not produce to the United States even though it allegedly related to the Kallstrom appeal retenders of defense. Ex. 1. Further, Continental knew that its first counsel was conflicted, continued to rely on his advice, and joined with him in the knowing improper concealment of the relevant policy. Dkt. 57 at 21-25. It also apparently did not give its second counsel all the facts, or mislead him about policy premiums. Id. Further, regarding the Kallstrom appeal retender on October 30, 2001, counsel for Continental did not rely on advice of outside counsel but failed to accept tender on her own. Dkt. 227. She may not have rejected contrary advice, but it is a fact that she knew of the Court's September 18, 2001 opinion when she knowingly failed to accept the tender. Id. None of Continental's acts show a "good faith" or "reasonable reliance" on advice of counsel.

7. It is already a decided fact of this case that Continental's counsel did not adequately investigate the law or the facts of this case. Dkt. 57 at 21-25. That the government did or did not

USA v. The Continental Casualty Company
Case No. 3:98-cv-285-JWS          -9-

investigate Continental's or Bristol Bay's intent is argumentative and has no probative value in favor of Continental. United States' counsel was correct in analyzing Avi-Truck's coverage of this case and the policy. That is both fact and law because this Court and the Ninth Circuit have confirmed the United States' claim against Continental under the policy. The current declarations of Friderici and Stowers provided by Continental do not contend that the outside counsel did any research beyond evaluating the cases cited by the United States. See Friderici and Stowers affidavits cited at Dkt. 231 p. 10, nn. 15 & 16.

8. This paragraph is almost a complete exaggeration. Continental's contention that it "has paid its policy limits (plus interest and attorney's fees) under the Bristol Bay policy," is not accurate. See Dkt. 231 at 4. It has not paid the attorney's fees that it owes to the United States for having to litigate for that alleged policy limits recovery, yet it owes the fees under the policy. See Dkt. 228.

The United States has contended and still does that under Lloyds & Institute of London Underwriting Cos. v. Fulton, 2 P.3d 1199 (Alaska 2000), both policies that were tendered apply and the full settlement with Lori Wilson is within policy limits. See Dkts. 76 and 87 at 5. Further, Continental has acted in bad faith regarding this payment. See Dkt. 267, Ex B, Senn expert report 18-20. Continental clearly owed the policy limits of $1 million as of the Ninth Circuit's decision in this case on October 20, 2004, but it took almost fourteen months, to December 13, 2005, to pay. It did not pay that amount until after the United States informed it in the United States' expert witness report, served November 22, 2005, that it had become aware that forcing the United States to continue to litigate for that amount was a bad faith act. The United States is not "today in the same position it would have found itself if Continental had

accepted its tender immediately." Dkt. 231 at 4. Further, there is no stipulation regarding

"economic damages from Continental's tender rejections." See, id. Continental later makes their

argument improperly citing partial discussions in an effort to contend that stipulations exist that

do not. See Dkt. 231 at 17, n. 47. Government counsel's final comment on the stipulation is not

addressed in Continental's cite to the discussion of counsel regarding stipulations: "MR.

STONE: "We can work out a stipulation on that, I believe." Ex. 2, Senn dep. at 210 ln 8 - 211,

ln 7. The parties never did work out the stipulation. At the Lindquist deposition, no stipulation

occurred. Ex. 3, Lindquist dep. at 105 ln 20 - 107 ln 2.[2]

Continental's brief continues from that point to be riddled with the same problems. Dkt.

231 at 5-7. It piggybacks on its earlier statement of facts that amounts to non probative or

contested new "facts," by stating that "[t]hose undisputed facts, along with the facts previously in

the record and discussed below, establish that punitive damages cannot be awarded in this case."

Dkt. 231 at 5. Again, Continental exaggerates and promises far more than it can deliver.

First, Continental contends that the novelty of the claim defeats punitive damages. The

United States' claim was brought in Alaska under an existing Alaska Supreme Court case. The

tender of defense spelled out the claim and the government's reasoning to Continental. The

tender was not cobbled together from obscure concepts without legal support. The Ninth Circuit

has confirmed that the cited case is the law that governs the United States' confirmed implied

insured status. That also is now confirmed in the same way by this Court. Further, this Court

---

[2] This has been a serious problem throughout the case: "as discussed in the Court's
preliminary order at docket 57, Continental's motion papers include incorrect citations, absent
citations ( conclusory statements for which Continental provided no citation), and
misrepresentation or half truth." Dkt. 61 at 4.

has already held that there is bad faith and sufficient evidence that requires a trial to the jury on punitive damages. Dkt. 166 at 17. Continental provides nothing new or probative that supports a denial of the United States' right to present these facts to the jury.

