DEBORAH M. SMITH
Acting United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail:  richard.pomeroy@usdoj.gov

RICHARD R. STONE, SR.
Trial Attorney
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C.  20044
Phone: (202) 616-4291
Fax: (202) 616-5200
E-mail:  richard.stone@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>THE CONTINENTAL CASUALTY COMPANY, dba THE CONTINENTAL INSURANCE COMPANY,<br><br>　　　　Defendant. | Case No. 3:98-cv-285-JWS<br><br>**MOTION TO STRIKE UNQUALIFIED EXPERT WITNESS TESTIMONY OF ROBERT LOHR** |

　　　Plaintiff moves to strike that part of the testimony of Defendant's expert, Robert Lohr, in which he offers opinion testimony as to the valuation of Continental's transactions in Alaska due to a lack of professional qualification to render such an opinion.

Defendants have identified as one of their expert witnesses Robert Lohr. According to Mr. Lohr's resume, he obtained a B.A. in International Relations and Economics in 1970 and an M.A. in Public Administration in 1988. His most recent employment has been as the Executive Director of the Alaska Public Utilities Commission and Director of the Alaska Division of Insurance. See Exhibit 1.

Among other things[1], Mr. Lohr has been tendered by the Defendant to provide an expert opinion that "the proper measure of punitive damages would be the Alaska earnings of Continental." Exhibit No. 2, Lohr report at 19. Mr. Lohr states that "the average annual profit for Continental Insurance Company in Alaska has been approximately $339,105." Id. Lohr explains that "[t]he premium and loss information is taken directly from Continental Insurance Company's Annual Statements filed with the NAIC [Division and the National Association of Insurance Commissioners]. However, these statements do not contain profitability information by state. The profitability information is for all insurance lines for the Alaska market for 2002. It includes investment earnings." Id. at 19-20.

One of the areas of inquiry that the United States identified in its request for a Rule 30(b)(6) witness was "A witness is requested who will state the amount of earnings, as defined in Ace v. Aetna, collected from Continental's activities in Alaska." Exhibit 3, Notice of Rule 30(b)(6) deposition, ¶ 6. Continental identified Lawrence Boysen, an employee of the Continental Casualty Company whose job titles include Senior Vice President and corporate

---

[1] The United States has moved to strike Mr. Lohr's opinions in their entirety. Generally they are based on his opinion what the law of this case should be, which opinion is diametrically opposed to the law of the case. See Docket No. 272.

controller of both CNA Financial Corporation and Continental Insurance Company. Exhibit 4, Boysen deposition at pp 8-9. In response to this inquiry, Mr. Boysen testified that "The Continental Insurance Company reports certain information to the State of Alaska that is specific, and it is primarily direct premium and loss information. The company does not routinely prepare earnings on a state basis." Id. at 25 - 26.[2] Continental's counsel at the deposition stated that

> Let me first note for the record that we objected to item 6 insofar as it sought earnings collected from Continental's activities in Alaska because there is no such calculation generally done.
> What we said was that Continental will provide a witness to discuss the information Continental has on earnings. By that we mean the direct premium, direct loss information that is contained in the documents that you have.
> And it is likely, although we haven't reached any final conclusions, it is likely that that is the type of information that we would present. So if that if you want to ask him [Boysen] about that kind of information, you're certainly welcome to do so.

Id. at 29-30. Mr. Boysen proceeded to identify what information is, and is not, provided to the State of Alaska in its annual reports. Id. at 32-34.

Despite Continental's inability to produce information about its earnings in the State of Alaska, Mr. Lohr provides a brief opinion as to Continental's annual profits in Alaska. Lohr testified that the basis for this opinion is:

> The source of the numbers that formed the basis of my opinion, as reflected in Exhibit A, page one of my affidavit, was the annual financial statements filed with the State Insurance Regulatory Agency for the domiciliary state, state where the

---

[2] Mr. Boysen added that "If one was attempting to make an approximation of what [earnings that is derived from operations in Alaska] might be by allocating country-wide amounts on a state basis using some sort of methodology, I suppose one could do that, but, again, the company does not routinely do that." Id. at 27-28. Mr. Lohr did not follow this approach in arriving at his conclusion.

