# Transcript of the Testimony of **Lawrence Boysen**

**Date:** November 1, 2005
**Volume:** 1

**Case:** United States of America v. The Continental Casualty Company

Printed On: November 2, 2005

Ace-Federal Reporters, Inc.
Phone: 202-347-3700
Fax: 202-737-3638
Email: info@acefederal.com
Internet: www.acefederal.com

Exhibit 4

Page 1 of 12 pages



```
 1            MS. ROSS:  Yes.
 2            MR. STONE:  And -- okay.
 3            MS. ROSS:  Based on our understanding of what
 4   you're asking him and subject to the objections
 5   that have already been made.
 6            MR. STONE:  Maybe I should ask you to
 7   clarify.  Aaron Finn will speak to 1, 2, 3, and
 8   parts of 4?
 9            MS. ROSS:  Yes.
10            MR. STONE:  And so that pretty much covers it
11   then, I guess.
12            MS. ROSS:  Right.
13            MR. STONE:  To the two witnesses that you're
14   going to put up to supply answers to this.
15            MS. ROSS:  That is correct.
16   BY MR. STONE:
17       Q.   What is your occupation at this time,
18   sir?
19       A.   I am the senior vice president and
20   corporate controller of CNA Financial
21   Corporation and several other companies within
22   the holding company.
```

Exhibit 4

1    Q.   Well, CNA Financial Corporation,
2    controller or comptroller?
3    A.   With an N, controller.
4    Q.   I believe you verified Interrogatories
5    as controller for Continental Insurance
6    Corporation; is that correct?
7    A.   To my knowledge, there is no
8    Continental Insurance Corporation.
9    Q.   Is there a Continental Insurance
10   Company?
11   A.   There is a Continental Insurance
12   Company, yes.
13   Q.   Is that the company that you verified
14   the Interrogatories for?
15   A.   I am the senior vice president and
16   corporate controller of the Continental
17   Insurance Company.
18   Q.   Okay. Who pays your salary?
19   A.   I'm an employee of Continental Casualty
20   Company.
21   Q.   My question is who pays your salary,
22   does that come directly from Continental

```
 1    regards policyholders would be an amount left to
 2    shareholders if the company ceased operations;
 3    is that correct?
 4         MS. ROSS:  Object to the form.  You can
 5    answer.
 6         THE WITNESS:  If all of the estimates that
 7    are an integral part of the financial statements
 8    play out as estimated.
 9
10    BY MR. STONE:
11         Q.   And you have no reason to believe that
12    they won't play out as estimated, do you?
13         A.   At any point in time that financial
14    statements are prepared, it represents the
15    company's best estimate of what those amounts
16    are, but they are estimates.
17         Q.   Thank you for the information on the
18    net worth.
19              Let's move to question number 6 where I
20    quote that we have asked, "a witness is
21    requested who will state the amount of earnings,
22    as defined in Ace versus Aetna, collected from
```

```
 1   Continental's activities in Alaska."
 2           Are you prepared to answer that
 3   question, sir?
 4       A.   I am.
 5       Q.   Please do.
 6       A.   Which company would you like me to
 7   address?
 8       Q.   Let's start with Continental Insurance
 9   Company.  And we'll keep it that way every time,
10   if you want to do that, to make it consistent.
11       A.   Okay.  The Continental Insurance
12   Company reports certain information to the State
13   of Alaska that is specific, and it is primarily
14   direct premium and loss information.  The
15   company does not routinely prepare earnings on a
16   by state basis.
17       Q.   In your financial documents, I've seen
18   numbers like 5 million per year and 6 million
19   per year and numbers of that sort.  Do you have
20   any information as to how much of Continental
21   Insurance Company's earnings is derived from
22   Alaska?
```

4

5 of 12

1           MS. ROSS:  Object to the form.

2   BY MR. STONE:

3           Q.   For any year between 1988 and present?

4           MS. ROSS:  Excuse me.  I didn't mean to

5   interrupt you.

6           MR. STONE:  That's all right.

7           MS. ROSS:  Object to the form.  You can

8   answer.

9           THE WITNESS:  As I stated earlier, the

10  company does not routinely prepare financial

11  statements that would show earnings on a by

12  state basis.

13  BY MR. STONE:

14          Q.   Is that the same as saying that if I

15  want to present to the Court Continental's

16  understanding of the earnings that it's derived

17  from operations in Alaska, I won't be able to

18  get that information from Continental?

19          MS. ROSS:  Object to the form.  If you can

20  answer that question, you can answer it.

21          THE WITNESS:  Well, as I stated, we don't

22  routinely prepare financial information in that

1   manner.

2   If one was attempting to make an

3   approximation of what that might be by

4   allocating country-wide amounts on a state basis

5   using some sort of methodology, I suppose one

6   could do that, but, again, the company does not

7   routinely do that.

