DEBORAH M. SMITH
Acting United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail:  richard.pomeroy@usdoj.gov

RICHARD R. STONE, SR.
Trial Attorney
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C.  20044
Phone: (202) 616-4291
Fax: (202) 616-5200
E-mail:  richard.stone@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THE CONTINENTAL CASUALTY COMPANY, dba THE CONTINENTAL INSURANCE COMPANY,<br><br>　　　　Defendant. | Case No. 3:98-cv-285-JWS<br><br>**UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO STRIKE EXPERT TESTIMONY OF DEBORAH SENN AT DOCKET 266** |

**Introduction**

The positions that Continental takes in its motion to strike Ms. Senn are completely

unsupportable.  They turn Federal Rule of Evidence 702; *Daubert v. Merrell Pharms., Inc.*, 509

U.S. 579 (1993); Federal Rule of Civil Procedure 56(d), and the law of the case doctrine upside down. Continental raises several arguments in support of its Motion to Preclude the Testimony of Deborah Senn. The crux of Continental's position seems to be that, because Ms. Senn took into account "the law of the case," and the facts of the case, *i.e.*, this Court's prior rulings, she failed to consider what Continental asserts are the "relevant issue[s]." (Dkt. 266 at 4).[1] As a result, according to Continental, her testimony will only "confuse the jury." *Id.* at 16. However, unlike Continental's "experts," Ms. Senn gave proper consideration to this Court's prior rulings on both law and fact. (*See* Dkt. 272, Motion to Exclude Continental's Experts). Unlike Continental's "experts," Ms. Senn appropriately and thoroughly analyzed the only relevant issues remaining in this case regarding punitive damages and Continental's outrageous acts that support those damages. Dkt. 266 at 1-2. Continental also contends that Ms. Senn's "opinions on [numerous other] issues are neither relevant or reliable." *Id.* at 2.[2] Continental's litany of other arguments, mirror the same unsupported reasoning and are equally unpersuasive. Continental does not contend that Ms. Senn is unqualified to act as an expert on insurance matters as designated. It also offers no legitimate justification for striking any of Ms. Senn's opinions.[3]

---

[1] This argument is, of course, contrary to *Daubert v. Merrell Pharms. Inc.*, 509 U.S. 579, 591-92 (1993) which requires the court to determine whether the proposed testimony "fits" the facts of the case. Continental knows that this argument contradicts *Daubert*. *See* Dkt. 266 at 10.

[2] Continental makes several other arguments that merely repeat the same unsupported and unpersuasive reasoning addressed by this Opposition. Those duplicate arguments are not addressed directly.

[3] A fair reading of Ms. Senn's report establishes that she has stated appropriate expert opinions and has identified the bases of those opinions as required. *See* Fed. R. Civ. P. 26. Additionally, her evidence meets all evidentiary requirements. *See* Fed R. Evid. 702 and *Daubert*.

### A. Continental's argument that, because Ms. Senn relied on the "law of the case," and the uncontested facts she failed to analyze the relevant issues, is unsupported.

Continental's core argument seems to be that, "[b]ecause 'the law of the case' is her starting point, Ms. Senn analyzes Continental's behavior as though the Government's status as an implied insured were a foregone conclusion back in 1995 when Continental decided to reject tender." Dkt. 266 at 4.  According to Continental, Ms. Senn "argues as if Continental was in possession of [this Court's] orders when it decided the tender question ten years ago. . . . That, of course, violates the basic rule . . . that an insurer's conduct must be analyzed without the benefit of hindsight, based on the facts as they existed when the relevant decisions were made." (Emphasis omitted).  Dkt. 266 at 3.  As a result, according to Continental, Ms. Senn improperly failed to analyze "'bad faith as to whether or not it was genuinely debatable as to whether or not the United States was an implied insured.'"  Dkt. 266 at 5 (quoting Senn Dep., at 107:3-15).

Continental, however, misunderstands the effect of this Court's bad faith orders, and misapplies the purported "basic rule" to the facts and binding legal precedent of this case.  In particular, it ignores the Court's orders that established bad faith as a matter of law and that twice explicitly rejected Continental's "fairly debatable" argument.  Moreover, Continental's position that experts should ignore the "law of the case" and instead, consistent with its own "experts'" reports, reevaluate issues already decided by the Court as a matter of law, is unprecedented.  Continental's assertion that accepting the law and facts of the case as a given would "confuse the jury" is simply disingenuous.  Every litigant would like to have an opportunity to relitigate every issue that it loses, but Continental has already exhausted its motions for reconsideration many times over.

