DEBORAH M. SMITH
Acting United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov

RICHARD R. STONE, SR.
Trial Attorney
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Phone: (202) 616-4291
Fax: (202) 616-5200
E-mail: richard.stone@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>THE CONTINENTAL CASUALTY COMPANY, dba THE CONTINENTAL INSURANCE COMPANY,<br><br>          Defendant. | Case No. 3:98-cv-285-JWS<br><br>**UNITED STATES' REPLY TO CONTINENTAL'S OPPOSITION AT DOCKET 275 TO THE MOTION FOR SUMMARY JUDGMENT ON KALLSTROM RETENDER AT DOCKET 227-1** |

### INTRODUCTION

In opposition to the United States' Motion for Summary Judgment on Bad Faith Failure

to Accept the Kallstrom Retender, Continental raises several arguments: the United States

"never pled a bad faith claim about its October 2001 re-tender" and "the Court ordered that no unadjudicated bad faith claims remain in this case;" the United States cannot prevail on this bad faith issue, because it did not suffer any damages; the claim was not covered by the relevant policy; and Continental did not reject the tender, but was in the process of investigating when the Kallstrom appeal was decided and the tender became moot. None of these contentions raise a genuine issue of material fact or a valid excuse for Continental's bad faith. Continental's opposition is baseless. The United States' motion should be granted.

1. **Federal Rule Civil Procedure 8(a)(2) defines notice pleading requirements and Rule 15(a) permits liberal amendments to pleadings.**

Rule 8(a)(2) "provides that a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Soreman N.A.,* 534 U.S. 506, 507 (2002)(quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.E.d.2d 80 (1957). "'[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1977), quoting *Conley*, 355 U.S. at 45-46, (*Yamaguchi* is unpublished, but is relied on in *Allied Signal, Inc. v. City of Phoenix*, 182 F.3d 692-97 (9th Cir. 1999) for this proposition).

Further, Federal Rule of Civil Procedure 15(a) in relevant part states "a party may amend the party's pleading . . . by leave of court . . .; and leave shall be freely given when justice so requires.'" The Supreme Court in *Forman v. Davis*, 371 U.S. 178, 182 (1962) stated that "'leave

to amend shall he freely given when justice so requires, this is a mandate to be heeded." The rules "reject the approach that pleading is a game of skill" and "accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957). The rule is to be interpreted with "extreme liberality." *United States v. Webb*, 655 F.2d 977 (9th Cir.1981). The Ninth Circuit, in *Webb* also recognized that the guiding 'underlying purpose" of Rule 15 is "to facilitate decision on the merits, rather than on the pleadings or technicalities." Id. at 979. In defining the boundaries of the Rule, the Ninth Circuit has held '[o]nly where prejudice is shown or the movant acts in bad faith are courts protecting the judicial system or other litigants when they deny leave to amend a pleading." *Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973); *United States v. Webb*, 655 F.2d at 979. As addressed below, defendant can show no failure of adequate notice in the instant case and certainly has no credible evidence or argument that the United States has acted in bad faith. If the Court should find that the claim of bad faith regarding the Kallstrom tenders is not sufficiently pled, the United States hereby formally requests permission to amend.

    **2.**    **The United States has pled the Kallstrom retender bad faith claim, which is an integral part of the claim for punitive damages, and Continental cannot possibly prove surprise.**

Continental Casualty's arguments that it should be dismissed from this action because the United States' complaint did not provide adequate "notice" of its claims are disingenuous at best. The continuing bad faith regarding Kallstrom was clearly addressed in the United States' second amended complaint that alleges punitive damages and the unopposed motion for permission to file that amendment. Dkt. 71; Dkt.69 at 2 n.2. It is clearly pled in the Second Amended Complaint on February 4, 2002 as an underlying basis for the punitive damages. Dkt.71 at 17-

18, ¶ ¶ 36, 38, 4.  As addressed *infra*, Continental has full and fair notice of the claim.  Further, the United States did not obtain the final evidence proving the claim until the deposition of Erin Finn, a Fed. R. Civ. P. 30(b)(6) witness for Continental Casualty, on November 8, 2005, immediately before the end of discovery.

