Gary A. Zipkin, Esq.
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, AK  99501
Phone:     (907) 793-2200
Fax:         (907) 793-2299
E-mail:    gzipkin@guessrudd.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| CNA FINANCIAL CORPORATION ) | |
| AND THE CONTINENTAL ) | |
| CASUALTY COMPANY d/b/a ) | |
| THE CONTINENTAL INSURANCE ) | |
| COMPANY, ) | Case No. 3:98-cv-285-JWS |
| ) | |
| Defendant. ) | |
| ) | |

**CONTINENTAL CASUALTY COMPANY'S REPLY
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**Introduction**

Although the Government largely conflates them for tactical reasons, there are two distinct issues here:  (1) whether Continental Casualty Company can be liable for a bad faith breach of the implied covenant of good faith even though it is not a party to the insurance

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Continental Casualty Company's Reply in Support of Motion for Summary Judgment

Page 1 of 14

contract that includes the implied covenant, and (2) whether the Government has shown (although it never alleged) that the presumption of separateness between Continental Casualty and Continental Insurance Company should be disregarded because Continental Insurance is a sham corporation whose corporate veil should be pierced. The answers to both of these questions are dictated by controlling Alaska Supreme Court authorities.

First, Continental Casualty cannot be directly liable for a bad faith breach of an insurance contract to which it has never been a party, and it is undisputed that Continental Casualty has never been a party to the Bristol Bay insurance policy at issue in this case. Although the United States argues that Continental Casualty "should still be liable for the bad faith acts of its own employees" under the doctrine of *respondeat superior*, Dkt. 274 at 12, that ignores that Continental Casualty's <u>employees</u> cannot commit a bad faith breach of the implied covenant in the insurance contract between Continental Insurance and Bristol Bay any more than Continental Casualty can. The Alaska Supreme Court has specifically held that an agent of a contracting entity (like Continental Casualty in this case) cannot breach the implied covenant, which applies only to the contracting entity itself. In the face of that on-point, controlling precedent, the two dated decisions from intermediate courts in other states cited by the Government (Dkt. 274 at 14-15) are irrelevant, and even those anomalous cases are distinguishable.

Second, Continental Casualty is not indirectly liable for the conduct of Continental Insurance, a century-old entity with billions of dollars of assets that Continental Casualty acquired just two years ago. Assuming *arguendo* Continental Casualty was somehow "on notice" of all the "possible theories on which Continental Casualty's liability was based"

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Continental Casualty Company's Reply in Support of Motion for Summary Judgment

Page 2 of 14

(Dkt. 274 at 22) even though the Government never articulated those theories–a dubious proposition at the least – the Government's evidence does not satisfy the high threshold required to pierce Continental Insurance's corporate veil.  That may in fact be why the Government stipulated to dismiss CNA Financial as a defendant with prejudice in February 2000 when CNA Financial (and not Continental Casualty) owned Continental Insurance.  Dkt. 23.

At bottom, the United States proffers only one fact to support its putative alter ego claim, although it creatively states it in ten different ways:  as of today, Continental Insurance does not issue paychecks to employees and instead contracts with Continental Casualty for management services.  The Government cites no authority, however, that supports its argument that anytime a company's actors get their paychecks from another entity the company is merely a "sham" that should be pierced.  That argument ignores the multi-factor analysis required under Alaska law before the strong presumption of corporate separateness will be set aside.  It also ignores that Continental Insurance had already rejected the Government's tender – through its own employees – well before it was affiliated with Continental Casualty in any way.

Thus, even if alter ego allegations had been presented from the start of this case, there is no evidence to support piercing through Continental Insurance's corporate veil.  And, as set forth more fully in defendants' opposition to the Government's motion to amend its complaint, the fact that the Government failed to even claim that Continental Casualty should be liable for Continental Insurance's debts until now itself precludes application of the alter ego doctrine.

