Gary A. Zipkin, Esq.
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, AK  99501
Phone:  (907) 793-2200
Fax:    (907) 793-2299
E-mail: gzipkin@guessrudd.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,        )<br>                                  )<br>            Plaintiff,            )<br>                                  )<br>vs.                               )<br>                                  )<br>THE CONTINENTAL                   )<br>CASUALTY COMPANY d/b/a            )<br>THE CONTINENTAL INSURANCE         )<br>COMPANY,                          )<br>                                  )<br>            Defendant.            )<br>_____) | Case No. 3:98-cv-285-JWS |

DEFENDANTS' OPPOSITION TO THE
UNITED STATES' MOTION TO AMEND THE COMPLAINT

Preliminary Statement

The U.S.A. filed the original complaint in this action almost eight years ago and last amended its complaint more than four years ago.  Now, on the eve of trial, the U.S.A. wants to amend its complaint for the third time to include wholly new alter ego allegations.  There is no justification for the

U.S.A.'s extended delay.  Its motion to amend at Docket 281 should be denied.

      Although only one is sufficient to support denial, all of the factors traditionally considered when a plaintiff seeks leave to amend favor denial of leave in this case.  First, the U.S.A.'s undue delay is dramatic.  Albeit tacitly, the U.S.A. admits it was aware from the moment it filed the original complaint in 1998 that it might pursue Continental Casualty on an alter ego theory.  The U.S.A. certainly knew by January 1999 at the latest--more than seven years ago--that Continental Casualty and Continental Insurance are separate and distinct entities, and not in a "dba" relationship as listed in the caption, because defendants told the U.S.A. so in their answer.  Nonetheless, the U.S.A. never sought to plead an alter ego claim until now and failed to incorporate alter ego allegations when it last amended its complaint in 2002.  Until it filed this motion, the U.S.A. never raised the prospect of an alter ego claim against Continental Casualty even outside of its pleadings.

      Defendants would also suffer significant undue prejudice, and the court's proceedings would be improperly interfered with, if the U.S.A. were permitted to amend its complaint this close to trial.  Permitting the U.S.A. to add equitable alter ego allegations that can only be tried to the

court would add an additional phase to the trial, requiring trifurcation instead of bifurcation. Further, this motion was filed in an obvious attempt to circumvent Continental Casualty's recently filed summary judgment motion--indeed, it was originally filed as part of the U.S.A.'s opposition to that motion--and that is improper. The fact that the U.S.A. waited eight years and until Continental Casualty moved for summary judgment before it sought to plead an alter ego claim is the kind of tactical maneuvering that justifies denial of leave.

In all events, the U.S.A.'s new alter ego claim is futile for reasons explained in Continental Casualty's motion for summary judgment at Docket 237 and reply memorandum at Docket 304, which are incorporated herein by reference. For this reason as well, the U.S.A.'s motion should be denied.

## Argument

Under the Federal Rules, "[a] party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served." <u>Fed. R. Civ. P.</u> 15(a). "After that, however, a district court has the discretion to deny a motion to amend." <u>Outdoor Sys., Inc. v. City of Mesa</u>, 997 F.2d 604, 613-14 (9th Cir. 1993). Four factors bear on whether leave to amend should be granted: "(1) bad faith on the part of

plaintiffs; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment."  Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir. 1999).  If even one of these factors is present, the court may deny leave to amend.  See, e.g., Swanson v. U.S. Forest Serv., 87 F.3d 339, 345 (9th Cir. 1996) (undue delay justified denial of plaintiff's motion for leave to amend); McGlinchy v. Shell Chemical Co., 845 F.2d 802, 809 (9th Cir. 1988) (delay of six months after plaintiffs became aware of their new claims before they sought leave to amend precludes amendment); Solomon v. N. A. Life and Cas. Ins. Co., 151 F.3d 1132, 1139 (9th Cir. 1998) (undue delay and prejudice justified denial of leave to amend).  Here, all four factors are present.

