Gary A. Zipkin, Esq.
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, AK  99501
Phone:     (907) 793-2200
Fax:        (907) 793-2299
E-mail:    gzipkin@guessrudd.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>THE CONTINENTAL )<br>CASUALTY COMPANY d/b/a )<br>THE CONTINENTAL INSURANCE )<br>COMPANY, )<br>)<br>Defendant. )<br>_____) | Case No. 3:98-cv-285-JWS |

**CONTINENTAL'S OPPOSITION TO**
**UNITED STATES' MOTION TO EXCLUDE "EXPERT"**
**TESTIMONY ON THE DECIDED LAW AND FACTS OF THE CASE**

**INTRODUCTION**

The United States overreaches in moving for exclusion *in toto* of "testimony based on all three 'Expert Report[s]' offered by Continental." Mot. 14. Only isolated snippets of the reports

USA v. Continental; Case No. 3:98-cv-285-JWS
Continental's Opposition to United States' Motion to Exclude "Expert" Testimony on The Decided Law and Facts of the Case

Page 1 of 16

verge on forbidden territory, and then only if Continental seeks to elicit them before the jury at trial (which it does not plan to do). The experts' reports are primarily devoted to applying their insurance-industry expertise to the facts that bear on what is indisputably "in issue" (Mot. 10) in the coming jury trial: whether Continental's conduct rises to "outrageous[ness]" or "reckless indifference," such that punitive damages are warranted. There is simply no basis for precluding these experts -- who collectively have been qualified as experts on insurance issues in 6 cases over the last six years -- from presenting their analyses and opinions to the jury during their trial testimony.

Indeed, one of the United States' objections, that the reports provide impermissible "legal opinions" (Mot. 12), applies equally to the report of the United States' expert, Deborah Senn (Decl. of Gary A. Zipkin, Ex. A). Ms. Senn understands her charge as to "offer [an] opinion as to whether the bad faith conduct of Continental reached the level of outrageous acts of malice or bad motive or reckless disregard of the rights of the United States" (Ex. 1, at 7) -- the precise, bare "legal" terms Alaska uses in its punitive liability standard. Ms. Senn follows through on this task, opining in conclusory fashion, for example, that "[t]o protect . . . public policy Continental should be subject to the full penalty of law and punished by the jury in this matter." *Id.* at 24.

Another of the United States' complaints, that the experts improperly criticize prior judicial decisions in this case, betrays that its true motivation in filing this motion is gamesmanship rather than protecting itself from violations of the Rules of Evidence at trial. Here, the United States has attempted to lend some heft to its carefully drawn excerpts by goading the witnesses at deposition into reiterating those excerpts. In the case of Mr. Lohr, for

USA v. Continental; Case No. 3:98-cv-285-JWS
Continental's Opposition to United States' Motion to Exclude "Expert" Testimony on The Decided Law and Facts of the Case

Page 2 of 16

example, the United States argumentatively asked, "[Y]ou're accepting the court's determination that bad faith occurred in this case, aren't you?" Mot. 7, n.2 (quoting Mot., Ex. 5 at 26:1-3).

At bottom, given that the bulk of Continental's experts' reports would be entirely proper trial testimony, and that Continental has no intention of eliciting any improper parts, there is no need for the court anticipatorily to rule on the matter now through an order *in limine*, much less to adopt the United States' overbroad remedy of excluding testimony based upon *any* part of the reports. In any event, if the court does rule *in limine*, the order should be carefully circumscribed to preclude only (1) explicit criticism (not discussion) of prior judicial decisions in this case; and (2) bare legal conclusions.

