DEBORAH M. SMITH
Acting United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov

RICHARD R. STONE, SR.
Trial Attorney
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Phone: (202) 616-4291
Fax: (202) 616-5200
E-mail: richard.stone@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>THE CONTINENTAL CASUALTY COMPANY, dba THE CONTINENTAL INSURANCE COMPANY,<br><br>        Defendant. | Case No. 3:98-cv-285-JWS<br><br>**UNITED STATES' OPPOSITION TO CONTINENTAL'S MOTION IN LIMINE NO. 3 REGARDING PRIOR BAD FAITH RULINGS. DOCKET NO. 253** |

**INTRODUCTION**

Continental raises three arguments in support of its Motion to Exclude Evidence or Argument Relating to the Court's Bad Faith Rulings. Dkt. 253.  First, Continental incorrectly contends that this Court's prior bad faith rulings are irrelevant to the issue of punitive damages, and that "[a]ny reference to the court's bad faith ruling is likely to confuse the jury," and cause "undue prejudice." *Id.* at 2-3.  Second, Continental mistakenly asserts that, because "the only aspect of the Courts's ruling on bad faith that represents law of the case" is its determination "that Continental 'lacked a reasonable basis for denying benefits of the policy' and 'had knowledge that no reasonable basis existed to deny the claim or acted in reckless disregard for the lack of a reasonable basis for denying the claim,'" only that specific finding should be admitted.  Dkt. 253 at 6 (selectively quoting this Court's Order, Dkt. 61 at 10).  Third, Continental argues without support that because the Court's underlying September 4, 2001, Preliminary Order, in which the Court states the uncontroverted underlying facts, was only "tentative" and was significantly "modified," it does not constitute "law of the case," and all references to it must be excluded. Dkt. 253 at 8. All of Continental's arguments, however, are legally unsupportable, ignore or misstate this Court's prior rulings, misstate plaintiff's complaint allegations, and demonstrate nothing more than another attempt to conceal from the jury the law and the facts of the case.

**ARGUMENT**

**A. Continental's argument that all references to this Court's bad faith findings are irrelevant depends on a <u>non sequitur</u>.**

Continental argues that the Court's bad faith findings are irrelevant to the issue of punitive

damages because "the standards for bad faith and punitive damages are different." Dkt. 253 at 3. It also states that "[t]he question whether Continental acted outrageously, like the question whether it acted in bad faith, must be assessed on the circumstances as they existed when Continental rejected tender." Dkt. 253 at 4.

Continental has been held, by a preponderance of the evidence, <u>as a matter of law</u>, to have committed bad faith acts that the jury should be permitted to consider as part of its analysis of whether all acts that the plaintiff proves against Continental, in total, amount to outrageous behavior by Continental.[1] There is no legal or logical reason that bad faith acts already established as a matter of law should be excluded. Moreover, Continental insists, that any reference to the Court's rulings would cause unfair prejudice and only confuse the jury. However, even if the different "standards for bad faith and punitive damages" do not create <u>res judicata</u> or collateral estoppel for punitive damages based on the bad faith findings, a finding of bad faith is <u>relevant</u> to the issue of punitive damages. Exclusion of the bad faith findings would cause undue prejudice to plaintiff who has demonstrated the right to judgment as a matter of law on those bad faith acts.

Continental's contention that the United States' proof of bad faith, by a preponderance of the evidence only, requires suppression of the Court's holding from the jury, misconceives the purpose of partial summary judgment. The United States has obtained a ruling on bad faith at the summary judgment stage. There is no genuine issue of material fact and the plaintiff is

---

[1] A "ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

entitled to partial judgment as a matter of law.[2]  The uncontroverted evidence supports the bad faith holdings against Continental.  Continental's activity is established as bad faith based on a preponderance of the evidence and as a matter of law.

