Gary A. Zipkin, Esq.
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, AK  99501
Phone:    (907) 793-2200
Fax:       (907) 793-2299
E-mail:    gzipkin@guessrudd.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CONTINENTAL | ) | |
| CASUALTY COMPANY d/b/a | ) | |
| THE CONTINENTAL INSURANCE | ) | |
| COMPANY, | ) | Case No. 3:98-cv-285-JWS |
| | ) | |
| Defendant. | ) | |
| | ) | |

REPLY IN SUPPORT OF DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT ON PUNITIVE DAMAGES

Introduction

Although it is lengthy, the USA's opposition says very little on the merits.

Instead, the USA variously disparages defendants for their writing style (it apparently is too

"argumentative" and "opinionated") and discusses side issues that do not bear on the merits of

Continental's decision to reject tender.  Indeed, the USA does not offer a single reason -- not

even an argument -- why Continental's analysis of the question whether the USA was covered

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages

Page 1 of 1

under Bristol Bay's policy as an implied insured purportedly was outrageous. Without having offered any argument (let alone a persuasive one) why Continental's conclusion that the USA had no rights under Bristol Bay's policy was outrageous in light of the facts and law as they existed at the time, the USA cannot reach a jury on its prayer for punitive damages.

The discrete issues presented by this motion (at Docket 231) are generally easy to resolve. The USA does not dispute, for example, that Alaska law categorically precludes awards of punitive damages for violations of rights that were not "clearly defined" when the violations occurred. The USA also does not seriously dispute that its status as an implied insured was far from clear until this court ruled in 2001. Indeed, the USA's own Rule 30(b)(6) witness admitted as much. The only real response the USA makes on this point is that Continental purportedly acted outrageously when it did not immediately accept the USA's re-tender of Kallstrom in 2002, but that unpled claim is not viable for a number of reasons, including because there was no tender rejection and there are no damages, and even if it were it could not support the USA's prayer for punitive damages based on Continental's pre-litigation tender rejections. The USA's tender sought to extend Avi-Truck into uncharted territory -- that Avi-Truck applied in our context was far from clear in 1995. That undisputed fact precludes punitive damages as a matter of law.

The USA also does not dispute that (1) good faith reliance on the advice of counsel precludes punitive damages, (2) Continental reasonably solicited the advice of counsel when confronted with the USA's novel tender, and (3) Continental actually relied on its lawyers' advice. Although the USA argues that Continental did not rely in good faith on its lawyers' advice that the USA was not insured, the USA does not explain why Mr. Friderici's and Judge Stowers' analysis of Avi-Truck -- which the USA acknowledges was the authority on which it primarily relied (and on which the Ninth Circuit relied in 2004)[1] -- was so erroneous as to be "outrageous." By its terms, Avi-Truck required a finding of intent before an additional insured could be implied. Logically, Mr. Friderici and Judge Stowers performed factual investigations to

---

[1] Opposition (Dkt. 286) at 8 ("the United States' tenders cited Stewart Smith Haidinger v. Avi-Truck, Inc., 682 P.2d 1108 (Alaska 1984), which was the controlling law and is still valid 22 years later").

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages

Page 2 of 2

determine whether the contracting parties (Bristol Bay and Continental) intended to benefit the USA or the class to which the USA belongs.  Based on their investigations, both lawyers determined that the parties did not intend to benefit the USA -- a point which the USA's own Contracting Officer has now confirmed.  In light of Avi-Truck's express requirements, Continental's lawyers plausibly thought that lack of intent was dispositive and therefore advised Continental that the USA had no right to either indemnity or defense.  Mr. Friderici and Judge Stowers analyzed the USA's 1995 and 1997 tenders the way any good lawyer would, and Continental acted in good faith when it relied on those analyses.

On the genuine issue rule, the USA simply dodges the question.  The USA does not attempt to distinguish any (let alone all) of the nearly one dozen Ninth Circuit and Alaska authorities cited in defendants' motion which hold that punitive damages cannot be awarded in this context.  After Continental's lawyers advised Continental that the USA was not an implied insured because the contracting parties did not intend to benefit the USA, Continental conveyed that exact point in the rejection letters it sent the USA.  This court agreed with Continental in 2003.  Although two judges on the Ninth Circuit said Continental, Mr. Friderici, Judge Stowers and the court were wrong, how Continental's conclusion that the lack of intent to benefit the USA (among other things) precluded the extension of Avi-Truck to this case could support punitive damages is mystifying.

Finally, as to defendant's due process arguments, the USA largely misses the point.  The USA argues that its injuries were "economic" apparently without grasping that this admission cuts against the USA in the reprehensibility analysis.  The USA also claims that Continental's conduct involved "repeated actions" without citing a single other case in which Continental purportedly committed the same violations allegedly committed here.  And, on the question whether the court's ruling that Continental is liable beyond its policy limits was punitive or compensatory, the USA offers literally no reasoning.  Under established constitutional jurisprudence, the USA cannot obtain a greater award than it has already received.

In the end, the USA wants the court to simply ignore the issues -- to rely on its prior rulings without conducting a fresh analysis -- even though (1) most of the issues presented by defendants' motion bear only on punitive damages, (2) most have never been addressed before, and (3) the standards for bad faith and punitive damages vary widely.  We urge the court

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages

Page 3 of 3

to look at what happened in this case with a focus on what matters:  Continental's conclusion that the USA did not have a right to indemnity or defense.  We submit that there is no basis for a conclusion that Continental's decision that the USA was not insured under Bristol Bay's policies was outrageous or malicious.[2]

<u>Argument</u>

I.    The Issue For The Court Is Whether A Jury Could Reasonably Find That Continental's <u>Conclusion That The USA Was Not Insured Was Outrageous</u>

The USA does not dispute that the court <u>must</u> summarily adjudicate the USA's prayer for punitive damages unless the USA proffers clear and convincing evidence of outrageous conduct.  <u>See</u> <u>State Farm Mutual Automobile Ins. Co. v. Weiford</u>, 831 P.2d 1264, 1266 (Alaska 1992); <u>Chizmar v. Mackie</u>, 896 P.2d 196, 210 (Alaska 1995).  Notwithstanding that difficult standard, the USA makes only a half-hearted attempt to show that Continental's substantive decision on coverage was outrageous.

