DEBORAH M. SMITH
Acting United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail:  richard.pomeroy@usdoj.gov

RICHARD R. STONE, SR.
Trial Attorney
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C.  20044
Phone: (202) 616-4291
Fax: (202) 616-5200
E-mail:  richard.stone@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>THE CONTINENTAL CASUALTY COMPANY, dba THE CONTINENTAL INSURANCE COMPANY,<br><br>　　　　Defendant. | Case No. 3:98-cv-285-JWS<br><br>**UNITED STATES' REPLY TO CONTINENTAL'S OPPOSITION AT DOCKET 312 TO MOTION TO AMEND COMPLAINT AT DOCKET 274, 281** |

## INTRODUCTION

After Defendant moved for summary judgment as to the claims against Continental

Casualty Company for, among other arguments, insufficient evidence to support liability under

an "alter ego" theory and that the claim was insufficiently pled[1], Plaintiff, as a housekeeping measure, acting out of an abundance of caution, moved to amend its complaint.[2] Throughout the course of the litigation, Continental Casualty has been on notice that it cannot hide behind the shell of Continental Insurance when its own employees act in bad faith. Defendant opposes the motion to amend, claiming undue delay, undue prejudice, bad faith and ultimate futility. As explained below, Defendant's arguments are unsupported, disingenuous and unpersuasive.

## DISCUSSION

Federal Rule of Civil Procedure 15(b) "reflects the liberal policy favoring amendments of pleadings at any time." Galindo v. Stoody Co., 793 F.2d 1502, 1512 (9th Cir.1986). While leave to amend should be granted freely until the defendant files a responsive pleading, after such point, leave to amend "should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." Yakama Indian Nation v. Wash. Dep't of Revenue, 176 F.3d 1241, 1246 (9th Cir.1999), cert. denied, 528 U.S. 1116 (2000). Under Rule 15(b), the party opposing the amendment has the burden of showing that the amendment would be prejudicial to that party's defense. See Fed. R. Civ. P. 15(b). An amendment should be permitted if the record indicates that the parties understood that the evidence was aimed at the unpleaded issue. Galindo, 793 F.2d at 1513. Continental has not met its burden of showing prejudice. The record reflects that Continental Casualty, which has been a defendant in this case from the beginning, understood that the evidence was aimed at the unpleaded issue, as explained in the United States' opposition at Docket No. 274 to

---

[1] See Docket No. 237.

[2] See Docket Nos. 274, 281.

Continental's motion for summary judgment, which is incorporated herein by reference. Indeed, Continental Casualty's employees have managed this litigation.

**1.      Undue Delay**

Continental's principal argument is that the United States unduly delayed seeking amendment of the complaint. Opposition at 4-9. There has been no undue delay and no prejudice to Continental in its defense of this case. Under either Rule 15(a) or Rule 15(b) of the Federal Rules of Civil Procedure, leave to amend should be "freely granted" where the opposing party will not be prejudiced thereby. A mere passage of time, by itself, is insufficient; rather, there must be an affirmative showing of either prejudice or bad faith. Islamic Republic of Iran v. Boeing Co., 771 F.2d 1279, 1287 (9th Cir.1985), cert. dismissed, 107 S. Ct. 450 (1986) (two-year delay insufficient); Howey v. United States, 481 F.2d 1187, 1190-91 (9th Cir.1973) (five-year delay insufficient); Richardson v. United States, 841 F.2d 993, 999-1000 (9th Cir. 1988)(approximate eleven-year delay insufficient).

Whether there was an undue delay in seeking to amend a complaint turns on the particular facts of each case. The cases that Continental cites for support are distinguishable from the present case and do not address analogous facts. In Swanson v. U. S. Forest Serv., 87 F.3d 339, 344 (9th Cir. 1996), there was an undue delay in moving to amend a complaint to cure a jurisdictional defect "six weeks after the claims were dismissed." In McGlinchy v. Shell Chemical Co., 845 F.2d 802, 809 (9th Cir. 1988) the court denied amendment of the complaint to add new causes of action after the close of discovery because "the new claims, especially fraud, would have required additional discovery on a wide range of new issues; that discovery likely would have included new depositions . . . . [and, t]he new claims would have required additional

