DEBORAH M. SMITH
Acting United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov

RICHARD R. STONE, SR.
Trial Attorney
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Phone: (202) 616-4291
Fax: (202) 616-5200
E-mail: richard.stone@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br> v.<br><br>THE CONTINENTAL CASUALTY COMPANY, dba THE CONTINENTAL INSURANCE COMPANY,<br><br>   Defendant. | Case No. 3:98-cv-285-JWS<br><br>**UNITED STATES' REPLY TO CONTINENTAL'S OPPOSITION AT DOCKET 314 TO THE UNITED STATES' MOTION TO EXCLUDE EXPERT TESTIMONY AT DOCKET 272.** |

**Introduction**

The United States moved to exclude the testimony proffered by Continental from three expert witnesses.  Dkt. 272.  Their reports and testimony are not consistent with, nor are they permissible under, Fed. R. Evid. 104(a), 702, or <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579 (1993).  Continental now contends that the opinions and bases for those opinions as provided in the reports are not what the witnesses intend to state at trial.  In other words, Continental apparently has provided opinions and conclusions that do not reflect the witnesses' ultimate opinions and bases that they will state to the jury.   This has deprived plaintiff of an opportunity to explore the witness' purported trial opinions and bases in advance of trial.  Failure to state opinions and bases in the reports is a violation of Fed.R.Civ.P. 26.  Expert reports are required to "contain a complete statement of all opinions to be expressed and the basis and reasons therefore. . . ."  Fed.R.Civ.P. 26(a)(2)(B).  Continental's opposition suggests that the opinions and bases are in the reports, but plaintiff contends that it is not possible to sift through those reports and find opinions and bases that satisfy the requirements of the rules.

Continental essentially raises three arguments in its Opposition.  First, Continental argues that "[t]he United States overreaches in moving for exclusion *in toto*" of all of Continental's experts' testimony because, according to Continental, "[o]nly <u>isolated snippets</u> of the reports verge on forbidden territory," which testimony Continental contends it does not plan to elicit at trial.  (Emphasis added)  Dkt. 314 at 1-2.  Continental reasons that the existence of "<u>a few isolated statements</u> in the expert reports [that] may be objectionable *if elicited at trial* does not support excluding testimony based on the other, far more substantial, parts of the reports." (Underlined emphasis added.)  *Id.* at 7.  According to Continental, "[t]he experts' reports are

primarily devoted to applying their insurance-industry expertise . . . ." (Emphasis added) *Id.* at 2. Continental also accuses the United States of "gamesmanship" by "attempt[ing] to lend some heft to its carefully drawn excerpts by goading the witnesses at deposition into reiterating those excerpts," and of "paint[ing] an incomplete and misleading picture by quoting only the arguably objectionable portions, which are clearly in the minority." (Emphasis added.) *Id.* at 2-4. Attempting to illustrate that purportedly "incomplete and misleading picture," Continental asserts that, "[r]egarding Mr. Wainscott's expert report in this case, the United States emphasizes the few snippets where Wainscott 'respectfully disagrees' with this court's prior decisions. *Id. at 5-6* The United States allegedly ignores Wainscott's careful analysis of the intention of the express parties to the policy in light of federal statutory enactments . . . ." (Emphasis added). *Id.* at 5-6.

Second, Continental also represents that it "plan[s] to elicit [only] the experts' amply supported opinions[ that] draw[] on their insurance industry experience, concerning whether Continental so deviated from industry standards and principles of fairness that its conduct was 'outrageous' or 'recklessly indifferent,' prerequisites to punitive damages under Alaska law," which Continental contends is entirely appropriate. (Emphasis added) *Id.* at 14. As purported examples of such industry standards testimony, Continental cites one sentence from Lohr's report: "Continental did not act in an outrageous, malicious or recklessly indifferent manner [in] deciding at the time of the claim that the U.S.A. was an implied insured [because that] would have required Continental to predict the outcome of a future decision of the Alaska Supreme Court." *Id.* at 12 (quoting Lohr Report at 13). Continental quotes two sentences from Wainscott's report: "As a claims person who handled complex litigation, I have written

thousands of Reservation of Rights letters. I have never written a Reservation of Rights letter for someone who had no status as an insured under the policy." Dkt. 314 at 12 *(*quoting Wainscott Report at 32*)*.

