Gary A. Zipkin, Esq.
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, AK  99501
Phone:	(907) 793-2200
Fax:	(907) 793-2299
E-mail:	gzipkin@guessrudd.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,        ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| vs.                                                              ) | |
| ) | |
| THE CONTINENTAL                               ) | |
| CASUALTY COMPANY d/b/a        ) | |
| THE CONTINENTAL INSURANCE ) | |
| COMPANY,                                              ) | Case No. 3:98-cv-285-JWS |
| ) | |
| Defendant.    ) | |
| _____) | |

DEFENDANTS' REPLY IN SUPPORT OF MOTION IN LIMINE NO. 2 (DOCKET 251) TO EXCLUDE EVIDENCE OR ARGUMENT RELATING TO NEW, UNPLEADED CLAIMS OF PURPORTED BAD FAITH AND/OR ALLEGED ACTS OF BAD FAITH THAT DO <u>NOT BEAR ON THE REASONABLENESS OF CONTINENTAL'S TENDER REJECTION</u>

The Government focuses almost exclusively on the <u>Kallstrom</u> re-tender issue in its opposition at Docket 326 and largely ignores the other points raised by defendants' motion. Accordingly, we set forth at the outset those matters which are effectively undisputed and, hence, easy to resolve.

      1.      Only Evidence That Bears on the Bad Faith
             Claim Actually Being Litigated Is Admissible

As a matter of law, and as defendants showed in their motion, only evidence that bears on the claim or theory of bad faith actually being litigated is admissible; evidence of irrelevant acts of alleged bad faith is inadmissible as a matter of law. See Dkt. 251 at 8-9. The Government does not dispute this point in its opposition. In fact, the Government effectively concedes the point but says that it does not apply because it intends to "rely only on relevant bad faith acts". See Dkt. 326 at 9 n.2. Accordingly, it is undisputed that the Government may not rely on or introduce evidence of purported acts of bad faith that do not bear on the bad faith claim actually being litigated.

In light of that undisputed evidentiary restriction, the court needs to decide what bad faith claim or claims are actually being litigated (because only evidence that relates to such claims is admissible). As set forth below, and notwithstanding misstatements in the Government's opposition, the answer to that question is unmistakably clear: The Government's only bad faith claim is for wrongful denials of coverage in 1995 and 1997. Therefore, only acts that bear on Continental's decisions to deny coverage in 1995 and 1997 are admissible.

2.  As of 2001, the Bad Faith Claim in this Case Was a
    Claim for Bad Faith Denial of Coverage in 1995 and 1997

In 2001, this court recognized that the theory of bad faith pled by the Government in its third claim -- its only bad faith claim -- was a "bad faith denial of coverage" theory. See Dkt. 61 at 10. That bad faith denial of coverage claim was predicated on the Government's 1995 and 1997 tenders of defense and indemnity. First Amended Complaint, See Dkt. 6 ¶¶ 17-29.

When the court addressed the Government's bad faith denial of coverage claim on summary judgment in 2001, it determined whether Continental "lacked a reasonable basis for denying benefits of the policy" and whether Continental "had knowledge that no reasonable basis existed to deny the claim or acted in reckless disregard for lack of a reasonable basis for denying the claim," applying the Hillman standards for a bad faith denial of coverage claim. See Dkt. 61 at 10; see also Hillman v. Nationwide Mutual Fire Ins. Co., 855 P.2d 1321, 1324 (Alaska 1993). The court found in the Government's favor, thus establishing that the United States was covered, Continental acted unreasonably when it rejected the Government's tenders in 1995 and 1997, and Continental knew there was no reasonable basis or acted in reckless disregard for the lack of a reasonable basis when it rejected tender in 1995 and 1997. The Government acknowledged this much in a recent filing when it recognized that the court's 2001 summary judgment order established these three things: that "(i) the United States was an insured in 1995 and in 1997 when Continental decided to reject tenders, (ii) Continental lacked a reasonable basis for denying benefits and rejecting the United States' tenders in 1995 and 1997, when Continental decided to reject the tenders, and (iii) Continental 'kn(ew) that no reasonable basis existed to

deny the claim' (or at least acted recklessly) in 1995 and 1997, when Continental decided to reject tender." See Dkt. 301 at 4-5 (emphasis added).

