Gary A. Zipkin, Esq.
Guess & Rudd P.C.
510 L Street, Suite 700
Anchorage, AK  99501
Phone:     (907) 793-2200
Fax:         (907) 793-2299
E-mail:    gzipkin@guessrudd.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,              )<br>                                                            )<br>                        Plaintiff,             )<br>                                                            )<br>vs.                                                       )<br>                                                            )<br>CNA FINANCIAL CORPORATION      )<br>AND THE CONTINENTAL                   )<br>CASUALTY COMPANY d/b/a             )<br>THE CONTINENTAL INSURANCE       )<br>COMPANY,                                           )<br>                                                            )<br>                        Defendant.            )<br>_____)  | Case No. 3:98-cv-285-JWS |

DEFENDANTS' REPLY IN SUPPORT OF MOTION
IN LIMINE NO. 5 RE: TESTIMONY OF RICK R. GASKINS

1.       Introduction

For reasons the Government fails to explain, the Government's purported expert on the question of how much money the jury should award as punitive damages, Rick Gaskins, has elected to provide no information whatsoever regarding either the profit earned by

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Defendants' Reply in Support of Motion in Limine No. 5
Page 1 of 13

Continental Insurance Company from its Alaska operations or information regarding its financial condition. Instead, Mr. Gaskins' report considers only the financial condition of Continental Casualty Company ("CCC") and, without any supporting legal authority, a discussion about the yearly executive compensation for CCC's "top five paid executives." Since Mr. Gaskins' expert report completely ignores the question he should have addressed, and since his opinions are entirely irrelevant and prejudicial, he should be precluded from testifying. Furthermore, since the Government offers only the lamest excuse for Mr. Gaskins' frolic into irrelevancy, the Government should not be permitted to produce a report from Mr. Gaskins adopting a correct methodology.

Even now, on the virtual eve of the original trial date for the punitive damages phase of this case, the Government and its expert remain confused about the identity of the insurance company the Government claims was guilty of conduct amounting to an outrageous, malicious, or callous disregard of the Government's interests. The insurer on the policy issued to Bristol Bay Area Health Corporation is <u>Continental Insurance Company</u>, not CCC. And, as more fully discussed in the motion for summary judgment filed by CCC, only Continental Insurance Company can be held responsible for a breach of the implied duty of good faith and fair dealing. Continental Insurance Company, a company with a net worth of $1,685,000,000 (as of the end of 2004) and a company which has complied at all times with all corporate and legal formalities and requirements, simply cannot be considered the "alter ego" of CCC.

Nothing in Rick Gaskins' expert report or deposition testimony is admissible to aid the jury (should they determine that Continental Insurance Company acted outrageously or

<u>USA v. Continental, et al</u>; Case No. 3:98-cv-285-JWS
Defendants' Reply in Support of Motion in Limine No. 5
Page 2 of 13

maliciously) to determine the amount of punitive damages which should be awarded.[1] His report should be contrasted with that of Robert Lohr, the expert retained by Continental Insurance Company. Mr. Lohr carefully considered and analyzed the likely profit made by Continental Insurance Company from its Alaska operations during the relevant time period. After all, the conduct being scrutinized in this case is conduct occurring here in Alaska, not in one or more other states, or nationwide. The claim asserted by the Government is, after all, founded on the assertion that Continental Insurance Company charged a premium, and received income in connection with a policy issued here in Alaska, and that Continental Insurance Company wrongfully benefited by supposedly taking a premium for a policy the Government claims was illusory if it did not cover and indemnify the Government. The jury should not be directed to the nationwide earnings of a separate corporation or the annual income of its executives.