The United States' has presented facts in this case that a jury could conclude establish sufficiently outrageous acts on the part of Continental Casualty and Continental Insurance to establish a right to punitive damages. Those facts are presented in the United States' insurance expert report, [Dkt. 267 at Ex. B], in its motions to have the previously decided facts and issues read to the jury, Dkts. 227 & 228, in its motion for permission to file a third amended complaint, Dkt. 274, in its bad faith summary judgment motion on the Kallstrom retender, Dkt. 227, and in its opposition to Continental Casualty's partial summary judgment motion to be dismissed from the case, Dkt. 274.

Continental again states that it reasonably relied on coverage opinions from outside counsel. Dkt. 231 at 5. Continental, however, does not cite any case law and makes no effort to demonstrate how reliance on the opinion of outside counsel in the instant case was reasonable and in good faith.

Continental's attempt to get reconsideration, through the vehicle of an allegedly dispositive motion, in this case on arguments previously rejected should not be countenanced. With nothing probative new, it attempts to reargue the fairly debatable contention that this Court has already rejected. Id.; see Dkt. 166 at 13-17. In addition to reliance on the Court's opinion, the United States relies on its arguments made at docket 160. It is still a fact that no judge has disagreed with this Court's holding that Continental had the duty to defend, with or without a reservation of rights. Dkt. 166 at 17. That requirement would also be true if coverage were fairly debatable.

The insurer should not be able to reject the duty to defend before the issue is litigated and decided. See Tibbs v. Great American Ins. Co., 755 F.2d 1370 (9th Cir. 1985) (punitive damages awarded for breach of duty to defend without indemnification in case where insured had defended himself and won.) Further, in the instant case the United States has moved for summary judgment on bad faith for Continental Casualty's failure to accept retender of the Kallstrom appeal, thus again knowingly breaching the covenant of good faith and fair dealing after Continental knew that the United States was an insured. Dkt. 227. "The insurer's duty to defend is a continuing duty that may be assumed anytime before final judgment," Tibbs, 755 F2d at 1375.

Additionally, Continental contends that the United States was not damaged, but then it states that "If anything, Lori Wilson benefitted when Bristol Bay's counsel appointed by Continental obtained a ruling that the FTCA applied because she settled with the United States for almost three times policy limits." Dkt. 231 at 6 and 17. In other words, defendant admits that if Continental had defended this case, arguably it would have cost less to settle than what the United States had to pay. Continental obviously knows that these cases can settle for less when there is a policy with limits in effect. Regardless, Continental's contention that the United States has stipulated that it was not damaged in any way by Continental's conduct is not true.[3] See Tibbs, supra. Continental's constitutional argument fails for many of the same reasons already addressed. See Dkt. 231 at 6. That argument is covered in more detail, infra. Other facts are not as Continental states and Continental exaggerates the effects and applicability of the law. The

---

[3] See discussion among counsel regarding stipulations during Senn and Linquist deposition, supra.

United States also has not "already obtained a 'punitive award' that more than matches its

compensatory damages." See Dkt. 231 at 7.    That argument is addressed in more detail, infra.

Continental's "Statement of Facts" regarding punitive damages is contested. It is

impossible to sort out the alleged new facts that purportedly strengthen Continental's argument

from Continental's rehash of arguments that have already been rejected as unsupported by fact.

See Dkt. 231 at 7, n.1.[4]

Facts related to Continental's claim that the government "told Bristol Bay it was uncertain

whether the FTCA applied," and that it did not intervene in state court, and that it was initially

opposed to advancing payments to the Wilsons are not probative of the issue of Continental's

failure to defend or to indemnify. See Dkt. 231 at 7-8. Continental does not show how they are

probative.