> insurer was headquartered, using National Association of Insurance Commissioners, or NAIC, blank forms. Then also the NAIC profitability report by state by line of insurance. Those were my sources for my numbers. In reviewing the quota-share agreement and the other documents contained on that CD-ROM, I did not find a basis to question the numbers from the sources I just cited on Exhibit A.

Exhibit 5, Lohr deposition at 146-147. Lohr acknowledges that Continental Insurance and the many other subsidiaries of CNA have quota-sharing and pooling agreements, which "reflect re-insurance agreements by Continental Insurance Company with other companies, largely with affiliates of CNA" which are "a way to cede risk and premiums associated with the risk to other companies. It's a tool that is encouraged, if not required, by regulators to make sure that a given insurer's risk, the amount of risk it incurs, doesn't exceed its surplus, policyholder surplus." Id. at 147-48. Yet, Boysen testified that each of the direct reports from which he testified "doesn't include any assumed reinsurance, it doesn't include any impact from amounts ceded for reinsurance. And there are also several expense categories that are not included on this schedule." Exhibit 4, Boysen deposition at 33.

     Mr. Lohr is unqualified, by educational background or professional training, to offer an opinion as to Continental's profits in Alaska. Continental's own Controller was unable to answer this question because Continental does not maintain such records. Mr. Lohr, as a former insurance regulator, was not concerned with profits but rather "One of the primary considerations of insurance regulators is to ensure that – well, to make certain that the companies remain solvent. The worse thing you want is a company that has collected premiums from customers in good faith to be unable to pay a claim when it comes, because the company has gotten too far out there." Exhibit 5, Lohr deposition at 149.

     Rule 702 requires that a testifying expert be "qualified as an expert by knowledge, skill,

experience, training, or education." Fed.R.Evid. 702. Rule 702 "contemplates a broad conception of expert qualifications." <u>Thomas v. Newton Int'l Enters.</u>, 42 F.3d 1266, 1269 (9th Cir.1994). Moreover, "the advisory committee notes emphasize that Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert." Id.; see also Fed.R.Evid. 702 advisory committee's note ("In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."). <u>Hangarter v. Provident Life and Acc. Ins. Co.</u>, 373 F.3d 998, 1015 (9th Cir. 2004). There has been no showing that Mr. Lohr is qualified to testify as an expert in accounting, finance or economic analysis, which would be required of an individual who would perform the necessary research and analysis to answer questions that Continental's own vice president can not answer. See <u>United States v. Marabelles</u>, 724 F.2d 1374 (9th Cir. 1984)(district court excluded expert's testimony on ground of lack of reliability where there was no showing that witness was expert in taxation or in taxpayer's business and that he had sufficient expertise to convert loan application statistics to reflect accurately taxpayer's proper tax deductions or proper tax liability).

    Mr. Lohr's opinion concerning Continental's profits in Alaska is beyond his educational training and his professional experience. He should not be permitted to offer such testimony at trial.

    Respectfully submitted this 17th day of April, 2006, in Anchorage, Alaska.

                      DEBORAH M. SMITH
                      Acting United States Attorney

                      s/Richard L. Pomeroy
                      Assistant U.S. Attorney
                      222 West 7th Ave., #9, Rm. 253
                      Anchorage, AK 99513-7567
                      Phone: (907) 271-5071
                      Fax: (907) 271-2344
                      E-mail: richard.pomeroy@usdoj.gov
                      AK #8906031

                      s/Richard R. Stone, Sr.
                      Trial Attorney
                      U.S. Department of Justice
                      P.O. Box 888
                      Benjamin Franklin Station
                      Washington, D.C.  20044
                      Phone:  (202) 616-4291
                      Fax:  (202) 616-5200 fax
                      E-mail:  richard.stone@usdoj.gov


**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2006,
a copy of the foregoing MOTION TO
EXCLUDE UNQUALIFIED EXPERT
WITNESS TESTIMONY OF ROBERT LOHR
was served electronically on Gary A. Zipkin and
William Urquhart  and on

Rebecca L. Ross
Ross, Dixon & Bell, LLP
55 West Monroe Street, Suite 3000
Chicago, IL 60603-5758
(312) 759-1920
(312) 759-1939 fax

by U.S. mail

s/ Richard L. Pomeroy