8   BY MR. STONE:

9       Q.   I kind of assumed I ought to be able to

10   ask Continental, and you're speaking for

11   Continental.  And let's stay with Continental

12   Insurance Company for the moment.

13   I kind of assumed that I would be able

14   to ask Continental what portion of their

15   earnings were derived from operations in Alaska,

16   and Continental would somehow provide that

17   information to me.  Are you able to do that

18   today?

19       MS. ROSS:  I'll object to the preamble.  You

20   can answer if you can.

21       THE WITNESS:  As I said, that information is

22   not routinely available, and I have not done a

1   special calculation to try and allocate amounts
2   on some basis.
3   BY MR. STONE:
4       Q.   All right.  Let me put this on the
5   record.  I'd ask --
6       MS. LINDEMUTH:  Can we just have a
7   five-minute break on this?
8       MR. STONE:  Yeah, absolutely.
9       MS. LINDEMUTH:  I think we need to.
10      MR. STONE:  Let's go off the record for a
11  second here.
12              (Whereupon, a short break
13               was taken.)
14      MS. ROSS:  Let me just respond on the record.
15      MR. STONE:  Okay.  Go ahead.
16      MS. ROSS:  To your request.  Let me first
17  note for the record that we objected to item 6
18  insofar as it sought earnings collected from
19  Continental's activities in Alaska because there
20  is no such calculation generally done.
21          What we said was that Continental will
22  provide a witness to discuss the information

1   Continental has on earnings.  By that we mean

2   the direct premium, direct loss information that

3   is contained in the documents that you have.

4        And it is likely, although we haven't

5   reached any final conclusions, it is likely that

6   that is the type of information that we would

7   present.  So if that if you want to ask him

8   about that kind of information, you're certainly

9   welcome to do so.

10       MR. STONE:  Okay.  Thank you.

11  BY MR. STONE:

12       Q.  We have the documents that show the

13  amounts of premiums earned and the losses on the

14  premiums in Alaska.

15       Have you done any preparation to

16  discuss that with us today regarding this

17  question number 6?

18       A.  I can walk you through the information

19  that is provided to the State of Alaska with

20  respect to direct premiums, direct losses and

21  some other direct items.

22       Q.  I would ask that you walk us through

1   Company for 2004.

2       MS. ROSS:  Can you say what page number

3   you're looking at?

4       THE WITNESS:  It is CNA 001387.  Okay.  And

5   what this schedule does is it is used to report

6   financial information to the State of Alaska,

7   and what is included on this schedule is direct

8   premiums written.

9           And what I mean direct, that means

10  actually business that is written on Continental

11  Insurance Company paper policy forms in the

12  State of Alaska.  So it is direct premiums

13  written, direct premiums earned, dividends paid

14  or credited to the policyholders on direct

15  business, direct unearned premium reserves,

16  direct losses paid, direct losses incurred,

17  direct losses unpaid, direct defense and cost

18  containment expense paid, direct defense and

19  cost containment expense incurred, commissions

20  and brokerage expenses, taxes, licenses, and

21  fees.

22  BY MR. STONE:                              4

1      Q.   Can you think of anything else that you

2  would use to determine what the net was if you

3  were trying to calculate the amount of earnings

4  for a particular year in Alaska?

5      MS. ROSS:  Object to the form.  And when you

6  say net, you mean net earnings?

7  BY MR. STONE:

8      Q.   Earning, yes.  Yes, ma'am.

9      A.   Again, this schedule reflects only

10 direct information.  So it doesn't include any

11 assumed reinsurance, it doesn't include any

12 impact from amounts ceded for reinsurance.  And

13 there are also several expense categories that

14 are not included on this schedule.

15      In addition, investment income is not

16 an element of this schedule.

17      Q.   What do you mean by the term ceded for

18 reinsurance?

19      A.   That would be outbound reinsurance.

20 That means amounts that there is risk in the

21 Continental Insurance Company and some portion

22 of that risk is ceded to a third party

```
 1   reinsurer.
 2       Q.   And would you spell that word ceded,
 3   please?
 4       A.   C-e-d-e-d.
 5       Q.   Thank you.
 6            You started this discussion mentioning
 7   that this is Continental Insurance Company
 8   information.  Does it also include Health Pro?
 9       MS. ROSS:  Object to the form.  You can
10   answer.
11       THE WITNESS:  It may include some Health Pro
12   business.  This schedule is reflected by the
13   line of -- statutory line of business, and
14   Health Pro is a business within CNA and they
15   write policies that impact several lines of
16   business.
17            So it is -- you really can't just by
18   looking at it determine what is Health Pro and
19   what is not.  But if Health Pro wrote any
20   business in Alaska on a direct basis in the
21   Continental Insurance Company in 2004, it would
22   be included in this schedule.
```

4

12   12