Continental argues that Ms. Senn improperly considered the "law of the case" and that "[t]he fact that the Ninth Circuit found the United States to be an implied insured in 2004 (over a dissent) obviously does not show that Continental acted outrageously when it concluded otherwise nine years earlier." Dkt. 266 at 13.  In support, Continental cites four cases (one of which, *Peter v. Progressive*, is "unpublished" ) where the respective courts found an absence of bad faith despite the fact that the insurer's denied a claim made by an insured.  In each case, however, the insurer had a <u>reasonable</u> basis for denying the claim.[4]  In contrast, here, the Court has ruled that Continental "<u>lacked</u> a <u>reasonable</u> basis for denying benefits" (emphasis added) Dkt. 61 at 10.  Moreover, this Court found that Continental even "kn[ew] that no reasonable basis existed to deny the claim" ( or at least "acted in reckless disregard for the lack of a reasonable basis").  *Id.*

Unlike any case cited by Continental, here bad faith has already been established. Further it has been established by the Court <u>at the time</u> the decisions were made.  In other words, Continental knowingly did the acts complained of -- this is not a "hind sight" argument.  It is a contemporaneous argument.  While the <u>orders</u> establishing that bad faith may not have been <u>issued</u> until 2001, those orders established that, <u>as a matter of law</u>, (I) the United States was an insured in 1995 and in 1997 when Continental decided to reject tenders, (ii) Continental lacked a

---

[4] *See Miller v. Allstate Ins. Co.*, 1998 WL 937400, at *7 (C.D. Cal. 1998) ("Plaintiff fails to identify any evidence that defendant acted unreasonably or without proper cause in delaying its payment . . . ."); *Paulson v. State Farm Mutual Automobile Inc. Co.*, 867 F. Supp 911, 919 (C.D. Cal. 1994) ("As a matter of law, the conduct of State Farm in handling Paulson's claim was reasonable . . . ."); *Peter v. Progressive Corp.,* 2006 WL 438658*, *5 (Alaska 2006) ("No reasonable jury could find Progressive's denial unreasonable under these circumstance."); *Ramirez v. Transcontinental Ins. Co.*, 881 S.W.2d 818, 826 (Tex. App. 1994) ("We find that TIC conclusively established that its reliance on Dr. Rejaie was a reasonable basis for denying Ramirez's claim.").

reasonable basis for denying benefits and rejecting the United States' tenders in 1995 and 1997 when Continental decided to reject the tenders, and (iii) Continental "kn[ew] that no reasonable basis existed to deny the claim" (or at least acted recklessly) in 1995 and 1997 when Continental decided to reject tender.  Indeed, regardless of whether "Continental was in <u>possession</u> of [this Court's] <u>orders</u> when it decided the tender questions ten years ago," Continental knowingly and intentionally acted in bad faith when it rejected the United States' tenders in 1995 and in 1997, nine years ago.[5]  Obviously, it is perfectly appropriate, and even required, that an expert and a jury consider such binding legal findings -- otherwise, this Court's prior rulings are meaningless.

As for Ms. Senn's alleged failure to analyze whether the United States' insured status was "fairly debatable," this Court has already considered and dismissed that issue not once, but twice.  *See* Dkt. 166.  In particular, this Court ruled that Continental's "post hoc rationale first fully articulated in [this] litigation," regarding the United States' implied insured argument was "fairly debatable," is not relevant when evaluating Continental's conduct <u>at the time</u> the tenders were improperly rejected.  Dkt. 166 at 16.[6]  Accordingly, unlike Continental and its "experts," who continue to waste time trying to relitigate Continental's "fairly debatable" position, Ms. Senn appropriately followed this Court's rulings that such "post hoc rationale[s]" are irrelevant.[7]

---

[5] In fact, Continental <u>was</u> in possession of this Court's bad faith order when Continental improperly failed to accept the Kallstrom tender.  *See* Dkt. 227-1

[6] For the same reasons, Continental's argument that Ms. Senn "cannot opine on whether Continental's explanation for its tender rejection was outrageous or not" also fails. Dkt. 266 at 18.