Continental incorrectly contends that the United States has never pled the <u>Kallstrom</u> retender claim and therefore cannot pursue it.  Dkt. 275 at 3.  The <u>original</u> <u>Kallstrom</u> claim was known to Continental as early as February 1997 more than nine years ago.  See Ex. 1, Ltr. Roosa to Jennifer Taylor February 20, 1997.  The Assistant United States Attorney (AUSA) Kenneth Roosa wrote to Ms. Jennifer Taylor, CNA HealthPro, tendering and stating: "Blanche Kallstrom has also sued the United States, asserting that she suffered <u>mental anguish and distress</u> as a result of the liquid being left in an improper container, causing her to mistakenly pour the lye based detergent into Lori's glass."  (Emphasis added)  Ex. 1 at 1.  The AUSA further stated to Ms. Taylor: "<u>The United States</u> formally retenders the Wilson Claim, and <u>offers its initial tender of the Kallstrom claim</u> to CNA, as the successor in interest to the Continental Insurance Company."  (Emphasis added.)  Ex. 1 at 2.

On September 4, 2001, four years and seven months ago, defendant was again made aware that the Kallstrom matter was a part of the defense tendered by the United States.  This Court stated: "Wilson filed suit against the United States in this court.  The United States filed a third party claim against Kallstrom.  Kallstrom counterclaimed for negligent infliction of emotional distress.  The United States tendered defense to Continental on January 6, 1995. . . ."  Dkt. 57 at 4.  The Court also referred to the AUSA's February 20, 1997 tender letter to CNA Healthpro.  <u>Id</u>.  That tender, as noted above, had included the initial tender of the Kallstrom

claim and referred to the emotional distress allegation.

The United States moved to amend the Complaint to allege puntive damages on February 4, 2002. Dkt. 69. Amendment was permitted with Continental's stated non objection. Dkt. 70. In the memorandum supporting that motion, the United States stated:

> On October 30, 2001, after this Court's decision on liability in the instant case, the United States again tendered to CNA the case the United States has been defending against the counterclaim of the third party defendant Blanche Kallstrom. * * * The Kallstrom counterclaim arose out of the Wilson case that created the instant dispute. CNA, as of this date, has not accepted the tender of Kallstrom, despite knowing that the United States is its insured.

Dkt. 69 at 2 n.2. In the United States' Second Amended Complaint, lodged with the motions on February 4, 2004, plaintiff United States also stated that it had tendered the claim asserted by Ms. Kallstrom, i.e., a claim "for negligent infliction of emotional distress [NIED]." Dkt. 71 at p. 4 ¶¶ 17-18. It also asserted that it had obtained summary judgment against Kallstrom and that "the United States has expended and will be required to expend substantial attorney time and cost in its continued defense of the claims asserted by Blanche Kallstrom" during the appeal. Id. at p. 7 ¶ 36. Defendant Continental at that time was again placed on notice of its duty to defend that case. It did not accept tender at that time on its own initiative.

Further, the United States alleged that "the complaint[] filed by . . . Kallstorm alleged claims which fell within the coverage of the policy, i.e., injuries caused by negligent acts committed by BBAHC." Id. at p. 7 ¶ 38. Also, "Continental breached its duty to the United States under the policy by refusing to appear and defend the United States against the claims asserted by . . . Kallstrom." Id. at p. 8 ¶ 43. The United States asked for defense "costs and reasonable attorneys fees associated with the continuing defense of the claims asserted by

Blanche Kallstrom." (Emphasis added)  Id. at p. 10 ¶ 2.  Finally, plaintiff sought "[p]unitive damages resulting from the defendants' outrageous denial of coverage [and] defense . . . ." Id. at 10 ¶ 4.  Continental's contention that the Kallstrom tender has not been sufficiently pleaded is nonsense.  The contention that the United States has failed to amend the complaint to provide notice of the ongoing and/or new bad faith claim for failure to accept the retender while Kallstrom was on appeal on or about October 30, 2001, is spurious.  Continental does not cite a single case that supports a technical requirement to amend a complaint to allege new acts that continue to establish pleaded claims that notify the defendant that those kinds of acts are at issue.