Without law to support its arguments, the Government engages in fear-mongering in its opposition, telling the court that granting this motion would permit Continental Casualty to

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Continental Casualty Company's Reply in Support of Motion for Summary Judgment

Page 3 of 14

"manage all preexisting contracts for Continental Insurance in bad faith and not be subject to punishment for bad faith" and asserting that defendants are using the corporate form to "justify wrong" and "avoid punitive damages." Dkt. 274 at 2, 16 n.3, 17 n.5. Those assertions are misleading. Continental Insurance – the insurer in this case – has never claimed that it is not liable for any conduct because the responsible individuals were employed by Continental Casualty and not Continental Insurance. Continental Insurance also has more than adequate assets to satisfy any award in this case, including any award of punitive damages. Thus, this motion is not about shielding liability. It is about ensuring that the insurer in this case, Continental Insurance, is the only entity held liable for any award to the Government.

## Argument

I.  NEITHER CONTINENTAL CASUALTY NOR ITS EMPLOYEES COULD EVEN POSSIBLY HAVE ACTED IN BAD FAITH UNDER BRISTOL BAY'S CONTRACT WITH CONTINENTAL INSURANCE

Bad faith claims arise out of the implied covenant of good faith and fair dealing, and the implied covenant does not exist outside of a contract. O.K. Lumber Co., Inc. v. Providence Washington Ins. Co., 759 P.2d 523, 526 (Alaska 1988) (holding that there is no "tort duty of good faith and fair dealing independent of a contractual relationship"). Therefore, Alaska law clearly (and logically) provides that a plaintiff can only maintain a bad faith claim against the insurer with which it contracted – here, Continental Insurance. Claims based on the implied covenant cannot be made against an agent or employee of an insurer because such parties are not bound by the implied covenant in the first place. Continental Ins. Co. v. Bayless & Roberts, Inc., 608 P.2d 281, 297-88 (Alaska 1980) (claims supervisor who was not party to insurance contract was not bound by implied covenant of good faith and fair dealing); Coulson v.

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Continental Casualty Company's Reply in Support of Motion for Summary Judgment

Page 4 of 14

March & McLennan, Inc., 973 P.2d 1142, 1147 (Alaska 1999) (breach of implied covenant claim against agent of contracting party failed because agent did not owe any duty under an implied covenant: "even if ABIB was MMI's agent, ABIB owed Coulson no duties under an implied covenant"). There are no exceptions to this requirement of contractual privity for bad faith claims under Alaska law.

While the United States admits that "Continental Casualty was not an original party to [the] insurance policy," it claims that Continental Casualty "should still be liable for the bad faith acts of its own employees" who managed the Bristol Bay/Continental Insurance insurance policy starting in late 1995. Dkt. 274 at 12 (emphasis in original). According to the United States, "[j]ust as all employers are responsible for the acts of their employees acting within the scope of employment, so too is Continental Casualty liable for its employees' repeated and improper failures to accept the United States' tenders." Dkt. 274 at 11.

This argument misunderstands the tort of bad faith. There is no freestanding duty not to act in "bad faith" towards others as with other torts. Only a contracting party can act in bad faith. Thus, Continental Casualty is not liable under the doctrine of *respondeat superior* for the "bad faith acts of its own employees," Dkt. 274 at 12, because its employees cannot have committed a bad faith breach of the implied covenant in the first place. Bayless & Roberts, Inc., 608 P.2d at 297-88 (claims supervisor cannot breach implied covenant in insurance contract). Nor is Continental Casualty liable for bad faith merely because it acted on Continental Insurance's behalf as its agent. An insurer's agent cannot act in bad faith any more than the insurer's employees can. Coulson, 973 P.2d at 1147 (agent of contracting party does not owe any duty under the implied covenant). Just as, in Coulson, "ABIB owed Coulson no duties under the

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Continental Casualty Company's Reply in Support of Motion for Summary Judgment

Page 5 of 14

implied covenant" even if ABIB was the agent of an entity that did owe such duties, 973 P.2d at 1147, Continental Casualty owed the Government no duties under the implied covenant even if it acted as Continental Insurance's agent.