I.  THE U.S.A. UNDULY DELAYED IN SEEKING LEAVE TO AMEND

The U.S.A.'s motion presents a classic example of undue delay, and "[u]ndue delay is a valid reason for denying leave to amend."  Contact Lumber Co. v. P.T. Moges Shipping Co., 918 F.2d 1446, 1454 (9th Cir. 1990); see Swanson, 87 F.3d at 345; McGlinchy, 845 F.2d at 809.

A.  The U.S.A. Apparently Intended to Pursue or Considered Pursuing Continental Casualty On An Alter Ego Theory When It First Filed Its Complaint

According to the U.S.A.'s summary judgment opposition, "Continental Casualty was on adequate notice of the U.S.A.'s claims and in particular of the possible theories on which Continental Casualty's liability was based," including presumably the alter ego theory, "[f]rom the moment the U.S.A. filed the complaint, more than seven years ago."  Dkt. 274 at 22.  It is a matter of objective fact that the U.S.A.'s prior complaints do not contain alter ego allegations or claims.  However, if the U.S.A. thinks Continental Casualty was on notice of an alter ego claim in 1998, it surely cannot claim that the U.S.A. itself somehow was not.

      B.    <u>The U.S.A. Certainly Knew That It Should Consider An Alter Ego Claim Against Continental Casualty By 1999 At The Latest</u>

Whether it actually considered pursuing an alter ego claim in 1998 or not, the U.S.A. undoubtedly knew that it should consider such a claim by 1999.  Although the U.S.A. named only CNA Financial Corporation (which has been dismissed) and Continental Insurance Company as defendants in its prior complaints (and erroneously listed Continental Casualty in the caption as a "dba"), <u>see</u> Dkts. 1, 6, and 71 at 1, defendants advised the U.S.A. in their answer to the First Amended Complaint from January 1999 that Continental Casualty "is a separate and distinct corporation from Continental Insurance Company, and has

at no time issued any insurance policy to BBAHC."  Dkt. 14 at 1-2.

Two years later, in 2001, this court confirmed in its preliminary summary judgment order that Continental Casualty and Continental Insurance are wholly separate entities, and the court expressly limited its summary judgment ruling to Continental Insurance for that reason.  Dkt. 57 at 2 n.2 ("Defendant Continental Casualty Company is named in the complaint in a 'doing business as' capacity as the Continental Insurance Company.  However, it now seems undisputed that Continental Casualty Company is a separate corporate entity from Continental Insurance Company.  'Continental' in this order refers to the Continental Insurance Company not the Continental Casualty Company.").

    C.    <u>The U.S.A. Expressly Raised Alter Ego Issues As To A Different Entity in 2003</u>

As the U.S.A. mentions in its opposition, the court issued a ruling addressing alter ego discovery issues in 2003. Dkt. 101.  What the U.S.A. does not mention is that the issue at that time was whether the U.S.A. could obtain financial information relating to <u>CNA Financial</u>, Continental Insurance's parent at the time, not Continental Casualty, Continental Insurance's then sister.  Dkt. 101 at 4-5 ("the government has

adequately demonstrated that the discovery requested might lead to admissible evidence concerning the relationship <u>between CNA and Continental</u> in light of prior communications") (emphasis added). The U.S.A. argued in its brief that it sought discovery to confirm whether "the corporate veil <u>between the parent and Continental</u> should be pierced," but it did not argue that the veil between Continental Insurance and Continental Casualty should be pierced. Dkt. 99 at 6 (emphasis added).