## **Procedural Background**

The United States' description (Mot. 3-4) of the procedural history of this case, while technically accurate, glosses over an important limitation in this court's July 12, 2005 decision: This court held that a "jury *could* find that Continental's [conduct] was outrageous or done with reckless indifference" (Dkt. 166 (emphasis added)), not that a jury *must* so find. Relatedly, this court "rejected" (Mot. 4) Continental's reliance on the "fair debatability" of the coverage question only in connection with Continental's argument that there was no bad faith as a matter of law and Continental's argument that punitive damages are unavailable as a matter of law. This court did not hold that it would be irrelevant or improper for Continental to make the "fair debatability" point to a jury in attempting to persuade the jury *as a matter of fact* that punitive damages should not be imposed. To the contrary, the court has ruled that "the fact 'that one Ninth Circuit judge and this court at one point in time sanctioned Continental's decision to reject

USA v. Continental; Case No. 3:98-cv-285-JWS
Continental's Opposition to United States' Motion to Exclude "Expert" Testimony on The Decided Law and Facts of the Case

Page 3 of 16

the Government's tender diminishes the reprehensibility of Continental's conduct.'"  Dkt. 225 at 9-10 (quoting Dkt. 210 at 11).

As to the expert reports, the United States paints (Mot. 4-7) an incomplete and misleading picture by quoting only the arguably objectionable portions, which are clearly in the minority. The United States also omits discussion of these experts' considerable qualifications and experience.

    1.    <u>Judge Douglas J. Serdahely</u>.

Judge Serdahely's legal career spans 30 years and includes nine years of service as an Alaska Superior Court Judge (1981-89), during which he also served as presiding judge of the Third Judicial District and as a *pro tem* panelist on the Alaska Court of Appeals and Alaska Supreme Court.  *See* Mot., Ex. 1 at 3, 28.  Judge Serdahely's years in private practice have been equally distinguished, involving prominent roles on complex litigation affecting Alaska companies and residents.  *Id.* at 28.  In connection with his long-standing representation of ExxonMobil Corporation, Judge Serdahely has gained expertise in punitive damages law nationwide.  *Id.*  Judge Serdahely currently is managing partner of the Anchorage office of Patton Boggs LLP.  *Id.*  He earned his undergraduate degree with highest distinction from Northwestern University in 1968 (where he also was inducted into Phi Beta Kappa), and received his J.D. from Harvard Law School in 1972.  *Id.*  Judge Serdahely has never been denied qualification as an expert.

Turning to Judge Serdahely's expert report here, the United States quotes the report's *conclusion* regarding punitive liability (Mot. 5 (quoting Mot., Ex. 1 at 27)), but fails to describe the exhaustive analysis supporting that conclusion.  For example, Judge Serdahely evaluates

USA v. Continental; Case No. 3:98-cv-285-JWS
Continental's Opposition to United States' Motion to Exclude "Expert" Testimony on The Decided Law and Facts of the Case

Page 4 of 16

Continental's conduct in retaining counsel (Mot., Ex. 1 at 5-6); counsel's investigation, analysis and advice (*id.* at 7-8); Continental's detailed responses to the United States' tenders (*id.* at 8, 10, 22-25); Continental's reliance on information from Bristol Bay's broker (*id.* at 12-16); and the state of Alaska case law on "implied additional insureds" (*id.* at 16-21).

2.   Robert N. Wainscott.

Mr. Wainscott has testified as an expert witness on issues of insurance bad faith and punitive damages in numerous cases over the last seventeen years, in both Alaska State and Federal Courts. Mot., Ex. 2 at 3. *Id.* at 64. See, *e.g.*, *Jackson v. Am. Equity Ins. Co.*, 90 P.3d 136, 145-46 (Alaska 2004) (expert testimony that an insurer's refusal to settle was reasonable); *Tush v. Pharr*, 68 P.3d 1239 (expert testimony concerning whether an insurer would have denied claim had it been timely submitted); *Holderness v. State Farm Ins. Co.*, 24 P.3d 1235 (Alaska 2001) (expert testimony concerning coverage under personal umbrella policy and business liability policy). Moreover, Mr. Wainscott does not invariably testify on the insurer's side. In *Allstate Ins. Co. v. Herron*, 393 F. Supp. 2d 948, 954 (D. Alaska 2005), for example, Mr. Wainscott testified that the insurer had engaged in bad faith by failing, *inter alia*, to notify the insured's attorney concerning the progress of settlement negotiations with the third-party accident victim. No court has ever refused to qualify Mr. Wainscott as an expert witness.[1]