Morever, Continental intentionally misinterprets this Court's bad faith rulings as establishing bad faith only as of the date the Court <u>issued</u> its orders. To the contrary, this Court's bad faith rulings established that Continental's bad faith conduct occurred and the circumstances surrounding it "existed <u>when Continental rejected tender</u>." See Dkt. 253 at 4. Finally, Continental has offered no reason why submitting to a properly instructed jury this Court's bad faith findings would be unfair or unjust, or why jurors would be incapable of evaluating whether the bad faith conduct alone, or supplemented by other acts, either does, or does not, rise to the level of conduct that amounts to outrageousness.

### i. Different standards for bad faith and punitive damages do not call for the proven bad faith to be treated as meaningless and retried by the jury.

Prior bad faith findings are relevant to the issue of punitive damages. In fact, not only is bad faith relevant, it is a prerequisite for a punitive damages award. In the instant case, the plaintiff seeking punitive damages has already proved as a matter of law that the defendant acted unreasonably. The defendant who committed the bad act should not be allowed to have the Court's ruling suppressed from the jury to the undue prejudice of the innocent plaintiff.  This

---

[2]  Upon either a directed verdict motion or a summary judgment motion, "the inquiry . . . is the same:  whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.  In this case, if the bad faith had been tried to a jury, the Court would direct a verdict on bad faith "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id*. at 250.

conduct cannot be ignored in an analysis of whether the alleged conduct was also outrageous. However, the jury may also look to the already proven underlying acts, e.g., concealment of a policy, misrepresentations about premium reductions, and rejection of the United States' theory without reference to a single contrary Alaska case. Those acts, which have also been proven, including the bad faith holdings based on those facts, clearly are relevant to whether Continental acted outrageously, and Continental has cited no case law or other legal support to the contrary.³ In addition to that analysis, the jury should also be permitted to assess whether the rejection of the Kallstrom appeal retender, without any legal supporting ground, adds another element of proof to the outrageous conduct equation, because that act is a continuation, and also a new act, of bad faith.

In *Ace v. Aetna Life Ins. Co.*, 139 F.2d 1241, 1247 (9th Cir. 1998), the court stated "[i]n ruling that while Aetna acted 'with enough disregard for Ace's interest to represent bad faith' but not 'clearly and convincingly reckless[ly]' the district court ignored significant and undisputed evidence." The Ninth Circuit then listed the many acts of the insurer upon which, collectively, "we cannot say the evidence does not reasonably support an award of punitive damages." *Id.* at

---

³ Continental did cite three cases where the respective courts found an absence of bad faith despite the fact that the insurers denied a claim made by an insured. Dkt. 254 at 4-5. However, none of those cases support Continental's argument that a finding of bad faith is irrelevant to a punitive damages claim (and, in each case the insurer, unlike Continental, had a reasonable basis for denying the claim). See *Miller v. Allstate Ins. Co.*, 1998 WL 937400 at *7 (C.D. Cal. 1998) ("Plaintiff fails to identify any evidence that defendant acted unreasonably or without proper cause in delaying its payment...."); *Paulson v. State Farm Mutual Automobile Inc. Co.*, 867 F. Supp 911, 919 (C.D. Cal. 1994) ("As a matter of law, th conduct of State Farm in handling Paulson's claim was reasonable...."); *Ramirez v. Transcontinental Ins. Co.*, 881 S.W.2d 818,826 (Tex. App. 1994) ("We find that TIC conclusively established that its reliance on Dr. Rejaie was a reasonable basis for denying Ramirez's claim.").

1247. The court also stated that "the evidence was sufficient as a matter of law to support an award of punitive damages." *Id.* In the instant case Continental contends that where bad faith has been proven, the proof cannot be mentioned to the jury. The case should not have been taken away from the jury. In light of *Ace*, it is simply not arguable that a proven act of bad faith cannot be included in the jury's punitive damages deliberations. Indeed, the Court in the instant case has held that the facts that as a matter of law establish bad faith, also are sufficient to indicate that a trial on punitive damages is in order. Dkt.166 at 17. Further, *Ace* supports the proposition that all acts performed to the insured's detriment are to be considered when the determination is made whether the insurer acted with reckless indifference to the rights of its insured United States. *Id.* at 1247. The "sufficiency of the evidence" must be considered "as a whole." *Id.*