Instead, the USA asserts that defendant's "truncated arguments" showing why that substantive decision was far from outrageous "completely misunderstand the USA's claim for punitive damages."  Opp. at 5.  That is because, according to the USA, "several acts of

---

[2]  While defendants will not respond to the USA's *ad hominem* attacks on counsel in kind, it merits noting that, where it addresses the substantive issues at all, the USA's opposition brief contains a number of outright misstatements.  For example, the USA asserts that "[i]t is still a fact that no judge has disagreed with this court's holding that Continental had the duty to defend, with or without a reservation of rights."  Opp. at 12.  That is false.  This court ruled in 2003 that Continental had <u>no</u> duty to defend, and entered judgment in Continental's favor on the USA's claim for breach of the duty to defend.  Dkt. 115.  Similarly, the USA persists in its assertion that Continental had "no risk" under the Bristol Bay policy if the USA were not deemed an implied insured.  Opp. at 23; <u>see</u> <u>id.</u> at 7 (Continental's risk purportedly was "eviscerated").  That is also false.  As set forth in defendant's motion, everyone at Bristol Bay, the Government's own Contracting Officer, and even the USA's own Rule 30(b)(6) witness have confirmed that "there are torts that occur on property that belongs to a 638 contractor that <u>don't</u> always fall within the scope of the FTCA."  Lindquist Tr. at 125:8-11 (emphasis added), Dkt. 232 Ex. P; <u>see</u> Motion at 14-16 (showing that the Bristol Bay policy was intended to protect Bristol Bay when the FTCA would not).

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages

Page 4 of 4

Continental subject it to punitive damages," including things like Continental's purported violations of its own internal policies.  Id.

The USA misconstrues the nature of its own claims.  As this court has observed, the USA's only bad faith claim -- which is the only claim which could possibly support an award of punitive damages -- is "a claim for bad faith denial of coverage".  Dkt. 61 at 10 (emphasis added); see Dkt. 71 (claim three).  Because the USA's claim is for a bad faith denial of coverage, the standard for the USA's bad faith claim on summary judgment was whether Continental "lacked a reasonable basis for denying benefits of the policy" and either "had knowledge that no reasonable basis existed to deny the claim or acted in reckless disregard for the lack of a reasonable basis for denying the claim."  Dkt. 61 at 10 (emphasis added); see Dkt. 166 at 11 (the Court:  "The order at Docket 61 . . . [held that] Continental acted in bad faith in declining to defend and indemnify the United States under the policy.") (emphasis added).

To obtain punitive damages based on its bad faith denial of coverage claim, the USA must show by clear and convincing evidence that Continental acted "outrageously" when it declined to defend and indemnify the USA.  Indeed, that is what the USA alleges in its complaint -- that it is entitled to "[p]unitive damages resulting from the defendants' outrageous denial of coverage, defense, and indemnification to the United States, which denials were committed with malice or bad motives or reckless indifference to the interests of the United States."  Dkt. 71 at 10 (emphasis added).  If the USA cannot show that Continental's decision not to defend or indemnify the USA was outrageous, it cannot obtain punitive damages.

That remains true even if Continental violated its own internal policies or committed other collateral infractions.  As the Alaska Supreme Court has held, the relevant question for a bad faith denial of coverage claim is whether the "decision to deny coverage lacked a reasonable basis," not whether other miscellaneous bad acts occurred.  Hillman v. Nationwide Mutual Fire Ins. Co., 855 P.2d 1321, 1325-26 (Alaska 1993); Peter v. The Progressive Corp., 2006 WL 438658 at *6 (Alaska 2006) (the issue in a bad faith denial of coverage case is whether the insurer's tender rejection was made without a reasonable basis, and "questions raised as to particular practices of the insurance company 'have little or no relevance on that point'" (quoting Hillman).  In Hillman, the plaintiff originally brought several different bad faith claims, 855 P.2d at 1323, and the Supreme Court set forth the standards governing a

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages

Page 5 of 5

bad faith "denial of coverage" claim. Id. at 1323-26. As to that type of claim -- which is the only claim pleaded and pursued by the USA in this case -- miscellaneous bad acts are irrelevant unless they bear on the insurer's decision to reject tender. Under Ninth Circuit precedent, evidence that bears on potential bad faith claims other than the bad faith claim that actually goes to a jury is not even admissible, let alone sufficient to reach a jury on punitive damages. See Aceves v. Allstate Ins. Co., 68 F.3d 1160, 1165-66 (9th Cir. 1995) (where only one of several bad faith claims goes to the jury, only the acts of bad faith that are relevant to the bad faith claim submitted to the jury are admissible -- acts that bear on other theories of bad faith are irrelevant).[3]

        Even putting the court's rulings, the USA's pleadings and Hillman to the side, the USA cannot obtain punitive damages based on the side issues it lists in its opposition. The USA has never argued (and certainly has not shown) that any of the alleged collateral infractions it has

---

[3] In Hillman, the miscellaneous bad acts that the insurer (Nationwide) was alleged to have committed -- and which had "little or no relevance" for the Supreme Court -- included allegations that Nationwide:

    (i)      "denied coverage before making *any* investigation of the facts or the law"
    (ii)     "made subsequent, formal denials of coverage without having conducted significant investigation"
    (iii)    employed "agents [who] violated its guidelines and policies"
    (iv)    "fail[ed] to resolve all reasonable doubts about coverage in favor of the policy holder"
    (v)    "with[held] from the file any explanation for why the policy holder was required to sign a non-waiver agreement"
    (vi)    "obtain[ed] a legal opinion just to 'paper the files' and for the main purpose of denying the claim"
    (vii)   "fail[ed] to provide a policy holder with a previously promised letter from Nationwide's attorney regarding coverage"
    (viii)  lied "to the policy holder about whether that letter was available"
    (ix)   "'stonewall[ed]' the claim for four years because of vindictiveness towards the Hillman's attorneys," and
    (x)    employed an attorney who unilaterally decided not to settle the underlying case even though he had the authority to do so,

as well as an allegation that Nationwide's personnel "concede that Nationwide failed to follow its own policies and procedures in all these respects". 855 P.2d at 1325.

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages

Page 6 of 6

identified caused damages or injured it in any way.  The USA's injury in this case, whatever it may have been, was caused by Continental's rejection of its tenders, not by things like alleged violations of internal policies or delayed responses.  Because it has not shown that Continental's alleged collateral violations independently caused any injury, the USA cannot reach a jury on its prayer for punitive damages based on those collateral issues; punitive damages are only awarded for violations that cause actual damages.  See, e.g., DeLand v. Old Republic Life Ins. Co., 758 F.2d 1331, 1339 n.4 (9th Cir. 1985) ("There can be no punitive damages where compensatory damages have not been awarded"); Kizer v. County of San Mateo, 279 Cal. Rptr. 318, 322 (1991) ("actual damages are an absolute predicate for an award of exemplary or punitive damages"); DeNardo v. GCI Communication Corp., 983 P.2d 1288, 1292 (Alaska 1999) ("A punitive damages claim cannot stand alone").

Indeed, as the United States Supreme Court explained in State Farm, "[a] defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages.  A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business."  State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 422-423 (2003) (emphasis added).