research and rewriting of trial briefs. The resulting delay and expense would have prejudiced [ ] defendants, who were entitled to rely on a timely close of discovery and a near-term trial date." In <u>Solomon v. North American Life and Cas. Ins. Co.</u>, 151 F.3d 1132, 1138 (9th Cir. 1998), the trial court denied a motion to amend on the eve of the discovery deadline because "[a]llowing the motion would have required re-opening discovery." Denial of a motion to amend is also proper when failure to verify the complaint deprives the district court of <u>in</u> <u>rem</u> jurisdiction. See <u>Madeja v. Olympic Packers, LLC.</u>, 310 F.3d 628, 637 (9th Cir. 2002). The motion to amend before this Court would not require any additional discovery nor change the jurisdictional validity of the United States' case.

  Continental argues that the United States unduly delayed amending its complaint because it knew or should have known much earlier to plead an alter ego theory against Continental Casualty. As explained in its opposition to Continental's motion for summary judgment, this motion to amend is made in order to exercise an abundance of caution. See Docket No. 274 at 23-24. The United States has demonstrated that its claim that Continental Casualty is liable has been clear from the beginning. This amendment is more a housekeeping measure than an assertion of new, unexpected theories of liability. Nevertheless, it was only in November 2005, five months before this motion to amend the complaint, that the United States obtained the details of the relationship between Continental Insurance and Continental Casualty through the Rule 30(b)(6) depositions of Lawrence Boysen and Erin Finn, both Continental Casualty employees.[3] During those depositions, the United States learned that Continental Insurance had

---

[3] The information obtained at the Boysen and Finn depositions is spelled out in greater detail in the United States' opposition to Continental Casualty's motion for summary judgment.

no employees and that all of the business in the name of Continental Insurance was conducted and managed solely by employees of Continental Casualty.

Continental Casualty employees designed and marketed all insurance products sold in the name of Continental Insurance. Continental Casualty employees performed all underwriting done in the name of Continental Insurance. Continental Casualty employees received and invested all premiums in the name of Continental Insurance. Continental Casualty employees acted as claims adjustors in the name of Continental Insurance. And, Continental Casualty employees negotiated all insurance pooling agreements in the name of Continental Insurance.

Even when third parties are employed to write policies, receive premiums from insureds, [or anything else] that Continental Insurance Company would have to do to operate as a company, all corresponding contractual agreements with the third parties are authorized by Continental Casualty officers. Accounts in the name of Continental Insurance Company may exist in <u>form</u>, but all such "accounts" are maintained solely by Continental Casualty employees. Employees of Continental Casualty, such as Mr. Faccenda and Ms. Finn, make the decision whether to accept or reject defense tenders made pursuant to insurance policies to which Continental Insurance was a party. And, since Continental Insurance has no employees, it can't evaluate or challenge any decisions regarding tender rejections (or anything else for that matter), even if, as in this case, such decisions rise to the level of bad faith.

---

See Docket 274 at 3 - 10. Also, in a round of discovery , immediately before these depositions, the United States obtained a hint that Continental Insurance had no employees from one document among several thousand pages in which a regulator stated in passing that Continental Insurance had no employees. It is Continental Casualty's corporate structuring and management of Continental Insurance that makes it difficult to learn about the relationships.

This subservient relationship was identified by the United States' expert in her November 22, 2005 expert report in which she noted that

> Continental Insurance Company [CIC] is a corporate shell created, maintained and 100% owned by Continental Casualty Company [CCC]. Together they comprise a unified insurance business enterprise. CIC has no employees - none. CCC designs and markets the insurance products sold under the CIC label. CCC performs the underwriting (decides who gets insurance). CCC receives premiums and invests money on behalf of CIC . . . . CCC acts as the claims adjustor for CIC insureds. CCC negotiates insurance pooling agreements on behalf of CIC. . . . Bad faith arises from human activity. Employees of CCC and contractors retained by CCC personnel performed all of the acts, or today are responsible for all of the acts, described in this report. CCC provides business and legal leadership, training, and supervision for all of its employees and agents.

Docket No. 274 at <u>Exhibit 3</u>, Excerpt of Senn Expert Report at 3. The information acquired through discovery thus confirmed the 'doing business as" relationship between the two entities, as originally pleaded. That is not appreciably different from "alter ego".