Finally, Continental recognizes that "Federal Rule of Evidence 702 may preclude an expert from offering a bare legal conclusion such as 'Punitive damages are unwarranted' or from expressly criticizing prior judicial decisions in the case." Dkt. 314 at 8. Yet, Continental argues alternatively, that, even if this Court does exclude part of Continental's experts' testimony, it should "preclude only (1) explicit criticism (not discussion) of prior judicial decisions in this case; and (2) bare legal conclusions." *Id.* at 3. According to Continental, "[i]t is important [ ] to distinguish explicit criticism of a prior decision in this case from testimony that uses the existence of divergent opinions on the 'implied additional insured' doctrine to demonstrate that Alaska law on that doctrine was unsettled when Continental acted." *Id.* at 10. Presumably attempting to illustrate such a distinction, Continental contends that "this court 'rejected' Continental's reliance on the 'fair debatability' of the coverage question only in connection with Continental's arguments that there was no bad faith as a matter of law and in connection with Continental's argument that punitive damages are unavailable as a matter of law. *Id. at 4.* Continental further contends that this court did not hold that it would be irrelevant or improper for Continental to argue through experts the 'fair debatability' point to a jury in attempting to persuade the jury *as a matter of fact* that punitive damages should not be imposed." *Id*. at 3.[1]

---

[1] Continental's Opposition also criticizes the United States' expert, Deborah Senn. Continental's unsupported assertions regarding Ms. Senn's report are addressed in part below. In addition, the United States hereby incorporates its opposition to Continental's motion to strike Ms. Senn's testimony. *Se*e Dkt. 266.

Each of these arguments fails, in part, because none of them accurately describe the full reports of the witnesses - - indeed, the arguments misrepresent the reports by adding opinions and bases that simply are not in the reports.  They also are inconsistent with the applicable evidentiary rules and rules of procedure.

**Argument**

A.    **Continental's argument that, because only "isolated snippets" in the reports are contrary to the "law of the case," the reports should not be stricken in their entirety, misrepresents the reports.**

Continental's brief is riddled with misrepresentations, half truths and arguments unsupported by the documents to which they refer or by the law and the facts.  First, it is a misrepresentation of the reports for Continental to claim that they contain only a few mere "snippets" and "isolated statements" that happen to indicate disagreement with this Court's prior rulings.  To the contrary, all three of Continental's reports explicitly offer opinions on issues that this Court has already decided.  All three witnesses authored reports that, are entirely contrary to the "law of the case" throughout as Continental asked them to do.

Indeed, even the example Continental cites to purportedly illustrate the United States' "incomplete" picture (*i.e.*, Continental's claim that "United States ignores Wainscott's careful analysis of the <u>intention</u> of the express <u>parties</u> to the policy in light of federal statutory enactments . . . .")  also is contrary to this Court's prior rulings.  (Emphasis added)  Dkt. 314 at 5-6.  This Court and the Ninth Circuit both have already considered and rejected Continental's "intent of the parties" argument and found that the United States was insured under the policy.  Moreover, interpreting the contractual "intent of the parties" is a pure legal issue, and is not an appropriate subject for expert testimony.  *See Lone Star Steakhouse & Saloon, Inc. v. Liberty*

*Mut. Ins. Group*, 343 F. Supp. 2d 989, 1015 (D. Kansas 2004). *In Lone Star Steakhouse &*

*Saloon, Inc.,* cited by Continental in its opposition, the court found that although the expert's

"over 20 years experience handling and supervising insurance claims [made him] qualified to

express opinions relating to insurance industry standards and practices and whether Liberty

Mutual's conduct conformed to such standards," the court would not allow him to provide expert

testimony concerning "construction of contract terms." (Emphasis added) 343 F.Supp. at 1015.

    **B.**    **Continental's argument that it "plans to elicit . . . [only testimony
that] draw[s] on their [experts'] insurance industry experience"
attempts to avoid the Fed.R.Civ.P. 26 requirement that the witnesses
state their opinion and bases in their reports."**

        Continental's second argument, that its experts' reports consist "primarily" of "industry

standards" analysis, is not supported by the reports. Unlike the United States' expert, Deborah

Senn, Continental's experts' reports consist almost entirely of case law analysis - - the same case

law that this Court has already applied to the facts of this case. Not surprisingly, all of

Continental's experts came to different legal conclusions based on the application of that case

law. Indeed, Continental's experts' reports contain little, if any, analysis of "industry standards."

In fact, one of the "experts," attorney Serdahely, is not qualified as an expert in "insurance

industry standards." Further, his report is a legal brief, not a factual brief addressing application

of legal standards.

        Continental could only extract from the reports two examples of purported "industry

standard" analysis. Both directly contradict the "law of the case" and do not involve any

analysis of "industry standards." Indeed, Lohr's conclusion that "Continental did not act in an

outrageous, malicious or recklessly indifferent manner [in] deciding at the time of the claim that

the U.S.A. was an implied insured [because that] would have required Continental to predict the outcome of a future decision of the Alaska Supreme Court," is not based on application of any "industry standard." Dkt. 314 at 12. He would have to identify the standard to opine and state a basis; but he does not. In fact, not a single "industry standard" is even mentioned in that entire section of Lohr's report. Rather, the section discusses and applies only case law. In addition, as discussed below, every conclusion contained in that section and all reasoning on which those conclusions are based attack the "law of the case."