Thus, there can be no dispute that, at least as of 2001, (1) the Government had pled only one bad faith claim, (2) that was a bad faith denial of coverage claim, and (3) that bad faith denial of coverage claim (like the court's summary judgment order) was predicated on the Government's 1995 and 1997 tenders of defense and indemnity.

      3.      The Government's Bad Faith Denial of Coverage Claim Relating to its 1995 and 1997 Tenders is *Still* its Only Bad Faith Claim

After the court found in the Government's favor in 2001, the Government amended its Complaint in 2002. However, the Government's Second Amended Complaint from 2002 -- which is the operative complaint in this case -- did not add any extra bad faith claims. See Dkt. 71. Indeed, aside from a handful of additional factual allegations relating to Mr. Friderici's purported conflict of interest and policy concealment in 1995, the only variation between the Government's Second Amended Complaint from 2002 and its First Amended Complaint from 1998 is that the 2002 complaint includes a prayer for punitive damages. Compare Dkt. 6 with Dkt. 71.[1]

Logically, therefore, the court ruled in June 2002 -- after the Government had filed its Second Amended Complaint and the court had summarily adjudicated the Government's

---

[1] The Government consistently misrepresents the record in this regard in its opposition. Although the Government says that its punitive damages claim from its Second Amended Complaint "includes the bad faith allegations regarding the Kallstrom re-tender," the Government cites only a footnote from its motion for leave to amend, not the

bad faith claim in 2001 -- that "[t]he only remaining claim is the government's claim for punitive damages, which was recently added in an amended complaint." See Dkt. 87 at 6. The Government agreed that the only remaining claim in this case was the prayer for punitive damages just last year. See Dkt. 119 at 1. And the Government acknowledged in November 2002, after it had filed its Second Amended Complaint, that "[t]his case accrued before . . . August 7, 1997" and the United States "merely amended its Complaint [to add a prayer for punitive damages in 2002] to allege what had earlier accrued as damages rating punishment." See Dkt. 99 at 8 (emphasis added).

      The court's ruling and the Government's assertions that the "only remaining claim" in this case is the Government's prayer for punitive damages (which the Government acknowledges is based on pre-1998 conduct) of course implies that no unadjudicated bad faith claims exist. Although the Government protests that it purportedly "has never concurred that there are no unadjudicated bad faith claims in the case," See Dkt. 326 at 8, it acknowledges in its very next sentence that "the United States has agreed that the remaining claim in this case is for punitive damages." Id. (emphasis added). The Government's apparent position that (1) punitive damages is the only remaining issue (and its punitive damages claim is based on pre-1998 activities) but (2) this case also somehow includes unadjudicated, live bad faith claims (based on post-2001 activities) is untenable.

---

Complaint. Dkt. 326 at 8. The Second Amended Complaint contains no additional factual allegations relating to the Kallstrom defense nor any additional claims other than the prayer for punitive damages.

Accordingly, the claim that indisputably <u>was</u> the only existing bad faith claim as of 2001 -- a bad faith denial of coverage claim relating to the Government's 1995 and 1997 tenders -- still <u>is</u> the only bad faith claim today.

4. Only Evidence that Bears on The Government's 1995 and 1997 Tenders and Continental's Rejection of Those Tenders is Admissible

As it is undisputed that the only evidence that bears on the bad faith claim actually being litigated is admissible and there can be no genuine dispute about what claim is actually being litigated, only evidence that bears on the Government's 1995 and 1997 tenders and Continental's rejection of those tenders is admissible. Much of what the Government wants to show the jury is inadmissible.

A. Delayed Payment of Policy Limits

The Government's putative new claim that Continental should have immediately paid policy limits after the Ninth Circuit reversed this court in 2004 obviously has nothing to do with Continental's tender rejections in 1995 and 1997 (or ever). Therefore, even if this claim were theoretically valid (which it is not, <u>see</u> Dkt. 251 at 7), evidence on the claim is irrelevant and inadmissible.

The Government mentions its new delayed payment of policy limits claim only in passing in its opposition. The Government says Continental has been on notice of the claim since it opposed Continental's motion for certification under 28 U.S.C. § 1292(b), Dkt. 326 at 7, but that occurred just a few months ago -- indeed, it was based on that opposition that Continental learned that it needed to seek to preclude such evidence. The Government also quibbles about whether Continental's payment was "fully voluntary" or not, but that debate is wholly irrelevant to the point at hand.[2] Last, the Government obscurely states that, in "the unlikely event that the court should find that . . . Continental's failure to timely pay money that it owes in order to force the plaintiff to litigate [is] not sufficiently pled, the United States hereby formally requests permission to amend." See Dkt. 326 at 3. However, that claim obviously is not pled -- indeed, it could not have been because it accrued in 2004 at the earliest, two years after the Government last amended its complaint[3] -- and the Government's nonchalant, informal request for leave to amend fails for all the reasons set forth in defendants' motion, including perhaps most prominently futility.