2.   Argument

A.   CCC's Financial Condition is Wholly Irrelevant Because it Cannot be Found Liable for Bad Faith

As discussed fully in CCC's Motion for Summary Judgment, including its Reply brief, CCC cannot be held liable for insurance bad faith or punitive damages.[2] Since, as a matter

---

[1] See generally, Second Amended Complaint, Dkt. 71; Defendant's Motion In Limine No. 2 to Exclude Evidence or Argument Relating to New, Unpleaded Claims of Purported Bad Faith, and/or Alleged Acts of Bad Faith that Do Not Bear on the Reasonableness of Continental's Tender Rejection, Dkt. 251; and Continental Casualty Company's Motion for Summary Judgment, Dkt. 237. However, Continental does not concede that the U.S.A.'s punitive damages claim should even be presented to a jury. See Continental's Motion for Partial Summary Judgment on the United States' Prayer for Punitive Damages, Dkt. 231.

[2] Dkt. 237 and Dkt. 304.

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Defendants' Reply in Support of Motion in Limine No. 5
Page 3 of 13

of law, CCC cannot be held liable to the Government for punitive damages, CCC's financial condition -- the only area Mr. Gaskin is prepared to testify about -- is irrelevant and prejudicial.

Despite the Government's attempts to shoehorn CCC into the punitive damages phase of this case based on theories of *respondeat superior* and alter ego, those theories are inapplicable. In fact, applying *respondeat superior* to the alleged acts of bad faith in this case would turn the doctrine on its head. Under the theory of *respondeat superior,* an employer is found to stand in the place of its employee for the employee's alleged wrongdoing.[3] As previously established, CCC's employees cannot, as a matter of law, be held liable for bad faith.[4] If CCC's employees cannot be held liable for bad faith, CCC standing in the shoes of its employees cannot be held liable for bad faith. Accordingly, CCC cannot be held liable for bad faith under the theory of *respondeat superior*.

Likewise, the Government's effort to implicate CCC under an alter ego theory fails. The Government bases its alter ego claim on a solitary fact -- that, at present, Continental Insurance Company has no employees, so its policies are managed by CCC employees.[5] However, this fact alone comes nowhere close to satisfying the legal requirements for imposing the extraordinary relief of piercing the corporate veil of Continental Insurance Company -- especially the corporate veil of a company with a net worth of $1,685,000,000 (as of the end of

---

[3] Laidlaw Transit v. Crouse, 53 P.3d 1093, 1102 (Alaska 2002) "*Respondeat superior* provides in essence that the act of an employee during the course of his employment is legally the act of the employer." citing Gifford v. Evans, 35 Mich. App. 559, 192 N.W.2d 525, 529 (Mich. App. 1971).

[4] See Continental Casualty's Motion for Summary Judgment, Dkt. 237, including its Reply brief, Dkt. 304, citing Continental Ins. Co. v. Bayless & Roberts, Inc., 608 P.2d 281, 297-88 (Alaska 1980).

[5] Dkt. 321 at 5.

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Defendants' Reply in Support of Motion in Limine No. 5
Page 4 of 13

2004) and a company which has complied at all times with all corporate and legal formalities and requirements.[6]

      B.    CCC's Financial Condition Cannot be
            Admitted Against Continental Insurance
            to Determine a Punitive Damages Award

The Government declares that CCC and Continental Insurance Company "in substance are the same entity." This blanket statement ignores the fact that, if one examines the data at issue here -- the financial condition of the company against whom punitive damages may be levied -- CCC and Continental Insurance Company are clearly two separate entities. There has never been any allegation that Continental Insurance Company does not maintain its own separate books, records, and financial accounts. In fact, CCC and Continental Insurance Company's corporate controller, Lawrence Boysen, confirmed that Continental Insurance Company maintains its own financial accounts.[7] Furthermore, it is undisputed that Continental Insurance Company had a net worth of $1,685,000,000 as of the end of 2004. This is a clear indication of Continental Insurance Company's separate and adequate assets.[8]

The applicable case law is clear. In determining the amount of punitive damages to be awarded against co-defendants, it is improper to admit evidence pertaining to the wealth of one of those defendants to be used against the other. "One defendant cannot be punished

---

[6] See Jackson v. General Electric Co., 514 P.2d 1170, 1172-73 (Alaska 1973).