Continental contends that it should defeat bad faith and punitive damages in part because

the United States tendered under an unsettled implied insured doctrine. Dkt. 231 at 9. This

attempt to reargue an area already addressed and rejected by this Court  should not be

---

[4] Footnote 1 to Continental's brief suggests that the Court earlier held that bad faith was enough to pursue punitive damages. The Court actually stated:

> Punitive damages may be awarded for conduct that is outrageous, including acts done with malice or bad motive, or that evidences reckless indifference. Continental's argument that the United States is not entitled to punitive damages mirrors its bad faith argument, *i.e.*, the debatable issue of coverage under an unsettled implied additional insured doctrine. In Continental's view, it necessarily follows that the denial of coverage was not outrageous as a matter of law. The court rejects this argument for the same reasons as stated above on Continental's bad faith arguments. Based on the facts of this case, a jury could find that Continental's rejection of the United States' tenders was outrageous or done with reckless indifference.

(Footnote omitted.) Dkt. 166 at 17.

countenanced. See Dkt. 166 at 17. Regardless, the United States tendered under a valid Alaska

Supreme Court case. Without finding a single case to the contrary, Continental refused the

tender. The theory stated by the United States is the same theory that the Ninth Circuit later held

creates implied insured status for the United States under the Continental policy.[5] Rather than

accept tender of the defense with a reservation of rights, Continental concealed a policy, rejected

the tender without a proper evaluation either legal or factual, and used a conflicted attorney that

had already represented BBAHC regarding the action of its employees whose employees were

known by both the attorney and Continental to be employees of the United States, as a matter of

law. It also apparently misrepresented the premiums to its replacement counsel. Further, after

Continental knew that the United States was an implied insured, it rejected the retender of

Kallstrom.

Regarding the claim of reliance on counsel made at docket 231 at 10 and 23-26, the facts

are not as Continental contends. Counsel Friderci has already been held to have performed an

inadequate investigation. Dkt. 57 at 21-25. Counsel Stowers also has been held to have done an

inadequate investigation or was misled by Continental. Id. at 24-25. In addition, the documents

cited by Continental, along with these earlier holdings do not support that Continental's reliance

on counsel was either reasonable or in good faith. See Dkt. 231 at 10, nn. 15 and 16; see

Wheeler v. State, 659 P.2d 1241, 1252-54 (Alaska Ct. App. 1983) (good faith reliance is the

standard – by analogy to securities litigation reliance on counsel). The letter from Friderci to

Hutson (at Dkt. 233, ex. C, p. 4, January 20, 1995) specifically recommends, and Continental

_____

[5] The opinion of Robert Stewart has no probative value here. See Dkt. 231 at 10.

USA v. The Continental Casualty Company
Case No. 3:98-cv-285-JWS                    -15-

then instructs him, that rejection of tender not refer to the relevant policy that the Ninth Circuit has now held is the policy the United States is held to be insured under. See Dkt. 231 at 10, n.14; letter Friderci to Hutson, January 20, 1995 at 4; Friderci affidavit Ex. C to Dkt. 231 (His affidavit also does not state that he did any legal research). The Stowers letter to Roosa dated June 19, 1997, also proves lack of good faith or reasonableness. Ex. B to Stowers affidavit at Dkt, 234 (His affidavit does not state that he did any legal research; his letter to Roosa cites no case contrary to Avi-Truck; and his letter to Roosa claims that the policy was issued on a reduced premium). This Court has decided these issues against Continental. Dkts. 57, 61 and 166. The United States has moved this Court to read into the record the facts and issues already decided on liability and bad faith. Dkt. 247 & 248. Continental in this entire brief has raised no genuine issue of material fact, even with its claim of new evidence, which evidence clearly has been available to Continental all along, that contradicts anything already decided.. See Dkt. 231. It also does not raise any material fact that establishes the right to avoid trial on punitive damages. Now, however, Continental's latest law firms seek another bite at the apple. Continental's affidavits prepared at this date, eight to ten years later, do not provide any contemporaneous evidence that shows that it acted in reasonable or good faith reliance on counsel.

Continental's arguments based on Avi-Truck and the intent of the parties were rejected by this Court for the first time in September 2001 and again in July 2005. See Dkt. 231 pp. 11-13 and p. 25; Dkt. 57 and 61; and Dkt. 166. They again raise no genuine issue of material fact or law regarding the application of Avi-Truck. The issue of implied insured status is settled and has been decided in the Ninth Circuit.