[7] In fact, Ms. Senn independently came to the same conclusion as this Court  - - "Continental failed to provide a reasonable explanation for denial of coverage, because, <u>as</u> the District Court found, [not <u>because</u> the District Court found] there is no reasonable explanation."  (Emphasis added).  Senn Report at 10.

Indeed, Continental's position that neither experts nor the jury should consider the "law of the case" is nothing more than another attempt to relitigate issues that were not decided in Continental's favor.  This Court has established -- as a matter of law -- that the United States was an insured and that Continental acted in bad faith.  Accordingly, there is no longer any uncertainty regarding those issues.  It is entirely appropriate, and even required, that experts as well as the jury accept those rulings.  The law and the federal rules require adherence to the established law and facts of the case.  *Daubert,* Fed. R. Evid. 702 and Fed. R. Civ. P. 56(d).  Otherwise, this Court's decisions are completely meaningless.  Continental's own three "experts," all completely ignored *Daubert*, Evidence Rule 702 and Procedural Rule 56(d)'s mandate to follow and apply this Court's and the Ninth Circuit's legal holdings -- even explicitly rejecting the Court's reasoning on which the holdings were based.  If this unprecedented approach were followed, a jury could be faced with choosing between two conclusions in direct conflict, one made as a matter of law by the Court on uncontested material evidence, and the other offered by a so-called "expert" witness making it up on the fly.

### B. Continental's argument that Ms. Senn's opinions on other issues are irrelevant and unreliable is also unprecedented and unsupported to an extent that is astonishing

Continental also asserts that Ms. Senn's "opinions on [several other] issues are neither relevant or reliable."  Dkt. 266 at 2.  First, Continental argues that it was improper for Ms. Senn to use the Unfair Claims Settlement Practices Act as a "'measuring stick'" by which she evaluated Continental's conduct because: (I) "there has been no finding that Continental violated the Act"; (ii) "the Government's claim for alleged violations of the Act (claim five in its complaint) is not at issue in the upcoming trial . . . ."; and (iii) "Senn examines the current version of the Act instead of the version that existed when Continental allegedly acted wrongly."

6

Dkt. , at 17.  However, in *State Farm Mutual Automobile Ins. Co. v. Weiford*, <u>cited by Continental in its brief,</u> the Supreme Court of Alaska upheld a jury instruction that quoted the standards in the Unfair Claims Settlement Practices Act, followed by the further instruction that "[i]f you find that State Farm violated this law, you may consider this in deciding whether or not State Farm breached its duty of good faith and fair dealing in this case."  831 P.2d 1264, 1269 (Alaska 1992).

      Ms. Senn, the United States's expert in insurance matters and the standards of conduct for an insurer, is qualified and intends to testify to the regulatory standards that an insurance company is required in good faith to follow, and will evaluate Continental's conduct in light of those standards.  (See Witness List, at 4-5).  As she states in her expert report, which Continental does not dispute, those "standards are well defined by National Association of Insurance Commissioners (NAIC) model legislation and rules . . . ."  Senn Report at 2.  Also not disputed by Continental, most state statutes, according to Ms. Senn, "are closely patterned after the NAIC's 'Model Unfair Claims Settlement Practices Act,'" and Alaska's statute governing insurance regulation, the Unfair Claims Settlement Practices Act, "is in many respects identical to the Washington Law under which [Ms. Senn] regulated the insurance industry for eight years."  Senn Report at 4.  Finally, and again not contested by Continental, Ms. Senn's report states that even "[t]he bad faith standard applied by the District Court in this case is rooted in both common law and [the Unfair Claims Settlement Practices Act]."  *Id.* at 6.

      Accordingly, and appropriately, Ms. Senn considered the Act as a <u>guideline</u> for industry standards.  Continental has provided no reason why doing so was improper.  Whether there has been an actual legal finding or allegation that the Act was violated is irrelevant to whether the standards articulated in the Act are appropriate considerations for evaluating whether

Continental's conduct was so far from industry standards that it should be considered outrageous.[8]  *State Farm Mut. Auto. Ins. Co. v. Weiford*, 831 P.2d 1264 (Alaska 1992).  Noting that "the Unfair Claims Settlement Practices Act does not create a private right of action for damages," the Alaska Supreme Court in *Weiford* has held that a jury instruction quoting the Act for industry standards was proper and "merely informed the jury as to two types of conduct which could be considered evidence of bad faith . . . ."  *Id.* at 1269.