Nothing in this case prohibits the United States' motion, the elements of which Continental has had overwhelming notice.  Again, on the date of the Court's order, September 18, 2001, four years and seven months ago, Continental was aware that the Kallstrom matter was a part of the defense tendered by the United States and it is undisputed that Continental never accepted the tender.   Continental's refusal to see the notice and pleading that is there to be seen, and of which it cannot now argue it was unaware, does not support a denial of the United States' timely motion about an issue that it has informed Continental about many times.

That Continental has been provided timely, complete, and repetitive notice cannot be denied.  On May 24, 2002, the United States again specifically informed Continental that the failure to accept the Kallstrom retender was an issue.  Dkt. 81 at 3.  Plaintiff stated that: "[t]he United States has raised Defendant's continuing bad faith breach of duty to its insured regarding the tender in Kallstrom.  Docket No. 76 at p. 16 note 16." Dkt. 81 at 3.  Further, "Even since this Court has ruled that the United States is an insured and there is coverage under the CGL policy, Continental still refuses to accept tender of the Kallstrom case."  Id.  The United States also

reminded Continental of the issue in opposition to Continental's motion for 28 U.S.C. § 1292(b) interlocutory appeal.  Dkt. 213 at 3, 14-15.  The United States stated:

> The United States, however, has several bad faith claims pending against Continental.  At a minimum, they include (1) failure to accept tender of the defense originally, (2) failure to accept the United States' retender of Kallstrom, October 30, 2001 (Ex. 2, hereto) after this Court granted summary judgment for the United States on September 18, 2001 and before the Court vacated that ruling at docket 115, and (3) Continental's forcing the United States to continue to litigate for more than a year the amount that Continental owed the United States as a result of the Ninth Circuit's holding that the United States is an additional implied insured.  Items two and three have not been presented to the trier of fact either on summary judgment or at trial.  Consequently, not all bad faith issues have been resolved by the Court's grant of summary judgment in the United States' favor at docket 166.  Continental is fully aware of these contentions but ignores them in an effort to get certification for an appeal on a mischaracterized record of the issues.

Dkt. 213 at 14-15.  Continental's contention that the issue is not sufficiently pled is simply contrary to the notice pleading requirements of the rules.  Any claim that it had no notice is unbelievable.

Also, Continental quotes the Court: "[t]he only remaining claim is the government's claim for punitive damages, which was recently added in an amended complaint."  Dkt. 275 at 3, Quoting Dkt. 87 at 6.  Continental contends that the Court's statement means that the United States cannot litigate anything having to do with the underlying bad faith regarding Continental's initial rejection of the Kallstrom tender and defendant's continuing bad faith failure to accept the United States' retender of the Kallstrom appeal on October 30, 2001.  Dkt. 275 at 1-3.  Continental, without citing a reference, concludes that "the Court ordered that no unadjudicated bad faith claims remain in this case."  Dkt. 275 at 1-2.  Continental's quote from the Court's

order at docket 87, however, refers to the recently pled punitive damages claim that includes the bad faith allegations regarding the Kallstrom retender, clear notice of which was provided in the motion to amend. Dkt. 69 p. 2 n.2. Also, the United States has never "agreed that there are no unadjudicated bad faith claims in the case." See Dkt. 275 at 3. Again, Continental does not cite to this alleged agreement.

      That the United States has agreed that the remaining claim in this case is for punitive damages is based on the status of the case. Liability, bad faith on some counts, and policy limits have been decided in the United States' favor. See Dkts. 57, 61, 87, 166. However, any underlying acts of bad faith or acts that demonstrate Continental's bad faith or malice or other mind set, adding up to outrageous behavior toward the insured's rights, ought to be permitted to be presented. Only the Court can rule as a matter of law on any of these issues. Consequently, now that discovery has closed, the United States has taken the straight forward approach to seek the Court's ruling, as a matter of law, that the continuing acts of Continental upon retender of Kallstrom amount to bad faith. The final evidence on these issues and the evidence supporting the bad faith argument was not obtained by the United States until it had taken Ms. Finn's deposition on November 8, 2005 within the discovery period. The United States also timely filed the motion for partial summary judgment under the Court's pretrial scheduling order.