In the face of the Alaska Supreme Court's on-point, controlling precedents, the United States cites two cases from intermediate courts in other states to support its argument that Continental Casualty can be directly liable for bad faith: <u>Farmers Group, Inc. v. Trimble</u>, 768 P.2d 1243, 1247 (Col. Ct. App. 1988), <u>overruled</u>, <u>Goodson v. American Standard Ins. Co. of Wisc.</u>, 89 P.3d 409 (Colo. 2004) and <u>Delos v. Farmers Ins. Group, Inc.</u>, 93 Cal. App. 3d 642, 652 (Cal. Ct. App. 1979); <u>see</u> Dkt. 274 at 14-15. These cases of course cannot displace the Alaska Supreme Court's own pronouncements, which this court is required to follow. <u>See</u>, e.g., <u>Chemstar, Inc. v. Liberty Mut. Ins. Co.</u>, 41 F.3d 429, 432 (9th Cir. 1994) (applying "California law as [the court] believes the California Supreme Court would apply it").

In any case, even these two authorities (which both involve the same defendant) do not support the United States' position. Both the <u>Trimble</u> and <u>Delos</u> courts explicitly recognized the general rule that "liability for bad faith breach [can] be imposed only against a party to an insurance contract." <u>Trimble</u>, 767 P.2d at 1247; <u>Delos</u>, 94 Cal. App. 3d at 652. Although the <u>Delos</u> court created an exception to that rule (without citing any authority) and the <u>Trimble</u> court adopted that exception (citing only to <u>Delos</u>), subsequent cases have clarified that <u>Delos</u>'s exception applies <u>only</u> when "the insured would be without redress" if it could not name the contracting insurer's "attorney-in-fact" as a defendant. <u>Filippo Industries, Inc. v. Sun Ins. Co. of New York</u>, 74 Cal. App. 4th 1429, 1443-44 (1999). Where, on the other hand, there is another "entity from which [plaintiff] can obtain redress," the "exception to the general rule which the

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Continental Casualty Company's Reply in Support of Motion for Summary Judgment

Page 6 of 14

Delos court found necessary to apply thus does not exist." Id. at 1444; see id. at 1443 (remarking that it "is questionable if the basis for Delos still exists" at all). Here, the United States will be able to obtain any damages it recovers from Continental Insurance, the insurer on the relevant policy, and the Delos exception "thus does not exist."[1]

The United States also contends that to dismiss Continental Casualty would "free [it] to act in any dastardly way that it desired toward insureds [under] Continental Insurance policies without recourse to punishment by those insureds," and argues this concern justifies setting aside the established requirement of privity for bad faith claims. Dkt. 274 at 14. That is a red herring. No one is arguing that Continental Insurance cannot theoretically be liable for purported bad faith tender rejections made by Continental Casualty employees acting on Continental Insurance's behalf. Therefore, granting this motion will not leave the United States without recourse.

Finally, the United States argues – without citing a single authority or offering any reasoning – that Continental Casualty has somehow been "place[d] in the contract as a party to the exclusion of Continental Insurance" and has in fact "stepped into the shoes of Continental

---

[1] Further, in both Trimble and Delos the non-contracting defendant controlled the actions of its subsidiary when the contracts at issue were executed, and thus controlled whether the subsidiary entered into the contract and assumed the covenant of good faith and fair dealing in the first place. Here, Continental Casualty had no affiliation with Continental Insurance until years after the policy had been executed, and had in fact expired. Continental Casualty had no ties to the Continental Insurance even when the United States first tendered in 1995 -- acting through its own employees, Continental Insurance conducted an investigation and rejected the Government's tender in early 1995. Notably, all of the purported "facts supporting punitive damages" identified by the Government in its motion for leave to add a prayer for punitive damages from 2002 involve actions taken by Continental Insurance through its own employees. Dkt. 69 at 6. Continental Casualty thus is not the "party primarily responsible" as in Delos. 93 Cal. App. 3d at 652.