      D.    <u>The U.S.A. Never Alleged An Alter Ego Claim Against Continental Casualty, and Its Delay Is Inexcusable</u>

Although the U.S.A. (1) claims Continental Casualty should have been on notice of an alter ego claim in 1998, (2) was expressly told by defendants that Continental Casualty and Continental Insurance were two different companies in 1999, (3) was expressly told by the court that it had erroneously sued Continental Casualty as a dba and that the court's summary judgment order was therefore limited to Continental Insurance in 2001, and (4) took alter ego discovery as to CNA Financial in 2003, the U.S.A. <u>never</u> sought to plead an alter ego claim--or otherwise raised such a claim against Continental Casualty--until two weeks ago. When the U.S.A. moved to amend its complaint just a few months after the court issued its preliminary summary judgment ruling as to Continental Insurance in 2001, the U.S.A.

did not assert that it had any pending claims against Continental Casualty. Instead, it stated that "the only remaining issues to be tried are damages related." Dkt. 69. The U.S.A.'s Second Amended Complaint from 2002, like its prior ones, does not include any alter ego allegations. Dkt. 71.

As the Ninth Circuit has recognized, "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir. 1986); see Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388 (9th Cir. 1990) ("Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading."). Here, the U.S.A. certainly knew or should have known long ago that it theoretically could state an alter ego claim (although not a valid one) against Continental Casualty, and its delay in pleading is therefore inexcusable.

To justify its delay, the U.S.A. suggests that new facts brought to light during depositions taken last year are what prompted it to amend the pleadings to include alter ego allegations. However, the U.S.A. does not explain why it could not have taken the discovery it took five months ago in 1999 or

2000.  The relationship between Continental Casualty and Continental Insurance was fair game for discovery as soon as defendants advised the U.S.A. in January 1999 that those entities were separate and distinct, Dkt. 14 at 1-2, long before the court first addressed this case on summary judgment (and held only Continental Insurance, not Continental Casualty, liable).  Dkt. 57 at 2 n.2.  The U.S.A. did not move to amend based on the depositions it took in November 2005--it moved to amend in response to Continental Casualty's motion for summary judgment.  The U.S.A.'s implication that it did not previously plead an alter ego claim because it had not yet taken its November 2005 depositions is disingenuous at best.[1]

The U.S.A.'s delay is both extraordinary and unjustified.  Based on delay alone, the court should deny leave to amend.  See McGlinchy, 845 F.2d at 809 (six months' delay in seeking leave to amend after plaintiffs became aware of their new claims precludes amendment); Swanson, 87 F.3d at 345; Lockheed, 194 F.3d at 986; Stein v. United Artists Corp., 691 F.2d 885, 898 (9th Cir. 1982).

---

[1]  Further, the most the U.S.A. says is that it "did not learn the details" about the relationship between Continental Insurance and Continental Casualty until it took Ms. Finn's and Mr. Boysen's depositions in November 2005.  That is not a new fact that could justify amendment at this late date.  The U.S.A. undoubtedly was aware even before it filed its first complaint that Continental Casualty employees provided significant services for Continental Insurance.  As the U.S.A. repeatedly asserts in its summary judgment

II.   **DEFENDANTS WOULD BE PREJUDICED IF THE U.S.A. WERE GRANTED LEAVE TO AMEND**

A motion for leave to amend a complaint may be denied due to prejudice to the opposing party.  See Solomon, 151 F.3d at 1139 (affirming denial of leave to amend based on the "district court's finding of prejudice from a delayed motion to amend the complaint").  The U.S.A.'s motion should be denied for this reason as well.

A.   Continental Casualty Has Already Filed A Dispositive Motion

Discovery has closed, and Continental Casualty has filed a motion for summary judgment.  Under well established law, the U.S.A. may not avoid summary judgment by asserting new claims and legal theories that were never pled in prior complaints.  See Roberts v. Arizona Board of Regents, 661 F.2d 796, 798 (9th Cir. 1981) (motion to add new claim denied because new claim "was raised at the eleventh hour, after discovery was virtually complete and [defendant's] motion for summary judgment was pending before the court"); N. States Power Co. v. Fed. Transit Admin., 358 F.3d 1050, 1057 (8th Cir. 2004) ("The assertion of [a] claim on the eve of summary judgment . . . weighs against [plaintiff] . . . [T]he Federal Rules . . . do not entitle