Mr. Wainscott's expertise draws from his thirty-seven years of experience in the insurance industry, during which he served as a staff adjuster and in management positions for

---

[1] An Alaska state court once precluded Mr. Wainscott from offering rebuttal expert testimony, but only because the party had failed timely to designate him, not because Mr. Wainscott was unqualified. *See Nelson v. Progressive Corp.*, 976 P.2d 859, 865 (Alaska 1999) (affirming trial court ruling under abuse-of-discretion standard).

USA v. Continental; Case No. 3:98-cv-285-JWS
Continental's Opposition to United States' Motion to Exclude "Expert" Testimony on The Decided Law and Facts of the Case

Page 5 of 16

Cigna, including its predecessor company INA and affiliate Alaska Pacific Assurance Company. *Id.* at 3, 62. For three years (1977-80), Mr. Wainscott chaired the Alaska Committee of Insurance Arbitration, and he has participated in or led numerous claims handling workshops and seminars. *Id.* at 63. He holds a Bachelor of Science degree from Pennsylvania State University. *Id.* at 62.

Regarding Mr. Wainscott's expert report in this case, the United States emphasizes (Mot. 5-6) the few snippets where Wainscott "respectfully disagrees" with this court's prior decisions. The United States ignores Wainscott's careful analysis of the intention of the express parties to the policy in light of federal statutory enactments (Mot., Ex. 2 at 10-18); insurance industry standards on how to determine whether or not to provide coverage in response to a tender (*id.* at 21-25); and Continental's responses to the United States' tenders (*id.* at 26-32).

3.   Robert A. Lohr.

Mr. Lohr served as Director of the Alaska Division of Insurance from 1999 through 2003. Mot., Ex. 4 at 1. As the highest officer in the Division, Mr. Lohr was responsible for regulating the Alaska insurance industry to protect insurance customers in Alaska. *Id.* His more specific responsibilities included insurer financial examination, consumer protection, rate and form approvals, fraud investigation, and market conduct related matters. *Id.* at 2. Working with the Alaska legislature, Mr. Lohr successfully pressed for amendments to the Alaska insurance laws that strengthened consumer protection features; he then enforced these new measures. *Id.* at 3. While Director, Mr. Lohr also served as a member of the National Association of Insurance Commissioners, an entity responsible for formulating national insurance policy. *Id.* at 2. Mr.

USA v. Continental; Case No. 3:98-cv-285-JWS
Continental's Opposition to United States' Motion to Exclude "Expert" Testimony on The Decided Law and Facts of the Case

Page 6 of 16

Lohr earned his undergraduate degree from Swarthmore College and a Master's degree in public administration from Harvard University's Kennedy School of Government. *Id.* at 3.

In the last four years, Mr. Lohr has been qualified as an expert witness in two insurance-related cases. *See id.* at 35; *Peter v. Progressive*, No. S-11416, 2006 WL 438658 (Alaska Feb. 22, 2006) (claim against insurer for bad faith in denying insured's first-party uninsured motorist claim); *Truong v. Allstate Ins. Co.*, No. CV-99-003747 (New Mexico, 2d Dist., Bernalillo Cty.) (involving insurer's market conduct examinations). Mr. Lohr has never been denied qualification as an expert witness.

In Lohr's report in the instant case, the United States correctly notes (Mot. 6) that Lohr disagrees with the Ninth Circuit panel majority's ruling on the coverage question. But when it comes to Lohr's opinion regarding punitive liability, the United States mischaracterizes (Mot. 7, citing Ex. 4 at 17) Lohr as criticizing this court's ruling and opining that punitive damages are inappropriate *as a matter of law*. Rather, Lohr does not even refer to this court's ruling, and his opinion can be viewed as addressing whether punitive damages are warranted *as a matter of fact*. Mot., Ex. 4 at 17.