   One of the cases that Continental cites, also indicates that prior rulings regarding bad faith conduct are relevant to damages that, like punitive damages, require a showing of some degree of bad conduct. In *Juicy Whip, Inc. v. Orange Bang, Inc.*, 2002 WL 32954976 (C.D. Cal. 2002), the court excluded "any reference to the prior finding of willful infringement," because "the jury's mandate [was] to assess <u>compensatory</u> damages," and "[t]he willfulness finding is only relevant to the issue of <u>enhanced damages</u>, not compensatory." (Emphasis added) *Id.* at *5. The court reasoned that, unlike compensatory damages, "enhanced damages may be awarded only as a penalty for an infringer's increased culpability, namely willful infringement or bad faith.'" *Juicy Whip,* 2002 WL at *5 (quoting *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 23 F.2d 1576, 1579 (Fed. Cir. 1991). In our case, because the "jury's only mandate is to assess" punitive damages, which, are "awarded only as a penalty for an infringer's

increased culpability, namely [outrageousness] or bad faith," prior rulings concerning bad faith are relevant because they form a basis for, and relate to, proof of increased culpability.

Moreover, not only are this Court's bad faith findings relevant to the issue of punitive damages because they amount to proven underlying bad acts, according to *Mildred Tempering, Inc. v. Seals Corp. Of America*, 902 F.2d 703, 715 (9th Cir. 1990), also cited by Continental in its brief, the "law of the case doctrine" requires that such findings be followed. The Ninth Circuit concluded that "[t]he law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs" and "precludes courts from reconsidering an issue previously decided by the same court...." *Id.* Strikingly, despite Continental citing such case law requiring that the "law of the case" be obeyed, Continental then moves this Court to exclude the law of the case.[4]

### ii. The "circumstances as they existed when Continental rejected tender" are identified by the Court and form the basis for the Court's determination of Continental's bad faith lack of a reasonable basis for rejecting tender.

Next, Continental argues that "whether Continental acted outrageously...must be assessed on the circumstances as they existed when Continental rejected tender" and "[t]he fact that the Court ruled in 2005 that Continental 'lacked a reasonable basis' is irrelevant to whether Continental acted 'outrageously' a decade earlier when it rejected the Government's tender." Dkt. 253 at 4. Continental's spurious position appears to be that, because the <u>act</u> of this Court <u>issuing</u> its bad faith orders occurred in 2001 and 2005, the holdings about Continental knowingly

---

[4] Continental even has attempted to submit arguments and opinions by its three "experts" that directly contradict the "law of the case." *See* United States' Motion to Exclude Experts. Docket No. 272.

acting without reasonable basis and in reckless disregard are irrelevant. Continental simply ignores that the Court's holding must be based on the actions of Continental that were unreasonable at the time Continental acted. The Court's Order states:

> To establish a claim for bad faith denial of coverage, a plaintiff must show that the defendant <u>insurer lacked a reasonable basis</u> for denying benefits of the policy and that the defendant insurer <u>had knowledge that no reasonable basis existed</u> to deny the claim or <u>acted in reckless disregard</u> for the lack of reasonable basis for denying the claim.

(Emphasis added) Dkt. 61 at 10. These requirements must be met at the time of the defendant - insurer's actions toward its insured's claim. In the instant case the Court has held: "Based on the <u>undisputed record</u> of this case, the United States has established that it is entitled to partial summary judgment on its bad faith claim." (Emphasis added) Id. The Court also addressed Continental's hindsight argument:

> The Court understands that hindsight is 20/20, and that neither Frederic nor Showers had the benefit of the factual record developed in this case. However, the court's task in analyzing the United States' claim is to ascertain whether Continental had a reasonable basis to deny the United States' multiple tenders. The relevant point is that based on the record in this case, the United States' tenders were not reasonably evaluated by Continental either on the facts or relevant legal principles.