For these reasons and those detailed in Section III below, the USA cannot obtain punitive damages if it cannot show that Continental's decision not to defend or indemnify the USA was outrageous.  There is no dispute that Continental actually thought the USA was not insured when it rejected its tenders in 1995 and 1997.[4]  The issue for the court is whether a jury could reasonably find that Continental's belief in that regard was outrageous.  Because the jury could not so find, the court should not permit the USA's prayer for punitive damages to reach a jury.  Weiford, 831 P.2d at 1266.[5]

---

[4]  See, e.g., Affidavits of Ray Faccenda & William Huston, Dkts. 235, 236.

[5]  Before turning to the specific legal issues before the Court, the Government's assertion that defendants' entire statement of facts somehow "is contested" merits mention.  The Government generically complains that Continental "often exaggerates," that its "references are not specific enough," and that defendants' facts are "mixed with argument, opinion, hearsay, testimony created for the litigation rather than contemporaneous evidence, improper summary, generality, statements and arguments contrary to the Ninth Circuit law of the case, and non probative (footnote continued)

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages

Page 7 of 7

II.     Continental Did Not Act Outrageously When It Concluded That The USA Was Not
        Insured Under Bristol Bay's Policies

        A.     The USA Has Admitted That It Did Not Have Clearly Defined Rights Under
               Bristol Bay's Policies and That Precludes Punitive Damages

        The USA's designated person most knowledgeable admitted that the USA did not

have "clearly defined rights as an implied insured on general liability insurance policies" when it

tendered in 1995 and 1997.[6]  The USA also does not dispute that, as a matter of Alaska law,

violations of rights that are not "clearly defined" cannot support a finding of outrageousness,

maliciousness or reckless indifference and do not warrant punitive damages.  State v. Haley,

687 P.2d 305, 315, 320 (Alaska 1984); Chizmar v. Mackie, 896 P.2d 196, 210 (Alaska 1995)

("where standard of care is not clearly defined, breach does not support recovery of punitive

damages").  The USA's tenders indisputably were novel and the USA's rights as an implied

insured were far from "clearly defined" in 1995 and 1997.  Punitive damages therefore are not

available.

        Unable to rebut this straightforward argument, the USA first says the court should

not "countenance[]" this purported "attempt to reargue an area already discussed and rejected by

this court."  Opp. at 14-15.  However, the rule precluding punitive damages for violations of

rights that are not clearly defined relates exclusively to punitive damages -- not bad faith -- and

has never before been addressed, let alone "rejected," by the court.

        On the merits, the USA makes only two points.  First, the USA states that it

"tendered under a valid Alaska Supreme Court case," Avi-Truck, asserts that its tender "was not

cobbled together from obscure concepts without legal support," and observes that the "theory

_____

hyperbole."  Opp. at 6, 14, 16-17.  These generic, non-specific complaints cannot create a
genuine issue of fact.  Connick v. Teachers Ins. and Annuity Ass'n of America, 784 F.2d 1018,
1022 (9th Cir. 1986) (to oppose summary judgment, a party "must provide evidence setting forth
specific facts showing that there is a genuine issue for trial").  We respond to the few specific
purported factual disputes identified by the USA while discussing the legal arguments before the
court below.

[6]  Lindquist Tr. at 116:12-118:11, Dkt. 232 Ex. P.

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages

Page 8 of 8

stated by the USA is the same theory that the Ninth Circuit later held creates implied insurance status for the USA under the Continental policy."  Opp. at 11, 15.  The mere fact that the Ninth Circuit eventually adopted the USA's position does not show that its rights were clearly defined before its position was adopted.  The rule precluding punitive damages for violations of unclear standards <u>presumes</u> that someone's rights were violated.  The question is whether those rights were clearly established when the violations occurred.

Here, they were not.  The USA's tender required an extension of <u>Avi-Truck</u> into a wholly new context.  In its recent court-ordered amended discovery responses, the USA admitted that "no other court in Alaska, other than this court in this case, has <u>ever</u> held that the United States was an additional implied insured on an insurance policy under Alaska law."[7]  The USA does not dispute that it never even attempted a tender as an implied insured before this case.[8]  And, the USA has admitted that it did not have clearly-defined rights as an implied insured until 2001 at the earliest.[9]  Just because the theory proffered by the USA in 1995 was adopted by the Ninth Circuit in 2004 does not mean that the USA's rights as an implied insured were somehow "clearly defined" nine years earlier.

The USA's only other response is that Continental purportedly acted outrageously when it did not accept the <u>Kallstrom</u> re-tender from October 2001 because at that time the USA's rights were clearly defined.  Opp. at 19.  However, the USA does not have a viable bad faith claim (or, hence, a claim for punitive damages) based on the <u>Kallstrom</u> re-tender for all of the reasons set forth at Docket 275, including because Continental never rejected the re-tender.  Further, the USA has stipulated that any delays in accepting its <u>Kallstrom</u> re-tender did not cause <u>any</u> damages.[10]  Without proof of actual damages caused by Continental's response to the

---

[7]  <u>See</u> United States' Amended Responses to Defendants' First Set of Discovery Requests in the Punitive Damages Phase dated March 15, 2006, Response to Request for Admission No. 4 (emphasis added), Supp. Silvey Aff., Ex. A.

[8]  Motion at 21 (citing Lindquist Tr. at 31:9-32:18, Dkt. 232, Ex. P).

[9]  Lindquist Tr. at 116:12-118:11, Dkt. 232 Ex. P.

[10]  Deposition of Deborah Senn dated January 11, 2006 at 169:23-170:7 (counsel stipulating that, "after the date that it was actually tendered by the United States," the USA did not "suffer[] any damages based on the lack of response to that tender"), Supp. Silvey Aff. Ex. B; Lindquist Tr. at (footnote continued)

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages

Page 9 of 9

Kallstrom re-tender, punitive damages based on that response are unavailable. State Farm, 538 U.S. at 422-423; Kizer, 279 Cal. Rptr. at 322; DeNardo, 983 P.2d at 1292.

The Kallstrom re-tender issue is nothing more than a *post-hoc* litigation position the USA thought up to try to avoid summary judgment. The USA has previously admitted that "this case accrued before . . . August 7, 1997" and that the USA merely amended its complaint in 2002 to add a prayer for punitive damages based on what had earlier accrued as "damages rating punishment." Dkt. 99 at 8 (emphasis added). Likewise, all of the facts identified by the USA as "facts supporting punitive damages" in its motion for leave to add a prayer for punitive damages relate to pre-1997 conduct. Dkt. 69 at 6-7. That the USA now argues it should reach a jury on punitive damages based on Continental's failure to accept the late-2001 Kallstrom re-tender "alone" is remarkable. Opp. at 19.