Continental argues that the United States' confirmation of the symbiotic, or subservient, relationship between Continental Insurance and Continental Casualty[4] through Rule 30(b)(6) depositions was somehow tardy, claiming that it could have obtained that information in 1999 or 2001. Discovery that was conducted in 1999 through the fall of 2001 was focused on the question of coverage for the United States as an implied insured, not liability for punitive damages.[5] A claim for punitive damages was not added until 2002. Docket Nos. 69, 70, 71.

---

[4] There is absolutely no support for Continental's claim that Continental Insurance and Continental Casualty are sister corporations.

[5] Indeed, footnote 2 at Docket 57 that Continental trumpets reflects this focus on the coverage issue and the bad faith acts related to the repeated denial of coverage. The language in the footnote was cautionary and meant for clarification. Subsequent discovery has proved the impression that "it now **seems** undisputed that Continental Casualty Company is a separate corporate entity from Continental Insurance" (emphasis added) was incorrect.

Discovery via Rule 30(b)(6) witnesses into such topics would undoubtedly have been met with objections, and rightfully so.

Continental also suggests that it had placed the United States on notice in its answer that it needed to plead an alter ego theory. It should be noted that the United States also initially named CNA Financial Corporation as a defendant, which Continental denied in its answer. Continental followed up its concern about CNA Financial Corporation being a named defendant in a May 10, 1999, letter from John Neeleman to Ken Roosa, explaining why CNA Financial Corporation was not a proper party. Exhibit 1. In response to this proffer, the United States agreed to dismiss CNA Financial Corp. Exhibit 2. No such proffer, request, or expression of concern was made on behalf of Continental Casualty. Through discovery, it has become apparent that Continental Casualty maintains such complete control over Continental Insurance that tactically it most likely saw an advantage to sand bagging and hoping that the relationship was not disclosed during discovery. Failing that, it now makes the bald assertion that there is no "alter ego" situation.

If amendment of the complaint is necessary, the delay in moving to do so in order to guarantee any technical requirements to plead Continental Casualty's potential liability for the bad faith acts of its employees is not undue or prejudicial.

**2.     Prejudice**

Continental argues that it will be prejudiced if the Court grants the United States' motion to amend. Continental's assertions of prejudice do not survive scrutiny.

First, Continental argues that since it has filed a motion for summary judgment seeking dismissal of claims against Continental Casualty Company, amendment of the complaint to

allow clarification would be prejudicial. The United States pointed out in its opposition to that motion that it had put Continental Casualty on notice, through naming it as a defendant who was doing business as, d/b/a, the Continental Insurance Company, that it was seeking to hold it liable for the actions of its employees who conduct the work of Continental Insurance.

Continental's claim of prejudice for failure to plead alter ego requires a twist of logic: on the one hand it claims that "[u]ntil it filed this motion [to amend the complaint], the U.S.A. never raised the prospect of an alter ego claim against Continental Casualty even outside of its pleadings". Docket No. 312 at 2. Yet, on the other hand, that very motion to amend was part of the United States' opposition to Continental's motion for summary judgment that there is no evidence supporting liability of Continental Casualty under an "alter ego" theory. Continental either had sufficient notice of the United States' claims in order to file the motion, or else it has filed a motion to dispose of claims for which it had no notice. The latter is disputed by Continental Casualty's own affirmative act of moving for dismissal.

Second, Continental suggests that trial will be complicated by amendment of the complaint. Continental does not raise the usual prejudice claims, i.e., that amendment would require reopening discovery or postponement of trial or re-submission of trial briefs. See, e.g., Solomon v. North American Life and Cas. Ins. Co., 151 F.3d 1132, 1138 (9th Cir. 1998) (Motion to amend denied, because allowing the motion would have required re-opening discovery). Continental claims that amendment would require trifurcation of trial.[6] Continental's concern

---

[6] While Continental objects to complication of trial in this opposition, elsewhere it has sought to complicate trial by moving to bifurcate and in many other ways. See Docket No. 262 and its eleven motions in limine. That motion is opposed.

for judicial efficiency overlooks the fact that whether or not Continental Casualty should or should not be liable for damages is currently the subject of a dispositive motion before the Court. The Court will decide the legal question. It is not a question that will be tried to the jury. Additionally, Continental's record of seeking an efficient trial in this case is nonexistent.