Continental refers to Wainscott's statement (the second purported example of industry standards analysis that he "ha[s] written thousands of Reservation of Rights letters, but never one for someone who <u>had no status as an insured</u> under the policy." (Emphasis added) Dkt. 314 at 12. This appears to be one of the few, if not the only, instances where Wainscott at least arguably "draw[s from his] insurance industry <u>experience</u>," though not from any "industry <u>standard.</u>" However, Wainscott does so in complete disregard of the "law of the case." Indeed, as this Court and the Ninth Court have already found as a matter of law, the United States <u>did have status</u> as an insured under the policy. Dkt. 147, 166. In rejecting that status, Continental concealed a policy under which the United States has been held to be an implied insured. It also rejected the United States' claim without finding a single case contrary to the Alaska Supreme Court precedent raised by the United States and under which the United States has been held to be an implied insured. Wainscott ignores the facts and does not in any way identify how Continental's actions are within industry standards in the face of its bad acts.

**C.     Continental's argument that only "<u>explicit</u> <u>criticism</u>" by an expert of a court's final ruling is prohibited applies convoluted logic.**

Continental's third argument that this Court should "preclude only (1) explicit criticism (not discussion) of prior judicial decisions" illustrates the extent to which Continental will attack through the back door the "law of the case" that was not decided in its favor.  According to Continental's reasoning, it is only improper if the expert offers "<u>explicit</u> <u>criticism,</u>" but not a "discussion" - - even of an issue already decided as a matter of law and even if the purpose and effect of such a "discussion" is to attempt to persuade a jury to ignore the court's decision and to instead reach a contrary one upon which to try the facts using Continental's "fairly debatable" example: according to Continental's reasoning, its expert is prohibited only from explicitly stating that "the court was incorrect when it rejected our 'fairly debatable' argument."  However, Continental would be free to again "discuss" (in other words, "argue") its "fairly debatable" issue, and, to cite the same cases that this Court found to be "fundamentally differen[t]" from the facts here.  Dkt. 166 at 16.  It essentially contends that it should be allowed to urge the jury to come to a conclusion directly contrary to that found by this Court <u>as a matter of law</u>.   To the contrary,  the "law of the case" doctrine prohibits more than simply saying the words "the court was wrong" or "I respectfully disagree" with the court.  Indeed, that doctrine requires that current litigation be consistent with prior decisions by the court.  In any event, even if this Court had not already ruled on it, the issue of whether the United States' status as an insured was "fairly debatable" is a <u>legal</u> issue and, thus, an inappropriate subject for expert testimony.

**D.     Continental's witnesses trample the "law of the case" doctrine.**

In *Milgred Tempering, Inc. v. Selas Corp. Of America*, 902 F.2d 703, 715 (9th Cir. 1990),

the Ninth Circuit concluded that "[t]he law of the case doctrine is a judicial invention designed to

aid in the efficient operation of court affairs" and "preclude[s courts] from reconsidering an issue

previously decided by the same court . . . ."  Moreover, the Ninth Circuit ruled that "[t]he law of

the case doctrine" provides that all findings "'decided explicitly or by necessary implication'"

(emphasis added) to the "law of the case" are themselves considered the "law of the case." *Id*.

(quoting *Liberty Mutual Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982)).  Accordingly,

all judicial findings decided explicitly or by necessary implication constitute law of the case and

must be followed.  All of the opinions contained in Continental's experts' reports either are

themselves directly contrary to this Court's prior decisions, or are based primarily, if not

exclusively on reasoning specifically rejected as a matter of law by this Court's prior decisions.

Either way, the reports contain neither any "expert" analysis nor "expert" opinion consistent

with the "law of the case" and they certainly do not analyze industry standards and practices.

Further, Continental has identified no statement within any of its reports that identify, address, or

analyze, any industry standard that protects Continental from punitive damages in this case.

> ### E.    Continental's Accusation that the United States engaged in "gamesmanship" by "goading" those expert witnesses at their depositions misconceives the deposition's purpose to inquire into the witnesses' bases for their opinions.

Continental's allegation that the United States somehow has engaged in "gamesmanship"

and so-called "goading," is nothing more than another attempt to mask the truth - - that all of

Continental's own experts' reports consist almost entirely of conclusions and reasoning directly

contrary to the "law of the case" and provide nothing of substance regarding industry standards.