B.   The *Kallstrom* Re-Tender Claim

The Government's new claim about the Kallstrom re-tender also is irrelevant to Continental's rejection of the Government's 1995 and 1997 tenders. Although the Government

---

[2] In any case, the Government is on the wrong side of that debate--its expert never informed Continental "that it was a continuing act of bad faith for Continental Casualty to continue to withhold the payment" as the Government represents. Dkt. 326 at 10, n.3.

[3] The Government's assertion that it somehow pled in 2002 a claim about not having paid policy limits in 2004 by generically alleging "unfair claims settlement practices" (Dkt. 326 at 9-10) is downright preposterous.

says that the Kallstrom re-tender bad faith claim "is an integral part of the claim for punitive damages," Dkt. 326 at 3, the Government said the exact opposite three years ago when it argued that its prayer for punitive damages, added in early 2002, was based exclusively on "what had earlier accrued as damages rating punishment" and that this entire "case accrued before . . . August 7, 1997." See Dkt. 99 at 8. Likewise, all of the facts identified by the Government as "facts supporting punitive damages" in its motion for leave to add a prayer for punitive damages relate to pre-1997 conduct. See Dkt. 69 at 6-7.

Contrary to the Government's representations, the only mention of its new claim relating to the October 30, 2001 Kallstrom *re-tender* before this year is a single footnote from the Government's motion for leave to amend in which the Government observed that Continental had not yet accepted the Government's re-tender. Although the Government dedicates pages of its opposition to a discussion of the allegations in its complaint about the Kallstrom case, not a single one of those allegations relates to the Government's new claim about Continental's alleged bad faith failure to accept its post-summary judgment re-tender of the Kallstrom defense. The only thing the Government ever pled is that Continental wrongly denied its original 1997 tender of the Kallstrom defense. Thus, the Government's assertions that it "has pled the Kallstrom re-tender bad faith claim" and "[i]t is clearly pled in the Second Amended Complaint on February 4, 2002 as an underlying basis for the punitive damages" (Dkt. 326 at 3) are simply false, and the three pages it spends showing that it pled a claim relating to its original tender of the Kallstrom defense (Dkt. 326 at 3-6) is wasted ink -- that has never been disputed.

Defendants' alleged bad faith failure to accept the Kallstrom re-tender (which the Government never pled) is a separate claim that is wholly distinct from the Government's claims regarding its 1995 and 1997 tenders (which it did plead), as the Government itself acknowledged earlier this year. According to the Government, it "has several bad faith claims pending against Continental," including: "(1) failure to accept tender of the defense originally, (2) failure to accept the United States' re-tender of Kallstrom . . . after this court granted summary judgment for the United States on September 18, 2001 and before the court vacated that ruling at docket 116, and (3) Continental's forcing the United States to continue to litigate for more than a year the amount that Continental owed the United States as a result of the Ninth Circuit's holding that the United States is an implied additional insured." See Dkt. 213 at 9. This new Kallstrom re-tender claim obviously has not yet been adjudicated -- that is why the Government moved for summary judgment on that claim. See Dkt. 227; see also Dkt. 213 at 9 (the Government observing that its new Kallstrom re-tender claim and delayed payment of policy limits claim "have not been presented to the trier of fact either on summary judgment or at trial").

Accordingly, the Government's assertions that it "has pled the Kallstrom re-tender bad faith claim" and that "Continental cannot possibly prove surprise" are disingenuous at best. See Dkt. 326 at 3. Whatever else may be subject to debate, it is entirely clear that the United States has never pled a claim about Continental's alleged bad faith failure to accept the Government's late-2001 Kallstrom re-tender of defense. For all the reasons set forth in defendants' motion at Docket 251 and opposition to the Government's motion for summary judgment at Docket 275, and because the Government has not even bothered to make a formal

request, the court should deny leave to amend to add the Government's new Kallstrom re-tender claim.