[7] See attached as Exhibit A to the Declaration of Gary Zipkin ("Zipkin Decl."), Deposition of Lawrence Boysen at 45.

[8] See Continental Casualty's Motion for Summary Judgment, Dkt. 237 p. 4 including attached exhibit, Boysen Aff.

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Defendants' Reply in Support of Motion in Limine No. 5
Page 5 of 13

because of the wealth of another."[9]  This is especially true where, as here, plaintiff intends to introduce evidence of the financial condition of only the wealthier defendant.[10]  Accordingly, Mr. Gaskins' testimony regarding CCC's financial condition should be excluded regardless of whether CCC can be held liable for punitive damages.

        C.      Rick Gaskins Should be Precluded from
                Supplementing his Report to Adopt
                a Correct Methodology

Rick Gaskins' expert report does not contain any information pertaining to the financial condition of Continental Insurance Company, the only company whose financial condition is relevant.  Nor does Mr. Gaskins make any attempt to analyze, or even consider, the likely profit of Continental Insurance Company in Alaska during the relevant time period.  The profit made by Continental Insurance Company's Alaska operations during the relevant time period is the most appropriate data to consider with respect to any possible award of punitive damages -- as set forth in the expert report from defendants' expert, Robert Lohr.[11]  After all, the conduct being scrutinized by the jury in this case is conduct occurring here in Alaska, not in one or more of the other states where CCC or Continental Insurance Company conduct business, let alone their nationwide operations.  The underlying accident to Lori Wilson occurred here in

---

[9] Wolfersberger v. Miller, 39 S.W.2d 758, 765 (Missouri 1965); See also, Life & Casualty Insurance Company of Tennessee v. Padgett, 407 S.W.2d 728, 730 (Arkansas 1966)

[10] Washington Gas-Light Co. v. Lansden, 172 U.S. 534, 553 (1899).

[11] See Ace v. Aetna Life Ins. Co., 40 F.Supp.2d 1125, 1132 (D.Alaska 1999) ("The record does not show how much of Aetna's wealth is attributable to its activities in Alaska. Heavy reliance on a defendant's aggregate wealth would be inappropriate. Some tempering of the weight given that criterion is necessary where it cannot be adjusted to reflect that which is necessary to protect the interests of each individual state's consumers."); see also, Dkt. 93 (Government concedes activities in Alaska are relevant by seeking discovery "related to the amount or percentage of business done in Alaska").

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Defendants' Reply in Support of Motion in Limine No. 5
Page 6 of 13

Alaska and the policy in question was issued to an Alaskan tribal contractor, Bristol Bay Area Health Corporation. The premium for that policy was paid by that Alaskan insured and the primary contention by the Government has been that that premium was wrongfully procured by Continental Insurance Company if the policy is not construed to protect the Government with respect to liabilities arising here in Alaska from the tribal contractor's operations.

Mr. Gaskins' report and deposition testimony demonstrate that he is only prepared to testify regarding CCC's financial condition. Now, months after plaintiff's expert's reports were due (and only in the face of the motion to exclude Mr. Gaskins' testimony) the Government tells us that "Ms. [sic] Gaskins is perfectly prepared to testify about the financial condition of Continental Insurance."[12] While Mr. Gaskins may <u>claim</u> to be prepared to testify about Continental Insurance Company, no such testimony was disclosed either in his report or at his deposition. The notion that Mr. Gaskins should now be allowed to completely change the focus of his report so that he is shooting at the right target is inconsistent with the disclosure required by Fed. R. Civ. Proc. 26(b)(4).

Mr. Gaskins' deposition testimony further contradicts the Government's claim that he "is perfectly prepared to testify about the financial condition of Continental Insurance."

> Q. You didn't do any analysis of the net worth of an entity called Continental Insurance Company; is that right?
>
> A. Correct.[13]

---

[12] Dkt. 321 at p. 2.