In Continental's "Statement of Facts" section, the references are not specific enough and

the facts are so mixed with argument, opinion, hearsay, testimony created for the litigation rather than contemporaneous evidence, improper summary, generality, statements and arguments contrary to the Ninth Circuit law of the case, and non probative hyperbole, that it cannot be sorted out. It is, however, also obvious that this is an attempt to relitigate decided issues without any new probative evidence and by recapping rejected arguments. This approach cannot create summary judgment for Continental.

Continental's reargument of the settled issue that the insurance policy premiums were sufficient to purchase insurance for the acts also covered by the FTCA is not supported by any new material fact or new dispositive argument.. See Dkt. 231 at 14-17. Continental originally took a full premium to provide full coverage. The FTCA then began to apply, reducing Continental's risk, but Continental increased the premiums. Dkt. 57 at 7-10. Nowhere in this brief does Continental say that this is not so. They also provide no new probative evidence that the policy as actually written and paid for was a "gap" or "wrap around policy" that covered only acts not covered by the FTCA.

As to Continental's contention that the United States has been made whole, even Continental's payment of $1,988,646.99 is short the attorney's fees that are owed under Alaska Rule 82 as required by the insurance contract. See Dkt. 228. It is not a fact that Continental paid this amount "[b]ased on the Ninth Circuit ruling." See Dkt. 231 at 17. Continental paid after the United States informed it through the insurance expert report served on November 22, 2005, that Continental was in continuing bad faith for non payment. The claim that "the United States has stipulated it suffered no additional damage," is false. See Dkt. 231 at 17. That has been addressed, supra. Continental's similar contention "the United States has stipulated that it

USA v. The Continental Casualty Company
Case No. 3:98-cv-285-JWS                    -17-

suffered no additional economic damages from Continental's tender rejection," is false. Dkt. 231 at 4. This is also addressed, supra. Indeed, Continental admits that "If anything, Lori Wilson benefited [sic] when Bristol Bay's counsel appointed by Continental obtained a ruling that the FTCA applied because she settled with the United States for almost three times policy limits." Dkt. 231 at 17. This is an acknowledgment by Continental that cases covered by insurance tend to settle within policy limits.

Now, turning to the statement that "These undisputed facts preclude an award of punitive damages. . ." Dkt. 231 at 17. Of the two purported statements of fact, neither is a statement of fact. Neither statement raises new probative material facts. Each set mixes in argument, hearsay, opinion, hyperbole, and law. Continental apparently expects the reader to parse the sentences in an attempt to elicit what is a fact that is being relied on. This is totally improper.

Continental also again contends that "[j]ust because this Court concluded that Continental acted in bad faith when it denied the Government's tenders does not necessarily mean the Government can reach a jury on its punitive damages." Dkt.231 at 18-20. Although the Court has held that the bad faith already decided to is enough to indicate a jury trial, the United States does not rely only on the facts already decided. Dkt. 166 at 17. It relies on the facts cited in its insurance expert witness report [Dkt. 267 at Ex. B], those stated in the proposed third amended complaint, Dkt. 274, those presented in opposition to Continental Casualty Company's motion for partial summary judgment, Dkt. 274, the facts and issues already decided by this Court, Dkts. 247 & 248 and those presented in the United States' motion regarding retender of Kallstrom. Dkt. 227.

Continental again argues that this was a novel case and therefore it should not be tried to a

jury on punitive damages. Dkt. 231 at 20-23. It is not novelty that has caused Continental to act outrageously. In addition to all other bad acts alleged after this Court ruled in September 2001 for the United States on the implied insured status and bad faith failure to defend, United States counsel retendered the Kallstrom appeal to Continental and that retender was never accepted. See Dkt. 227. The issue of implied insured status, and also that the failure to defend had occurred in bad faith, had already been decided against Continental in this very case. There was no novelty in the issue at that point. Yet, Continental still did not accept tender. Whether that act alone showed malice, or reckless indifference or outrageousness ought to be decided by the jury. The United States has moved for summary judgment contending that the failure to accept the retender amounts to bad faith as a matter of law. Dkt. 227. After September 2001 and until the Ninth Circuit decided Kallstrom, the law of the case was settled and "there was authority clearly establishing the United States' rights" under the policy. See Dkt. 231 at 23. Further, the United States has cited facts that could be held by a jury to indicate punitive damages. Dkt. 166 at 17. Consequently, Chizmar v. Mackie, 896 P.2d 196 (Alaska 1995) , State v. Haley, 687 P.2d 305 (Alaska 1984) and any other precedent cited by Continental provide no bar to the United States' punitive damage claim. See Dkt. 231 at 23.