Continental next asserts that "Senn's opinion that Continental failed in its duty to defend is inadmissible" (emphasis omitted), arguing that, under "Alaska law, an insurer has no duty to defend - - including under a reservation of rights - - when the facts alleged in a claimant's complaint and the other facts of which the insurer is aware do not present a potentially covered claim." (Emphasis added).  Dkt. 266 at 18.  Again, however, Continental simply ignores both the already established facts of this case and this Court's rulings based on them.  This Court as well as the Ninth Circuit, has already ruled that, as a matter of law, the United States not only "present[ed] a potentially covered claim," but in fact presented an actually covered claim.  Thus, whether or not Continental's interpretation of the particular "Alaska law" it cited is correct, that law is inapplicable here.  Moreover, noting the admission by Continental's own 30(b)(6) witness that it did have a duty to defend, this Court previously found that "[w]here the insurer owes a duty to defend but denies coverage, the appropriate course of action is to provide a defense under a reservation of rights . . . . Continental did not avail itself of this procedure."  Dkt. 166 at 17.

---

[8]  Although Continental alleges that the "current version" of the Act examined by Ms. Senn is different from the one "that existed when Continental allegedly acted wrongly," Continental offers no reason to conclude that, even if the two versions differ, any such differences were so significant as to render Ms. Senn's opinions unreliable.  *See* Dkt. 266 at 17.  Indeed, a comparison of the old act with the new demonstrates that the standards of conduct are the same in both.

Thus, not only it is proper for Ms. Senn to opine that "Continental failed in its duty to defend," any other position would be wrong and would also be in direct conflict with this Court's prior ruling.

Continental also argues that "Senn's opinion that Continental wrongly compelled the United States to litigate for recovery" is inadmissible because "it is only wrongful to compel an insured to litigate where liability is clear." Dkt. 266 at 22. According to Continental, Ms. Senn's analysis wrongly "assumes both that liability was clear when the United States tendered and that Continental knew that." However, Continental provides no support that Ms. Senn in fact based any opinion on the assumption of either of those facts. Moreover, if Ms. Senn did make such assumptions, that would have been perfectly reasonable considering this Court's rulings that there was no "reasonable basis for denying benefits" and that Continental "had knowledge that no [such] reasonable basis existed" or at least "acted in reckless disregard for the lack of a reasonable basis." Dkt. 61 at 10. Ms. Senn's opinion, however, relates to Continental's forcing the insured to litigate for fourteen months after Continental's liability was clear. The Ninth Circuit held that the United States was an insured under the relevant Continental policy on October 20, 2004. Dkt. 147. At that time, Continental was on notice that it owed at least the $1 million single policy limit, plus interest, and that it no longer had an appealable issue regarding that amount. Yet, it was fourteen months later, on December 13, 2005, before Continental paid, and only then after it realized that its insured was aware of the debt and had raised the bad faith failure to pay in its expert witness report on November 22, 2005. *See* Ex. 1

Continental argues that "[a]ny alleged delays in Continental's rejections are irrelevant at this stage" because, although "[u]nreasonably delayed responses to tenders theoretically may give rise to a bad faith claim, but not the bad faith claim pursued by the Government in this