      Additionally, the Court's order that the case at this time is about punitive damages includes a reference to the punitive damages complaint amendment which is based in part on the <u>Kallstrom</u> retender claim. The government has not waited until the "eve of trial" to present a new bad faith claim. See Dkt. 275 at 4.

>  **3.    Continental cannot be excused for waiting over four and one-half years to investigate a known claim that has been retendered for over four months simply because the case was finally resolved without Continental's legally required action.**

Continental admits that it was aware of the original Kallstrom tender of 1997 and had rejected it originally. Dkt. 275 at 10 n.5. In 2001, however, the Court ruled that the United States was an insured under the relevant policy. Dkts. 57, 61. Continental also admits that the Kallstrom retender occurred on or about October 30, 2001. Dkt. 275 at 9-10. Continental states, without support, that because the Kallstrom case was pending on appeal and had been briefed and argued, Continental had no duty to promptly accept tender. Dkt. 275 at 10.

It also suggests that a pending mediation in the case somehow excused it from accepting the tender. Id. Continental contends that it waited until the mediation proved unsuccessful before it "'immediately' investigated the Government's tender," but needed time, in part because there was a coverage question regarding Kallstrom's NIED claim. Id. At 10-11. But, it had the Kallstrom tender since February 20, 1997. This was simply a retender. In over four years and eight months after the first tender of Kallstrom, Continental could have investigated at any time the issue of coverage. There is no question that the second amended complaint specifically describes the Kallstrom complaint as demanding damages for NIED. Further, when the Court ruled in September 2001, it was Continental's responsibility at that time to accept the long pending tender of Kallstrom. The United States did not just sand bag Continental with that failure, but affirmatively informed it that a defense clearly was indicated. This case is not an example of where only four and one half months were available to Continental to evaluate

coverage. It had already had over four years to make that analysis. This is a disingenuous *post hoc* argument created during litigation. It does not comport with the facts and is indeed simply made up out of whole cloth and unbelievable.[1]

> **4.  Continental can be punished for bad faith failure to accept the Kallstrom retender, even if the United States suffered no additional actual damages, because actual damages had already occurred through the defense of the Kallstrom claim and prejudice (i.e., damage) is presumed.**

Continental attempts to shift its burden of promptly accepting tender, or of giving reasonable reasons why it would not, onto government counsel: "Roosa never indicated . . . that the Government might be prejudiced absent an urgent response." Dkt. 275 at 10-11.[1] There is no requirement under the law that the insured show likely prejudice in advance in order to get its insurer to accept tender of the defense. In this case the issue of insured status and the bad faith failure to accept the tender in 1997 that included Kallstrom had already been resolved and the government's expenses had already been incurred in defending Kallstrom.[2] Additionally,

---

[1] Continental's brief quotes Ms. Finn's deposition for evidence of alleged statements made by AUSA Roosa as if Mr. Roosa had spoken directly to her. Dkt. 275 at pp. 10-11, nn. 5-16. Indeed, Ms. Finn states: "I had no direct discussions with Mr. Roosa." (Emphasis added) Finn Dep. At 39 lns 8-9. Consequently, her hearsay testimony cannot supply a genuine issue of material fact based on any alleged statement by Mr. Roosa. Another evidentiary issue arises here. Continental states "Continental's response to the Government's retender was wholly reasonable and - - as the Government has stipulated - - did not prejudice the government in anyway. " Dkt. 275 at 9. Continental does not provide that alleged stipulation. The United States stipulated that it did not incur any additional expenses or damages in Kallstrom after the October 30, 2001 retender. It did not stipulate that no prejudice occurred. It also has never agreed that it had no damages regarding Kallstrom as suggested in the text of Continental's brief. See Dkt. 275 at 5-6.