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Continental Casualty Company's Reply in Support of Motion for Summary Judgment

Page 7 of 14

Insurance" and "displaced the original contracting insurer," thereby rendering it subject to the contractual duty of good faith. Dkt. 274 at 12, 14. Of course, Continental Casualty cannot be somehow deemed a party to Continental Insurance's contract unless the presumption of corporate separateness is set aside. Volkswagenwerk, A.G. v. Klippan, GmbH, 611 P.2d 498, 505 (Alaska 1980) (wholly-owned subsidiary is not bound by parent's contractual agreement in absence of showing of alter ego). Here, Continental Insurance's corporate veil cannot be pierced, as discussed below.[2]

When this court first addressed this case on summary judgment in 2001, it applied its coverage and bad faith ruling only to Continental Insurance, not Continental Casualty. Dkt. 57 at 2 n.2 ("Defendant Continental Casualty Company is named in the complaint in a 'doing business as' capacity as the Continental Insurance Company. However, it now seems undisputed that Continental Casualty Company is a separate corporate entity from Continental Insurance Company. 'Continental' in this order refers to the Continental Insurance Company not the Continental Casualty Company."). The court should now make explicit what was implicit in that ruling -- that Continental Casualty is not directly liable to the Government.

---

[2] While not probative, the Government's assertions that Continental Insurance has been "excluded" or "displaced" by Continental Casualty are at least ironic given that the Government does not intend to release Continental Insurance from liability. Far from it, the Government says that "[b]oth parties are responsible for the actual and for the punitive damages in this case and they can apportion the damages among themselves." Dkt. 274 at 14 (emphasis added). That is not how it works.

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Continental Casualty Company's Reply in Support of Motion for Summary Judgment

Page 8 of 14

II.  CONTINENTAL CASUALTY IS NOT LIABLE AS CONTINENTAL INSURANCE'S ALTER EGO

       Continental Casualty is also not indirectly liable for Continental Insurance's conduct on an alter ego theory.

A.  The United States never pled an alter ego claim or theory, and it cannot present such a claim against Continental Casualty for the first time in its opposition brief

       As discussed in Continental Casualty's motion, the United States failed to plead an alter ego claim and that alone precludes application of the alter ego doctrine. Dkt. 237 at 7. While the United States asserts that Continental Casualty somehow should have been on notice of "the possible theories on which Continental Casualty's liability was based" even though those theories were not alleged, that is nonsense. Dkt. 274 at 22. Even under a notice pleading regime, a plaintiff still has to plead its claims. The United States did not make any alter ego allegations in its prior complaints, even after defendants advised the Government in their answer in 1999 that Continental Casualty "is a separate and distinct corporation from Continental Insurance Company, and has at no time issued any insurance policy to BBAHC," Dkt. 14 at 1-2, and even after the Court observed in its 2001 preliminary summary judgment order that "Continental Casualty Company is a separate corporate entity from Continental Insurance Company." Dkt. 57 at 2 n.2. As discussed further in defendants' opposition to the United States' motion to amend, the Government cannot hope to present an alter ego claim against Continental

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Continental Casualty Company's Reply in Support of Motion for Summary Judgment

Page 9 of 14

Casualty for the first time now, eight years into the case and on the eve of trial.[3]  Because the United States does not have a pending alter ego claim, the Court need not reach the merits of that (putative) claim now.[4]

      B.      Even if the United States has a pending alter ego claim, it has not made the strong showing required to set aside the presumption of corporate separateness

Continental Insurance is far from a sham entity.  It has been in business for a century and a half and has a net worth in the billions.  Boysen Aff. ¶ 3.  Dkt. 239.  There is no evidence that it is undercapitalized or unable to meet its debts, or that it has ever failed to comply with required corporate formalities.  Further, Continental Insurance acted through its own employees – not those of Continental Casualty – both when it issued Bristol Bay's insurance policy and when it rejected the Government's tender of defense and indemnity in February 1995.  All of the purported "facts supporting punitive damages" identified by the Government in its motion for leave to add a prayer for punitive damages involve actions taken by Continental Insurance before it had any affiliation with Continental Casualty at all.  Dkt. 69 at 6.