---

opposition, it dealt directly with (and tendered directly to) Continental Casualty employees from late 1995 on.  Dkt. 274 at 12-14.

parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment.") (citation omitted); Cowan v. Bank United of Texas, 70 F.3d 937, 944 (7th Cir. 1995) ("A plaintiff who proposes to amend his complaint after the defendant has moved for summary judgment may be maneuvering desperately to stave off the immediate dismissal of the case."). This principle applies in the alter ego context specifically. See, e.g., Wady v. Provident Life and Accident Ins. Co. of America, 216 F. Supp. 2d 1060, 1067 (C.D. Cal. 2002) (alter ego claim cannot be raised in opposition to summary judgment motion where not pleaded). To permit the U.S.A. to spring previously undisclosed claims against Continental Casualty only after Continental Casualty filed its motion for summary judgment would cause significant and undue prejudice.

B.  Permitting The Proposed Amendment Would Create An Additional Phase For Trial

Granting leave would substantially complicate the trial of this action and thereby both prejudice defendants and interfere with the court's proceedings.  The court granted summary judgment of liability only against Continental Insurance, not Continental Casualty.  Dkt. 57 at 2 n.2.  Therefore, permitting amendment now would insert live, unadjudicated claims into this case, contravening the U.S.A.'s repeated representations, and the court's prior observation, that only punitive damages remain at issue.  Dkt. 69 (the U.S.A.: "the only remaining issues to be tried are damages related"); Dkt. 87 at 6 (the court: "The only remaining claim is the governments' claim for punitive damages, which was recently added in an amended complaint"); Dkt. 119 at 1 (the U.S.A. again confirming that the only issue left in the case is "[w]hether punitive damages should be awarded against Continental, and if so, in what amount").

Further, alter ego claims are equitable and must be tried to judges, not juries.  See, e.g., Shenyang Ying Yun Business Group v. Quan Kun Intern., Inc., 1994 WL 165310 at *9 (N.D. Cal. 1993) ("the alter ego doctrine is based in equity and is within the clear province of the trial court, sitting as

factfinder").  Therefore, permitting amendment would require a separate equitable phase of trial.  As discussed in defendants' Motion to Bifurcate (Dkt. 262), trial should be bifurcated into separate liability and damages phases.  Granting leave--and thereby adding an equitable phase of trial--would thus require trifurcation.

        C.    <u>The U.S.A.'s Assurance of No Prejudice Does Not Make Sense</u>

The U.S.A. asserts that "[Continental Casualty] can show no prejudice by the amendment in the instant case" because it was named as a "dba" and on notice of the "possible theories" pursued by the U.S.A. from "the moment the United States filed the complaint, more than seven years ago."  Dkt. 274 at 22.  That makes no sense at all.  The U.S.A. failed to make any alter ego allegations in its prior complaints, and indeed failed to make any clear allegations against Continental Casualty at all.  Because it was erroneously named as a "dba," defendants advised the U.S.A. in their answer in 1999 that Continental Casualty "is a separate and distinct corporation from Continental Insurance Company, and has at no time issued any insurance policy to BBAHC," Dkt. 14 at 1-2, practically inviting an alter ego claim.  This court also advised the U.S.A. in 2001 that it had not pled

proper claims against Continental Casualty.  Dkt. 57 at 2, n. 2.  The U.S.A. ignored that advice.[2]

The U.S.A. never raised an alter ego claim against Continental Casualty until it filed its opposition to Continental Casualty's motion for summary judgment.  At this late stage, it would be impossible to avoid prejudicing defendants--and significantly extending this case--if leave were granted.  <u>Oneida Indian Nation of New York State v. County of Oneida, N.Y.</u>, 199 F.R.D. 61, 77 (N.D.N.Y. 2000) ("one of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay ... final disposition of the action.").