## Argument

The United States' requested remedy amounts to throwing out the baby with the bathwater: That a few isolated statements in the expert reports may be objectionable *if elicited at trial* does not support excluding expert testimony based on the other, far more substantial, parts of the reports. The United States cites no authority to support such an extreme approach, and at least one District Court has explicitly rejected it.

USA v. Continental; Case No. 3:98-cv-285-JWS
Continental's Opposition to United States' Motion to Exclude "Expert" Testimony on The Decided Law and Facts of the Case

Page 7 of 16

Moreover, the United States' assumption that Continental will seek to elicit the objectionable portions of the expert reports during the experts' trial testimony is unwarranted. Continental recognizes that Federal Rule of Evidence 702 may preclude an expert from offering a bare legal conclusion such as "Punitive damages are unwarranted" or from expressly criticizing prior judicial decisions in the case. At the same time, Rule 704 permits an expert's opinion to embrace an ultimate issue in the case so long as it is accompanied by the expert's analyses and opinions supporting that conclusion. That is Continental's intention here: In line with the bulk of the experts' reports, the experts will evaluate the outrageousness (or not) of Continental's conduct by applying their insurance-industry expertise to the facts, including the "fact" that the Alaska case law on the "implied additional insured" doctrine was unsettled at the time Continental made its decisions. These opinions do not contradict any prior decision in this matter and should be allowed.

> **A.    The Experts Are Entitled To Use Their Insurance Industry Experience To Opine On The "Outrageousness" and "Reckless Indifference" Questions That Are Prerequisites To Punitive Liability Under Alaska Law.**

Under Alaska law, punitive damages may be imposed only "where the wrongdoer's conduct could fairly be categorized as 'outrageous, such as acts done with malice or bad motives or reckless indifference to the interests of another.'" *State Farm Mut. Auto. Ins. Co. v. Weiford*, 831 P.2d 1264, 1266 (Alaska 1992) (quoting *State Farm Fire & Cas. Co. v. Nicholson*, 777 P.2d 1152, 1158 (Alaska 1989)). *Accord*, *Hagen Ins., Inc. v. Roller*, -- P.2d --, 2006 WL 147593, *8 (Alaska Jan. 20, 2006).

Where the alleged "outrageous[ness]" involves conduct by an insurance company, testimony by an expert witness is likely to assist the jury, the touchstone of Rule 702. As the

USA v. Continental; Case No. 3:98-cv-285-JWS
Continental's Opposition to United States' Motion to Exclude "Expert" Testimony on The Decided Law and Facts of the Case

Page 8 of 16

First Circuit has explained in the analogous context of a bad-faith claim asserted against an insurer, "[i]nsurance is a complicated subject and the industry, over time, has developed a patina of custom and usage." *Peckham v. Continental Cas. Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990). Thus, experts "versed in the nuances of insurance law" can often "shed some light in [this] shadowy domain." *Id.* (affirming trial court ruling allowing experts to "offe[r] opinion evidence as to proximate cause"). *See also, e.g.*, *Lone Star Steakhouse & Saloon, Inc. v. Liberty Mut. Ins. Group*, 343 F. Supp. 2d 989, 1015 (D. Kansas 2004) (permitting expert with 20 years of experience handling insurance claims to testify concerning whether Liberty Mutual's conduct conformed to industry standards and practices because such testimony could assist the jury in its adjudication of bad-faith claim). Indeed, Judge Weinstein has observed that given the "specialized" nature of the insurance industry, even expert "opinion testimony that arguably states a legal conclusion is helpful to the jury, and thus, admissible." WEINSTEIN'S FEDERAL EVIDENCE § 704.04[2][a] (2d ed. 2001).