Dkt. 57 at 24-25. That analysis was clearly made on Continental's contemporaneous tender rejection activities, not on hindsight. Continental acted knowingly, at the time, and reference by the jury to those proven bad faith acts is proper.

Further, obviously this Court's orders have legal effect in this case beyond just the <u>act</u> of <u>issuing</u> them. Those orders found as a matter of law, among other things,[5] that (i) the United

---

[5] According to *Mildred* (discussed above), "[t]he law of the case doctrine" provides that all findings "'decided explicitly or <u>by necessary implication</u>'" (emphasis added) to the "law of the case" are themselves considered the "law of the case." (902 F.2d at 715) (quoting *Liberty Mutual Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982)).

States was an insured under an applicable policy; (ii) Continental had no "reasonable basis" for rejecting the United States' tenders pursuant to that policy; and (iii) Continental "kn[ew ] that no reasonable basis existed to deny the claim" (or at least acted in reckless disregard). Dkt. 61 at 9-10  Although the <u>orders</u> themselves may not have been <u>issued</u> until 2001 and 2005, they establish that relevant conduct occurred and knowledge existed on Continental's part <u>when Continental rejected tender</u>.⁶  Clearly, the circumstances that this Court found as a matter of law to have existed at the time Continental improperly rejected the United States' tenders are not only relevant, but critical, to determining whether Continental's conduct was outrageous.

      Additionally, as argued in the United States' motion for partial summary judgment regarding the October 30, 2001 <u>Kallstrom</u> appeal retender, Continental's failure to accept the United States' retender of the <u>Kallstrom</u> claims occurred <u>after</u> this Court's September 18, 2001, Order holding that the United States was an insured and that Continental's previous failures to accept tenders constituted bad faith.  See Dkts. 227-1 and 302.  The mere <u>act</u> of <u>issuing</u> that Order is relevant to whether Continental's failure to accept the <u>Kallstrom</u> retender was outrageous.  That act of failing to accept retender and/or to give notice of its reasons for rejecting amounts to a continuing and a new act of bad faith.

---

    ⁶ Continental also argues that "the Court's ruling on reasonableness, issued based on affidavits years after the tender was rejected, indicate nothing about whether Continental acted outrageously as they existed when it rejected tender." Dkt. 253 at 5.  Again, however, the date that the affidavits were <u>executed</u> is irrelevant (except as to possible memories fading with time, which Continental does not argue); what matters are the allegations about Continental's conduct and knowledge, including dates of when such conduct and knowledge existed, contained in the affidavits.  The major problem with Continental's affidavits has been that they represent arguments made during the litigation to justify acts taken years earlier, rather than representing contemporaneous evidence.

### iii. Bad faith acts found as a matter of law on uncontroverted evidence are neither unfairly prejudicial nor likely to confuse the jury.

Continental's bald assertions that, unless this Court's bad faith findings are suppressed from the jury, Continental will be "undue[ly] prejudic[ed]" and the jury will be confused, are nothing more than another attempt to avoid properly supported and entered rulings decided unfavorably to Continental. Continental is correct that acknowledging this Court's findings that Continental acted in bad faith will be prejudicial -- and it should be. All findings that a party acted in bad faith are expected to prejudice the offending party – otherwise, such bad faith findings are meaningless. Continental, however, has provided nothing even suggesting that such prejudice would be "<u>undue</u>" or otherwise unjust. Indeed, Continental has no one to blame but itself that its actions amounted to bad faith, and there is nothing unfair about informing the jury of, and even binding the jury by, legal findings to that effect. To the contrary, it would be patently unfair to effectively render meaningless this Court's bad faith rulings, and allow Continental to once again argue to another forum that its conduct was not in bad faith (which, as demonstrated by its three "expert" reports, Continental undoubtedly will try to do) after it has been held as a matter of law to have committed those acts in bad faith. To suppress the findings would unduly prejudice the innocent plaintiff that has proven to summary judgment standards that the bad conduct of the defendant occurred. It is ironic that Continental asks the Court to unduly prejudice the innocent plaintiff to the benefit of the bad faith actor.