    B.    **Continental Reasonably Relied on the Advice of Outside Attorneys With Expertise in the Field, and That Independently Precludes Punitive Damages**

The USA does not dispute that (1) good faith reliance on the advice of counsel precludes punitive damages, (2) Continental appropriately solicited the advice of counsel when confronted with the USA's tenders, and (3) Continental actually relied on the advice of counsel when rejecting the USA's tenders. The USA claims, however, that Continental did not rely in good faith on the advice of counsel because Mr. Friderici "performed an inadequate investigation" and Judge Stowers either performed an inadequate investigation or was misled. Opp. at 15-16. Here as well, the USA wants the court to simply ignore the issue and rely on its prior rulings even though those rulings did not directly address an advice of counsel defense on bad faith or punitive damages. An examination of the analysis actually performed by Mr. Friderici and Judge Stowers permits only one conclusion: Continental relied on its lawyers' advice in good faith.

---

104:12-18, Supp. Silvey Aff. Ex. C ("Q. It's true, isn't it, that -- that after the Kallstrom case was tendered in October of 2001, the government incurred no additional expenses or costs in defending Kallstrom? MR. STONE: We have stipulated to that. MR. TAYBACK: Yeah. THE WITNESS: Sure. It's true then.").

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages

Page 10 of 10

The parties agree that the primary authority cited by the USA was <u>Avi-Truck</u>, and that was the decision on which the Ninth Circuit relied when it reversed this court in 2004.[11]  As both their current declarations and contemporaneous opinion letters reveal, Mr. Friderici and Judge Stowers analyzed <u>Avi-Truck</u>, as well as the other authorities cited by the USA in its tender letters, when they were retained to provide coverage opinions.[12]  By its terms, <u>Avi-Truck</u> requires a finding of intent before an additional insured can be implied.  682 P.2d at 1113 ("where a third party is within the class intended to be benefited by the parties to an insurance contract, a third-party beneficiary insurance contract may be implied at law").  Therefore, both Mr. Friderici and Judge Stowers performed a factual investigation to determine whether the parties intended to benefit the USA.[13]  The USA did not perform such an investigation before it tendered in 1995.[14]

As part of their factual investigation, Mr. Friderici and Judge Stowers contacted Lori Wing, Bristol Bay's insurance broker.[15]  Ms. Wing explained in a sworn declaration in 1998 that "it has <u>never</u> been the intention of BBAHC, or Brady & Company as BBAHC's broker, to include the United States as an insured under any policy placed by Brady & Co. for BBAHC" and that "the intent of the CGL policies issued by Continental Insurance Company to BBAHC was to fill in gaps in coverage extended by the United States under Section 638 and the FTCA."[16]  Mr. Friderici and Judge Stowers determined from their factual investigation, including

---

[11]  <u>See</u> Tender Letters, Dkt. 232, Ex. C at 2, Ex. D at 3; Opp. at 8 (the Government describing <u>Avi-Truck</u> as "the controlling law" when it tendered); <u>United States v. CNA Financial Corp.</u>, 113 Fed. Appx. 205, 206 (9th Cir. 2004).

[12]  Dkt. 233, ¶ 4, Ex. C at 1-2; Dkt. 234, ¶ 3, Ex. A at 3, 11.

[13]  Dkt. 233, ¶ 4; Dkt. 234, ¶ 3.

[14]  Roosa Tr. at 43:6-44:21, Dkt. 232, Ex. B.

[15]  Dkt. 233, ¶ 4; Dkt. 234, ¶ 3.

[16]  Dkt. 232, Ex. F at ¶¶ 4, 8 (emphasis added).

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages
Page 11 of 11

their communications with Ms. Wing, that the contracting parties did not intend to benefit the USA or duplicate FTCA coverage.[17]

Today, after years of discovery, literally no evidence has been uncovered that shows that (contrary to what Ms. Wing said at the time) the parties actually intended to benefit the USA.  Though the USA has nothing to say on this point, all the witnesses from Continental and Bristol Bay testified that they did not intend to benefit the USA.[18]  Even the USA's Government's own Contracting Officer at the time -- whose job was, among other things, to monitor Bristol Bay's insurance acquisitions -- has acknowledged that she never thought the USA was covered under Bristol Bay's insurance policy and never intended to benefit the USA through Bristol Bay's insurance policies.[19]

Likewise, even after years of discovery, literally no evidence rebuts Ms. Wing's position that she acquired insurance on behalf of Bristol Bay not to benefit the USA but to "fill in gaps" in the coverage provided by the FTCA.  Although the USA asserted in its tender letter that "any tort action against BBAHC or any of its employees is deemed an action against the United States"[20] -- and continues to assert to this day that the statutory amendments had "eviscerated Continental's risk" and that Continental had "no risk" (Opp. at 7, 23) -- the Government simply ignores the evidence showing that everyone at Bristol Bay and Continental agreed that Bristol Bay's policy was designed to protect Bristol Bay in the foreseeable event that the FTCA would

---

[17]  Dkt. 233, ¶ 4 (Mr. Friderici:  "Ms. Wing told me that she did not intend, and did not believe Bristol Bay intended, to benefit the United States or duplicate FTCA coverage."); Dkt. 234, ¶ 3 (Judge Stowers:  "My factual investigation revealed that the Bristol Bay liability policies under which the United States tendered were intended to cover instances where the FTCA might not apply.").

[18]  Motion at 11, n.23.

[19]  Motion at 12-13, nn. 24-25.  Although the USA responds that the testimony of its Contracting Officer, Ms. Segelhorst, "has no probative value," that is just wishful thinking.  Opp. at 6-7.  The fact that the United States' officer charged with monitoring Bristol Bay's insurance did not herself believe that the United States was covered under that insurance is obviously relevant to the question whether Continental acted reprehensibly when it reached the same conclusion.

[20]  Dkt. 232, Ex. C at 2 (emphasis added).

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages

Page 12 of 12

not.[21]  The USA also simply ignores that its own Rule 30(b)(6) witness admits that "there are

torts that occur on property that belongs to a 638 contractor that don't always fall within the

scope of the FTCA."[22]  And, while the USA does not wholly ignore the testimony of its

Contracting Officer that even the USA did not believe in the early 1990s that all potential claims

against Section 638 contractors like Bristol Bay would be covered by the FTCA,[23] its assertion

that Ms. Segelhorst's testimony "has no probative value" is unreasoned and illogical. Opp. at 7.

The testimony is probative because it shows, contrary to the position taken by the USA from day

one through today, that the amendments expanding FTCA coverage did not "eviscerate[]

Continental's risk."  Opp. at 7.[24]

---

[21]  Motion at 15, n.39.

[22]  Lindquist Tr. at 125:8-11, Dkt. 232, Ex. P (emphasis added).

[23]  Motion at 14-15, nn. 37-38.