Nevertheless, even if it is an issue for trial, liability as an alter ego may be submitted to a jury. Continental relies only on an unreported district court case for a general proposition that a trial court is the factfinder. In Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc., 185 F.3d 978, 980 (9th Cir. 1999), after a seven week trial in a case brought under the Labor Management Relations Act and Employee Retirement Income Security Act, alleging that the nonunion firm was the alter ego of the union firm, a jury found that the firms were alter egos and the Ninth

Circuit affirmed.[7]  Consequently, Continental has not demonstrated that it would be prejudiced by amendment of the complaint.

**3.      Bad Faith Filing**

Continental asserts that the United States' motion to amend was filed in bad faith, claiming that it is a mere "tactical maneuver designed solely to escape summary judgment – and support its expert's inflated net worth opinions . . . ."  Docket No.312 at 15.  As explained above, the facts do not support this claim.  There was no undue delay in moving to amend.  Continental will suffer no prejudice by amendment of the complaint as proposed.  The requested amendment to the complaint does not add anything that Continental claims was unforseen.  No bad faith

---

[7] The issues on appeal involving the alter ego claims are discussed in a companion, unreported decision.  See 189 F.3d 473 (Table), 1999 WL 547400 (9th Cir.(Cal.).  The Court considered a challenge to the district court's decision to have the question of piercing the corporate veil tried to a jury.  The Court held
> We need not decide whether submission of the claim to a jury was an error, because, even if it were, it was harmless. There is no constitutional right to have one's case tried by a judge rather than a jury. See Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510 (1959) (holding that "the right to jury trial is a constitutional one ... while no similar requirement protects trial by the court"); United Press Ass'ns v. Charles, 245 F.2d 21, 23 (9th Cir.1957) (finding that "[t]here is no express prohibition of jury trial in the Constitution, treaties or laws of the United States"). The Federal Rules of Civil Procedure do provide that both parties' consent is necessary to hold a jury trial when there is no right to have a jury decide the claim. See Fed. R. Civ. P. 39(c) ("In all actions not triable of right by a jury ... the court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right."). While Nor-Cal and Pettit did not consent to a jury trial, reversal is not warranted because, as discussed below, the jury's verdict piercing the veil with respect to Pettit was supported by ample evidence and any error was more likely than not harmless. See United Press Ass'ns, 245 F.2d at 53 (finding that any error in submitting case to jury was only procedural and should be reviewed for harmless error).

 Id. at *3.

should be inferred from the United States' motion to amend; none was intended; and none has been proven.

**4.      Futility**

Finally, Continental opposes the motion to amend because it claims it is futile. Docket No.312 at 17. Whether amendment of the complaint would be futile rests on how the Court decides Continental's underlying motion for summary judgment. The United States incorporates its opposition to that motion at Docket No. 274 by reference. The United States' opposition demonstrates that not only is Continental Casualty a proper defendant to this action, that Continental knew that it faced liability for the actions of its employees, and that dismissal of Continental Casualty, the entity who since 1995 has employed everyone who has acted in the name of Continental Insurance Company, would result in a manifest injustice, allowing Continental Casualty to shield itself from liability by acting through its constellation of corporate fronts, one of which is Continental Insurance. Amendment of the complaint to explicitly state the basis for Continental Casualty's liability is not futile, even if it is unnecessary.

**CONCLUSION**

For the foregoing reasons, and for those stated at Docket No. 274, the United States requests that this Court permit the United States to amend its complaint.

Respectfully submitted this 5th day of May, 2006, in Anchorage, Alaska.

                                              DEBORAH M. SMITH
Acting United States Attorney

s/Richard L. Pomeroy
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov
AK #8906031

s/Richard R. Stone, Sr.
Trial Attorney
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Phone: (202) 616-4291
Fax: (202) 616-5200 fax
E-mail: richard.stone@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on May 5th, 2006,
a copy of the foregoing UNITED STATES'
REPLY TO CONTINENTAL'S OPPOSITION
AT DOCKET 312 TO MOTION TO AMEND
COMPLAINT AT DOCKET 274, 281
was served electronically on Gary A. Zipkin and
William Urquhart  and on

Rebecca L. Ross
Ross, Dixon & Bell, LLP
55 West Monroe Street, Suite 3000
Chicago, IL 60603-5758
(312) 759-1920
(312) 759-1939 fax

by U.S. mail

s/ Richard L. Pomeroy