Indeed, "gamesmanship" and "goading" are not engaged in by plaintiff's counsel.  An honest

reading of any section in any of the reports clearly demonstrates that virtually everything in the

reports is completely contrary to the "law of the case."  Further, reading any section in any of the reports also clearly demonstrates the bad faith of Continental's current claims that its experts' reports contain only "isolated snippets" inconsistent with the "law of the case;" and that the "far more substantial[] parts of the reports" appropriately "draw[] on [the experts'] <u>insurance industry experience</u>."  The witnesses do not draw on their insurance industry experience to provide analysis of industry standards and to apply those standards to Continental's actions.

Although the United States' brief in support of its motion to exclude Continental's experts was far from "misleading" (as Continental contends), in an effort to paint an even more "[]complete . . . picture" of the extent to which Continental's experts contradict the "law of the case," all three "expert" reports are discussed in more detail herein.  All three experts based almost all, if not all, of their opinions predominantly on case law (and primarily the same cases this Court has already analyzed) and other purely legal analysis.  Finally, while Wainscott's report at least mentions what arguably can be considered "industry standards," Wainscott rarely if ever actually applies any such standard to the facts of this case.  When he arguably does, the twisted  result directly contradicts this Court's prior rulings.  As for the other two expert reports, Lohr's report mentions "industry standards" only once, and even then, provides absolutely no analysis or application of any standard to the facts of this case.  Serdahely is not qualified as an expert in "industry standards" and does not even address them obliquely.

    **F.**    **Continental's experts' reports reviewed in search of qualifying opinions and bases under the rules.**

        **(i) Report of Robert N. Wainscott**

Wainscott's report begins with a short introduction, stating that "[t]his report contains my

opinions regarding whether or not punitive damages should apply, under Alaska law . . . ." (Emphasis added).  Wainscott Report at 1.  Next, Wainscott provides his version of the relevant facts in this case.  *Id.* at 2-13.  Finally, Wainscott discusses his analysis and opinions, organized by sections with different topic headings.

The first section containing Wainscott's "expert" analysis and conclusions, titled "Opinion Regarding Intent of the Parties," discusses just that.  Wainscott begins with basic contract law: "To form a contract there must be a meeting of the minds: an intent," and cites Judge Kleinfield's Ninth Circuit dissent as support for Wainscott's conclusion that, contrary to this Court's and the Ninth Circuit majority's rulings, "there was nothing in the placement of the risk that meets the guidelines for a finding of bad faith or an award of punitive damages."  *Id.* at 13 and 16.

This Court and the Ninth Circuit have already considered and rejected Continental's "intent of the parties" argument and ruled that the United States was an insured under the policy.  Consequently, Wainscott's legal analysis of that issue is irrelevant (not to mention improper because contractual "intent of the parties" is a legal concept inappropriate for any expert testimony, much less that by someone without expertise in the law).  Indeed, Wainscott's conclusion and all of the reasoning on which he based it - - far from merely an "isolated snippet" - - are directly contrary to this Court's and the Ninth Circuit's rulings.  Obviously - - Wainscott relies on the dissenting opinion for his support.

The next section, titled "Expectation of Coverage by USA," again cites Judge Kleinfield's Ninth Circuit dissent (*id.* at 16), and concludes that the United States did not "expect[] coverage under Continental's policy."  *Id.* at 17.  Wainscott also opines that Kenneth

Roosa, the AUSA who first tendered the claim to Continental, "had no foundation for his decision to tender to Continental or badger B.B.A.H.C.  In fact, his actions were contrary to the very intent of the FTCA."  *Id.* at 17.

Wainscott's conclusion, and all of the reasoning on which he based it, in addition to misapplying Alaska law,  is directly contrary to this Court's and the Ninth Circuit's rulings.  Not only is the entire section devoted to the argument that the United States <u>was not an insured</u>, a position directly contrary to this Court's and the Ninth Circuit's rulings, Wainscott even goes so far as to allege that AUSA  Roosa acted inappropriately by even making the tender in the first place.

The next section, titled "Opinion Regarding Bad Faith and Punitive Damages," begins with Wainscott's interpretation of the "Alaska[ ] standard for a finding of bad faith," followed by Waincott's interpretation of the different standards of proof for punitive damages and bad faith. *Id.* at 17.  Then, after discussing several more legal cases, Wainscott concludes that "Continental's denial of coverage is <u>reasonable</u>," and states that his "conclusions are supported in part by the 1993 decision in <u>Hillman vs. Nationwide</u>."  (Emphasis added)  *Id.* at 18. Wainscott then interprets more case law,  including a discussion of Judge Kelinfeld's dissenting opinion.  *Id.* at 19.

Again, Wainscott's only conclusion, that Continental's tender rejection was "<u>reasonable</u>," is directly contrary to this Court's and the Ninth Circuit's rulings that Continental's tender rejection was <u>not reasonable</u>.  Wainscott even cites the same case (*Hillman*) to purportedly support his position that this Court found to be "fundamentally differen[t]" from the facts of this

case.  Moreover, also once again, this section consists almost entirely of case law analysis, rather than addressing "industry standards."