Since Continental's *pre-litigation* tender rejections are what are at issue and evidence relating to the October 30, 2001 Kallstrom re-tender does not bear on those rejections, the court should exclude evidence relating to the Kallstrom re-tender.

    C.    Litigation Conduct

As set forth in Defendants' Motion in Limine No. 4 at Docket 255 and reply in support thereof, evidence regarding defendants' litigation assertions or conduct should be precluded for a number of reasons. In addition to the reasons set forth in those documents, such evidence should be precluded because it is irrelevant to the bad faith claim being litigated. Statements made by defendants' lawyers in 2001, for example, have nothing to do with Continental's tender rejections in 1995 and 1997 (or ever).

    D.    Compelling an Insured to Litigate for Recovery

The Government says that Deborah Senn's opinion that Continental "wrongly compelled the United States to litigate for recovery . . . relates to Continental's forcing the insured to litigate for fourteen months after Continental's liability was clear" once the Ninth Circuit ruled. See Dkt. 301 at 9. As discussed above, the Government's putative nonpayment of

policy limits claim is irrelevant to Continental's pre-litigation tender rejections. Therefore, Ms. Senn's opinion on this issue is inadmissible.

### E. Delayed Responses To Tenders

Purportedly delayed responses to tenders have nothing to do with tender rejections. The Government's bad faith claim is for a wrongful denial of coverage. The Government has never argued that any delays in Continental's responses to its tenders (assuming such delays existed in the first place) caused any damages.[4] Therefore, a freestanding bad faith claim about Continental's alleged delays would fail, and the Government has not alleged such a claim in any event. Because alleged delays are irrelevant to a denial of coverage claim, evidence of alleged delays should be excluded.

### F. Corporate Structure

The Government hopes to be able to discuss, through its expert, defendants' corporate structure and how defendants ostensibly have attempted (by filing a motion for summary judgment) to use that structure to avoid liability. This also obviously has nothing to do with Continental's tender rejections, and evidence on this issue is therefore inadmissible.

---

[4] As discussed elsewhere, it is undisputed that Continental promptly responded to the Government's first tender and that the Government knew from the date on which it received that response that Continental was not going to provide defense or indemnity. Any subsequent delays could not possibly have caused any injury, and none is alleged.

Conclusion

The Government does not dispute that it cannot introduce evidence of alleged bad faith acts that do not bear on the bad faith claim or theory that is actually being litigated. As it is indisputable that the bad faith claim that has been at issue in this case for the last eight years is a claim for wrongful denials of coverage based on pre-litigation tenders and tender rejections, the court should enter an order excluding evidence or argument relating to any alleged acts of bad faith that do not bear on the Government's pre-litigation denial of coverage bad faith claim, including any evidence or argument that defendants allegedly: (1) delayed in paying policy limits, (2) did not accept the Kallstrom re-tender from late-2001, (3) engaged in improper litigation conduct, (4) compelled an insured to litigate for recovery, (5) delayed in responding to the Government's tenders, and (6) improperly manipulated their corporate structure.

DATED at Anchorage, Alaska, this 8th day of May, 2006.

GUESS & RUDD P.C.
Attorneys for Defendant

By:      S/Gary A. Zipkin
    Guess & Rudd P.C.
    510 L Street, Suite 700
    Anchorage, Alaska  99501
    Phone: 907-793-2200
    Fax:   907-793-2299
    Email: gzipkin@guessrudd.com
    Alaska Bar No. 7505048

QUINN EMANUEL URQUHART

                    OLIVER & HEDGES, LLP
                    Attorneys for Defendant

By:    S/A. William Urquhart
       Quinn Emanuel Urquhart
        Oliver & Hedges, LLP
       865 South Figueroa Street, 10th Floor
       Los Angeles, CA  90017
       Phone: 1-213-443-3000
       Fax:   1-213-443-3100
       Email: billurquhart@quinnemanuel.com

CERTIFICATE OF SERVICE

I hereby certify that on the
8th day of May, 2006, a copy
of the foregoing document was served
electronically on:

Richard L. Pomeroy, Esq.
Christopher Tayback, Esq.
A. William Urquhart, Esq.
Richard Stone, Esq.

Guess & Rudd P.C.


By:     S/Gary A. Zipkin

F:\DATA\6024\1\Pleading\109 Reply Mtn Lim #2.doc

USA v. Continental; Case No. A98-285 CV (JWS)
Defendants' Reply in Support of Motion in Limine No. 2
Page 13 of 13