[13] <u>See</u> attached as Exhibit B to the Declaration of Gary Zipkin ("Zipkin Decl."), Deposition of Rick Gaskins at 26.

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Defendants' Reply in Support of Motion in Limine No. 5
Page 7 of 13

On the date of his deposition, Mr. Gaskins had not even started <u>any</u> analysis pertaining to the net worth of Continental Insurance Company. Allowing previously undisclosed analyses by this expert now should not be permitted.

The Government's only "excuse" for the fact that Mr. Gaskins' report did not address Continental Insurance Company's financial condition independently is that "when Mr. Gaskins authored his report, Continental Casualty had not moved for summary judgment."[14] Nevertheless, the Government received CCC's Motion for Summary Judgment on March 16, 2006, and this motion to exclude Mr. Gaskins' testimony was filed on April 5, 2006, yet Mr. Gaskins has not provided any revised report -- despite the Government's assertion that he could "do so simply."[15]

It is far too late in this case for the Government to be permitted to re-focus Mr. Gaskins' analysis so that it addresses the financial condition of the proper defendant. The Government has had years to retain a qualified expert to analyze the profit generated by <u>Continental Insurance Company</u> from its Alaska operations during the relevant time period. Instead, the Government chose to select an expert who shot at the wrong target -- and missed. Now that defendants have moved in limine to preclude that expert from testifying, the Government should not be permitted to launch that expert, or some new expert, on an entirely new analysis.

---

[14] Dkt. 321 at p. 7.

[15] Dkt. 321 at 7.

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Defendants' Reply in Support of Motion in Limine No. 5
Page 8 of 13

Furthermore, even if Mr. Gaskins performed the same analysis on Continental Insurance Company that he did on CCC (as his report indicates he would), his opinions would still be flawed.  As indicated above, the most appropriate figure to base an award of punitive damages in the instant case is Continental Insurance Company's profits in Alaska during the relevant time frame.  Therefore, if Mr. Gaskins does eventually provide data pertaining to Continental Insurance Company's financial condition applying the same analysis he did on CCC, his calculation would still be too broad and an appropriate measure to base an award for punitive damages.

### D. Mr. Gaskins' Opinions on Executive Compensation Must be Excluded

Regardless of whether Mr. Gaskins is allowed to testify about the financial condition of CCC, he cannot opine on the salaries of CCC and CNA Financial's highest paid officers.  This evidence is irrelevant and unfairly prejudicial.

While not providing any authority to support the admissibility of executive salaries, the Government instead resorts to a schoolyard "is not" -- "is too" argument, claiming that, while there may be no authority to allow its admission, there is no precedent that prohibits it.  The mere gainsaying of defendants' argument is not, itself, an argument.

Despite the Government's retort, there is authority that prohibits the use of this type of inflammatory evidence.  Applying Evidence Rule 403, any slight probative value the executive salaries may have "is substantially outweighed by the danger of unfair prejudice,

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Defendants' Reply in Support of Motion in Limine No. 5
Page 9 of 13

confusion of the issues, or misleading the jury." This data serves no purpose other than to enflame the jury's prejudices about highly compensated corporate officers in an attempt to lead them to conclude that an appropriate amount of punitive damages in this case should somehow correspond to compensation the defendants pay to their top officers. This is not an appropriate basis for an award of punitive damages. Likewise, the Government does nothing to refute the authority which holds that net worth and net income are the recognized guidelines for determining an award of punitive damages, <u>not</u> the salaries of corporate officers. Furthermore, the Government's argument fails to acknowledge that it has the burden to establish that Mr. Gaskins' testimony regarding the officers' salaries is reliable, relevant, and admissible.[16] This burden has not been met.