Continental's reargument of the "fairly debatable" issue also adds nothing new. Dkt. 231 at 26-30. the United States again relies on the law of the case, and its earlier brief on this issue. The United States has cited enough specific facts in the documents and motions that it relies on above to defeat any claim by Continental that the United States should not be permitted to present to a jury that Continental acted with reckless indifference, malice, outrageousness, etc. See Dkt. 231 at 30-32. Continental's reargument of failed positions that it has taken earlier in

this case and in its brief, Dkt. 231, do not support summary judgment with specific material facts

about which there is no genuine issue. The brief does not provide material uncontested facts that

support summary judgment as required; nor, does the brief create contested issues of material

fact on issues previously decided in this case.

Finally, any contention that Continental did not act with reckless indifference on that it

"considered the government's interests before it denied the tender" is nonsense. See Dkt. 231 at

30-32. The United States' insurance expert has evaluated the issue of how Continental viewed

the government. Dkt. 267 at Ex. B, Senn Report at 18-20. Friderici called the government a

"sleeping dog," for example and considered ways to avoid having it sue. Indeed, he and Hutson

agreed to conceal the relevant policy from the United States.

D.    An award of punitive damages would not be Unconstitutional

This court has held that:

> Punitive damages may be awarded for conduct that is outrageous, including acts done
> with malice or bad motive, or that evidences reckless indifference. Continental's
> argument that the United States is not entitled to punitive damages mirrors its bad
> faith argument, i.e., the debatable issue of coverage under an unsettled implied
> additional insured doctrine. In Continental's view, it necessarily follows that the
> denial of coverage was not outrageous as a matter of law. The court rejects this
> argument for the same reasons as stated above on Continental's bad faith arguments.
> Based on the facts of this case, a jury could find that Continental's rejection of the
> United States' tenders was outrageous or done with reckless indifference.

> The failure to set forth an adequate explanation for rejecting the tenders is a
> fundamental difference between the case at bar and Hillman II. There, Nationwide's
> interpretation of the policy itself, articulated from the beginning, was the only
> reasonable interpretation; it was only the later holding of the Alaska Supreme Court
> rendering the policy provision invalid that made Nationwide's position incorrect.
> Unlike Nationwide in Hillman, which consistently expressed and stuck with a
> manifestly reasonable interpretation of the controlling provision in its insurance
> policy, Continental's interpretation of the scope of coverage and its duty to defend

USA v. The Continental Casualty Company
Case No. 3:98-cv-285-JWS                    -20-

under its policy has never been correct.

> Continental's position is further undercut by the fact that it denied a defense as well as indemnity despite the fact that its own personnel believed it had a duty to defend. Where the insurer owes a duty to defend but denies coverage, the appropriate course of action is to provide a defense under a reservation of rights, thereby preserving its right to disclaim coverage if its coverage defense is either acquiesced to by the insured or determined to be valid. Continental did not avail itself of this procedure.

381 F.Supp.2d at 1099-1100 (citations omitted).

Continental argues that an award of punitive damages against it would be unconstitutional because it is not in breach of any of the five guideposts of reprehensibility, as that term is used in State Farm v. Campbell, 538 U. S. 408 (2003). Continental, as can be seen from the above quote, however, has met at least three of the five guideposts of reprehensibility, which is more than adequate reprehensibility to sustain an award of punitive damages.