9

case," *i.e.*, "a 'bad faith denial of coverage' theory." (Emphasis omitted). Dkt. 266 at 23 (quoting this Court, Dkt. 61 at 10). To the contrary, this is another attempt by Continental to claim that it has not had notice. The United States has continuously complained about (among many other things) Continental's unreasonable delays in responding to the United States' tenders. Moreover, contrary to Continental's contention, this Court has never limited Continental's bad faith conduct to only that which occurred "*when it rejected the Government's tenders in 1995 and 1997*." Dkt. 266 at 2.[9] In fact, this Court based its bad faith findings in part on, "the undisputed evidence establish[ing] that Continental repeatedly: failed to accept tenders from the United States, failed to reasonably evaluate the facts and legal principles supporting the United States' position, failed to advise the United States that another policy might provide coverage, and had counsel retained for the insured (BBAHC) author an opinion letter . . . in seemingly clear derogation of ethical precepts forbidding such activity." Dkt. 61 at 9-10.[10] Additionally, other bad acts have occurred since the Court's opinions. See Senn Report. According to *Milgred Tempering, Inc. v. Selas Corp. Of America*, 902 F.2d 703, 715 (9th Cir. 1990), cited by Continental in its brief, "[t]he law of the case doctrine" provides that all findings "'decided explicitly or by necessary implication'" to the "law of the case" are themselves considered the "law of the case." (Emphasis added) (quoting *Liberty Mutual Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982)). *See* Dkt. 266 at 14 n.26. Indeed, as this Court

---

[9] Not surprisingly, Continental's brief cites no support for this incorrect assertion.

[10] As argued in the United States' partial summary judgment motion re Kallstrom, Continental's bad faith conduct also includes its improper failure to accept the Kallstrom retender despite the fact that this Court and the Ninth Circuit had already ruled that the United States was insured under the policy. *See* Dkt. 22-1.

recognized, the breadth of Continental's bad faith conduct involves much more than the isolated acts of authoring and placing in the mail two tender rejection letters.[11]

---

[11] Continental asserts another contention that does not appear to even purportedly support any of Continental's arguments. If read literally, it is an absurd contention. Nonetheless, it warrants a response if for no other reason than to try to keep the record accurate. According to Continental, "[e]ven Senn admits [ ] that acts that go beyond the Court's bad faith holding at least arguably are not admissible to support punitive damages." Dkt. 266 at 8. Because it is unclear what, if any, legally significant point Continental is trying to make, it is difficult if not impossible to respond substantively. That said, obviously, otherwise admissible evidence of anything that is relevant to punitive damages is admissible to support punitive damages -- regardless of whether this Court has specifically based its bad faith findings on such evidence. Nowhere does Continental cite legal authority to the contrary. If Continental's point concerns the admissibility of evidence (as the statement appears to on its face), clearly that is a legal issue for this Court about which expert testimony is improper. More importantly, the transcript cited by Continental that purportedly supports its representation of Ms. Senn's testimony, simply does not do so. Not only is it difficult, if not impossible, to accurately summarize the testimony cited by Continental, what is clear is that Ms. Senn prefaced the cited portion of her testimony with "I don't know the answer to this question." Senn Dep. p. 97 lns. 9-10. Dkt. 266 at 8. This has been a significant problem in responding to Continental's briefs. It often misstates the quotes, either by stopping before the discussion is complete, or by outright adding to the discussion, thoughts and conclusions that are not there.

To give another example, Continental represents that Ms. Senn testified that, when evaluating bad faith, "'you've got to look at what the conduct was at the time' because 'hindsight's perfect.'" Dkt. at 4-5 (purportedly quoting Senn Dep. at p 138 lns. 24- p139 lns. 1-5). However, the language Continental quotes is that of counsel deposing Ms. Senn, not Ms. Senn herself. And, although arguably it appears from the transcript that Ms. Senn agreed to some extent with counsel's statement that "you've got to look at what the conduct was at the time," she did so only in conjunction with a specific qualification: "That's correct, but - - . . . - - but if the U.S. is insured, then you have to look at it in light of the fact the U.S. is an insured." Moreover, the transcript is clear that Ms. Senn did not adopt counsel's reference to "hindsight's perfect." Rather, she was interrupted while trying to qualify her previous answer. Again, it is difficult to respond, at least, substantively to Continental's inaccurate representations without knowing what Continental's legal point was in making the inaccurate representations. That said, it appears from the transcript that Ms. Senn may have acknowledged counsel's statement that an insurer's bad faith conduct should be judged by the circumstances existing at the time the insurer committed the bad faith acts. Ms. Senn did that. She pointed out, after being interrupted, that in this case those circumstances include the fact that the United States was an insured and Continental had no valid reason at the time of its acts to refuse to accept the United States' numerous tenders. See Senn Report; Also, Dkts. 57, 61, and 166.