[2] Another evidentiary issue arises here. Mr. Treptow in attributing the term "dead bang winner" to Mr. Roosa states: "And I think I referenced that in my memo." Dkt. 276 at Ex. G, p. 9 lns 10-22. That memo has been requested, but to date Continental has refused to provide it to

*Lloyd's and Institute of London Underwriting Cos. v. Fulton*, 2 P.3d 1199 (Alaska 2000), holds that when there is a bad faith act regarding coverage prejudice is presumed. A requirement to show actual harm "runs counter to the public policy decisions made by the Alaska court in *Lloyd's*, and the holding in that case binds this court." Dkt. 87 at 5. Further, neither the United States nor Continental knew at the time of Continental's bad faith that there would be no additional expenses. Continental further contends that it should be excused from accepting tender because the AUSA thought the Kallstrom case on appeal would be won. That the insured contends that it has a winner in the case being tendered does not excuse the insurer from accepting the case. In fact, Continental, as it turns out, had no down side risk to accepting the tender.

Continental should not be excused from having to answer for its continuing and new bad faith acts on retender simply because they have not caused any additional expenses. At this time, the case is about punishment, not about additional damage to the insured. The mind set that is reflected in the misconduct of Continental demonstrates that Continental was not sufficiently impressed by the fact that it had already been held to have coverage and to have acted in bad faith regarding tenders. In the face of the law of the case, Continental has continued to act with the exact same bad faith. Its misconduct supports a finding of bad faith as a matter of law.

     **5.**     **That the claim for NIED allegedly was not covered under the policy does not excuse Continental's bad faith failure to act in response to the tender.**

Erin Finn contends that tender was not accepted in part because the NIED claim was being evaluated after December 2001; and, Continental's brief claims there was no coverage of

---

counsel, claiming privilege.

that claim. Dkt. 275 at 13-14. However, that contention appears to be raised for the first time in Ms. Finn's deposition on November 8, 2005. Dkt. 276 at Ex. E, p.4 lns 3-9. Continental does not appear through any of the discovery that has been obtained from defendants, or from government files, to have ever conveyed that contention regarding the NIED claim to the United States. It is ad hoc reasoning first developed during the litigation with no contemporaneous support and, therefore, has no probative value on the issue of failure to accept the retender.

The defendant's reasoning is additionally suspect because Continental was aware of the Kallstrom NIED claim as early as February 20, 1997, from the first tender, toward which it also had acted in bad faith. Ex. 1. It had plenty of time to evaluate that claim, without waiting until it received future tenders of the claim. Further, when Continental acted in bad faith regarding the retender, it ran afoul of the Alaska Supreme Court's rationale and holding in Lloyd's and became estopped from contending that coverage did not exist. Continental did not adopt any of its potentially appropriate options here. It did not: (1) accept tender, (2) accept tender with a reservation of rights, or (3) reject the tender and take the consequences. Further, it did not provide its insured any explanation of why it would not accept the tender.

## CONCLUSION

For the foregoing reasons, the United States Motion for Partial Summary Judgment on Bad Faith Failure to Accept Kallstrom Retender should be granted.

Respectfully submitted this 20th day of April, 2006, in Anchorage, Alaska.

DEBORAH M. SMITH
Acting United States Attorney

s/Richard L. Pomeroy
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov
AK #8906031

s/Richard R. Stone, Sr.
Trial Attorney
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Phone: (202) 616-4291
Fax: (202) 616-5200 fax
E-mail: richard.stone@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2006,
a copy of the foregoing UNITED STATES'
 REPLY TO CONTINENTAL'S OPPOSITION
AT DOCKET 275 TO THE MOTION FOR
SUMMARY JUDGMENT ON KALLSTROM
RETENDER AT DOCKET 227-1
was served electronically on
Gary A. Zipkin and William Urquhart
and via U.S. mail on

Rebecca L. Ross
Ross, Dixon & Bell, LLP
55 West Monroe Street, Suite 3000
Chicago, IL 60603-5758
(312) 759-1920
(312) 759-1939 fax


s/ Richard L. Pomeroy