---

[3]  In fact, the Government's proposed Third Amended Complaint would mark the first time it ever alleged any claims, whether direct or on an alter ego theory, against Continental Casualty.  In the operative Second Amended Complaint, as well as prior versions, the United States "alleges its complaint" only against CNA Financial Corporation (which has been dismissed) and Continental Insurance Company–not Continental Casualty.  Dkt. 71 at 1.  Defendants' answer was made on behalf of those two entities, not Continental Casualty.  Dkt. 75 at 1.

[4]  The Government's assertion that a discovery motion from January 2003 put Continental Casualty on notice that it was pursuing an alter ego claim is misleading at best.  At that time, Continental Casualty did not own Continental Insurance–CNA Financial did.  Boysen Aff. ¶ 2.  Thus, the issue there was whether the Government could obtain discovery about CNA Financial's net worth, not that of Continental Casualty.  Dkt. 101 at 4.  The United States' opposition to this motion is the first time it has ever presented, in any way, an alter ego claim against Continental Casualty.

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Continental Casualty Company's Reply in Support of Motion for Summary Judgment

Page 10 of 14

The United States bases its putative alter ego claim against Continental Casualty on a single fact, although it creatively states this fact in different ways: as of today, Continental Casualty employees manage Continental Insurance's insurance policies. Dkt. 274 at 8-9, 18-20.[5] However, as a matter of law, mere control is <u>not</u> sufficient to set aside the presumption of corporate separateness. <u>Elliott v. Brown</u>, 569 P.2d 1323, 1326 (Alaska 1977) (the alter ego doctrine "requires considerably more than mere control"); <u>Uchitel Co. v. Telephone Co.</u>, 646 P.2d 229, 234 (Alaska 1982) ("mere control of a corporation's activities by an individual is insufficient to justify piercing the corporate veil"). Notably, the United States cites no authority from any state supporting its proposition that a company that does not have dedicated employees of its own is, *ipso facto*, a sham. That is not the law.

The Government's lone fact that Continental Insurance is now controlled by Continental Casualty is insufficient under the fact-intensive, eleven prong analysis required by <u>Jackson v. General Electric Co.</u>, 514 P.2d 1170, 1172-73 (Alaska 1973). Although the Government asserts that "these factors all are present in the instant case," Dkt. 274 at 17, it offers no analysis to support that assertion, and it is insupportable. Among other things, there is no evidence that Continental Insurance:

- is undercapitalized at all, let alone that it has "grossly inadequate capital,"
- ever failed to comply with required corporate formalities,
- ever commingled its funds with those of Continental Casualty,
- was created by Continental Casualty,

---

[5] The United States dedicates pages of its brief to examples of the services performed by Continental Casualty employees. Dkt. 274 at 8-9, 18-20. All of those examples are just different iterations of the same point: Continental Insurance has no employees today.

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Continental Casualty Company's Reply in Support of Motion for Summary Judgment

Page 11 of 14

- is financed by Continental Casualty,

- does not pay its own expenses,

- does not have assets of its own or allows those assets to be used by Continental Casualty as its own, or

- does not do business with third parties.[6]

Without more, ownership and control is insufficient.