### III. THE U.S.A. HAS DEMONSTRATED BAD FAITH IN SEEKING LEAVE TO AMEND ITS COMPLAINT

A motion to amend may be denied where the motion has been brought in bad faith or with a dilatory motive.  <u>See</u>, <u>e.g.</u>, <u>Thornton v. McClatchy Newspapers, Inc.</u>, 261 F.3d 789, 799 (9th Cir. 2001) (affirming magistrate's conclusion that plaintiff's motion to amend was filed in bad faith because of "dilatory tactics and the doubtful value of the proposed amendment").  Bad

---

[2]  The U.S.A. asserts that this court's order on whether CNA Financial's net worth was discoverable also put Continental Casualty on notice of an alter ego claim.  Dkt. 274 at 22.  That alter ego issues were raised several years ago with respect to CNA Financial does not mean that Continental Casualty was on notice of an alter ego claim.

faith need not be undisputedly proven.  Rather, the "possibility of bad faith is, in and of itself," justification for denying a motion to amend.  <u>Rotter v. Leahy</u>, 93 F. Supp. 2d 487, 496 (S.D.N.Y. 2000).

       The U.S.A.'s undue delay, combined with the timing of its request, indicates bad faith.  Although the U.S.A. had ample opportunity to bring an alter ego claim earlier, including in two previous amended complaints, the U.S.A. sought to do so only on the eve of trial, eight years into this case, in response to Continental Casualty's motion for summary judgment.  The U.S.A.'s motion is a tactical maneuver designed solely to escape summary judgment--and support its expert's inflated net worth opinions (see Defendants' Motion in Limine No. 5, Dkt. 257)--and that constitutes bad faith.  <u>See</u> <u>Oneida Indian Nation of New York State</u>, 199 F.R.D. at 80 ("A finding that a party is seeking leave to amend solely to gain tactical advantage also supports a finding that such an amendment is made in bad faith.").

    IV.   <u>THE U.S.A.'s PROPOSED AMENDMENT IS FUTILE</u>

       Finally, the U.S.A.'s motion to amend should be denied because the proposed amendment is futile.  The "denial of leave to amend is appropriate if the amendment would be futile . . . [and] futility includes the inevitability of a claim's defeat on

summary judgment."  California v. Neville Chem. Co., 358 F.3d 661, 673 (9th Cir. 2004) (quotations omitted).  For all of the reasons set forth in Continental Casualty's motion for summary judgment and reply, the U.S.A. cannot prevail on its putative alter ego claim.

### Conclusion

For the foregoing reasons, defendants respectfully request that the court deny the U.S.A.'s motion to amend the Second Amended Complaint.

DATED at Anchorage, Alaska, this 25th day of April, 2006.

```
                    GUESS & RUDD P.C.
                    Attorneys for Defendant


                By: _____S/Gary A. Zipkin_____
                    Guess & Rudd P.C.
                    510 L Street, Suite 700
                    Anchorage, Alaska  99501
                    Phone: 907-793-2200
                    Fax:   907-793-2299
                    Email: gzipkin@guessrudd.com
                    Alaska Bar No. 7505048


                    QUINN EMANUEL URQUHART
                       OLIVER & HEDGES, LLP
                    Attorneys for Defendant
```

<pre>
                              By:    S/A. William Urquhart
                                   Quinn Emanuel Urquhart
                                     Oliver & Hedges, LLP
                                   865 South Figueroa
                                   Street, 10th Floor
                                   Los Angeles, CA  90017
                                   Phone: 1-213-443-3000
                                   Fax:   1-213-443-3100
                                   Email:
                                   billurquhart@quinnemanuel.com
</pre>

CERTIFICATE OF SERVICE
I hereby certify that on the
25th day of April, 2006, a copy
of the foregoing document was served
electronically on:

Richard L. Pomeroy, Esq.
Christopher Tayback, Esq.
A. William Urquhart, Esq.
Richard Stone, Esq.

Guess & Rudd P.C.


By:   S/Gary A. Zipkin

F:\DATA\6024\1\Pleading\92 Opp to motion to amend complaint.doc