     Expert testimony bearing on the appropriateness of punitive damages in an insurance case need not be stated in the form of a *bare* legal conclusion such as "Punitive damages are improper here" or "Continental's conduct was not 'outrageous,'" an arguable violation of Rule 702's requirement that the expert testimony assist the jury. *See, e.g.*, *United States v. Barile*, 286 F.3d 749, 760 ("Expert testimony that merely states a legal conclusion is less likely to assist the jury in its determination."); Mot. 8 ("'[o]pinions which would merely tell the jury what result to reach' . . . are not admissible") (quoting Fed. R. Evid. 704, Advisory Committee note). To paraphrase the United States' examples of an improper and proper question (Mot. 8), it would be inappropriate for Continental merely to ask the experts "Was Continental's conduct 'outrageous'

USA v. Continental; Case No. 3:98-cv-285-JWS
Continental's Opposition to United States' Motion to Exclude "Expert" Testimony on The Decided Law and Facts of the Case

Page 9 of 16

or 'recklessly indifferent'?", but entirely appropriate to ask, "Did Continental's actions in responding to the United States' tenders deviate from industry standards and notions of fairness to such a degree that they evidence outrageousness or reckless indifference?" The latter question elicits the rationales supporting the expert's conclusion, rather than an answer that employs only the ultimate "legal" term(s). That the breadth of the expert's answer may embrace or include the expert's opinion on the ultimate issue -- here, "outrageousness" and/or "reckless indifference" -- poses no evidentiary problem because, as the United States concedes (Mot. 8), "[a]n expert may give his opinion even if it embraces an ultimate issue to be decided by the jury." *United States v. Rogers*, 769 F.2d 1418, 1425 (9th Cir. 1985) (citing Fed. R. Evid. 704).

Despite the absence of case law on the subject, Continental accepts *arguendo* the United States' assertion (Mot. 10) that an expert's explicit criticism of a prior decision in this case would not assist the jury and therefore could be excluded under Rule 702. Once again, Continental does not intend to elicit any such testimony at trial. It is important, however, to distinguish explicit criticism of a prior decision in this case from testimony that uses the existence of divergent opinions on the "implied additional insured" doctrine to demonstrate that Alaska law on that doctrine was unsettled when Continental acted. As noted in the Procedural Background, *supra*, this court has not ruled that the unsettled state of Alaska law is irrelevant to whether Continental acted "outrageously" for purposes of punitive damages. To the contrary, the court has ruled that "the fact 'that one Ninth Circuit judge and this court at one point in time sanctioned Continental's decision to reject the Government's tender diminishes the reprehensibility of Continental's conduct.'" Dkt. 225 at 9-10 (quoting Dkt. 210 at 11). Thus, Continental's experts need not criticize this court's coverage holding as "wrong" to explain that

USA v. Continental; Case No. 3:98-cv-285-JWS
Continental's Opposition to United States' Motion to Exclude "Expert" Testimony on The Decided Law and Facts of the Case

Page 10 of 16

the law was once unclear or, relatedly, that different judges in this case have reached different coverage conclusions (at different times).  Again, Continental's intention is to elicit the latter sort of testimony.

### B. Each Of The Expert Reports Here Consists Mainly Of Adequately Supported Expert Opinion Concerning The Reprehensibility Of Continental's Conduct.

As explained in the Procedural Background, *supra*, the experts' reports consist mainly of testimony that goes to the punitive-liability question to be tried, whether Continental's actions were "outrageous" and/or "recklessly indifferent."  We focus on Judge Serdahely's report here because the United States contends it is "based solely on his interpretation of caselaw" (Mot. 12) and therefore should be excluded in its "entirety" (Mot. 14 & n.3) even if the court deems the other two experts' opinions admissible.