As for jury confusion, Continental offers absolutely no legal or other support for its contentions that, should the jury be informed about this Court's bad faith rulings, "it will likely <u>presume</u> that Continental <u>must have</u> acted outrageously" and "will likely conflate the legal

distinctions between (1) unreasonableness and outrageousness and (2) clear and convincing evidence and preponderance of the evidence."[7]  Dkt. 253 at 5.  There is no reason that a jury would be incapable of distinguishing between this Court's finding that Continental acted in bad faith and the jury's task of deciding if such bad faith conduct was one element of activity that alone, or in conjunction with other bad faith acts, amounted to outrageous conduct.  Further, there is no reason that a properly instructed jury would not be able to grasp the differences between the basic standards of proof which have been misstated by Continental in this case.[8]

### B.  Continental's argument that any references to this Court's prior orders should be limited to the "law of the case" (as defined by Continental) does not accurately define or state the law of the case.

Continental argues that "the Court should not allow references to any factual observations or dicta in the Court's orders."  Dkt. 253 at 6.  According to Continental, "the only aspect of the Court's ruling on bad faith that represents law of the case" is its determination "that Continental 'lacked a reasonable basis for denying benefits of the policy' and 'had knowledge that no reasonable basis existed to deny the claim or acted in reckless disregard for the lack of a reasonable basis for denying the claim.'"  Dkt. 253 at 6 (quoting Dkt. 61 at 10).

---

[7] Continental's reasoning wrongly assumes that the jury will be informed of this Court's bad faith findings and then told simply that its "job is just to decide how much money to award" (Emphasis added) Dkt. 253 at 5.  To the contrary, as Continental is well aware, the jury's first job is to determine if Continental's bad faith conduct was outrageous, and only then, and only if it answers in the affirmative, will the jury consider "how much money to award."

[8] Continental's argument is particularly absurd considering the reports authored by its three punitive damages "experts," all of which explicitly reject the "law of the case."  Indeed, Continental's position essentially is that a jury would be more confused by being made aware of the "law of the case" to which it is bound (see Mildred), than by being subjected to arguments and opinions that are directly contrary to the "law of the case."

In support, Continental cites several cases generally for the proposition that "non-binding [does] not constitute law of the case." Dkt. 253 at 7. According to one of the cases cited by Continental, *Mildred Tempering, Inc. v. Seals Corp. Of America* (discussed above), "[t]he law of the case doctrine . . . precludes courts from reconsidering an issue previously decided by the same court . . . . For the doctrine to apply, the issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition.'" (Emphasis added) 902 F.2d at 715. (quoting *Liberty Mutual Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982)).

Continental contends that the "law of the case" is limited to this Court's findings that Continental "lacked a reasonable basis for denying" the claim and "had knowledge that no [such] reasonable basis existed . . . or acted in reckless disregard for the lack of a reasonable basis" and, thus, that everything else is inadmissible dicta. (Internal quotations omitted) Dkt. 253 at 6. Under *Mildred*, however, in addition to the bad faith rulings cited above that were "decided explicitly," anything else that was "decided . . . by necessary implication" to those bad faith rulings also constitutes the "law of the case."

Continental identifies only one example from this Court's numerous orders that it contends constitutes inadmissible dicta: the Court's conclusion that "[t]he United States was therefore clearly within the class intended to be benefitted by the policy." (Internal citations omitted). Dkt. at 7 (quoting Dkt. 61 at 8-9). Under *Mildred*, however, because that conclusion was "decided . . . by necessary implication," based on controlling Alaska law under Avi-Truck, in the Court's finding that the United States was an implied insured, it too constitutes "law of the case," not mere dicta.