[24]  The case at bar presents an excellent example of a "gap" in FTCA coverage.  Although the
USA asserts (without explanation) that "there is no question that the FTCA covered the risk" in
the case at bar, Opp. at 7, the USA does not dispute that "it did not intervene in state court" when
the Wilsons sued Bristol Bay directly.  Opp. at 14 (emphasis added); see Motion at 7-8.  When
Bristol Bay tendered the claim by the Wilsons to both the USA and Continental, only
Continental responded.  Motion at 7-8.  Continental immediately appointed counsel to defend
Bristol Bay.  Id.  The USA did not decide that the FTCA applied until it was sued directly more
than six months later.  Id.  None of these facts is disputed, and these facts show that Continental
did have risk under its policy as interpreted by Continental -- in this very case, Continental paid
significant sums for Bristol Bay's defense.  Protection from any potential liabilities not covered
by the USA under the FTCA (including both defense costs and indemnification) is what Bristol
Bay wanted and bargained for.

This explains why Continental could not "exclude the FTCA coverage" as the USA maintains it
should have.  Opp. at 7.  Bristol Bay wanted supplemental protection that would apply whenever
the USA failed to offer indemnification or a defense, including in cases that should have been
covered by the USA under the FTCA.  If Continental had written an endorsement or exclusion
for cases covered by the FTCA, it would not have had a duty to defend in this case when Bristol
Bay was sued directly in state court.  Bristol Bay wanted insurance that would protect it against
such claims if the USA failed to act.  That is what happened here.  A claim that should have been
brought under the FTCA against the USA was erroneously brought under the common law
against Bristol Bay; the USA failed to act on Bristol Bay's behalf; and, because Bristol Bay
purchased supplemental insurance without an FTCA exclusion, Continental did act on Bristol
Bay's behalf by supplying a defense.  See Deposition of Crystal Brown dated May 9, 2001 at
77:15-78:17, Supp. Silvey Aff. Ex. D (explaining that Bristol Bay wanted "sleep insurance" --
(footnote continued)

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages

Page 13 of 13

Mr. Friderici and Judge Stowers did what any good lawyer would do if faced with the USA's tenders:  they read the USA's authorities, determined what facts mattered under those authorities, and attempted to ascertain those facts.  By its terms, <u>Avi-Truck</u> appeared to require actual intent by the parties to benefit an unnamed third party or its class before an additional insured could be implied.  Continental's lawyers' factual investigations revealed that the parties did not intend to benefit theUSA, and instead wanted insurance to protect Bristol Bay when the FTCA would not do so.  In light of <u>Avi-Truck</u>'s express requirements and the results of their factual investigations, Judge Stowers and Mr. Friderici logically advised Continental that neither Bristol Bay's HMA insurance policy (which the Ninth Circuit later found to apply) nor the CBP policy benefited theUSA.[25]  Continental declined the USA's tenders based on that reasoned advice, explicitly telling the USA that, in Continental's view, the USA was not covered because the parties did not intend to benefit the USA.[26]  When Continental relied on its lawyers' advice and rejected tender, it <u>clearly</u> did so in good faith.

The USA's trifling complaints about Judge Stowers and Mr. Friderici do not affect that conclusion.  The USA observes that the affidavits of Judge Stowers and Mr. Friderici do not state that they did any legal research, Opp. at 16, but the lawyers' opinion letters detail the legal

---

"Bristol Bay would want us to possibly defend <u>them</u> if a claim was brought" -- and that was why no FTCA exclusion was written into the policy (emphasis added)).

[25]  Dkt. 233, ¶ 4; Ex. C at 1, 3 ("In our opinion there is no coverage for this claim under <u>either</u> insurance policy. . . .  Unless the court were to find that the parties to the insurance contract intended to benefit the United States, there is no coverage for the United States.") (emphasis added); Dkt. 234, ¶ 3, Ex. A at 2, 11 ("It is our opinion that CNA has no duty under the above-referenced policies to defend or indemnify the United States. . . .  In our case, neither BBAHC nor Continental intended that the general liability coverage would cover the risk of liabilities covered by the Federal Tort Claims Act.").

[26]  Dkt. 233, Ex. E at 1 ("We have examined the cases cited in your letter.  We do not believe any of them apply to the present situation.  The policy in question was never intended to benefit the United States so we do not believe the United States is an implied insured apart from the language of the policy."); Dkt. 234, Ex. B at 2 ("It is our opinion that neither of the two referenced general liability insurance policies create in CNA a duty to defend or indemnify the United States in this case.  Neither of the policies name the United States as an insured, nor do the facts pertaining to the issuance of the policies suggest that the United States was intended to be an insured under the policies.").

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages

Page 14 of 14

research they actually performed.[27]  The USA also complains that Continental's rejection letters "cite[] no case contrary to Avi-Truck," Opp. at 16, but that misunderstands the issue.  Roosa cited Avi-Truck in his tender letter.  Mr. Friderici and Judge Stowers concluded that, by its own terms, Avi-Truck did not apply to this case.  They did not need to find a case "contrary to Avi-Truck" to conclude that Avi-Truck did not apply.

Next, the USA observes that Mr. Friderici advised Continental not to refer to the HMA policy in its rejection letter because the USA did not tender under that policy.  Opp. at 16.  However, Mr. Friderici's opinion letter, like that of Judge Stowers, advised Continental that the USA was not covered under either policy,[28] and subsequent discovery has revealed that the USA already possessed both Bristol Bay policies when it first tendered.[29]  In any case, this has nothing to do with the substance of Mr. Friderici's (or Judge Stowers') recommendation on the implied insurance issue.

Last, the USA complains that Judge Stowers' rejection letter to Roosa erroneously states that the Bristol Bay policy was issued on a reduced premium.  Opp. at 16.  Whether or not that is true has nothing to do with Judge Stowers' (or Mr. Friderici's) conclusion that the parties did not intend to benefit the USA and that Avi-Truck did not apply.  The premium charged by Continental is at best circumstantial evidence of what the parties might have intended, but all the direct evidence before Judge Stowers and Mr. Friderici--such as the statements of Bristol Bay's own broker--indicated that the required intent did not exist.[30]

---

[27]  Dkt. 233, Ex. C at 1-2 ("We have also reviewed the cases cited by the U.S. Attorney and done some research on the applicable case law.  The research was limited to those cases cited by the United States, Alaska law, and some cases from other jurisdictions to determine whether or not there was coverage."); Dkt. 234, ¶ 3 ("Based on my factual investigation and legal analysis, the details of which are set forth in my opinion letter, I concluded and advised Continental that the United States was not covered."); Id., Ex. A at 4 ("We have found no cases where a court has held that the United States is an additional insured or an implied insured under a general liability policy in the circumstances presented in this case.").