The next section, titled "Industry Standard for Coverage Review," concludes that "[i]t is my opinion that absent being an insured under the contract, the U.S.A. was not owed a defense or indemnity.  It would have been inappropriate to defend this claim under a Reservation of Rights letter when the decision had been made that no coverage existed for the U.S.A."  *Id.* at 24.  According to Wainscott, "[i]n forming my opinions in considering whether or not Continental claims people acted reasonably, I examined the courts' [sic] basis for a finding that the USA was an implied insured under the policy.  It is my opinion that the court's finding of coverage for the U.S.A. is founded on the court's decision that to decide otherwise would fly in the face of equity, that it would create a 'windfall' for Continental.  They did not find that Continental claims people misinterpreted policy language, or ignored statutes or established case law when they made the decision that the U.S.A. was not an insured under the policy.  In their decision, the 9th Circuit decision found coverage for the USA by expanding the prior Alaska Supreme Court interpretation of the implied insured doctrine to include liability policies."  *Id.* at 22.

Again, both of Wainscott's opinions, that the "the U.S.A. was not owed a defense or indemnity" and that "[i]t would have been inappropriate [for Continental] to defend this claim under a Reservation of Rights," are directly contrary to this Court's rulings that the United States was owed a defense and indemnity and that Continental had a duty to defend the claim, at least

under a reservation of rights.  (Emphasis added).[2]  Moreover, despite the title "Industry

Standards," Wainscott's stated bases for his opinions are his (necessarily legal) "examin[ations]"

of this Court's and of the Ninth Circuit's decisions, and have nothing to do with "industry

standards."

The next section, titled "Conflict of Interests," states "[i]t is my opinion that, given the

underwriting intent expressed by the parties, the wording of the policy, and the law in effect

prior to September 2001, Continental's voluntary acceptance of coverage for the U.S.A. would

have placed them in conflict with the interests of their named insured, B.B.A.H.C."  *Id.* at 24.

Again, Wainscott's only stated opinion, that not only was it <u>reasonable</u> for Continental to deny

coverage to the United States, it would have been <u>improper not to deny it</u>, is completely contrary

to this Court's and the Ninth Circuit's rulings that it was <u>not reasonable</u> for Continental to deny

coverage.  Moreover, as Wainscott himself again acknowledged, the only bases for his opinion

were his analysis of the parties' "intent," his own contractual interpretation of the "policy," and

his interpretation of "the law in effect" - - none of which have anything to do with "industry

standards" and none of which are proper areas for expert testimony.

Wainscott's next section, titled "Bad Faith Issues as Addressed by Ms. Senn," purports to

critique Deborah Senn's expert report.  Disagreeing with Ms. Senn's opinion, Wainscott

concludes that "the decision to deny coverage to the U.S.A. was a carefully considered and

---

[2]  Wainscott's statements are drafted in a way that, read literally, make these opinions
dependant on an "<u>absen[ce]</u> [of the United States] being an insured under the contract."
Obviously, Wainscott is free to testify <u>consistent</u> with this Court's and the Ninth Circuit's ruling
that the United States <u>was</u> "an insured under the contract," and thus that "the U.S.A. <u>was</u> [ ]
owed a defense or indemnity," and that it "would have been [<u>]appropriate</u> to defend this claim
under a Reservation of Rights letter."

reasoned decision." *Id.* at 25. According to Wainscott, "[a]fter a thorough review of the policy, the statutes and judicial interpretation, none of the parties involved in the denial of the tenders believed that the USA was an insured under the policy." *Id.* Wainscott then discusses the purported "many similarities" between the instant case and *Hilman*, followed by again citing Judge Kleinfeld's dissenting opinion as support for his opinion ("perhaps Justice Kleinfeld said it best in his dissenting opinion. Judge Kleinfeld clearly understood the intentions of the parties.") *Id.* at 26. Next, Wainscott discusses each tender rejection, finding that each either was "dealt with in a thorough, prudent, and timely manner," or "did not prejudice the United States in any way." *Id.* at 28-29.[3] Wainscott then discusses whether Continental should have accepted tender with a reservation of rights, concluding that "Ms. Senn is wrong when she states that Continental had an obligation to defend the U.S.A. when coverage did not apply. It is my opinion that when there is no coverage under a policy, an insurance carrier owes no duty to defend, under a 'Reservation of Rights' or otherwise." *Id.* at 29. Finally, Wainscott repeats his earlier conclusion that "[t]here was nothing in the records I reviewed which show an unreasonable basis for the denial or clear and convincing evidence that their conduct was either unreasonable, outrageous, . . . or evidenced reckless indifference to the interests of others." *Id.* at 31.