Additionally, Mr. Gaskins' reasoning for including information pertaining to executive salaries is unwarranted and unsubstantiated. The only rationale in Mr. Gaskins report for the inclusion of this data is that, in his opinion, "a jury in this matter would be served by knowing how the companies compensate the[ir] officers."[17] When asked at his deposition for clarification of what that opinion is based on, Mr. Gaskins' had little more to offer:

> Q.    Okay. You mentioned executive compensation. Is -- can you point me to -- to any authority or treatise or a particular treatise or a particular case or anything that -- that supports the idea that executive compensation is something that would be relevant to a jury's determination of a punitive damage award?

---

[16] <u>General Elec. Co. v. Joiner</u>, 522 U.S. 136, 143 (1997); <u>see also</u> <u>Fed. R. Evid.</u> 702 Ad. Comm. Note, 2000 Amendments.

[17] <u>See</u> Gaskins' Report attached to Dkt. 321 at p. 3.

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Defendants' Reply in Support of Motion in Limine No. 5
Page 10 of 13

> A. I think it's related to the wealth and income of the alleged wrongdoer.
>
> Q. I understand your opinion. I guess my --
>
> A. An alleged wrongdoer could be expected to say we're poor and the level of executive compensation is evidence that may either support that contention or would refute it, so I think it's --
>
> Q. Okay. I guess my question though is -- is you mentioned that your understanding comes from various treatises and case law, and I'm just wondering if you have in mind a particular treatise or a particular case that -- that stands for that proposition because I didn't see it in your report.
>
> A. I have no particular case.
>
> Q. No particular case in mind?
>
> A. No. [18]

What Mr. Gaskins may think is related to the wealth and income of a party is irrelevant. An entity's <u>actual</u> wealth and income are the only considerations to be used when awarding punitive damages. Furthermore, there is no indication that Continental Insurance Company intends to suggest to the jury that it is impecunious. To the contrary, Continental Insurance Company has freely admitted that, as of the end of 2004, it had a net worth of $1,685,000,000. Therefore, Mr. Gaskins' rationale for providing information regarding CCC's wealth, or the compensation of executives, is unsupported as well as highly prejudicial.

## Conclusion

---

[18] <u>See</u> attached as Exhibit B to the Declaration of Gary Zipkin ("Zipkin Decl."), Deposition of Rick Gaskins at 26.

<u>USA v. Continental, et al</u>; Case No. 3:98-cv-285-JWS
Defendants' Reply in Support of Motion in Limine No. 5
Page 11 of 13

For the foregoing reasons, Continental respectfully requests that the court grant its motion in limine to exclude the testimony of Rick R. Gaskins.

DATED at Anchorage, Alaska, this 8th day of May, 2006.

        GUESS & RUDD P.C.
        Attorneys for Defendants


By:        S/Gary A. Zipkin
        Guess & Rudd P.C.
        510 L Street, Suite 700
        Anchorage, Alaska  99501
        Phone: 907-793-2200
        Fax:   907-793-2299
        Email: gzipkin@guessrudd.com
        Alaska Bar No. 7505048

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Defendants' Reply in Support of Motion in Limine No. 5
Page 12 of 13

          QUINN EMANUEL URQUHART
            OLIVER & HEDGES, LLP
         Attorneys for Defendants

By:    S/A. William Urquhart
       Quinn Emanuel Urquhart
        Oliver & Hedges, LLP
       865 South Figueroa Street, 10th Floor
       Los Angeles, CA  90017
       Phone: 1-213-443-3000
       Fax:   1-213-443-3100
       Email: billurquhart@quinnemanuel.com

CERTIFICATE OF SERVICE
I hereby certify that on the 8th day of May, 2006, a copy of the foregoing document was served electronically on:

Richard L. Pomeroy, Esq.
Christopher Tayback, Esq.
A. William Urquhart, Esq.
Richard Stone, Esq.

Guess & Rudd P.C.


By:    S/Gary A. Zipkin

F:\DATA\6024\1\Pleading\100 Reply Mtn Lim 5.DOC

USA v. Continental, et al; Case No. 3:98-cv-285-JWS
Defendants' Reply in Support of Motion in Limine No. 5
Page 13 of 13