Campbell also addressed "the measure of punishment, by means of punitive damages, a State may impose upon a defendant in a civil case" and whether "an award of $145 million in punitive damages, where full compensatory damages are $1 million, is excessive and in violation of the Due Process Clause . . . ." Id. at 412. The Alaska Supreme Court has recently applied Campbell to uphold an award of punitive damages ten times the amount of compensatory damages. Casciola v. F.S. Air Service, Inc., 120 P.3d 1059 (Alaska 2005)(failure to deliver two jet engines as agreed and failure to return $25,000 deposit led to punitive damages of $300,000 on $30,000 compensatory damages. Casciola's application of federal due process as articulated in recent Supreme Court decisions is instructive for both the order of magnitude consideration as well as the application of the reprehensibility factors. Regarding the order of magnitude, the Court in Casciola stated:

In <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559 (1996) the United States
Supreme Court recognized that "[p]unitive damages may properly be imposed to
further a State's legitimate interests in punishing unlawful conduct and deterring its
repetition." <u>Id.</u> at 568. "Only when an award can fairly be categorized as 'grossly
excessive' in relation to these interests does it enter the zone of arbitrariness that
violates the Due Process Clause of the Fourteenth Amendment." <u>Id.</u> In relevant part,
<u>Gore</u> held that a punitive award may be grossly excessive where a tortfeasor lacked
notice of the magnitude of the sanction that a state might employ. <u>Id.</u> at 574-75.

<u>Casciola</u>, 120 P.3d at 1067.

The court in <u>Casciola</u> also stated:

To determine whether a tortfeasor had fair notice of the potential magnitude of a
punitive damages award, the Supreme Court has identified three "guideposts": (1) the
degree of reprehensibility of the defendant's misconduct; (2) the disparity between the
actual or potential harm suffered by the plaintiff and the punitive damages award; and
(3) the difference between the punitive damages awarded by the jury and the civil
penalties authorized or imposed in comparable cases. <u>State Farm Mut. Auto. Ins. Co.
v. Campbell</u>, 538 U.S. 408, 418 (2003) (citing <u>Gore</u>, 517 U.S. at 575).

<u>Casciola</u>, 120 P.3d at 1067. The Court stated "These guideposts are meant to provide a flexible

guide to the requirements of due process. <u>Id</u>.

The court in <u>Casciola</u> also addressed the issue of the reasonableness of applying punitive

damages.

[T]he most important indicium of the reasonableness of a punitive damages award is
the degree of reprehensibility of the defendant's conduct." <u>Campbell</u>, 538 U.S. at 419
(citing <u>Gore</u>, 517 U.S. at 575, 116 S.Ct. 1589). The Supreme Court has set out factors
to consider in measuring the reprehensibility of the tortious conduct:
'We have instructed courts to determine the reprehensibility of a defendant by
considering whether: the harm caused was physical as opposed to economic; the
tortious conduct evinced an indifference to or a reckless disregard of the health or
safety of others; the target of the conduct had financial vulnerability; the conduct
involved repeated actions or was an isolated incident; and the harm was the result of
intentional malice, trickery, or deceit, or mere accident.' Id. (citing <u>Gore</u>, 517 U.S. at
576-77).

<u>Casciola</u>, 120 P.3d at 1066-67. In the instant case the harm was in large part economic; there are

USA v. The Continental Casualty Company
Case No. 3:98-cv-285-JWS                -22-

repeated actions involved; and there is intentional malice, trickery, and deceit. Continental also meets criteria raised in Casciola for punitive damages, e.g., awareness of likelihood of harm, expectation of financial gain (taking premium with no risk), conduct has been ongoing during the litigation, attitude and conduct on discovery of the conduct, and defendant is undeterred by finding of bad faith for failure to defend (did it again in the same litigation). See Id. at 1065.

The Alaska punitive damages statute cited in Casciola also defeats Continental's argument that it cannot be punished beyond the Court entering an order that policy limits do not apply. Indeed, one of the factors to consider in determining a relevant punitive damages award is "the total deterrence of other damages and punishment imposed on the defendant. . ." 120 P.3d at 1065, quoting AS 09.17.020(c).

Campbell further offered that "The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect. It should be presumed that a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." Campbell, 538 U.S. at 419 (citing Gore, 517 U.S. at 575). Unlike Continental's assertion, Campbell does not hold that the absence of some of the identified factors renders an award of punitive damages unconstitutional. Nonetheless, Continental's actions do not lack for factors of reprehensibility.

Like the situation considered in Casciola, the factors that apply to Continental's conduct include engaging in intentional deceit, i.e., affirmatively concealing an insurance policy that provided coverage, and repeated actions, denying of both defense and indemnity to the United

USA v. The Continental Casualty Company
Case No. 3:98-cv-285-JWS                    -23-

States, even after the United States had obtained a ruling from this Court that it was an implied insured under the CGL policy.