Continental argues that any opinions about Continental's improper failure to tender the Kallstrom claims are irrelevant because that concerns a "new claim [] not properly at issue." Dkt. 266 at 23.  The United States has moved for partial summary judgment that Continental's failure to accept the retender of Kallstrom on October 30, 2001 was in bad faith.  Dkt. 227-1.  Whether or not that issue is decided in the United States' favor, Ms. Senn should be permitted to testify on this issue because she has timely and fully placed Continental on notice of that opinion and the underlying basis.  See Senn Report.  Further, that failure of Continental demonstrates that it again knowingly ignored a tender that it had known about since 1997.  Dkt. 57 at 4; Ex. 2.  The act of rejecting retender of Kallstrom demonstrates an attitude and a mind set at Continental that should be the proper subject of expert testimony regarding acts that do not meet industry standards and indeed are outrageous.

Finally, Continental argues that Ms. Senn's opinions regarding corporate structure are irrelevant because "there has not even been an allegation . . . that Continental's corporate structure reveals bad faith in any way." Dkt. 266 at 23-24.  However, regardless of whether "Continental's corporate structure reveals bad faith" or whether there even has been an allegation that it does, Continental's corporate structure was made an issue in this case when Continental Casualty moved for a summary judgment based solely on the corporate structure.  Dkt. 237.  Thus, qualified expert testimony such as that promised by Ms. Senn, concerning

---

Moreover, even if Continental's bad faith conduct technically was limited to those two improper tender rejections, evaluating even just those acts in terms of outrageousness cannot be done in a vacuum, *i.e.*, by considering only the acts of authoring and mailing tender rejection letters.  Obviously, a bad faith tender rejection preceded by a failure to even respond at all within a reasonable time period or by a failure to adequately investigate the claim, or by a failure to inform the insured of a relevant policy, is relevant to whether the insurer's overall conduct rises to the level of outrageousness.

12

Continental's corporate structure that is set up to make Continental Insurance a mere shell is relevant and appropriate on the issue of outrageousness.

Continental's argument that Ms. Senn should be stricken as an expert because she improperly took into account this Court's prior rulings is utterly ridiculous, and the assertion that testifying <u>consistent</u> with the "law of the case" would "confuse the jury" is downright disingenuous. As clearly demonstrated by Continental's own "expert" reports, allowing so-called "experts" to simply ignore a court's prior legal findings and explicitly reject the court's reasoning behind such findings, produces "expert" opinions directly contrary to legal rulings that bind the jury and, for obvious reasons, can only "confuse" and misguide the jury. As for Continental's litany of additional arguments, all of which are equally unsupportable, Continental has presented no legitimate reason why anything in Ms. Senn's expert report should not be presented to the jury. She is qualified and has clearly notified Continental fully of her opinions and the bases of those opinions. Continental's attacks on this witness are so beyond the pale that Continental's litigation tactics should not be permitted.

**Conclusion**

For the foregoing reasons Continental's motion to exclude the expert testimony of Ms. Senn should be denied.

Respectfully submitted this _ th day of April, 2006, in Anchorage, Alaska.

>DEBORAH M. SMITH
>Acting United States Attorney
>
>s/Richard L. Pomeroy
>Assistant U.S. Attorney
>222 West 7th Ave., #9, Rm. 253
>Anchorage, AK 99513-7567
>Phone: (907) 271-5071
>Fax: (907) 271-2344
>E-mail: richard.pomeroy@usdoj.gov
>AK #8906031
>
>s/Richard R. Stone, Sr.
>Trial Attorney
>U.S. Department of Justice
>P.O. Box 888
>Benjamin Franklin Station
>Washington, D.C. 20044
>Phone: (202) 616-4291
>Fax: (202) 616-5200 fax
>E-mail: richard.stone@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2006,
a copy of the foregoing UNITED STATES'
OPPOSITION TO DEFENDANTS' MOTION
TO STRIKE EXPERT TESTIMONY
OF DEBORAH SENN AT DKT. 266
was served electronically on
Gary A. Zipkin and William Urquhart
and via U.S. mail on

Rebecca L. Ross
Ross, Dixon & Bell, LLP
55 West Monroe Street, Suite 3000
Chicago, IL 60603-5758
(312) 759-1920
(312) 759-1939 fax


s/ Richard L. Pomeroy