Further, the courts of Alaska generally require a showing that the corporate form was used to defeat public convenience, justify wrong, commit fraud, or defend crime. Elliott, 569 P.2d at 1326 ("the veil may be pierced <u>only if</u> the corporate form is used 'to defeat public convenience, justify wrong, commit fraud, or defend crime.'") (quoting Jackson, 514 P.2d at 1172-73) (emphasis added); Murat v. F/V Shelikof Strait, 793 P.2d 69, 76 (Alaska 1990) ("in Alaska, the primary consideration in determining to 'pierce the corporate veil' is whether the corporate form has been abused"). As Continental Casualty pointed out in its motion, even Deborah Senn, the Government's bad faith expert, admitted in January 2006 that there is no "evidence that CNA or Continental has structured their corporation to avoid liability." Dkt. 237 at 9 (citing Senn deposition transcript). While the Government argues in a footnote that the corporate form is being used to justify wrong "right now" – i.e., because Continental Casualty is exercising its right to defend itself by seeking summary judgment–that assumes that Continental Casualty is not entitled to dismissal, putting the cart well before the horse. Dkt. 274 at 17 n.5. To render a decision on the merits of the alter ego issue based on this motion itself would also

---

[6] Although the Government flatly asserts that Continental Insurance has done no business with companies other than Continental Casualty, Dkt. 274 at 20, it provides no support or citation for that assertion. The assertion is erroneous: Continental Insurance continues to own its own property and issue its own insurance policies to third parties. Boysen Aff. ¶ 3. Dkt. 239.

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Continental Casualty Company's Reply in Support of Motion for Summary Judgment

Page 12 of 14

improperly punish Continental Casualty for protected litigation conduct.  <u>See generally</u> Defendants' Motion in Limine No. 4, Dkt. 255.

The Government's only other assertion is that Continental Insurance's veil should be pierced because "Continental Casualty should be liable for its own acts".  Dkt. 274 at 20.  That conflates the direct liability issues addressed in Section I with the alter ego issues relevant here.  It also ignores that Continental Insurance rejected the Government's tender on its own, through its own employees, long before Continental Insurance was acquired by CNA Financial (and became affiliated with Continental Casualty) in late 1995.

Continental Insurance is an old, wealthy, and very real entity that is more than capable of satisfying any potential judgment.  The Government's request that the court pierce through Continental Insurance's corporate veil should be denied.

## **Conclusion**

For the foregoing reasons, Continental Casualty respectfully requests that the court grant its motion for summary judgment and dismiss it from this case.

DATED at Anchorage, Alaska, this 21st day of April, 2006.

GUESS & RUDD P.C.
Attorneys for Defendants

By: _____S/Gary A. Zipkin_____
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, Alaska  99501
Phone: 907-793-2200
Fax:   907-793-2299
Email: gzipkin@guessrudd.com
Alaska Bar No. 7505048

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Continental Casualty Company's Reply in Support of Motion for Summary Judgment

Page 13 of 14

        QUINN EMANUEL URQUHART
          OLIVER & HEDGES, LLP
        Attorneys for Defendants


By:    S/A. William Urquhart
       Quinn Emanuel Urquhart
        Oliver & Hedges, LLP
       865 South Figueroa
       Street, 10th Floor
       Los Angeles, CA  90017
       Phone: 1-213-443-3000
       Fax:  1-213-443-3100
       Email:
       billurquhart@quinnemanuel.com

<u>CERTIFICATE OF SERVICE</u>
I hereby certify that on the
21st day of April, 2006, a copy
of the foregoing document was served
electronically on:

Richard L. Pomeroy, Esq.
Christopher Tayback, Esq.
A. William Urquhart, Esq.

and by regular U.S. mail on:

Richard Stone, Esq.
Civil Division, Torts Branch
U.S. Department of Justice
1331 Pennsylvania Avenue, N.W.
Washington, D.C.  20530

Guess & Rudd P.C.


By:    S/Gary A. Zipkin

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Continental Casualty Company's Reply in Support of Motion for Summary Judgment

Page 14 of 14