The United States mischaracterizes Judge Serdahely's report as restricting itself to "legal opinions."  Mot. 12 (citing Mot., Ex. 1 at 3) (emphasis by United States).  In context, the report states that Judge Serdahely was engaged to render "*expert* legal opinions" (Mot., Ex. 1 at 3 (emphasis added)), and examination of the rest of the report shows that his emphasis lay more on permissible expert opinion than on impermissibly *bare* legal conclusions.  (As explained above, an expert is perfectly entitled to provide a detailed opinion that embraces an opinion on an ultimate legal issue.)  That permissible opinion is whether Continental engaged in "outrageous, malicious or reckless conduct."  *Id.* at 26; *see also id.* (incorporating by reference the analyses and opinions set forth earlier in the report as justifying this opinion).  Among the underlying subjects covered earlier in the report, for example, is whether Continental acted outrageously in light of the unsettled nature of Alaska law on "implied additional insureds."  *See id.* at 17

USA v. Continental; Case No. 3:98-cv-285-JWS
Continental's Opposition to United States' Motion to Exclude "Expert" Testimony on The Decided Law and Facts of the Case

Page 11 of 16

("[A]ttorneys and judges addressing this novel question of law have reached differing conclusions."); 26 ("On the basis of the same facts, law and information discussed above, it is my opinion that Continental's conduct . . . cannot be fairly and objectively categorized as 'outrageous," or as acts done with malice, bad motives or reckless indifference to the interests of the Government.").

The Wainscott report and Lohr affidavit similarly contain a host of amply supported expert opinions that draw on these witnesses' experience in the insurance industry. Thus, Lohr's affidavit explains, among other things, that "Continental did not act in an outrageous, malicious or recklessly indifferent manner [in] deciding at the time of the claim that the U.S.A. was an implied insured [because that] would have required Continental to predict the outcome of a future decision of the Alaska Supreme Court." Mot., Ex. 4 at 13. Wainscott's report, in addressing the import of Continental's failure to defend under a reservation of rights, states: "As a claims person who handled complex litigation I have written thousands of Reservation of Rights letters. I have never written a Reservation of Rights letter for someone who had no status as an insured under the policy." Mot., Ex. 2 at 32.

> **C.   The Presence Of Isolated Statements In An Expert Report That Would Be Improper If Offered As Testimony At Trial Does Not Warrant Exclusion Of All Opinions Based On The Expert Report.**

Were the United States proposed approach adopted, few experts would make it to the witness stand because their reports invariably contain a conclusion that, excerpted from context, appears impermissibly bare. Deborah Senn, the United States' expert, is no exception. Her report, like the reports of Defendants' experts, discusses case law and statutes, *see, e.g.*, Ex. 1, at

USA v. Continental; Case No. 3:98-cv-285-JWS
Continental's Opposition to United States' Motion to Exclude "Expert" Testimony on The Decided Law and Facts of the Case

Page 12 of 16

5-7, and offers conclusions such as "[t]o protect . . . public policy Continental should be subject to the full penalty of law and punished by the jury in this matter." *Id.* at 24.

It is hardly surprising that the United States, while citing (Mot. 7-9) unremarkable cases interpreting Rules 702 and 704, fails to cite a single authority making the leap from problematic statements in an expert's report to exclusion of *all* testimony based on that report. As one District Court explained in rejecting a defendant's similar argument:

> Plaintiff does not suggest that the proposed expert be permitted to instruct the jury as to the law or to make legal and factual determinations for the jury. . . . Plaintiff's counsel is aware, and may be reminded, of the proper method for examining an expert. The witness, an attorney, may be reminded of her role and of the limitation of her testimony to her professional opinion, as a social worker, about any injury Plaintiff may have suffered. While [the proposed expert's] report does contain factual and legal determinations, she need not be permitted to repeat those determinations at trial, and *their inclusion in the report is not, independently, a bar to her testifying.*

*Neely v. Miller Brewing Co.*, 246 F. Supp. 2d 866, 870-71 (S.D. Ohio 2003) (emphasis added). *See also, e.g.*, *Caboni v. General Motors Corp.*, 398 F.3d 357, 362 n.8 (5th Cir. 2005) (describing district court decision granting in part and denying in part motion *in limine* to exclude expert testimony where only some aspects of the expert's report would be inadmissible at trial).