Indeed, this Court's September 18, 2001, Order, found that "[u]nder the relevant principles of Alaska law discussed at length in the [September 4, 2001] preliminary order . . . the United States . . . is[ ] an additional implied insured." Dkt. 61, at 9. According to those "relevant principles," "courts may recognize an additional implied insured . . . if the risk to the insurer is not increased and the implied insured is <u>within the class intended to be benefitted by the parties</u>." (Emphasis added). Dkt. 61 at 11 (citing *Stewart-Smith Haidinger v. Avi-Truck, Inc.*, 682 F.2d 1108, 1113 (Alaska 1984)). Therefore, under *Mildred*, the "law of the case" doctrine applies because the "issue in question" (this Court's finding that "[t]he United States was [ ] clearly <u>within the class intended to be benefitted</u> by the policy") was "necessary" to the Court's finding that the United States was an implied insured.[9]

### C. Continental's argument that all references to this Court's September 4, 2001, Preliminary Order should be excluded again misstates the record and is not supportable.

Finally, Continental again misstates the record in order to contrive the argument that because this Court's September 4, 2001, Preliminary Order was "tentative" only, and was "significantly modified," and "substantially altered" by this Court's September 18, 2001 Order, it did not "constitute[] 'law of the case,'" and all references to it must be excluded. Dkt. 253 at 8-9.

---

[9] The Court's finding that the United States was an implied insured also is the "law of the case" because it was "necessary" to the Court's bad faith ruling, *i.e.*, if the United States was not an insured, Continental would not have owed a duty of good faith and fair dealing and, thus, could not have been held liable for bad faith.

It is further law of the case by which this Court is bound because it was by implication a part of the Ninth Circuit's holding based on <u>Avi Truck</u> that the United States is an implied insured under Alaska law under the Continental policy. Dkt. 147.

Not surprisingly, however, Continental does not identify any such "significant modifi[cation]" or "substantial alter[ation]." To the contrary, this Court's September 18, 2001 Order, explicitly "adopt[ed] its [September 4, 2001] preliminary order at docket 57 for a comprehensive statement of facts and jurisdictional grounds." Dkt. 61 at 2. And, "[a]fter hearing oral argument and reviewing the record once again, the court is not persuaded that its [September 4, 2001,] preliminary order errs in any significant respect." *Id.* at 3.

Indeed, as the Court indicated, all of its legal rulings were based in large part, if not entirely, on the findings contained in the September 4, 2001 order. Thus, in accordance with *Mildred*, all of those findings that were "decided . . . by necessary implication" to this Court's subsequent rulings as a matter of law also constitute "law of the case," not mere dicta. Consequently, Continental does not establish that the September 4, 2001 order should be excluded.

**CONCLUSION**

For the foregoing reasons Continental's Motion to Exclude Evidence or Argument Relating to the Court's Bad Faith Rulings should be denied.

Respectfully requested this 26th day of April, 2006, in Anchorage, Alaska.

                              DEBORAH M. SMITH
                              Acting United States Attorney

                              s/Richard L. Pomeroy
                              Assistant U.S. Attorney
                              222 West 7th Ave., #9, Rm. 253
                              Anchorage, AK 99513-7567
                              Phone: (907) 271-5071
                              Fax: (907) 271-2344
                              E-mail: richard.pomeroy@usdoj.gov
                              AK #8906031

                              s/Richard R. Stone, Sr.
                              Trial Attorney
                              U.S. Department of Justice
                              P.O. Box 888
                              Benjamin Franklin Station
                              Washington, D.C.  20044
                              Phone:  (202) 616-4291
                              Fax:  (202) 616-5200 fax
                              E-mail:  richard.stone@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2006,
a copy of the foregoing UNITED STATES'
OPPOSITION TO CONTINENTAL'S
MOTION IN LIMINE NO. 3 REGARDING
PRIOR BAD FAITH RULINGS. DOCKET NO. 253
was served electronically on Gary A. Zipkin and
William Urquhart  and on

Rebecca L. Ross
Ross, Dixon & Bell, LLP
55 West Monroe Street, Suite 3000
Chicago, IL 60603-5758
(312) 759-1920
(312) 759-1939 fax

by U.S. mail

s/ Richard L. Pomeroy