[28]  Dkt. 233, Ex. C at 1.

[29]  Amended Responses, Response to Request for Admission No. 2, Supp. Silvey Aff. Ex. A.

[30]  Although the USA asserts that Judge Stowers must have been "misled by Continental," Opp. at 15, Judge Stowers was in contact with Lori Wing, and Ms. Wing testified in her declaration
(footnote continued)

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages

Page 15 of 15

There is no dispute that good faith reliance on the advice of counsel precludes punitive damages. There is also no dispute that Continental <u>actually</u> relied on the advice of counsel in rejecting the USA's tenders and reasonably solicited that advice. As set forth above, there is no genuine dispute that Continental acted in good faith when it relied on its lawyers' advice on the coverage issue, and punitive damages therefore are not available. Unlike the <u>Tibbs</u> case cited by the USA, no one <u>ever</u> advised Continental that the implied insurance issue was a close call or that the USA even potentially had a right to defense or indemnity.[31] Everyone said the USA had no rights at all.

C.    There Were Genuine Issues About Whether the USA Had Any Rights Under <u>Bristol Bay's Policies, and That Also Precludes Punitive Damages</u>

The USA essentially punts on the genuine issue rule, offering no analysis and instead relying on the "law of the case." Opp. at 19-20. As discussed above, the explanation Continental gave the USA when it rejected tender in 1995 and 1997 -- that the USA was not an implied insured and <u>Avi-Truck</u> did not apply because there was no intent to benefit the USA -- was certainly not outrageous even if it was, in hindsight, erroneous. The USA has never even argued that the explanation Continental actually gave the USA was outrageous or said that it thought that explanation was outrageous or malicious when it received Continental's rejection

---

that the "premiums charged by Continental Insurance for these policies were relatively modest." Dkt. 232, Ex. F ¶ 8. Even assuming Ms. Wing was simply wrong and the premiums were not "modest," there is no reason to think, and no evidence, that Judge Stowers' information about the premiums came from Continental.

[31] <u>Tibbs v Great American Ins. Co.</u>, 755 F.2d 1370, 1375 (9th Cir. 1985) (punitive damages awarded for breach of duty to defend where the responsible in-house lawyer for the insurance company was told by several employees that the plaintiff "was probably entitled to a defense" and, when he was informed that the state court judge thought the plaintiff was entitled to a defense, the lawyer responded, "F___ the Judge"). The USA notes that Continental has not produced a privileged memorandum from 2002 that the USA requested, Opp. at 9, but there is no dispute that Continental has produced all of the privileged advice it received when it concluded in 1995 and 1997 that the USA was not insured.

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages

Page 16 of 16

letters.[32]  As APPLEMAN and numerous other authorities explain, "[p]unitive damages are not recoverable for [an insurer's] refusal to defend, if the refusal was reasonable even though erroneous."  22 APPLEMAN ON INSURANCE 2d, Section 136.8 at 64 (2003); see generally Motion at 26-30.

The USA offers only two responses on this point.  First, the USA claims that it purportedly "is still a fact that no judge has disagreed with this court's holding that Continental had the duty to defend, with or without a reservation of rights."  Opp. at 12.  That is a false statement.  See Dkt. 115 (holding that Continental owed no duties to the USA, including no duty to defend).  Second, the USA asserts, citing Tibbs, that the "insurer should not be able to reject the duty to defend before the issue is litigated and decided."  Opp. at 13.  In Tibbs, however, there was no real issue about whether a defense was owed and the insurer's decisionmaker ignored the contemporaneous advice of the insurer's own employees that it did owe a defense. 755 F.2d at 1375.  Here, if the USA was not insured under Bristol Bay's policies as Continental not outrageously believed, the USA had no right to either indemnity or defense.  A genuine issue about whether a defense is owed -- like the implied insurance issue here -- precludes punitive damages.  See Motion at 27-28.

D.    Even Though No One Thought the USA Was Covered, Continental Still Considered Whether The USA Could Be Prejudiced By Continental's Tender Rejection and Correctly Concluded That It Could Not

Although it says Continental's argument on this issue is "nonsense," the USA does not explain how Continental's actions evince reckless indifference.  Undisputed facts show two things:  (1) putting aside a payment of policy limits, the USA was not injured by Continental's conduct -- there is no evidence that the case brought by the Wilsons against the Government would have settled for less if Continental had accepted tender; and (2) Continental knew, when it reject the USA's tender, that its actions could not even potentially injure the USA.  Because Continental expressly considered whether its actions could potentially injure the USA and correctly concluded they could not, Continental did not act with reckless indifference.

---

[32]  Lindquist Tr. at 81:18-82:6, 84:1-11, 89:21-90:7, Dkt. 232, Ex. P.

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages
Page 17 of 17

There is no genuine dispute that Continental's conduct did not cause the USA to pay the Wilsons more in settlement.  The USA offered to stipulate during discovery that "nothing about Continental's handling of the USA's tenders to it caused the USA to pay more to the Wilsons than they otherwise would have" and "the case ultimately . . . would have settled for the same amount."[33]  Although the USA refused to consummate its offer of a stipulation in a signed document and now protests that "no stipulation occurred," Opp. at 11, the court should enforce the USA's on-the-record offer to stipulate.  See Motion In Limine No. 11, Dkt. 263.  In any case, whether it has stipulated or not, the USA does not show that its settlement with the Wilsons was somehow increased by Continental's conduct.  There is no reason to think, and certainly no evidence, that it was.[34]

Second, there can be no dispute that Continental considered whether the USA could even potentially be injured by a tender rejection before it rejected tender.  When the USA first tendered, it advised Continental that, "[a]t this time, the United States is handling the defense of this matter."[35]  Based on that language, Mr. Friderici advised Continental -- after explaining that the USA had no rights under either of Bristol Bay's insurance policies -- that the "United States is defending itself so there should be no detriment to the United States even if it were held to be an insured under an implied beneficiary theory."[36]  That was reasonable advice at the time and, with the benefit of hindsight, correct.

---

[33]  Lindquist Tr. at 105:20-106:25, Dkt. 232, Ex. P.

[34]  The USA asserts that "Continental obviously knows that these cases can settle for less when there is a policy with limits in effect" because Continental noted in its motion that Lori Wilson arguably benefited when Bristol Bay obtained a ruling that the FTCA applied and theUSA, a deep pocket defendant, was the proper defendant.  Opp. at 13.  That is mixing apples and oranges.  A lower settlement might have been possible if the Wilsons could only have gone against Bristol Bay and not the USA, but there is no reason to believe that a lower settlement would have been obtained if Continental had appointed counsel to defend the USA after the Wilsons' lawsuit against Bristol Bay had already been dismissed and the Wilsons had re-filed against the USA.  In all events, there is no evidence that a lower settlement could ever have been obtained.