Wainscott's conclusions are completely contrary to this Court's rulings. They are based, not on "industry standards," but on his own contractual interpretation of the "policy" and his

---

[3] Interestingly, on the one issue to which he is permitted to apply industry standards, even Wainscott admitted that Continental's rejection of the October 1, 2001, Kallstrom retender was "inappropriate" (though, again, he added that the United States was not prejudiced). *Id.* at 29.

analysis of "statutes and judicial interpretation."  Finally, he  relies on caselaw (*Hilman*) and argument regarding the "intent of the parties" that both this Court and the Ninth Circuit have already considered and rejected.

In the final section, titled "Actions of the Federal Government," Wainscott concludes that "[t]he U.S.A. is not an insurance carrier but when they are protecting P.L. 93-638 contractors under the FTCA they are acting as one.  Their actions are unsupportable."  *Id.* at 31.  Just as the rest of the report, this section is inconsistent with the "law of the case" and irrelevant to the United States' bad faith claim against Continental.  Further, the witness does not apply industry standards, his own industry knowledge, or any other proper standard that is appropriate to an expert to reach these unsupported conclusions of law.

### (ii) Report of Robert A. Lohr

Lohr's entire report is contrary to the "law of the case."  In addition, Lohr mentions "industry standards" only once and, even then, provides absolutely no analysis or application of any such "standard" to the facts of this case.  Lohr's report identifies the issues that it purportedly addresses:

> Whether Continental Insurance Company's conduct can fairly be characterized as meeting the standard in Alaska for the imposition of punitive damages, and, if so,

> What the financial records and filings pertaining to Continental Insurance Company's participation in the Alaska insurance market during the relevant time period indicate or suggest was Continental Insurance Company's profit or loss from those Alaska operations.

Lohr Report at 3-4.

Under the heading "Whether Continental Insurance Company's conduct can fairly be characterized as meeting the standard in Alaska for the imposition of punitive damages," Lohr

first introduces what he intends to evaluate: "(1) the <u>purpose</u> and <u>scope</u> of the insurance <u>coverage</u> . . ."; "(2) whether the <u>premium</u> paid to Continental constitutes a form of <u>unjust enrichment</u> or 'windfall' . . ."; "(3) whether Continental had a <u>reasonable basis</u> for its [tender] denial . . .'"; "(4) whether Lori Wilson suffered any harm or prejudice as a consequence of Continental's [tender] rejection . . ."; and "(5) whether . . . Continental's conduct was outrageous . . . .[citing] <u>Transp. Ins. Co. V. Moriel</u>, 879 S.W.2d 10, 24 (Texas 1994)." (Emphasis added). Lohr Report at 4-5. Lohr then discusses generally "the congressional decision to amend the ISDEAA to extend the Federal Tort Claims Act's (FTCA) applicability to their P.L. 93-638 programs." Lohr Report at 6. Next, Lohr concludes that "BBAHC received value from its premium paid to Continental," and that "any tort claim that occurred during the policy period placed BBAHC at risk." *Id.* at 7-8. Although Lohr does not state it explicitly (as he does throughout the rest of his report), the only purpose of this introductory section is to lay the foundation for Lohr's later arguments (discussed below) that the United States' was not <u>intended</u> to be covered by the policy and that, therefore, the United States <u>was not covered</u> under the policy - both directly contrary to the "law of the case."

Lohr's next section, titled "Insurance Coverage of Real Risks Contradicts the Unjust Enrichment Theories," discusses and rejects the same "'unjust enrichment' reasoning" (*id.* at 8) on which this Court and the Ninth Circuit in part based bad faith findings. Lohr then concludes that "[t]he Continental premium was <u>reasonable</u> for the reduced scope of coverage after FTCA became applicable to liability." (Emphasis added). *Id.* at 9. All of Lohr's conclusions in this section, as well as all of the reasoning and support on which those conclusions are based are

directly contrary to this Court's and the Ninth Circuit's rulings that Continental's premiums were <u>not reasonable</u> given the reduced coverage.

The next section, titled "Scope of the Liability Coverage Under the Continental Policies," concerns just that - Lohr's interpretation of the scope of the policy's coverage and whether the United States falls within that coverage - - issues that this Court has already decided.  Lohr states that "the <u>intent</u> of the parties . . . is important to understanding what is covered." ( Emphasis added.)  *Id.* at 10.  Lohr bases that conclusion exclusively on his contract interpretation of the policy.  Lohr also discusses the intent of the parties and his interpretation of the policy.  According to Lohr, "[t]he most reliable interpretation of <u>intent</u> comes from those who were present when the insurance coverage was developed."  (Emphasis added.)  *Id.* at 11.  Lohr also concludes that "[i]n my opinion, allowing a <u>stranger</u> to intrude into policy interpretation is counter to <u>contract law</u> and <u>legally</u> inappropriate."  (Emphasis added).  *Id.* at 11.