It is a matter for the trier of fact to determine whether the actions in their entirety alleged by the United States in this case merit an award of punitive damages. Continental's conduct is not so blameless as to render any award of punitive damages a violation of constitutional due process.

E.    Compensatory damages beyond the policy limits are not punitive damages.

Continental argues that this Court has already awarded the United States the maximum amount of punitive damages it is entitled to receive when it ruled that the United States' recovery of compensatory damages is not limited to policy limits. See Dkt 87.

First, Continental's discussion of the numbers is misleading. Continental speaks of the United States' compensatory damages as being calculated on $1 million (and in fact their partial payment for $1,988,636.99, compensates the United States only for the $1 million policy), the costs it incurred defending the Wilson and Kallstrom cases, and approximately eight years of interest on those totals. The payment, however, does not include attorney's fees owed to the United States for litigating to obtain that recovery. The United States contends that this is only a part of its compensatory damages, since the award of $1.8 million above the single policy limit, plus interest, and attorney's fees fully compensates the United States for the cost of the settlement of the Wilson case.[6] That it may also serve as a future deterrent to Continental does not foreclose an additional award of punitive damages.

---

[6] The total amount of actual damages (including the December payment) is $5,553,071.21. See Dkt.228.

USA v. The Continental Casualty Company
Case No. 3:98-cv-285-JWS          -24-

Continental bases its claim that punitive damages are limited to the amount of compensatory damages on dicta from Campbell "When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." 538 U.S. at 425. The very next sentence, however, cautions "The precise award in any case, of course, must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff." Id.

The compensatory damages awarded in Campbell were $1 million for a year and a half of emotional distress. The Court, rejected a 145-1 ratio. 538 U.S. at 426. Campbell, 538 U.S. at 426. However, the Court did not go so far as to hold that because compensatory damages for emotional distress may contain an element of punishment, additional punitive damages are prohibited as redundant or unconstitutional .

Further, in Alaska Placer Co. v. Lee, 553 P.2d 54 (Alaska 1976), the Court upheld compensatory damages that included additional "harsh" damages, but did not reach punitive damages, because insufficiently outrageous conduct to support imposition of punitive damages had not occurred. Continental has argued here that it has already been punished, but Alaska law does not support that contention. Even if breaching the policy limits is considered harsh, which the United States contends it is not in this case, Continental's outrageous conduct can still subject it to punitive damages.

Nothing in the Campbell opinion or the other cases cited by Continental indicates that the Court's decision to hold Continental liable for the full amount that the United States paid to settle the Wilson claim, $2.8 million, was assessed as a punitive damage award. Continental's bad faith failure to defend makes it liable by estoppel for the full amount of the settlement paid by the

United States to the plaintiffs in the Wilson case.

## CONCLUSION

For the foregoing reasons Continental's motion for partial summary judgment should be

denied.

Respectfully requested this 11th day of April, 2006, in Anchorage, Alaska.

> DEBORAH M. SMITH
> Acting United States Attorney
>
> s/Richard L. Pomeroy
> Assistant U.S. Attorney
> 222 West 7th Ave., #9, Rm. 253
> Anchorage, AK 99513-7567
> Phone: (907) 271-5071
> Fax: (907) 271-2344
> E-mail: richard.pomeroy@usdoj.gov
> AK #8906031
>
> s/Richard R. Stone, Sr.
> Trial Attorney
> U.S. Department of Justice
> P.O. Box 888
> Benjamin Franklin Station
> Washington, D.C. 20044
> Phone: (202) 616-4291
> Fax: (202) 616-5200 fax
> E-mail: richard.stone@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2006,
a copy of the foregoing Plaintiff
UNITED STATES' OPPOSITION TO
CONTINENTAL'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
ON PUNITIVE DAMAGES AT DOCKET 231
was served electronically on Gary A. Zipkin and
William Urquhart and on

Rebecca L. Ross
Ross, Dixon & Bell, LLP
55 West Monroe Street, Suite 3000
Chicago, IL 60603-5758
(312) 759-1920
(312) 759-1939 fax

by U.S. mail
s/ Richard L. Pomeroy

USA v. The Continental Casualty Company
Case No. 3:98-cv-285-JWS                    -27-