So too here, the presence in Continental's experts' reports of conclusions that, if offered without supporting explanation at trial, would be impermissible, does not warrant barring the experts from testifying. Nor is blanket exclusion warranted based on isolated statements that the expert "respectfully disagrees" with this court's prior decisions or that "the punitive damages question should not even be submitted to the jury." Continental has no intention to elicit such

USA v. Continental; Case No. 3:98-cv-285-JWS
Continental's Opposition to United States' Motion to Exclude "Expert" Testimony on The Decided Law and Facts of the Case

Page 13 of 16

statements at trial.  What Continental does plan to elicit are the experts' amply supported opinions, drawing on their insurance industry experience, concerning whether Continental so deviated from industry standards and principles of fairness that its conduct was "outrageous" or "recklessly indifferent," prerequisites to punitive damages under Alaska law.  This is exactly the issue to be tried, and Continental's experts will assist the jury in deciding it.  Their testimony should be allowed.

In the unlikely event Continental's counsel (or the experts) verge on forbidden territory at trial, objections, rulings, and jury instructions are the proper and proportionate response.  *See, e.g.*, *Dey v. Ivax Pharms., Inc.*, 233 F.R.D. 567, 573 (C.D. Cal. 2005) (denying motion to bar testimony of expert "without prejudice to [party's] right to object at trial to questions posed to these witnesses"); *Richman v. Sheahan*, 415 F. Supp. 2d 929, 948 (N.D. Ill. 2006) (to the extent an expert's testimony may verge on bare legal conclusions, "[a]ny potential prejudice . . . would be eliminated by instructions to the jury that it is not required to accept an opinion witness's conclusion") (collecting cases).  This approach makes far more sense than the United States' overbroad proposal.

## Conclusion

The United States' motion should be denied without prejudice to its right to object at trial to questions or answers it considers to violate the Federal Rules of Evidence.  In the event the court is inclined to enter an order *in limine*, it should first conduct a *Daubert* evidentiary hearing, and any order should be carefully circumscribed to preclude only (1) explicit criticism (not discussion) of prior judicial decisions in this case and (2) bare legal conclusions, and should not

USA v. Continental; Case No. 3:98-cv-285-JWS
Continental's Opposition to United States' Motion to Exclude "Expert" Testimony on The Decided Law and Facts of the Case

Page 14 of 16

bar any expert's testimony *in toto*. Finally, we respectfully suggest that oral argument would aid this court's adjudication of this matter.

DATED at Anchorage, Alaska, this 25th day of April, 2006.

GUESS & RUDD P.C.
Attorneys for Defendant

By: _____S/Gary A. Zipkin_____
    Guess & Rudd P.C.
    510 L Street, Suite 700
    Anchorage, Alaska 99501
    Phone: 907-793-2200
    Fax:   907-793-2299
    Email: gzipkin@guessrudd.com
    Alaska Bar No. 7505048

QUINN EMANUEL URQUHART
   OLIVER & HEDGES, LLP
Attorneys for Defendant

By: ___S/A. William Urquhart___
    Quinn Emanuel Urquhart
      Oliver & Hedges, LLP
    865 South Figueroa
    Street, 10th Floor
    Los Angeles, CA 90017
    Phone: 1-213-443-3000
    Fax:   1-213-443-3100
    Email:
    billurquhart@quinnemanuel.com

USA v. Continental; Case No. 3:98-cv-285-JWS
Continental's Opposition to United States' Motion to Exclude "Expert" Testimony on The Decided Law and Facts of the Case

Page 15 of 16

CERTIFICATE OF SERVICE
I hereby certify that on the
25th day of April, 2006, a copy
of the foregoing document was served
electronically on:

Richard L. Pomeroy, Esq.
Christopher Tayback, Esq.
A. William Urquhart, Esq.
Richard Stone, Esq.

Guess & Rudd P.C.


By:_____S/Gary A. Zipkin_____

USA v. Continental; Case No. 3:98-cv-285-JWS
Continental's Opposition to United States' Motion to Exclude "Expert" Testimony on The Decided Law and Facts of the Case

Page 16 of 16