[35]  Dkt. 232, Ex. C at 2.

[36]  Dkt. 233, Ex. C at 5.

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages

Page 18 of 18

The undisputed facts that Continental considered the USA's interests and correctly concluded that the USA could not be injured by a tender rejection (beyond the policy limits Continental has paid) show that Continental did not act with reckless indifference.  Reckless indifference exists only when "the actor knows of facts which would lead any reasonable man to realize the extreme risk to which it subjects the safety of others."  Chizmar, 896 P.2d at 210; see Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 24 (Texas 1994) ("An insurance carrier's refusal to pay a claim cannot justify punishment unless the insurer was actually aware that its action would probably result in extraordinary harm not ordinarily associated with breach of contract or bad faith denial of a claim -- such as death, grievous physical injury, or financial ruin.") (emphasis added).  Continental had no reason to think that its tender rejections would create an "extreme risk" of harm for the USA, and in fact they did not.[37]

  E.  As A Matter Of Constitutional Due Process,
     No Further Punitive Damages Can Be Awarded

    1.  Continental's conduct was not reprehensible

The USA's due process analysis is completely misguided.  According to the USA, three of the five "guideposts of reprehensibility" are satisfied here:  "The harm was in large part economic; there are repeated actions involved; and there is intentional malice, trickery, and deceit."  Opp. at 21-23.  However, the fact that any harm to the USA was "economic" as opposed to "physical" cuts against a finding of reprehensibility, not in favor of it.  State Farm, 538 U.S. at

---

[37]  The USA does not address any of these points in its opposition.  Instead, it asserts that Mr. Friderici and Continental considered ways to avoid having the USA sue and agreed to conceal the "relevant policy" from the USA.  Opp. at 20.  That does not show reckless indifference.  That Continental did not volunteer the existence of a policy that the USA already possessed -- to an entity that Continental did not believe was insured -- does not show that it acted with "reckless indifference".  That Mr. Friderici advised Continental on how to avoid litigation (a not uncommon practice for lawyers) does not equal reckless indifference either.  These are collateral issues that have nothing to do with the question whether Continental took affirmative actions knowing those actions could cause serious injury to the USA.  On that issue, there is no genuine dispute.

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages

Page 19 of 19

419 (conduct may be reprehensible when "the harm caused was physical as opposed to economic"). Further, the only "repeated actions" identified by the USA are Continental's alleged acts of "ongoing bad faith" <u>in this case</u>, but the repeated actions factor assesses whether the conduct at bar has occurred <u>in other cases</u>, not whether a single plaintiff complains about a lot of different things. <u>See</u> <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559, 576-77 (1996) (this factor turns on whether the defendant's actions "formed part of a nationwide pattern of tortious conduct"). And, for all the reasons discussed above, Continental did not act maliciously. Defendant never asserted, as the Government claims, that "the absence of some of the identified factors renders an award of punitive damages unconstitutional." Opp. at 23. However, none of the factors is satisfied here, and that <u>does</u> render a punitive damages award unconstitutional.

2.    If any award were proper, the USA's punitive
<u>damages recovery cannot exceed its compensatory recovery</u>

The USA does not address or distinguish the many authorities cited in defendant's motion holding that, in a case like this one, a punitive damage award greater than the plaintiff's compensatory recovery cannot be sustained.[38] Accordingly, assuming some punitive award were permissible, that award could not exceed the USA's compensatory recovery.

3.    <u>The beyond policy limits award was punitive</u>

The USA says its compensatory recovery was not limited to policy limits merely because it paid more than Continental's policy limits to settle with the Wilsons. Opp. at 24. That misunderstands the issue. Continental's conduct did not <u>cause</u> a beyond policy limits settlement -- that would have happened even if Continental immediately accepted tender. Without proof of causation (which the USA does not provide), the court's award of beyond policy limits damages was, by definition, punitive rather than compensatory. Compensatory damages serve to "redress the concrete loss that the plaintiff has suffered <u>by reason of</u> the defendant's wrongful conduct".

---

[38]  Motion at 37-38.

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages
Page 20 of 20

Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 432 (2001) (emphasis added); see Motion at 39.  The only concrete loss the USA suffered "by reason of" Continental's conduct was policy limits and defense costs, and those amounts have already been paid.[39]  The court's award of more than $3 million beyond policy limits (including interest) was punitive.[40]

III.     The Other Alleged Bad Acts Identified By The
         USA Cannot Save Its Prayer For Punitive Damages

         Perhaps recognizing that Continental's coverage decision was less than outrageous, the USA says that "several acts of Continental" aside from its tender rejections "subject it to punitive damages," listing seven headings.  Opp. at 5.  As discussed in Section I, collateral allegations that do not bear on Continental's substantive decision to deny coverage are irrelevant under Hillman and the court's prior rulings in light of the theory of bad faith pursued by the USA.  As is also discussed in Section I, the USA's collateral infraction allegations cannot

---

[39]  The USA correctly observes that Continental has not yet paid the USA Rule 82 attorney's fees for this case.  Opp. at 17.  That is because judgment has not yet been entered.

[40]  The USA briefly rehashes a dated argument in its opposition that "both policies that were tendered apply and the full settlement with Lori Wilson is within policy limits."  Opp. at 10.  This argument conflicts both with the court's prior orders and the parties' fact stipulation from just two weeks ago.  See Dkt. 282, Fact Nos. 4-5 (the parties stipulating that "BBAHC was insured by Continental under a commercial general liability policy numbered HMA 9500648-5.  Policy HMA 9500648-5 is the policy at issue in this case.") (emphasis added); Dkt. 57 at 4 (the court observing that when the USA first tendered under the CBP policy, it tendered under the "wrong policy").  The argument also makes no sense.  Under Lloyd's & Institute of London Underwriting Cos. v. Fulton, 2 P.3d 1199 (Alaska 2000), which the USA cites, an insurer that breaches its duty to defend under a policy can be estopped from denying coverage under that policy because the breach of the duty to defend may cause prejudice to the insured on the coverage issue.  Id. at 1209.  However, Continental did not breach any duty to defend as to the CBP policy, and hence it is not estopped from denying coverage under that policy.  About one month after the USA tendered under the CBP policy in January 1995, Continental correctly rejected the tender because the CBP policy expressly excluded acts occurring at Jake's Place, where Lori Wilson was injured.  Dkt. 233, Ex. E.  The Court has ruled that the CBP policy was the "wrong policy" for the USA to tender because of that exclusion.  Dkt. 57 at 4.  The USA has never provided any authority for its counterintuitive proposition that an insurer's breach of the duty to defend under one policy estops the insurer from denying coverage under some other policy or policies.  For these reasons, and those set forth in Continental's opposition at Docket 79, the USA's "other policy" argument fails.