Finally in a section titled "BBAHC's, Continental's, and the U.S.A.'s actual intent during the underwriting of the private insurance policies," Lohr discusses only the parties <u>intent,</u> including Lohr's analysis of the "meeting of the minds."  (Emphasis added.)  *Id.* at 11-12.  Yet again, all of Lohr's conclusions in this section, as well as the reasoning on which those conclusions are based, are directly contrary to the rulings of this Court.  Indeed, this subsection discusses <u>only</u> Continental's "intent of the parties" argument and reaches only conclusions opposite to this Court's.  Those conclusions are based, not on any analysis of "industry standards," but rather only on Lohr's interpretation of "contract law" and what Lohr deems to be "legally inappropriate."

The next section, titled "Continental's actions in this case do not approach outrageous, malicious or reckless indifferent behavior," discusses caselaw (the same cases, *Olympic* and *Avi-Truck*, that this Court and the Ninth Circuit have already considered) and concludes that "[h]olding that the United States qualified as an 'implied insured' in this case would turn one of the Alaska Supreme Court's key Avi-Truck standards on its head."  Lohr Report at 14.  Under the title "Coverage under Continental policies did not include U.S.A. as an insured," Lohr discusses only the intent of the "senior staff members" who wrote the policy, and whether "BBAHC's risk under the private insurance coverage has increased."  *Id.* at 15.  Under the title "The claimant was not harmed by the business dispute between the U.S.A. and Continental," Lohr concludes that "Continental ordered a full, timely investigation of the claim."  *Id.* at 15-16. Finally he predicts how this Court's prior ruling that the United States is an implied insured will affect the insurance market.  Lohr concludes that "[i]t would be contrary to the public interest to make coverage so unpredictable, especially in a thin market," and that "when the government, including the court system, rewrites policy language, or who is insured after a major claim, they handle this kind of risk poorly."  *Id.* at 17.  Again, all of Lohr's conclusions in this section, as well as the reasoning on which those conclusions are based, are directly contrary to the rulings of this Court.  Moreover, Lohr even accuses the United States, as well as this Court and the Ninth Circuit, of "rewrit[ing] policy language."  Finally, again, none of Lohr's discussions in this section involve "industry standards"; rather, all of Lohr's opinions are based only on his interpretation of the same case law that this Court and the Ninth Circuit have already considered, as well as Lohr's views regarding the "public interest."

The next section concludes that Continental's decisions to reject the United States' tenders were <u>reasonable</u> because "[h]ad Continental accepted tender from the United States it would have harmed BBAHC and 638 tribal contractors everywhere." *Id.* at 17. Again, everything in this section is directly contrary to this Court's prior ruling that Continental's decisions to reject the United States' tenders were <u>not reasonable</u>. Moreover, nowhere are "industry standards" even mentioned.

The next section, titled "Punitive damages are inappropriate in this case because there were no outrageous, malicious or recklessly indifferent acts by the insurer," concludes that "[t]he denials of tender by Continental were consistent, generally timely, and <u>clearly explained the basis for the denial</u>," and that "I believe that Continental had a <u>reasonable</u> basis for denying tender." (Emphasis added) *Id.* at 17-18. Again, everything in this section is directly contrary to this Court's prior ruling that Continental did <u>not</u> "set forth an adequate explanation for rejecting the tenders," and that Continental did <u>not</u> have a reasonable basis for denying tender. Dkt. 166 at 16. Nowhere are "industry standards" even mentioned.

The next section concerns Lohr's "belie[f that] the proper measure of damages would be the Alaska earnings of Continental." *Id.* at 19. The United States addresses this contention it its motion to strike Lohr's testimony regarding Alaska earnings of Continental based on his lack of expert qualifications on that issue. *See* Dkt. 297 (which plaintiff incorporates herein by reference).

The final section in Lohr's report, discusses various topics and reaches numerous conclusions, all of which, like everything before it in the report, are inappropriate for expert testimony. *Id.* at 21. First, Lohr provides a short discussion of "Alaska's Unfair Claims