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages

Page 21 of 21

yield punitive damages because these infractions, even if they were committed, are not what caused the USA's injury. Defendant can only be punished, if at all, "for the conduct that harmed the plaintiff, not for being an unsavory individual or business." <u>State Farm</u>, 538 U.S. at 423. Therefore, if Continental's conclusion that the USA was not insured was not outrageous (as shown in Section II), these allegations cannot support a punitive damages recovery either.[41]

Nonetheless, out of an abundance of caution, we show why the alleged collateral infractions identified by the USA are either not infractions at all or not outrageous infractions below. The USA first asserts that Continental "failed to provide prompt and reasonable explanations for its denials of coverage and deliberately misconstrued the facts surrounding the purchase of coverage." Opp. at 5. The substance of Continental's tender rejections and the reasonableness of its explanations are encompassed in the discussion above. Based on Deborah Senn's expert report, we assume that the allegation that Continental "deliberately misconstrued" the facts relates to alleged incorrect citations from Continental's 2001 summary judgment papers. As set forth in Defendant's Motion in Limine No. 4 (Dkt. 255), such matters are inadmissible. In any case, alleged inaccurate citations in a brief filed in 2001 rather obviously cannot yield a jury trial on punitive damages.

Next, the USA asserts that "Continental knowingly allowed a conflicted attorney to represent its interests to the detriment of its insured." The undisputed evidence shows, however, that Mr. Friderici -- the allegedly conflicted attorney -- "did not believe there was any conflict of interest in [his] representing Continental because [he] had no reason to think that the interests of Continental and Bristol Bay, [his] former client, diverged."[42] As soon as Bristol Bay informed Mr. Friderici that it might have a different view on coverage than Continental, Mr. Friderici notified Continental that he could no longer act as coverage counsel.[43] Even

---

[41] One qualification: among the side issues listed by the USA are allegations that Continental did not provide "reasonable explanations for its denials of coverage" and "failed in its duty to defend and to indemnify its insured." Opp. at 5. These points essentially state the coverage issue and are encompassed in the discussion in Section II.

[42] Dkt. 233, ¶ 3.

[43] Letter from James Friderici to William Hutson dated June 8, 1995 (Trial Exhibit 32), Supp. Silvey Aff. Ex. E.

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages
Page 22 of 22

assuming Mr. Friderici's conflict analysis was erroneous (which is far from clear), that does not mean that Continental acted outrageously.

Next, the USA asserts that "Continental knowingly and deliberately concealed coverage from its insured" because Continental did not volunteer the existence of Bristol Bay's HMA policy when the USA first tendered under the CBP policy.  We now know that the USA already possessed the HMA policy when it tendered in January 1995[44] and was not telling the truth when it asserted in June 1995 that "at the time of the initial tender the United States was not aware that Continental had also issued" the HMA policy.[45]  In any case, Continental had no duty to volunteer the existence of a policy to a non-insured.  Even if, with the benefit of hindsight, Continental should have volunteered the policy because the USA was an implied insured, Continental not outrageously thought the USA was a third party at the time.

Next, the USA asserts that "Continental repeatedly and deliberately failed to reply to the United States' tenders of defense."  For starters, this is largely wrong:  when the USA first tendered, Continental responded in about one month's time.[46]  Whatever else happened, the USA knew from then on that Continental was not accepting its tender.  In any case, if Continental later responded less than promptly, that did not cause any prejudice (and the USA does not allege any).  Without prejudice or actual damages, punitive damages are unavailable.

The USA next asserts that "Continental compelled its insured to litigate for a recovery that Continental knew it owed its insured," but that clearly assumes that Continental knew the USA was its insured and knew it owed the USA indemnity.  There is no basis for that assumption.

Last, the USA asserts that "Continental's knowledge of its own wrongdoing toward its insured is demonstrated by its own Claims Handling Guidelines, Best Practices, and the testimony and documents of its employees."  As Hillman makes clear, violations of internal policies cannot even support bad faith, let alone punitive damages.  855 P.2d at 1325.  Indeed,

---

[44]  Amended Responses, Response to Request for Admission No. 2, Supp. Silvey Aff. Ex. A.

[45]  Letter from Kenneth Roosa to James Friderici dated June 6, 1995, Supp. Silvey Aff. Ex. F.

[46]  See Dkt. 232, Ex. C (January 6, 1995 tender), Dkt. 233, Ex. E (February 13, 1995 rejection letter).

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages

Page 23 of 23

other courts have precluded evidence of violations of internal policies altogether for this reason. See, e.g., Denmark v. Liberty Life Assur. Co. of Boston, 2005 WL 3008684 at *19 (D. Mass. 2005) (defendant's internal guidelines are not relevant to its decision to deny disability benefits: "the dispute in this case centers on the reasonableness of Liberty's evaluation of the evidence available at the time, not on the meaning of certain provisions of the Disability Policy or the adequacy of the procedures").  In all events, here too the USA has shown no prejudice and, hence, punitive damages are unavailable.

## Conclusion

Including interest and attorney's fees, the USA's entitlement under the court's prior orders already far exceeds $5 million -- even though this case is about a $1 million insurance policy in which the USA was not named as an insured.  With respect, this case has gone on for too long already.  Continental respectfully request that the court grant this motion in its entirety and enter judgment.

DATED at Anchorage, Alaska, this 28th day of April, 2006.

GUESS & RUDD P.C.
Attorneys for Defendant


By: _____S/Gary A. Zipkin_____
            Guess & Rudd P.C.
            510 L Street, Suite 700
            Anchorage, Alaska  99501
            Phone: 907-793-2200
            Fax:  907-793-2299
            Email: gzipkin@guessrudd.com
            Alaska Bar No. 7505048

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages
Page 24 of 24

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
Attorneys for Defendant


By: _____ S/A. William Urquhart _____
           Quinn Emanuel Urquhart
            Oliver & Hedges, LLP
           865 South Figueroa
           Street, 10th Floor
           Los Angeles, CA  90017
           Phone: 1-213-443-3000
           Fax:   1-213-443-3100
           Email:
           billurquhart@quinnemanuel.com

F:\data\6024\1\pleading\97 Reply Opp MSJ Punitives.DOC

CERTIFICATE OF SERVICE
I hereby certify that on the
28th day of April, 2006, a copy
of the foregoing document was served
electronically on:

Richard L. Pomeroy, Esq.
Christopher Tayback, Esq.
A. William Urquhart, Esq.
Richard Stone, Esq.

Guess & Rudd P.C.


By: _____ S/Gary A. Zipkin _

USA v. Continental; Case No. 3:98-cv-285-JWS
Reply in Support of Defendant's Motion for Partial Summary Judgment on Punitive Damages