Settlement Practices Act," stating that the Act "has no private right of enforcement" (*id.* at 21), and that the Act's "2000 standards are significantly updated and strengthened from those that applied in 1993." *Id.* at 23. However, unlike the United States' expert, Ms. Senn, Lohr's report includes absolutely no analysis or application of any such "standard" to the facts of this case. Instead, Lohr interprets more case law, and opines that "[a]rguably, there was a <u>reasonable</u> basis for Continental to refuse to accept tender from BBAHC or the United States." (Emphasis added.) *Id.* at 23-24. Again, these discussions either are irrelevant or are contrary to this Court's prior ruling that there was <u>not</u> such a reasonable basis, or both. Next, Lohr asserts that "Continental sought coverage opinions from competent local counsel who researched the facts and case law carefully . . . ." *Id.* at 24. Again, this conclusion is contrary to this Court's prior rulings and has nothing to do with "industry standards." Moreover, Lohr is not qualified to evaluate the sufficiency of the legal research conducted by Continental's "local counsel." Next, Lohr concludes that "the decision to refuse to accept tender was fairly debatable." *Id.* at 26. Again, this argument has already been considered and rejected at least twice by this Court. Finally, Lohr critiques Ms. Senn's expert report, opining that Ms. Senn's "conclusions lack legal foundation." However, obviously Lohr is not qualified to opine about the sufficiency of "legal foundation." Moreover, such a statement is particularly remarkable considering that, unlike all three of Continental's "experts," Ms. Senn's "legal foundation," which Lohr contends is lacking, consists exclusively of this Court's and the Ninth Circuit's prior holdings, *i.e.*, the "law of the case."

### (iii) Report of Douglas J. Serdahely

Continental accuses the United States of "mischaracteriz[ing] Judge Serdaehely's report

as restricting itself to 'legal opinions.'"  Purportedly in support of that allegation, Continental

cites the following two sentences from the report: "attorneys and judges addressing this novel

question of law have reached differing conclusions"; and "On the basis of the same facts, law

and information discussed above, it is my opinion that Continental's conduct . . . cannot be fairly

and objectively categorized as 'outrageous,' or as acts done with malice, bad motives or reckless

indifference to the interests of the Government."  (Emphasis added).  Dkt. 314 at 11-12, quoting

Serdahely's report at 26.  However, neither sentence indicates that Serdahely provided an

opinion that was non legal, *e.g.*, one that relates to "insurance industry standards."  Moreover, as

Continental does not dispute, Serdahely is not even qualified to be an expert in any subject but

the law.  Indeed, even Continental's opposition asserts only that "Serdahely has gained expertise

in punitive damages law" (emphasis added), and makes no contentions that Serdahely has any

expertise in "insurance industry standards" or in any other topic that would qualify him to testify

as an expert in this case.  Dkt. 314 at 4.  Thus, even if the witness's report did contain non legal

opinions, any such opinions also would be improper because he is not qualified as an expert to

testify about them.

　　　　Finally, as demonstrated in the United States' Motion to Exclude, Serdahely's "expert"

report also is entirely inconsistent with the "law of the case." Dkt. 272.  Continental's

Opposition does not dispute any of the examples of such inconsistencies cited in United States'

Motion to Exclude.[4]  *Id*.  If this witness were to testify, he would serve only one purpose - - confusion for the jury.  His testimony would inappropriately invade the province of the Court to decide the law.

---

[4]  Even the two sentences cited by Continental (discussed above) are directly contrary to this Court's prior rulings.  Indeed, this Court has already rejected the same argument  offered by Serdahely that the fact that "attorneys and judges addressing this novel question of law have reached differing conclusions" (*i.e.*, Continental's "fairly debatable" argument) supports a finding that Continental did not act in bad faith.  Similarly, Serdahely's opinion that "[o]n the basis of the same facts, <u>law</u> and information discussed above, it is my opinion that Continental's conduct . . . cannot be fairly and objectively categorized as 'outrageous'. . . ." (emphasis added), amounts to a conclusion that a punitive damages award is improper as a matter of law - - which is directly contrary to this Court's ruling that "a jury <u>could find</u> that Continental's rejection of the United States' tenders was outrageous or done with reckless indifference."  (Emphasis added.) Dkt. 166 at 17.

**Conclusion**

For the foregoing reasons all three of Continental's "experts" should be precluded from testifying in this case.

DEBORAH M. SMITH
Acting United States Attorney

s/Richard L. Pomeroy
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov
AK #8906031

s/Richard R. Stone, Sr.
Trial Attorney
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Phone: (202) 616-4291
Fax: (202) 616-5200 fax
E-mail: richard.stone@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2006,
a copy of the foregoing UNITED STATES'
REPLY TO CONTINENTAL'S OPPOSITION
AT DOCKET 314 TO THE UNITED STATES'
MOTION TO EXCLUDE EXPERT TESTIMONY
AT DOCKET 272 was served electronically on
Gary A. Zipkin and William Urquhart  and on

Rebecca L. Ross
Ross, Dixon & Bell, LLP
55 West Monroe Street, Suite 3000
Chicago, IL 60603-5758
(312) 759-1920
(312) 759-1939 fax

by U.S. mail

s/ Richard L. Pomeroy

USA v. The Continental Casualty Company
Case No. 3:98-cv-285-JWS                    25